UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

UNITED STATES OF AMERICA                              :

    - against -                                                      :     11 Cr. 1091 (VM)

PETER J. AJEMIAN,                                              :
PETER J. LESNIEWSKI,
MARIA RUSIN,                                                       :
MARIE BARAN,
JOSEPH RUTIGLIANO,                                         :
GREGORY NOONE,
REGINA WALSH,                                                   :
SHARON FALLOON,
GARY SATIN,                                                         :
STEVEN GAGLIANO, and
RICHARD EHRLINGER,                                       :

                                    Defendants.       :

------------------------------------------------------------ X

**GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT WALSH'S REQUEST FOR JURY POOL INFORMATION**

        The Government respectfully submits this Memorandum in Opposition to Defendant Walsh's Request for Jury Pool Information. Walsh seeks to obtain documents and information from the Court's Jury Administrator to support a theory that the jury selection process in this District (and elsewhere) is illegal or unconstitutional because it permits prospective jurors to opt out of jury service if they are over age 70. Because the jury selection process is legal and constitutional, even if it is assumed that there is a statistical effect of the jury service opt-out provision for persons over age 70, there is no

need to undertake to analyze any statistical effect of this opt-out provision, and defendant Walsh's request should be denied. In the alternative, even if Walsh's proposed challenge to the plan had theoretical merit such that Walsh is entitled to some information, the request Walsh has made is overbroad and should be substantially narrowed.

## Background

Juries in the Southern District of New York are selected pursuant to the Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York (the "SDNY Jury Plan"), which itself was adopted pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-1969 (the "Jury Selection Act"). As set forth in the SDNY Jury Plan, the Judges of this Court have found that "the persons whose names appear on the voter registration lists of the [counties comprising the District] used for the last Federal or State General Election represent a fair cross-section of the community in the District." SDNY Jury Plan Art. III(A). Therefore, the SDNY Jury Plan provides that a master jury wheel for the Manhattan Courthouse and a master jury wheel for the White Plains Courthouse shall be created by randomly selecting names from these voter registration lists according to proportions set forth in the SDNY Jury Plan. *Id.* Art. III(A) and (C). The master jury wheel is designed to contain a supply of names sufficient to supply juror needs for up to four years. *Id.* Art. III(B).

From time to time, the Clerk randomly draws from the master wheel a list of names and sends to those individuals a questionnaire "for purposes of examining their

qualifications and availability for jury service." *Id.* Art. III(D).  When these questionnaires are returned to the Court, if they show that an individual is eligible and not exempt from jury service, the individual's name and address is included among those prospective jurors who make up the qualified jury wheel.  *Id.*  From time to time, the Clerk then randomly draws names from the qualified jury wheel and sends those individuals jury summonses directing them to appear on a particular day.  *Id.* Art. III(F).  The pool of jurors that appears in response to the summons is then randomly assigned, as needed, to jury panels for individual trials or grand juries.  *Id.* Art. IV(C).  If an individual member of a panel is not chosen to serve and is not excused from jury service, he or she returns to the pool and may be again randomly selected for another panel.  *Id.*

The SDNY Jury Plan provides that certain categories of persons (such as members of fire or police departments or members in active service in the armed forces) are automatically excused from jury service.  *Id.* Art. V.  The Judges of this Court have also found that "jury service by persons in [certain enumerated] groups would entail undue hardship or extreme inconvenience to them and that the excuse of such persons will not be inconsistent with the Act."  *Id.* Art. VI.  Among the enumerated groups as to whom the Judges of the Court have made this finding are "Persons over 70 years of age."  *Id.* Art. VI(1).  The SDNY Jury Plan also provides that certain enumerated persons (such as non-citizens or convicted felons) are disqualified from jury service.  *Id.* Art. VII.

The SDNY Jury Plan also provides that [t]he contents of records or papers used in connection with the jury selection process shall not be disclosed, except as may

be necessary in the preparation or presentation of a motion pursuant to § 1867 of the Act to challenge the validity of the selection of a jury." *Id.* Art. X.

