UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA                          :

      - against -                              :          11 Cr. 1091 (VM)

PETER J. AJEMIAN,                                 :
PETER J. LESNIEWSKI,
MARIA RUSIN,                                      :
MARIE BARAN,
JOSEPH RUTIGLIANO,                                :
GREGORY NOONE,
REGINA WALSH,                                     :
SHARON FALLOON,
GARY SATIN                                        :
STEVEN GAGLIANO, and
RICHARD EHRLINGER,                                :

            Defendants.            :
------------------------------------------------------------x

## DEFENDANT WALSH'S REPLY MEMORANDUM IN SUPPORT OF THE REQUEST FOR JURY POOL INFORMATION

PAUL B. BERGMAN, PC
950 Third Avenue
32nd Floor
New York, NY 10022
(212) 355-5571
paulbbergman@paulbbergmanpc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA                    :

      - against -                            :         11 Cr. 1091 (VM)

PETER J. AJEMIAN, et al.                        :

                 Defendants.       :
------------------------------------------------------------x

## DEFENDANT WALSH'S REPLY MEMORANDUM IN SUPPORT OF THE REQUEST FOR JURY POOL INFORMATION

## ARGUMENT

**SUPREME COURT PRECEDENT AND THE AMENDED JURY PLAN ITSELF, WHICH EXPRESSLY CARVES OUT PEOPLE 70 AND OVER FOR EXEMPTION, CLEARLY ESTABLISHES THAT THE 70+ AGE GROUP IS A DISTINCTIVE CLASS WHICH IS PART OF A FAIR CROSS-SECTION OF THE COMMUNITY**

(1)

In *Duren v. Missouri*, 439 U.S. 357, 364-66 (1979), the Supreme Court held that a jury selection plan in Missouri which allowed women to voluntarily opt out of jury service violated the Sixth Amendment guarantee of an impartial jury. *Id.* at 359. Missouri's jury selection plan generated venires in which women, on average, constituted approximately 15% of the venire, a "gross discrepancy" from the 54% of women in the community. *Id.* at 365-66.

In this case, the government has argued that it would not make any difference if the composition of the jury venire had *no* persons 70 years and older. Gov't. Memo at 6. The discrepancy could be "total" and the government would still argue that the jury is impartial under the Sixth Amendment without such members. In advancing that untenable position, the government does not argue that the 70+ age group is not "sufficiently numerous," *Taylor v.*

*Louisiana*, 419 U.S. 522, 531 (1975), within the community to raise Sixth Amendment concerns.[1] Nor does it argue that a distinction between exemptions and outright exclusions saves the 70+ opt-out. Finally, the government does not argue that the 70+ opt-out survives as either a rational administrative measure or as a measure that advances a compelling state interest. Rather, the government argues that the group is not "distinctive" and, therefore, that the defense request for documents and information should be halted in its tracks.

(2)

A defendant who challenges the exclusion of an identifiable group from the jury pool need not show that she has been prejudiced nor that she is a member of the excluded class. *See Taylor*, 519 U.S. at 526; *Peters v. Kiff*, 407 U.S. 493, 504 (1972); *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 229-30 (1946). The Sixth Amendment and statutory guarantee of a fair cross-section of the community "presupposes" that the jury will have been drawn "from a pool broadly representative of the community…" *Taylor*, 419 U.S. at 530.[2]

---

[1] A rough calculation based figures from the 2010 census for the five counties that comprise the Manhattan division for the S.D.N.Y. shows that 11.4% of people over 18 years of age are in the 70+ age group. *Census 2010 Summary File 1*, Cornell Program on Applied Demographics On Behalf of the New York State Data Center, *available at* http://esd.ny.gov/NYSDataCenter/Data/Census2010/Profiles/NY_050_2010_PROFILE.pdf

[2] In *Peters v. Kiff*, Justice Marshall summarized the historical trajectory of the fair cross-section requirement in this succinct fashion:

> The principle of the representative jury was first articulated by this Court as a requirement of equal protection, in cases vindicating the right of a Negro defendant to challenge the systematic exclusion of Negroes from his grand and petit juries. E.g., *Smith v. Texas*, 311 U.S. 128, 130 (1940). Subsequently, in the exercise of its supervisory power over federal courts, this Court extended the principle, to permit any defendant to challenge the arbitrary exclusion from jury service of his own or any other class. E.g., *Glasser v. United States*, 315 U.S. 60, 83-87; *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220 (1946); *Ballard v. United States*, 329 U.S. 187 (1946). Finally it emerged as an aspect of the constitutional right to jury trial in *Williams v. Florida*, 399 U.S. 78, 100 (1970).

