

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
UNITED STATES OF AMERICA            :
                                    :
        -v-                         :
                                    :       SEALED
PETER J. AJEMIAN,                   :       INDICTMENT
PETER J. LESNIEWSKI,                :
MARIA RUSIN,                        :       S1 11 Cr. 1091 (VM)
MARIE BARAN,                        :
JOSEPH RUTIGLIANO,                  :
GREGORY NOONE,                      :
REGINA WALSH,                       :
SHARON FALLOON,                     :
GARY SATIN,                         :
STEVEN GAGLIANO,                    :
RICHARD EHRLINGER,                  :
BRIAN DELGIORNO,                    :
PHILIP PULSONETTI,                  :
GREGORY BIANCHINI,                  :
FRANKLIN PLAIA,                     :
MICHAEL STAVOLA,                    :
MICHAEL DASARO,                     :
KARL BRITTEL,                       :
KEVIN NUGENT,                       :
GARY SUPPER, and                    :
THOMAS DELALLA,                     :
                                    :
            Defendants.             :
                                    :
------------------------------------x



## COUNT ONE

### (Conspiracy to Commit Mail Fraud, Wire Fraud and Health Care Fraud)

        The Grand Jury charges:

#### The Defendants

        1.   PETER J. AJEMIAN, the defendant, is a

Board-certified orthopedist who, from at least in or about 1998,

up to and including in or about 2011, assisted retirees from the

Long Island Railroad ("LIRR") in applying for occupational

disability benefits from the United States Rail Road Retirement Board ("RRB").  From in or about January 2008 until his termination on or about September 29, 2008, AJEMIAN was employed at a medical practice based in Rockville Centre, New York (the "Ajemian Practice").  AJEMIAN previously had worked at other Long Island-based practices.  From 1998 through 2008, AJEMIAN submitted medical reports to the RRB, recommending hundreds of LIRR employees for disability benefits.

2.    MARIA RUSIN, the defendant, was the office manager for PETER J. AJEMIAN, the defendant, in a succession of practices, including at the Ajemian Practice, starting at least in or about 2000.  RUSIN retired and began receiving disability benefits in or about late 2009, based upon injuries she claimed to have sustained while working for AJEMIAN and based, in part, upon medical documentation submitted by AJEMIAN.

3.    PETER J. LESNIEWSKI, the defendant, is a Board-certified orthopedist.  From at least in or about 1998 until in or about 2008, LESNIEWSKI submitted medical reports to the RRB, recommending at least approximately 222 LIRR workers for disability benefits.  At times relevant to this indictment, LESNIEWSKI worked with another orthopedist who is recently deceased ("Disability Doctor-3").

4.    MARIE BARAN, the defendant, worked as an RRB district office manager, based in Westbury, New York, until her retirement in or about December 2006.  No later than upon her

retirement, BARAN began working as a "facilitator" who purported
to advise and assist LIRR workers in planning for post-retirement
disability and in preparing disability applications for submission
to the RRB.

5.    JOSEPH RUTIGLIANO, the defendant, was a former LIRR
conductor and union president who applied for and received RRB
occupational disability benefits after his retirement.  After his
retirement, RUTIGLIANO also worked as a "facilitator," like MARIE
BARAN, the defendant.

6.    GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY
SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP
PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA,
MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and
THOMAS DELALLA, the defendants, are all former LIRR employees who
have retired on LIRR pensions.  After their retirement, they each
applied for and received RRB disability benefits.

              Overview Of The Premeditated Disability Fraud

7.    The defendants and their co-conspirators committed
a fraud in which LIRR workers who were ready to retire falsely
claimed to be disabled, including occupationally disabled, in
order to receive extra benefits to which they were not entitled.
Specifically, LIRR employees, who were eligible to retire as early
as age 50 with an LIRR pension, sought to supplement their LIRR
pension with a separate RRB disability annuity which, when
combined with their LIRR pension, resulted in a total income level

3

that often approximated their pre-retirement, working income. This fraud was perpetrated with the knowing and intentional involvement primarily of three doctors – PETER J. AJEMIAN and PETER J. LESNIEWSKI, the defendants, and Disability Doctor-3 – who falsely declared retiring LIRR workers to be disabled when in truth and in fact the workers were not disabled.  Typically, these disability doctors claimed that their LIRR patients suffered from various musculoskeletal impairments, which can involve claims of soft tissue injury that are more difficult to confirm by objective criteria than are other impairments, and are often diagnosed clinically, based upon pain as subjectively reported by the patient.  This fraud was also aided by "facilitators" who served as liaisons between the retiring workers and participating doctors.  As a result, the doctors received millions of dollars from patients and insurance companies, and the foreseeable loss to the RRB disability funds, if the fraudulent claims were paid out in full, would exceed approximately $1 billion.