## Discussion

Because the defendant cannot satisfy the first element of a prima facie case — that the group of persons over 70 years of age is a cognizable group for purposes of the fair-cross-section requirement — permitting these individuals to opt-out of jury service is legal and constitutional even if the effect of this opt-out is to reduce the proportion of persons in the jury pool who are older than age 70. Accordingly, it is not "necessary" for defendant Walsh to obtain information about the ages of persons in the jury pool, and the request for information should be denied. In the alternative, even if the Court decided to grant access to information about the ages of persons in the pool, the documents and information requested by the defendant are overbroad and should be narrowed.

### A.     Applicable Law

Under the Jury Selection Act, federal defendants have a right to a grand jury that is selected "at random from a fair cross-section of the community." *See* 28 U.S.C. § 1861. There is also a Sixth Amendment right to a petit jury that is selected from a fair cross-section of the community. *See Taylor* v. *Louisiana*, 419 U.S. 522, 697-98 (1975). Although it has been said that there may be a similar non-statutory right in the federal grand jury context, "the source of that requirement is not entirely clear," and has been ascribed to either the Court's supervisory power or to the Fifth Amendment. *See*

Sarah Sun Beale et al., *Grand Jury Law & Practice* § 3.12 (Nov. 2011).

> The Second Circuit has stated:
>
> Such language — in particular the phrase "cross-section of the community" — is helpful only as a description of rather than a solution to the problem of determining which jury selection *procedures* are permissible and which are not. On the one hand, it is clear that a criminal defendant in a federal court has no right to an individual panel represented by any particular racial, social, or economic group. Nor does one have a right to "exact proportional representation" in the array.

*United States* v. *Fernandez*, 480 F.2d 726, 733 (2d Cir. 1973).

Courts have analyzed statutory and Sixth Amendment challenges under the same three-part test established in *Duren* v. *Missouri*, 439 U.S. 357 (1979). *See United States* v. *Rioux*, 97 F.3d 648, 660 (2d Cir. 1996). As stated in *Duren*:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren* v. *Missouri*, 439 U.S. at 364.

**B.     Discussion**

    **1.     Persons Over Age 70 Do Not Constitute A Cognizable Group For Purposes Of The Fair-Cross-Section Requirement**

Because defendant Walsh's proposed motion cannot satisfy the first part of the *Duren* test, no access to jury data is required and her request should be denied. This

is so because, even if it is assumed that the SDNY Jury Plan's provision permitting (but not requiring) persons over the age of 70 to opt out of jury service results in a total exclusion from the venires from which juries are selected (which is likely not the case), the SDNY Jury Plan would still provide for juries randomly selected from a fair cross section of the community.

Indeed, although there are no cases in the Second Circuit expressly considering the total exclusion of persons over the age of 70, the Seventh Circuit rejected just such a challenge on the grounds that the identified group ("persons over age 70") is not a cognizable "distinctive" group for purposes of the fair-cross-section requirement. *See Silagy* v. *Peters*, 905 F.2d 986 (7th Cir. 1990).  In *Silagy*, the official responsible for compiling the jury venire, without legal authorization, exempted from jury service those persons "who indicated on their jury questionnaires that they were seventy years of age or older." *Id.* at 1010.  The Seventh Circuit nevertheless rejected the defendant's claim that this total and unauthorized exclusion violated the fair-cross-section requirement of the Sixth and Fourteenth Amendments. *Id.*[1]  The court analyzed the purposes of the fair-cross-section requirement and found that the exclusion of this group did not undermine those purposes.  First, the "unique perspective" of "older Americans" was adequately represented by persons not excluded, particularly those aged sixty and over. *Id.* at 1011.

---

[1] The SDNY Jury Plan, of course, is more inclusive than the total exclusion of persons over age 70 that was permitted in *Silagy*.  In the SDNY Jury Plan, persons over age 70 are not excluded, they are simply permitted, if they so desire, to opt out of jury service.  If they do not invoke this opt-out provision, they may be called for jury duty.

Second, the exemption of this group does not "substantially jeopardize[] the public's perception of the criminal justice system." *Id.*  Finally, while excluding persons over age 70 implicates the concern that people should share in "the administration of justice" the court found that this fact does not establish a fair-cross-section violation because nothing about the exclusion of this group affected the defendant's right to an "impartial jury." *Id.*; *see also United States* v. *Guzman*, 337 F. Supp. 140, 146 (S.D.N.Y. 1972) ("Among any age group there will be vast variations in attitudes, viewpoints, and experiences.  The fact that two persons are the same age does not necessarily give them a community of interest."), *aff'd*, 468 F.2d 1245 (2d Cir. 1972); *Barber* v. *Ponte*, 772 F.2d 982, 998-1000 (1st Cir. 1985) (*en banc*) (discussing the difficulties in defining or discerning distinctiveness in age-based groups).