As the Court observed in *Berghius v. Smith*, 130 S. Ct. 1382, 1388 (2010), the first prong of *Duren*, requiring that the "group alleged to be excluded is a 'distinctive group' in the community," is "in most cases, easily made." In *Peters v. Kiff*, Justice Marshall, speaking for the Court stated:

> "[T]he exclusion from jury service of a substantial and identifiable class of citizens has a potential impact that is too subtle and too pervasive to admit of confinement to particular issues or particular cases . . . When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude . . . that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented.

*Peters*, 407 U.S. at 503-04 (footnote omitted).

"The broad representative character of the jury should be maintained," the Court stated in *Taylor*, "partly as an assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility." *Taylor*, 419 U.S. at 530-32. The Jury Selection and Service Act of 1968 ("Jury Selection Act") adopts these Constitutional objectives, plus the requirement of random selection.[3] 28 U.S.C. §§ 1861-1878. As such, the defendant's interest in securing a fair cross-section of the community, and the consequent impartiality of the jury, is not the only consideration in assessing whether a jury pool provides the opportunity for the selection of a fair and impartial jury.

---

*Peters*, 407 U.S. at 500 n. 9. The government has argued that Fourteenth Amendment case law should inform the Court's analysis of the Sixth Amendment fair cross-section claim. Gov't. Memo at 7. But a defendant need not show distinct group under the Sixth Amendment purposes must also be a protected class under the equal protection clause. *See generally*, "Hardship Excuses and Occupational Exemptions: The Impairment of the 'Fair Cross-Section of the Community," 69 Cal. L. Rev. 155, 183 (1995)("a 'cognizable class' for fair cross-section purposes and a 'suspect class' for equal protection purposes are conceptually different.").

[3]  28 U.S.C. § 1861 provides, in addition to mandating the random selection from a fair cross-section of the community, that: "It is further the policy of the United States that all citizens have the opportunity to be considered for service on grand and petit juries in the district court of the United States **and shall have an obligation to serve as jurors when summoned for that purpose.** (emphasis added)

3

The Court itself has a vital interest in securing a qualified jury composed of impartial jurors from a fair cross-section of the community. To further that end, as the Court stated in *Thiel*, "[j]ury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system." *Thiel*, 328 U.S. at 220.

The *Thiel* case is particularly pertinent to the issue here. In *Thiel*, the clerk of the court excluded all daily wage earners on the supposition that when called to court to serve as jurors they invariably sought to be excused because of the loss of their higher daily wage. The clerk testified, "the Judge has never made one of those men serve, and so in order to avoid putting names of people I who I know won't become jurors in the court, won't qualify as jurors in this court, I leave them out." But the Court rejected the administrative expediency offered by that practice:

> It is clear that a federal judge would be justified in excusing a daily wage earner for whom jury service would entail an undue financial hardship. [footnote omitted] But that fact cannot support the complete exclusion of all daily wage earners regardless of whether there is actual hardship involved. Here there was no effort, no intention, to determine in advance which individual members of the daily wage earning class would suffer an undue hardship by serving on a jury at the rate of $4 a day.

*Thiel*, 328 U.S. at 224.

While there is a distinction in the nature of the "hardship" that might be supposed to exist in the 70+ age group, illness or infirmity for example, and the economic hardship which the daily wage earners in *Thiel* were presumed to face if summoned for jury service, there is no distinction for purposes of constitutional analysis. That some persons in the 70+ age group would be excused from jury service for hardship or inconvenience is not a justification for excluding the group *en masse*.[4] Bluntly stated, the "finding" in the Jury Plan that anyone and everyone in the 70+ age group

---

[4] The Jury Plan provides for other categorical exemptions, but undue hardship or extreme inconvenience is built in to the description of the category, such as persons who are "essential to the daily care of aged or infirm persons." Other categories reflect the individual's recent service as jurors, their service as uncompensated volunteer "safety personnel," or persons who can demonstrate on an individual basis, for reasons apart from the listed categories, that "jury service

might be severely inconvenienced, or suffer an "undue hardship" by fulfilling their civic duty, is flatly contrary to *Thiel's* injunction that "[j]ury competence is an individual rather than a group or class matter." *Id.* at 220.