        8.    Participants in the fraud typically took some or all of the following steps, among others:

        a.    In anticipation of filing an RRB disability application, LIRR employees saw one of three disability doctors – PETER J. AJEMIAN and PETER J. LESNIEWKSI, the defendants, and Disability Doctor-3, who collectively accounted for approximately 86% of the LIRR disability applications filed during the times relevant to this Indictment.

b.    The disability doctors prescribed for the LIRR employees a series of unnecessary medical tests, including at times rounds of x-rays, scans and nerve conduction tests, as well as purported treatments, including physical therapy, in order to pad the patients' medical files.

c.    The LIRR employees generally paid the doctors between approximately $800 and $1200, often in cash, to prepare a medical assessment and illness narrative, or both, for submission to the RRB.

d.    The disability doctors then prepared fabricated or exaggerated medical assessments and illness narratives, or both, in which they recommended a set of restrictions that, if bona fide, would have prevented the LIRR employees from continuing in their occupations.

e.    Sometime after retiring in anticipation of receiving an LIRR pension, the LIRR employees prepared disability applications that falsely claimed an inability to work, even though the employees were performing their jobs up until the time they retired.

f.    The LIRR employees paid one of a small group of so-called "facilitators," including MARIE BARAN and JOSEPH RUTIGLIANO, the defendants, to assist with the disability process by, among other things, working with the doctors' offices, coordinating the disability benefit applications of LIRR employees, and either filling out the applications or coaching the

5

LIRR employees to fill out their disability applications in such a way as to maximize the likelihood that such employees would receive disability benefits.

g.   The doctors, facilitators, and other participants did all of this knowing that the LIRR employees were not, in fact, disabled – that is, they were not, in fact, unable to perform their jobs because of medical impairments; rather, the employees were simply planning to retire and wished to supplement their LIRR pension benefits with RRB occupational disability payments.  In fact, the doctors, facilitators, and other participants knew full well that the LIRR employees, who were generally working full-time (and, indeed, who were often working overtime), had pre-planned the date on which they would declare themselves disabled, and that this scheduled date was contemporaneous with their projected retirement date.  PETER J. AJEMIAN, the defendant – with the assistance of MARIA RUSIN, the defendant – and PETER J. LESNIEWSKI, the defendant, and others ordered unnecessary medical tests and wrote exaggerated medical narratives to conceal the fact that the LIRR employees were paying them to prepare disability applications when the employees were not in fact disabled.

9.   Before applying for RRB occupational disability benefits, certain LIRR employees applied for various forms of private disability insurance.  Benefits under those private insurance polices were triggered if the employees were later determined to be disabled.  After obtaining RRB disability

6

benefits, these individuals then made claims on these private insurance polices.

10.   The doctors participating in the fraud profited by charging fees for preparing disability narratives and medical assessment forms, by obtaining new patient referrals from other LIRR employees and facilitators, and by billing private health insurers for unnecessary tests and visits.  For example, from in or about September 2004 to in or about September 2008, the total such revenue for each of PETER J. AJEMIAN and PETER J. LESNIEWSKI, the defendants, was at least hundreds of thousands of dollars. This revenue provided financial motivation for the doctors to participate in the fraud.

The Defendants' Exploitation Of The Overlap Between The LIRR Pension And The Railroad Retirement Board Disability Programs

11.   The RRB is an independent agency within the executive branch of the Federal Government that was created in the 1930s.  The RRB administers comprehensive retirement, survivor, and benefit programs, including disability benefits, for the nation's railroad workers and their families, under the Railroad Retirement and Railroad Unemployment Insurance Acts.  LIRR employees participate in the RRB disability program and in the RRB pension program.  The RRB disability and pension programs are primarily funded by federal employment taxes paid by railroad employers and railroad employees nationwide and by certain federal income taxes paid by recipients of RRB pensions.