The Seventh Circuit's analysis is consistent with Supreme Court authority in the different context of the Fourteenth Amendment.  In analyzing a mandatory retirement requirement for state police officers, the Court stated:

> While treatment of the aged in this Nation has not been wholly free of discrimination, such persons, unlike, say, those who have been discriminated against on the basis of race or national origin, have not experienced a "history of purposeful unequal treatment" or have been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities. . . . Even old age does not define a "discrete and insular" group, *United States* v. *Carolene Products Co.*, 304 U.S. 144, 152-53 n.4 (1938), in need of "extraordinary protection from the majoritarian political process."  Instead, it marks a stage that each of us will reach if we live out our normal span.

*Massachusetts Bd. of Ret.* v. *Murgia*, 427 U.S. 307, 313-14 (1976).[2]

More generally, it is unanimously agreed among the Circuits that have decided the issue that various age-defined groups cannot constitute a distinct group for purposes of the first part of the *Duren* fair-cross-section analysis. *See Johnson* v. *McCaughtry*, 92 F.3d 585, 593 (7th Cir. 1996) (collecting cases, including *Barber* v. *Ponte*, 772 F.2d 982, 998 (1st Cir. 1985) (18-34 year olds not a distinctive group); *United States* v. *DiTomasso*, 405 F.2d 385, 391 (4th Cir. 1968) (21-29 year olds not a distinctive group); *United States* v. *Kuhn*, 441 F.2d 179, 181 (5th Cir. 1971) (21-23 year olds not a distinctive group); *Ford* v. *Seabold*, 841 F.2d 677, 681-82 (6th Cir. 1988) (18-29 year olds not a distinctive group); *United States* v. *Olson*, 473 F.2d 686, 688 (8th Cir. 1973) (18-20 year olds not a distinctive group); *United States* v. *Potter*, 552 F.2d 901, 905 (9th Cir. 1977) (18-34 year olds not a distinctive group); *United States* v. *Test*, 550 F.2d 577, 590-93 (10th Cir. 1976) (21-39 year olds not a distinctive group); *Wysinger* v. *Davis*, 886 F.2d 295, 296 (11th Cir. 1989) (18-25 year olds not a distinctive group);

---

[2] Moreover, it is noteworthy that in the Supreme Court's leading case in this area — *Duren* — the Supreme Court described, but did not in any way criticize or express concern about, an age-based exclusion in the jury selection process. *Duren* involved a successful fair-cross-section challenge to Missouri's jury selection practices permitting women to opt out of jury service, and treating women who failed to appear as summoned as having opted out of service. *Duren*, 439 U.S. at 667. The Court noted: "In addition to women, the following are exempted from jury service upon request: persons over age 65, medical doctors, clergy, teachers [and others]." *Duren*, 439 U.S. at 361 n.10. If defendant Walsh's view — that persons over age 70 is a cognizable "distinct" group satisfying the first prong of *Duren*'s prima facie case — were correct, it might be expected that the Supreme Court would have taken some special notice of Missouri's exemption for persons over age 65, even though this was not the argument advanced by the defendant.

*United States* v. *Diggs*, 522 F.2d 1310, 1317 (D.C. Cir. 1975) (21-30 year olds not a distinctive group)).

The Second Circuit has not squarely held that age-based groups are not "distinctive" for purposes of the *Duren* standard, but it has twice affirmed District Court decisions reaching that conclusion (on other grounds) without criticizing or questioning the conclusion below.  In *Brown* v. *Harris*, 666 F.2d 782 (2d Cir. 1981), the Court affirmed then-District-Judge Leval's rejection of an age-based fair-cross-section claim, noting:

> This circuit has not ruled after *Duren* on whether young people can be regarded as a distinctive group for this purpose, although we have in the past certainly indicated sympathy with the majority view [that it is not].  We see no need to decide this general proposition because we agree with Judge Leval that there was no evidence in the record "concerning the nature of the group" and "no basis for a finding that it shared any special cohesion or similarity of interests."