On analysis, it can be seen that the government's argument is logically at war with itself: the group which the government asserts is not distinct is nonetheless sufficiently distinct to be singled out by the Jury Plan. The very question as to whether it is, for Sixth Amendment purposes, such a "discernible group," *Peters v. Kiff*, 407 U.S. at 504 n. 12, is therefore most forcefully answered by the Jury Plan itself, which sets out that class of individuals as a separate class entitled to an exemption.[5]

That incongruity starkly undermines the government's reliance on decisions involving disparate youthful age brackets, e.g., 18 to 34 (*Barber v. Pointe*, 772 F.2d 982, 998 (1st Cir. 1985)), 21 to 29 (*United States v. Tomasso*, 405 F.2d 385, 391 (4th Cir. 1968)), 18 to 29 (*Ford v. Seabold*, 841 F.2d 677, 681-82 (6th Cir. 1988)), 18 to 20 and 24 to 30 (*United States v. Guzman*, 337 F. Supp. 140, 146 (S.D.N.Y. 1972), *aff'd*, 468 F. 2d 1245 (2d Cir. 1972)) etc.  In those cases the courts have determined, as the government puts it, "that various age-defined groups" do not "constitute a distinct group for purposes of the first part of the *Duren* fair cross-section analysis." Gov't. Memo at 8.  To begin, those cases did not involve an express and systematic jury plan exclusion of an age group in the selection process.  Instead, these cases involve age categories extrapolated from a statistical analysis of the jury pools, but generally resulting from facially neutral aspects of the jury selection process.

---

would constitute undue hardship or extreme inconvenience." None of these others categories, however, sweep in a group of individuals as large in number as does the first exemption for age alone, nor are they as untethered to a substantive description of what might be an undue hardship or extreme inconvenience.  The Jury Selection Act, of course, does not authorize exemptions based upon age alone.

     [5]    *See also, United States v. Goodlow*, 597 F.2d 159, 162 n.1 (9th Cir. 1979) ("We note at least a surface incongruity in the Government's position that the groups in question are sufficiently distinct to qualify for an excuse under the Act but that they are not cognizable groups for purposes of the constitutional requirement that a jury be drawn from a fair cross section of the community.")

The cases are thus inapposite because the potential underrepresentation in this grand jury is the result of the Amended Jury Plan's deliberate exemption, similar to the specifically targeted exclusions and exemptions at issue in *Thiel*, *Taylor* and *Duren*, which whittles down the number of qualified jurors in a specifically defined group.[6]

Reliance on the youthful age cohort cases is misplaced for yet another reason. Superficially, it may be appealing to conflate the distinctness of young persons with the distinctness of all other possible age groups and summarily state that "age-based" distinctions are proper under *Duren*.[7] Yet the distinctness inquiry is asymmetrical. Indeed, the fact that older jurors share many of the experiences and attitudes of their younger counterparts drives many of these decisions: the courts reason that the older cohort can substitute for the younger. The same cannot be said for the exclusion of older persons. After all, every older person has experienced what it was like to be young; no young person truly knows what is like to reach the plateau of 70 years and be able to fulfill his or her duty of impartiality from that vantage point. By thus excluding jurors in the 70+

---

[6] The *en banc* opinion in *Barber v. Ponte*, 772 F.2d 982, 999-1000 (1st Cir. 1985) which the government relies upon because it rejected the 18-34 age bracket disparity, pointedly noted that distinction: "That is not to say, however, that if a classification were *specifically* and *systematically* excluded from jury duty the same standard would be used as here, where a defendant simply relies on a statistically [sic] disparity in the venires to challenge its constitutionality." (Italics in original).