12.   Retired LIRR workers can receive two pensions, but the minimum eligibility age is different for the two programs. First, LIRR workers are eligible for a pension paid by the LIRR. LIRR workers hired before 1988 may draw the LIRR pension at the age of 50, provided they have been employed for at least 20 years. Second, LIRR workers are eligible for a pension paid by the RRB, but most workers only become eligible for that full pension at the age of 65.   Thus, a 65-year old LIRR retiree receives two pension payments – one from LIRR and one from RRB.   But qualifying 50-year old retirees receive only an LIRR pension, and generally must wait 15 years before receiving their full second, RRB pension.

13.   An LIRR employee may apply for – and receive if qualified – an RRB disability award after he or she has retired and stopped working, notwithstanding the fact that the employee collects an LIRR pension.   This enables an LIRR worker to receive both the LIRR pension as well as RRB payments prior to the time he or she would be eligible to receive an RRB pension.   For example, an LIRR worker who retired at age 50 would be eligible only for an LIRR pension, and would have to wait 15 years until her 65th birthday to begin collecting a supplemental RRB pension, thereby drawing a substantially lower income upon retirement.   However, if that worker was deemed occupationally disabled after she retired at the age of 50, then she could immediately begin collecting both her LIRR pension and RRB disability payments.   That retiree – who would receive both her LIRR pension, as well as RRB disability

8

payments – could then draw roughly the base salary earned during her career.

14.   The RRB provides two types of disability annuities. First, a total disability annuity is based upon guidelines similar to those for Social Security disability; in other words, it requires a showing of a permanent and total disability.  Second, the RRB provides for "occupational disability" annuities for railroad workers who have permanent physical or mental impairments that prevent them from performing their specific railroad jobs, regardless of whether they might be capable of performing other work.  See 20 C.F.R. § 220.10(a).  A railroad worker is eligible to apply for an occupational disability at age 60 if he or she has 10 years of employment, or at any age with at least 20 years of employment.

15.   At all times relevant to this Indictment, the RRB has required medical findings to support a claim of occupational disability, including "objective" tests and reports.  See 20 C.F.R. § 220.46.  Among other things, these medical findings must be complete and detailed enough to allow the RRB to make a determination about whether a claimant's disability is a legitimate impairment, including "(1) [t]he nature and limiting effects of the claimant's impairment(s) for any period in question; (2) the probable duration of the claimant's impairment(s); and (3) the claimant's residual functional capacity to do work-related physical and mental activities."  Id.  A

9

"functional capacity test" is defined as "one of a number of tests which provide objective measures of a claimant's maximal work ability and includes functional capacity evaluations which provide a systematic comprehensive assessment of a claimant's overall strength, mobility, endurance and capacity to perform physically demanding tasks, such as standing, walking, lifting, crouching, stooping or bending, climbing or kneeling." 20 C.F.R. § 220.11.

16.  Pursuant to federal regulations, the RRB must take into account an applicant's statement concerning the intensity of pain that he or she is suffering as well as the treating physician's descriptions of those symptoms.  While applicable regulations require that the RRB determine that subjective symptoms such as pain be consistent with objectively demonstrable medical evidence, the regulations provide:

> Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the Board will carefully consider any other information the claimant may submit about his or her symptoms.  The information that the claimant, the claimant's treating or examining physician or psychologist, or other persons provide about the claimant's pain or other symptoms (e.g., what may precipitate or aggravate the claimant's symptoms, what medications, treatments or other methods he or she uses to alleviate them, and how the symptoms may affect the claimant's pattern of daily living) is also an important indicator of the intensity and persistence of the claimant's symptoms.  Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which the claimant, his or her treating or examining physician or

10

> psychologist, or other persons report, which
> can reasonably be accepted as consistent with
> the objective medical evidence and other
> evidence, will be taken into account . . . .

See 20 C.F.R. § 220.114(c)(3).