*Id.* at 783-83 (citations omitted).³  Similarly, in *United States* v.*Guzman*, 468 F.2d 1245 (2d Cir. 1972), the Court declined to reach the issue decided by the District Court — that age was not a "cognizable" group in this context — but indicated agreement with that view.  The Court stated:

---

³ At the time *Brown* referred to the "majority view," there was a minority of one Circuit Court that had ruled contrary to the "majority" that age-based groups are not cognizable — *United States* v. *Butera*, 420 F.2d 564 (1st Cir. 1970).  But *Butera* was overruled by *Barber* v. *Ponte*, 772 F.2d 982, 998 (1st Cir. 1985) (*en banc*).  "In so doing, the First Circuit relinquished its distinction as the only circuit to have recognized young adults as a distinctive group for fair-cross-section purposes." *Johnson* v. *McCaughtry*, 92 F.3d at 591 n.8.

> Although we do not pass on the question of whether 18 to 20 year olds or 24 to 30 year olds or "youth" in general constitute "cognizable groups" for the purposes of challenges to jury selection plans, we do note that age is the only factor which defines such categories and despite talk of "generation gaps," there are great disparities in opinions, attitudes, experiences, and life-styles among young people.

*Id.* at 1247 n.5.

Thus, it is clear that the group identified by Walsh cannot constitute a cognizable group such that it could satisfy the first prong of *Duren*'s prima facie case, and accordingly Walsh's application should be denied. *See Guzman*, 468 F.2d at 1249 (because the defendants allegations, even if true, were insufficient to make out a prima facie fair-cross-section claim, a hearing was not required, and "discovery of the grand jury questionnaires was not 'necessary' to the preparation of a valid motion.'" (quoting 28 U.S.C. § 1867(f))).[4]

### 2. Walsh's Requests For Documents Are Overbroad

Even if Walsh were seeking information that related to a cognizable class, her requests for various documents are overbroad. In the defendant's proposed order, she requests access to various reports, memoranda, and jury questionnaires, summonses, and update cards that are well beyond what would be necessary to analyze the relevant

---

[4] Walsh likely also will be unable to satisfy the other two prongs of the *Duren* test, but even if she did make out a prima facie case, the claim could still be rebutted by the the finding by the Judges of this Court that the exemption was warranted by the "undue hardship or extreme inconvenience" to this group of requiring them to appear for jury service. SDNY Jury Plan Art. VI(1); *see Duren*, 439 U.S. at 671 (explaining analysis if prima facie case is established).

statistics. The relevant statistics are limited — a comparison of total numbers of prospective jurors with the number that are over 70 at certain stages of the selection process. Thus, for example (aside from the fundamentally flawed premise of the defendant's request discussed above), it might be relevant to determine the total number of prospective jurors in the master jury wheel, and the number that are over 70 (and, if applicable, the number as to whom the age is unknown). Similarly, it might be relevant (again, ignoring the fundamentally flawed premise) to determine the total number of returned questionnaires, and the number of those that constitute returned questionnaires from persons over age 70. The defendant would not need to access the questionnaires themselves. Thus, although the Government submits that the defendant's request for information should be denied, even if the Court were inclined to grant it in some respect, it should be substantially narrowed to reduce the burden on the Court's Jury Administrator.[5]

---

[5] In the event the Court grants the defendant access to information and the defendant thereafter files a motion attempting to make out a prima facie fair-cross-section claim, the Government likely will oppose such a motion for failing to make out not only the distinct group element of a the prima facie case, but also the other elements as well. *See United States* v. *Barlow*, 732 F. Supp. 2d 1, 28-42 (E.D.N.Y. 2010) (extensive discussion of various methods of analyzing second and third elements of prima facie case).

## CONCLUSION

For the foregoing reasons, the request by defendant Walsh for access to information relating to the jury selection process should be denied.

Dated:       New York, New York
             May 16, 2012

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney


                       By:          /S/
                                    JUSTIN S. WEDDLE
                                    E. DANYA PERRY
                                    DANIEL TEHRANI
                                    Assistant United States Attorneys
                                    (212) 637-2200