[7] The government makes the argument that *Duren* somehow supports its argument because the Court took no "special notice" of the Missouri jury plan's exemption for men over age 65. Gov't. Memo at 8, n.2. *See Duren*, 439 U. S. at 361. The Court, the government half-heartedly asserts, might have been "expected" to "have taken some special notice of that provision," but did not. The argument is quite the contrary: the Supreme Court does not ordinarily render judgment on issues *sua sponte*. *See, e.g., Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 109 (citing *Nat'l Collegiate Athletic Assn. v. Smith*, 525 U.S. 459, 470 (1999)). One can only speculate as to why then-advocate and now Justice Ginsberg did not attack the exemption for men over sixty-five. But one need only recognize that the validity of this exemption was not before the Missouri Supreme Court to know that the *Duren* Court's silence on the issue was nothing more than silence. *See State v. Duren*, 556 S.W.2d 11, 13 (Mo. 1977) ("Two assignments of error are presented: (1) failure to quash the jury panel because Missouri's jury selection process systematically excludes women, and (2) erroneous joinder and trial of the murder and assault charges.").

age group, the Jury Plan is excluding, by definition, the segment of the community that has the accumulated the longest storehouse of wisdom and common sense, a characteristic that the Court invokes, for example, when it instructs jurors in their consideration of expert testimony. *See* 1 Sand, et al., Modern Federal Practice Jury Instructions – Criminal (2011), Instruction 7-21 ("Expert Witness – Generally").

In short, why would the Sixth Amendment countenance the exclusion from service of the community's most experienced individuals? It almost defies understanding that it would, save for the paternalism that animated the jury opt-out for women in *Duren*. Nothing, of course, could be more deliberate, despite its well-meaning objective of sparing older people from performing their civic duty, than finding that prospective jurors who are 70+ years are presumed to be "hardship" cases, deserving of an exemption. To paraphrase the Supreme Court's opinion in *Ballard v. United States*, 329 U.S. 187, 193-94 (1946), which dealt with the argument that women were not a cognizable group because they do not act as a class or have common attitudes, experiences and ideas, the "truth is that a community made up exclusively" of persons under 70 years of age is different than a community of people which includes people of all ages. The two groups are not fungible and a jury which is made up of jurors all of whom are under 70 years of age is different than one which includes those over 70. Stated differently, a large class of persons expressly defined in a jury plan by the specific age component of its members involves an "immutable characteristic," *Lockhart v. McCree*, 476 U.S. 162, 175 (1986), no less than does a group which is defined by the race, gender or ethnic background of its members and, to use the language of the Court, its "exclusion from jury service… undeniably give[s] rise to an appearance of unfairness." *Id.* (Internal quotation omitted). To return to and further paraphrase *Ballard*, who would claim that a jury was truly representative of the community if all persons 70 years of age and older were intentionally and systematically excluded from a jury pool?

To further paraphrase *Ballard*, who would claim that a jury was truly representative of the community if all persons 70 years of age and older were intentionally and systematically excluded from a jury pool? The government, apparently, whose "distinctive group" argument necessarily claims that even if the Jury Plan affirmatively excluded persons in the 70+ group, there would be no constitutional or statutory violation. The government's position, so viewed, reveals its lack of merit. We have found no case authority, nor has the government cited to any, which supports the proposition that jurors who cannot be excluded from jury service can nevertheless be winnowed down to nothing through an exemption. If a group cannot be excluded, then it cannot be exempted, unless that exemption results in numerically insignificant under-representation. *Duren* makes that clear when holding that the Missouri exemption left women "systematically underrepresented within the meaning of *Taylor*." *Duren*, 439 U.S. at 367.

This, then brings us to *Silagy v. Peters*, 905 F.2d 986 (7th Cir. 1990), the case upon which the government principally relies. *Silagy* was a habeas corpus case in which the state jury administrator excluded from jury service persons who indicated that they were over 70 years of age.[8] *Silagy* upheld this practice, relying upon a misinterpretation of *Lockhart, supra*. *Silagy*, 905 F.2d at 1010. In so doing, *Silagy* made a mistake the Supreme Court has identified in Sixth Amendment cases: it embarks upon "a line of reasoning that 'abstracts from the right to its purposes, and then eliminates the right.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 145 (2006) (citation and internal quotation omitted). *Lockhart* involved the issue of whether prospective jurors in a death penalty case could be removed for cause if their opposition to the death penalty was "so strong that it would prevent or substantially impair the performance of their duties as jurors at the sentencing phase of the trial." *Id.* at 165. Given the issue facing the Court, it is hard to imagine that anything the Supreme Court