17.  The regulations further provide that, if the treating physician gives an opinion that is inconsistent with other medical evidence, including opinions obtained by RRB medical consultants, the RRB must resolve those inconsistencies based on all the evidence in the case record.  In doing so, however, the RRB must "give some extra weight to the treating source's supported opinion(s) which interprets the medical findings about the nature and severity of the impairment(s)."  20 C.F.R. § 220.112(d).  Thus, the regulatory system is vulnerable to abuse by employees and treating physicians who falsify and exaggerate symptoms, as the RRB is required to give their statements extra weight.

18.  Typically, a treating physician completes and signs an RRB Medical Assessment filing, known as a G-250 form (hereinafter referred to as a "Medical Assessment").  The Medical Assessment sets forth the doctor's view of objective medical tests, medical findings, and required medical restrictions.

19.  As a critical part of the RRB disability process, every annuitant also must file an Application for Determination of Employee's Disability, known as a Form AA-1d (hereinafter referred to as a "Disability Application.")  On the form, annuitants must

describe in detail the limitations resulting from their impairment and state when they could no longer work because of their conditions.  The signature page of the Disability Application reminds an applicant that he or she must answer these questions truthfully, as follows:

> I know that if I make a false or fraudulent
> statement in order to receive benefits from
> the RRB or if I fail to disclose earnings or
> report employment of any kind to the RRB, I am
> committing a crime which is punishable under
> Federal law.

At times, annuitants receiving disability payments are directed to file a Continuing Disability Update Report, known as a form G-254A (hereinafter referred to as a "Disability Recertification"), in which they have to certify, under penalty of prosecution, certain facts about their physical condition and employment.

20.   At all times relevant to this Indictment, RRB claims examiners reviewing applications for disability generally:

a.   assumed that the doctor who provided a Medical Assessment and the applicant who submitted a Disability Application were telling the truth about the applicant's medical condition;

b.   relied on the applicant when the applicant stated, as required in an RRB Disability Application, that he or she was unable to continue working because of his or her medical condition;

c.   relied on the treating physician's statements about

the medical condition of the applicant, including the doctor's opinion of exertional and environmental restrictions necessitated by the patient's medical condition; and

       d.   relied on applicants' descriptions of their job requirements, set out in a Form G-251, to determine whether the applicants' medical conditions made them unable to fulfill their occupational duties.

       21.   Prior to September 2008, the RRB generally requested review by an outside medical consultant or medical examiner only when the patient's application was incomplete in some manner, not as a method for detecting fraud.  Because the RRB examiners were not medical experts, they could request that a contracted consultant review medical records if the examiner believed that he or she could not interpret the disability medical evidence without expert advice.

### The Pattern Of Disability Claims
### At The Long Island Railroad

       22.   In fiscal year 2007, LIRR workers applied for occupational disability benefits at a rate 12 times higher than workers from comparable commuter railroads, such as Metro North Railroad.

       23.   Between 2004 and 2008, approximately 61% of LIRR employees who stopped working and began receiving some type of benefits from the RRB were between the ages of 50 and 55 years old.  By contrast, at Metro North, only approximately 7% of the

employees who stopped working and started receiving RRB benefits were between the ages of 50 and 55.  Over 75% of LIRR workers receiving RRB occupational disability first retired while in their early fifties.  Given the way that the LIRR and RRB pensions work, as described above, absent a disability award, these retirees – who could retire as early as age 50 under a unique LIRR contract – would generally have had to rely only upon their LIRR pensions until the age of 65.

24.  For the period 2005 to 2009:

a.  over approximately 91% of LIRR employees listed musculoskeletal impairments (including arthritis/rheumatism) as their primary diagnosis, compared with approximately 45% of employees at Metro-North, a comparable tri-state commuter railroad; and

b.  only approximately 38% of the LIRR annuitants met the medical criteria for a total and permanent disability determination, in comparison to approximately 73% of all RRB annuitants.