---

[8] Plainly, this Court is not bound by an out of circuit decision. *See, e.g., Consol. Rail Corp., Inc. v. Ted Sobiech Farms*, 717 F. Supp. 1062, 1063 (S.D.N.Y. 1989).

stated in *Lockhart* was decisive on the issue facing the court in *Silagy*. If anything, the *Lockhart* Court's holding that a distinct group is best defined by immutable characteristics (e.g. age) supports the opposite holding from that reached in *Silagy*. Nonetheless, the *Silagy* court, pivoting off *Lockhart's* reference to *Taylor's* explanation of the purposes underlying the fair cross section requirement, applied those purposes as if they provided an exclusive test for what constitutes a distinct group. *Silagy*, 905 F.2d at 1010-11. In so doing, *Silagy* made no attempt to engage with other Supreme Court precedents, such as *Thiel*, and glossed over the obvious point that over 70s are not defined solely by shared ideas, unlike the class of death penalty opponents at issue in *Lockhart*. *Id.* It appears that *Silagy* is the only decision to have made this fundamentally overbroad misreading of *Lockhart*. This Court should instead side with those decisions that recognize that groups defined with reference to age, and old age in particular, can constitute a distinct group. *See Williams v. State*, 342 So.2d 1325, 1327 (Ala. 1976); *State v. Pruitt*, 289 N.W.2d 343, 345-46 (Wis. Ct. App. 1980) (citing *State v. Holmstrom*, 168 N.W.2d 574, 578 (Wis. 1969).

(3)

The government has not argued that the principle of full disclosure and of the "unqualified right to inspection," *Test v. United States*, 420 U.S. 28, 30 (1975), is not applicable to the defense requests for documents and information which will illuminate the selection process as it relates to the 70+ age group.[9] Indeed, in each of the "youthful age" cases upon which the government has

---

[9] The over-70 exemption raises possible questions under the "randomness" requirement of the Jury Selection Act. Although the Jury Selection Act allows the creation of local exemption criteria, those exemption criteria remain subordinate to both the fair cross section and randomness requirements. 28 U.S.C. § 1863(b)(5)(A). Exemption criteria necessarily introduce a substantial element of non-randomness into the jury selection process. *See United States v. Clay*, 159 F. Supp.2d 1357, 1367 (M.D. Ala. 2001) (citing *United States v. Kennedy*, 548 F.2d 608, 612 (5th Cir.1977)). Here, by allowing such a large age cohort to self-select, the Amended Jury Plan might work a contravention of the randomness requirement: this issue cannot be addressed until counsel has been provided with information establishing how many over-70s claim the exemption. The defense, therefore, reserves it right to seek relief on that ground as well.

relied, the court first ascertained the statistical landscape before dealing with the issue of distinctiveness. Plainly, as the government seems to recognize, the Court and the parties should proceed in a manner that is at once efficient and sufficiently comprehensive in its approach. The government has not provided a statement from the Jury Administrator that explains what specific records are available and what computer scripts can be run, either by the Clerk's Office or the outside vendor, which would illuminate the inquiry. Obviously, if there is a reliable means of ascertaining how many 70+ persons avail themselves of the exemption, short of pulling all of the returned questionnaires, that makes sense. But from the defense perspective, the processes, records and information retrieval abilities of the Jury Administrator are somewhat opaque at this stage. For these reasons, therefore, we suggest that it would be most helpful if, with the Court's guidance and with the Court's participation, both sides meet with the Jury Administrator or other knowledgeable representative from the Clerk's Office, and reach a mutually acceptable means of proceeding with the discovery of relevant information and documents.

## CONCLUSION

### THE APPLICATION FOR RELIEF SHOULD BE GRANTED

Dated:  New York, New York
        May 21, 2012

                                    Yours, etc.

                                    PAUL B. BERGMAN, P.C.

                            By:
                                    /S/_____
                                    PAUL B. BERGMAN, ESQ.
                                    Attorney for Regina Walsh
                                    950 Third Avenue
                                    New York, NY 10022
                                    Tel. No.: (212) 355-7711
                                    Fax No.: (212) 755-5509
                                    Email: paul.bergman@paulbbergmanpc.com

*Of counsel:*
  Paul B. Bergman, Esq.
  Michael J. Van Riper, Esq.