25.  For the period August 2004 through August 2008, only three New York-area doctors — PETER J. AJEMIAN and PETER J. LESNIEWSKI, the defendants, and Disability Doctor-3 — were the treating physicians for more than 86% of the RRB disability applications filed by LIRR employees younger than 65.  In particular, for this time period, AJEMIAN was the treating physician for approximately 47%, LESNIEWSKI was the treating

14

physician for approximately 13%, and Disability Doctor-3 was the treating physician for approximately 25%. As set forth above, LESNIEWSKI and Disability Doctor-3 worked together at times relevant to this Indictment.

26.   For the period between in or about 1997 and in or about 2008, PETER J. AJEMIAN, the defendant, declared disabled over 94% of the LIRR employees he saw as patients who were eligible to retire with an LIRR pension.  Similarly, for the same time period, PETER J. LESNIEWSKI, the defendant, declared disabled over 98% of the LIRR employees he saw as patients who were eligible to retire with an LIRR pension.

<u>Statutory Allegations</u>

27.   From at least in or about 1998, up to and including in or about 2011, in the Southern District of New York and elsewhere, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, and others known and unknown, combined, conspired, confederated and agreed together and with each other to violate Title 18, United States Code, Sections 1341, 1343 and 1347.

28.   It was a part and an object of the conspiracy that PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN,

JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON,
GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO,
PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL
STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER,
and THOMAS DELALLA, the defendants, and others known and unknown,
having devised and intending to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false
and fraudulent pretenses, representations and promises, for the
purpose of executing such scheme and artifice and attempting so to
do, would and did place in a post office and authorized depository
for mail matter, a matter and thing to be sent and delivered by
the Postal Service, and would and did deposit and cause to be
deposited a matter and thing to be sent and delivered by a private
and commercial interstate carrier, and would and did take and
receive therefrom, a matter and thing, and would and did knowingly
cause to be delivered by mail and such carrier according to the
direction thereon, and at the place at which it is directed to be
delivered by the person to whom it is addressed, a matter and
thing, in violation of Title 18, United States Code, Section 1341.

29.   It was a further part and object of the conspiracy
that PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE
BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON
FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN
DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA,

MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY
SUPPER, and THOMAS DELALLA, the defendants, and others known and
unknown, willfully and knowingly, having devised and intending to
devise a scheme and artifice to defraud and for obtaining money
and property by means of false and fraudulent pretenses,
representations, and promises, would and did transmit and cause to
be transmitted by means of wire, radio, and televison
communication in interstate and foreign commerce, writings, signs,
signals, pictures, and sounds for the purpose of executing such
scheme and artifice, in violation of Title 18, United States Code,
Section 1343.

30.   It was a further part and object of the conspiracy
that PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE
BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON
FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN
DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA,
MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY
SUPPER, and THOMAS DELALLA, the defendants, and others known and
unknown, knowingly and willfully, would and did execute, and
attempt to execute, a scheme and artifice to defraud a health care
benefit program and to obtain, by means of false and fraudulent
pretenses, representations, and promises, any of the money and
property owned by, and under the custody and control of, a health
care benefit program, in connection with the delivery of and

17

payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

(Conspiracy to Defraud the United States RRB)

The Grand Jury further charges:

31. The allegations contained in Paragraphs 1 through 26 are repeated and realleged as if fully stated herein.

32. From at least in or about 1998, up to and including in or about 2011, in the Southern District of New York and elsewhere, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, and others known and unknown, combined, conspired, confederated and agreed together and with each other to defraud the United States and an agency thereof, to wit, the RRB.

### Overt Acts

33. In furtherance of the conspiracy and to effect the illegal object thereof, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD

EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, and their co-conspirators, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about November 6, 1998, Disability Doctor-3 signed a medical assessment relating to RICHARD EHRLINGER.

b.   On or about November 9, 1998, RICHARD EHRLINGER signed an application for RRB disability benefits.

c.   On or about July 1, 2005, PETER J. AJEMIAN signed a narrative regarding GARY SATIN.

d.   On or about July 25, 2005, GARY SATIN signed an application for RRB disability benefits.

e.   On or about September 5, 2006, PETER J. AJEMIAN signed a narrative regarding REGINA WALSH.

f.   On or about January 25, 2007, REGINA WALSH signed an application for RRB disability benefits.

g.   On or about June 1, 2007, PETER J. AJEMIAN signed a narrative regarding GREGORY NOONE.

h.   On or about August 8, 2007, GREGORY NOONE signed an application for RRB disability benefits.

i.   On or about October 1, 2007, PETER J. AJEMIAN signed a narrative regarding SHARON FALLOON.

j.   On or about November 14, 2007, SHARON FALLOON signed an application for RRB disability benefits.

19

k.   On or about July 29, 2008, MARIE BARAN instructed an LIRR employee to contact MARIA RUSIN and obtain an appointment with PETER J. AJEMIAN.

l.   On or about March 3, 2011, REGINA WALSH mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

m.   On or about March 5, 2011, SHARON FALLOON mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

n.   On or about March 7, 2011, GARY SATIN mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

o.   On or about March 11, 2011, GREGORY NOONE mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

p.   On or about March 24, 2011, RICHARD EHRLINGER mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

q.   On or about April 28, 2011, in Manhattan, New York, GARY SATIN testified before a Grand Jury for the Southern District of New York.

r.   On or about September 3, 2008, PETER J. AJEMIAN signed a medical assessment relating to BRIAN DELGIORNO.

s.   On or about September 23, 2008, BRIAN DELGIORNO signed an application for RRB disability benefits.

20

t.   On or about March 4, 2011, BRIAN DELGIORNO mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

u.   On or about May 1, 2008, PETER J. AJEMIAN signed a medical assessment relating to PHILIP PULSONETTI.

v.   On or about June 23, 2008, PHILIP PULSONETTI signed an application for RRB disability benefits.

w.   On or about March 12, 2011, PHILIP PULSONETTI mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

x.   On or about August 7, 2003, PETER J. AJEMIAN signed a medical assessment relating to GREGORY BIANCHINI.

y.   On or about September 25, 2003, GREGORY BIANCHINI signed an application for RRB disability benefits.

z.   On or about March 12, 2011, GREGORY BIANCHINI mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

aa.   On or about July 7, 2006, PETER J. AJEMIAN signed a medical assessment relating to FRANKLIN PLAIA.

bb.   On or about July 20, 2007, FRANKLIN PLAIA signed an application for RRB disability benefits.

cc.   On or about March 5, 2011, FRANKLIN PLAIA mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

dd.   On or about May 15, 2008, Disability Doctor-3

21

signed a narrative regarding MICHAEL STAVOLA.

        ee.  On or about June 27, 2008, MICHAEL STAVOLA signed an application for RRB disability benefits.

        ff.  On or about March 21, 2011, MICHAEL STAVOLA mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

        gg.  On or about November 10, 2006, PETER J. AJEMIAN signed a medical assessment relating to MICHAEL DASARO.

        hh.  On or about January 8, 2007, MICHAEL DASARO signed an application for RRB disability benefits.

        ii.  On or about March 7, 2011, MICHAEL DASARO mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

        jj.  On or about December 4, 2003, PETER J. AJEMIAN signed a medical assessment relating to KARL BRITTEL.

        kk.  On or about December 12, 2003, KARL BRITTEL signed an application for RRB disability benefits.

        ll.  On or about March 30, 2011, KARL BRITTEL mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

        mm.  On or about November 1, 2006, PETER J. AJEMIAN signed a medical assessment relating to KEVIN NUGENT.

        nn.  On or about December 18, 2006, KEVIN NUGENT signed an application for RRB disability benefits.

        oo.  On or about March 21, 2011, KEVIN NUGENT mailed and

caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

pp.  On or about December 20, 2006, PETER J. LESNIEWSKI signed a medical assessment relating to GARY SUPPER.

qq.  On or about December 29, 2006, GARY SUPPER signed an application for RRB disability benefits.

rr.  In or about December 2008, PETER J. AJEMIAN provided medical documentation relating to THOMAS DELALLA to the RRB.

ss.  On or about December 9, 2008, THOMAS DELALLA signed an application for RRB disability benefits.

tt.  On or about March 15, 2011, THOMAS DELALLA mailed and caused to be mailed to the RRB's office in Manhattan, New York, a Disability Recertification.

(Title 18, United States Code, Section 371.)


## COUNT THREE

(False Claims)

The Grand Jury further charges:

34.  The allegations contained in Paragraphs 1 through 26 are repeated and realleged as if fully stated herein.

35.  From at least in or about 1998, up to and including in or about 2011, in the Southern District of New York and elsewhere, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN,

MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, made and presented to a person and officer in the civil, military, and naval service of the United States, and to a department and agency thereof, a claim upon and against the United States and a department and agency thereof, knowing such claim to be false, fictitious, and fraudulent, to wit, the defendants defrauded the RRB by making false and fraudulent statements in order to obtain disability benefits.

(Title 18, United States Code, Sections 287 and 2.)

## COUNT FOUR

(Health Care Fraud)

The Grand Jury further charges:

36.   The allegations contained in Paragraphs 1 through 26 are repeated and realleged as if fully stated herein.

37.   From at least in or about 1998, up to and including in or about 2011, in the Southern District of New York and elsewhere, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER,

BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud health care benefit programs and obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, health care benefit programs, in connection with the delivery of and payment for health care benefits, items and services, to wit, the defendants fraudulently billed, and caused to be billed, private insurance carriers for unnecessary medical treatments, services, and tests.

(Title 18, United States Code, Sections 1347 and 2.)


## COUNTS FIVE THOUGH EIGHTEEN

(Mail Fraud)

The Grand Jury further charges:

38.   The allegations contained in Paragraphs 1 through 26 are repeated and realleged as if fully stated herein.

39.   On or about the dates listed below, in the Southern District of New York and elsewhere, the following defendants, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the

25

purpose of executing such scheme and artifice and attempting so to do, placed in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing to be sent and delivered by a private and commercial interstate carrier, and took and received therefrom, a matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, a matter and thing, to wit, the defendant listed below as "Mailing Defendant," on the approximate dates listed below, for the purpose of executing the fraudulent scheme and in furtherance of a conspiracy with the other defendants listed below as "Charged Defendants," mailed and caused to be mailed a Disability Recertification, to the RRB's offices in Manhattan, New York:

| COUNT | Charged Defendants | Mailing Defendant | Approx. Date of G-254A mailing |
|-------|--------------------|--------------------|-------------------------------|
| FIVE | GREGORY NOONE<br>PETER J. AJEMIAN<br>MARIA RUSIN<br>MARIE BARAN | GREGORY NOONE | March 12, 2011 |
| SIX | REGINA WALSH<br>PETER J. AJEMIAN<br>MARIA RUSIN<br>MARIE BARAN | REGINA WALSH | March 7, 2011 |

| SEVEN | SHARON FALLOON<br>PETER J. AJEMIAN<br>MARIA RUSIN<br>MARIE BARAN | SHARON FALLOON | March 16, 2011 |
|---|---|---|---|
| EIGHT | GARY SATIN<br>PETER J. AJEMIAN<br>MARIA RUSIN<br>MARIE BARAN | GARY SATIN | March 7, 2011 |
| NINE | RICHARD EHRLINGER<br>PETER J. LESNIEWSKI<br>JOSEPH RUTIGLIANO | RICHARD EHRLINGER | March 24, 2011 |
| TEN | BRIAN DELGIORNO<br>PETER J. AJEMIAN<br>MARIA RUSIN | BRIAN DELGIORNO | March 4, 2011 |
| ELEVEN | PHILIP PULSONETTI<br>PETER J. AJEMIAN<br>MARIA RUSIN<br>MARIE BARAN | PHILIP PULSONETTI | March 12, 2011 |
| TWELVE | GREGORY BIANCHINI<br>PETER J. AJEMIAN<br>MARIA RUSIN<br>JOSEPH RUTIGLIANO | GREGORY BIANCHINI | March 12, 2011 |
| THIRTEEN | FRANKLIN PLAIA<br>PETER J. AJEMIAN<br>MARIA RUSIN | FRANKLIN PLAIA | March 5, 2011 |
| FOURTEEN | MICHAEL STAVOLA<br>MARIE BARAN | MICHAEL STAVOLA | March 21, 2011 |
| FIFTEEN | MICHAEL DASARO<br>PETER J. AJEMIAN<br>MARIA RUSIN | MICHAEL DASARO | March 7, 2011 |
| SIXTEEN | KARL BRITTEL<br>PETER J. AJEMIAN<br>MARIA RUSIN<br>JOSEPH RUTIGLIANO | KARL BRITTEL | March 30, 2011 |
| SEVENTEEN | KEVIN NUGENT<br>PETER J. AJEMIAN<br>MARIA RUSIN | KEVIN NUGENT | March 21, 2011 |

| EIGHTEEN | THOMAS DELALLA<br>PETER J. AJEMIAN<br>MARIA RUSIN | THOMAS DELALLA | March 15, 2011 |
|----------|--------------------------------------------------|----------------|----------------|

(Title 18, United States Code, Sections 1341 and 2.)

### COUNT NINETEEN

(Wire Fraud)

The Grand Jury further charges:

40.  The allegations contained in Paragraphs 1 through 26 are repeated and realleged as if fully stated herein.

41.  From at least in or about 1998, up to and including in or about 2011, in the Southern District of New York and elsewhere, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants

participated in a scheme to defraud the RRB by making false and fraudulent statements in order to obtain disability benefits, andin the course of executing such scheme, caused the RRB to transmit by wire disability payments, through Manhattan, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATIONS WITH RESPECT TO COUNT ONE

42.   As the result of committing one or more of the mail fraud offenses in violation of 18 U.S.C. § 1341 as alleged in Count One of this Indictment, one or more of the wire fraud offenses in violation of 18 U.S.C. § 1343 as alleged in Count One of this Indictment, and one or more of the Federal health care offenses in violation of 18 U.S.C. § 24 and § 1347 as alleged in Count One of this Indictment, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and § 982(a)(7), and 28 U.S.C § 2461, all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense.

## Substitute Assets Provision

43.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982, and 1347;
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461)

## FORFEITURE ALLEGATIONS WITH RESPECT TO COUNT FOUR

44.   As the result of committing one or more of the Federal health care offenses in violation of 18 U.S.C. § 24 and § 1347, alleged in Count Four of this Indictment, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN

GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense.

<u>Substitute Assets Provision</u>

45.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982;
Title 21, United States Code, Section 853)

31

## FORFEITURE ALLEGATION WITH RESPECT TO
## COUNTS FIVE THROUGH NINETEEN

46.  As the result of committing one or more of the mail fraud offenses in violation of 18 U.S.C. § 1341, alleged in Counts Five Through Nineteen of this Indictment, and one or more of the wire fraud offenses in violation of 18 U.S.C. § 1343, alleged in Count Twenty of this Indictment, PETER J. AJEMIAN, PETER J. LESNIEWSKI, MARIA RUSIN, MARIE BARAN, JOSEPH RUTIGLIANO, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, and THOMAS DELALLA, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C § 2461, all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense.

### Substitute Asset Provision

47.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the

Court;

      (4) has been substantially diminished in value; or

      (5) has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of said

defendants up to the value of the above forfeitable property.

      (Title 18, United States Code, Section 981(a)(1)(C);
        Title 21, United States Code, Section 853(p);
        Title 28, United States Code, Section 2461)


_____        _____
FOREPERSON                       PREET BHARARA
                                 United States Attorney

33

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

- v. -

**PETER J. AJEMIAN, PETER J. LESNIEWSKI,**
**MARIA RUSIN, MARIE BARAN,**
**JOSEPH RUTIGLIANO, GREGORY NOONE,**
**REGINA WALSH, SHARON FALLOON,**
**GARY SATIN, STEVEN GAGLIANO,**
**RICHARD EHRLINGER, BRIAN DELGIORNO,**
**PHILIP PULSONETTI, GREGORY BIANCHINI,**
**FRANKLIN PLAIA, MICHAEL STAVOLA, MICHAEL**
**DASARO, KARL BRITTEL, KEVIN NUGENT, GARY**
**SUPPER, THOMAS DELALLA,**

**Defendants.**

**INDICTMENT**

S1 11 Cr. 1091  (VM)

(Title 18, United States Code, Section 2, 287, 371,
1341, 1343, 1347 and 1349)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

5/7/12 - Filed Superseding Sealed Indictment
Arrest Warrants issued. - Judge Maas
U.S.M.J.