UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA           :

       - against -                              :         11 Cr. 1091 (VM)

PETER J. AJEMIAN, et al.             :

                         Defendants.   :
---------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WALSH'S
MOTION FOR RELIEF PURSUANT TO
RULE 12(b)(4)(B), FED R. CRIM. P.**

PRELIMINARY STATEMENT

This motion arises from the intersection of two closely related concepts: severance and suppression. This Court has directed the large number of defendants in this case to coordinate their efforts on motions for which their interests may align, including severance motions. Yet those severance motions necessarily depend on how the Court treats the dozens of potential co-defendant statements the government may seek to introduce in contravention of other defendants' rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. If the Court suppresses those statements, the need for severance is partly vitiated; if the Court instead decides to admit the statements, subject to a dizzying array of limiting instructions, the need for severance will become particularly acute. Nevertheless, the government has declined to identify the co-defendant statements it currently intends to use at trial. In so doing, the government has left the defendants

– and, by extension, the Court – stumbling in the dark, despite the clear mandate of the Federal Rules of Criminal Procedure, specifically Rule 12(b)(4)(B). Because this Court cannot intelligibly rule on the intertwined issues of severance and suppression without knowing which specific statements are at issue, nor can the defendant Walsh intelligently decide which defendants with whom she should align, the Court should direct the government to identify the co-defendant statements it intends to introduce in its case-in-chief.

## PROCEDURAL HISTORY

This Court initially directed defendants to coordinate their pre-trial motion efforts at the case management conference held on May 4, 2012. At that conference, the Court directed defendants to file their pre-trial motions within 45 days of the date on which the Superseding Indictment became publicly filed on the Southern District's Electronic Case Filing ("ECF") docket system. The Superseding Indictment became publicly filed on May 24; defense pre-trial motions are therefore due on Monday, July 9. *See* Super. Indict. (Dkt. # 96). The Court also directed defense counsel to coordinate their motions to avoid duplication.

Just prior to the case management conference, by letter dated April 27, 2012, defendant Walsh sought several items of discovery from the government. Bergman Affirmation, Ex. A. This letter included a request for the materials sought in this motion:

> The discovery thus far provided includes post-conspiratorial statements made by my client's co-defendants, of which the grand jury testimony of Sharon Faloon and Greg Satin, and agent interview statements of Peter Lesniewski and Marie Baran are examples. As to this category of

evidence, please let me know which, if any, co-defendant statements you intend to use in your case-in-chief, assuming that there is no mutually agreed upon severance of defendants. I need to know, in other words, the scope of any *Bruton*-based severance motion that I might need to make on behalf of Mrs. Walsh.

*Id.* at 3. The Government has since informed counsel that it declines to comply with this request. Bergman Affirmation at ¶ 3. Notably, the government has never denied its continuing obligations to provide appropriate discovery: the disagreement here concerns the scope of those obligations in an increasingly unwieldy case.

## ARGUMENT

Rule 12(b)(4)(B), Fed. R. Crim. P., allows a defendant to seek notice of the government's intent to use evidence that is otherwise discoverable under Rule 16 to facilitate a motion to suppress that evidence.[1] The government does not appear to dispute that incriminating co-defendant statements are material and therefore discoverable under Rule 16. Indeed, the government has properly provided these statements to the defendants.

Rule 14, Fed. R. Crim. P., and applicable case law bind the concept of severance with suppression of incriminating co-defendant statements. Specifically, Rule 14 allows a defendant to seek relief from prejudicial joinder, including severance

---

[1] Rule 12(b)(4)(B) provides in relevant part as follows:

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

or any other relief the court deems appropriate.[2] Applying Rule 14, the Supreme Court has reasoned that severance may be appropriate where the evidence at trial will include so-called *Bruton* statements, which violate the rights of a defendant under the Confrontation Clause of the Sixth Amendment. *See Bruton v. United States*, 391 U.S. 123, 137 (1968). Indeed, the Court in *Zafiro v. United States*, 506 U.S. 534, 539 (1993) expressly noted the a *Bruton* violation, among others, might create "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

*Bruton* issues arise when the government introduces statements made by one defendant that implicate other defendants in the same trial. *See United States v. Lung Fong Chen*, 393 F.3d 139, 148 (2d Cir. 2004). Typically the government can introduce the declarant-defendant's statements as evidence against that same defendant as an admission under Fed. R. Evid. 801(d)(2), or under a hearsay exception, such as a statement against penal interest. *See, e.g., United States v. Savoca*, 335 F. Supp. 2d 385, 390 (S.D.N.Y. 2004). However, the government cannot introduce the statement against the non-declarant defendant without violating that defendant's rights under the Confrontation Clause of the Sixth Amendment. *Bruton*, 391 U.S. at 126-27. This is so because the declarant-defendant's privilege against self-incrimination renders

---

[2] Rule 14(a) provide in relevant part as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

him unavailable to testify, thus eliminating the non-declarant defendant's ability to "confront" via cross-examination. *Id.*

The Court in *Bruton* held that this violation cannot be cured with a limiting instruction, overruling prior case law. *Id.* at 137. The Court refined *Bruton* in *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), holding that a redacted statement stripped of all reference to the non-declarant defendant could be admitted. Finally in *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) and *Davis v. Washington*, 547 U.S. 813, 824 (2006) the Court held that the right to confrontation extends to statements that are "testimonial" in nature. The companion case before the Court in *Davis* further clarified that "testimonial" statements include statements made to police in the course of an investigation. *Id.* at 831-32.

Applying these precedents, the Second Circuit has explained that, where the government seeks to introduce *Bruton* statements against a declarant-defendant, the trial court <u>must</u> afford one of three remedies to the non-declaring defendant: (1) redaction or alteration of the statement coupled with limiting instructions if necessary (thereby eliminating the *Bruton* problem, if possible); (2) suppression of the statement in its entirety; or (3) severance of the non-declaring defendant. *See United States v. Jass*, 569 F.3d 47, 56 n. 5 (2d Cir. 2009). Thus the issue of severance and suppression, which is explicitly contemplated by Rule 12(b)(4)(B), *supra* at 3, n. 1, are wrapped tightly together in the *Bruton/Crawford* context.

The Superseding Indictment, now naming a staggering twenty-one individual defendants, presents the culmination of years of government investigation that

5

included scores of witness interviews. Not surprisingly, the case abounds with *Bruton/Crawford* statements, made by various co-defendants to either the grand jury or to investigators from the Railroad Retirement Board ("RRB"), or Federal Bureau of Investigation ("FBI"). For example, according to an RRB I-103 Memorandum of Investigation, the defendant Peter Lesniewski, one of the two indicted doctors in this case, informed two RRB agents that "he thinks approximately [sic] fifty percent of the LIRR patients he saw had an honest disability while the other fifty percent should have been weeded out prior to awarding them their disability."

What to do with such a sweeping statement? Whether it can be admitted at a trial against Dr. Lesniewski alone, and for what purpose, remains an open question. But no doubt the government also intends to rely on this sort of statement, suggesting that at least half of the claims were fraudulent, to bolster its allegation, in the words of the Criminal Complaint, of a "massive fraud scheme" managed by the doctor-defendants, organized by the facilitator-defendants and in which the LIRR annuitant-defendants knowingly participated. Compl. ¶ 11 (Dkt. # 1). The Lesniewski statement is plainly testimonial under *Davis*, 547 U.S. at 830: "[s]uch statements under official interrogation are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." And the Lesniewski statement implicates *every other defendant in the case* in a criminal conspiracy. In short, the statement creates a severe *Bruton/Crawford* issue.

Three remedies exist for the severe *Bruton/Crawford* issue these types of statements create: redaction with limiting instructions, suppression or severance. The

utility of limiting instructions in a case of this magnitude dwindles to almost nothing, making the twin issues of suppression or severance paramount. Of course, we recognize that this Court has expressly acknowledged in the past that carefully crafted limiting instructions may cure spillover prejudice and vitiate the need for severance. *See United States v. Santiago*, 174 F. Supp. 2d 16, 22-23 (S.D.N.Y. 2001). Yet this Court did not face a *Bruton/Crawford* problem anywhere near this magnitude in *Santiago*. That is not surprising, given that narcotics traffickers are much more likely to clam up than mild-mannered Long Island retirees who believed they had done nothing wrong. In this case, unlike in *Santiago*, the sheer number of redactions and limiting instructions will strain the ability of the jury to compartmentalize the evidence well past its breaking point. *See, e.g., United States v. Gallo*, 668 F. Supp. 736, 752-53 (E.D.N.Y. 1987) (Weinstein, J.) ("While the utility of limiting instructions is not to be invariably rejected, neither should it be invariably accepted") (internal quotations marks and citation omitted).

For example, it seems unlikely that any redaction could cure the *Bruton/Crawford* problem arising from Dr. Lesniewski's above-quoted statement. Even if it were even admitted against him alone, the Court would still be required to instruct the jury that it may consider the statement as evidence of Dr. Lesniewski's conspiratorial guilt, but not consider the statement as evidence of such a conspiracy against the other defendants. This sort of umbrella limiting instruction is perplexing enough on its own, and yet even this instruction would likely be insufficient. The Court would need to issue as many as twenty additional limiting instructions, one for

each defendant. Otherwise, the jury would be drawn into several other impermissible inferences: for example, if Dr. Lesniewski's patients filed fraudulent claims, then defendant Peter Ajemian, Mrs. Walsh's physician, likely submitted at least a few fraudulent claims as well; that each facilitator likely arranged the paperwork for at least a few fraudulent claims; and that each annuitant (or at least half of them) likely filed fraudulent claims. These are not particularly persuasive inferences, of course, but that is beside the point: *Bruton* and the decision in *Crawford* renders the statement inadmissible for its truth as against any non-declaring co-defendant if the declarant is not available for cross-examination, a foregone conclusion if the statement is offered as against a co-defendant during the government's case-in-chief.

And yet Dr. Lesniewski's statement is not the only one that creates such problems. According to another FBI 302 Memorandum, co-defendant Marie Baran told the FBI that "Long Island Railroad (LIRR) employees who worked for various labor unions would be pissed off at her if they did not get their disability from the RRB." Gov't Bates Stamp FBI-000048. The government might introduce this statement, hoping to convince the jury that the individual annuitants here were "pissed off" because they were trying to game the system, rather than honestly submitting claims. A newly added defendant, Karl Brittel, told the government at a proffer session that he had "the impression, from the start, that he could go to Dr. Ajemian and get an O[ccupational] D[isability]" and that "[i]t was common knowledge among the LIRR employees that there were three or four doctors that people could go to and get a 'good narrative.'" Gov't Bates Stamp MOI 000047-

000048. Evidence, the government could claim, that the entire LIRR believed that Dr. Ajemian was in the business of providing false narratives. The government could make the same claim of Gregory Bianchini's testimony to the grand jury:

> Q: I'm asking you if it was your view that 99 percent of the people who applied for disability with the Long Island Railroad got it.
>
> A: I knew a large percentage got it. What the number was, I don't know.

Bianchini Tr. 23:6 to 23:10, Gov't Bates Stamp GJ 000065. Michael Stavola, also a newly added defendant, was more blunt:

> A: Listen, we all knew how it worked. We all knew that we retired and we all knew that we put our disability papers in and hopefully we got it, hopefully we met the criteria. There was no surprise. The guys who retired before us told us how it worked.

Stavola Tr. 15:5 to 15:10, Gov't Bates Stamp GJ 000632.

In the final analysis, the defendants have pleaded not guilty and it is the government's burden to prove its case against them at a trial free from the taint of inadmissible evidence. Yet, under the government's expansive conspiracy-based theory of this case and its extensive pre-indictment interrogations, it inevitably gathered *Bruton/Crawford* statements. Again, one of three remedies must apply, alteration and limiting instructions, suppression or severance of those defendants who made *Bruton/Crawford* statements.

What use will limiting instructions serve if the government introduces all of these statements? What if the government introduces dozens more? The Court will quickly find itself issuing dozens upon dozens of instructions to the hapless jury. The cumulative effect will resemble the legendary Cretan Labyrinth, as limiting instruction

9

piles upon limiting instruction, leaving the jury irreparably confused and the defendants hopelessly prejudiced.

At this point the government might object that this scenario is merely speculative. If so, defendants are forced to speculate only because the government has declined to provide notice of its intent to rely on individual statements. No doubt all of the defendants would prefer to address these questions more concretely in the context of the suppression and severance motions that will follow in due course. Yet, speaking for defendant Walsh, she cannot address these issues in any concrete fashion without first knowing which statements the government intends to introduce. Neither can this Court. The Rule explicitly provides a method to enlighten counsel and the Court, and the government should be required to notice its intention to use specific statements.

The government's declination to provide the information we have requested creates a second problem as well: it undermines the Court's sensible instruction that the defendant's coordinate their efforts on pre-trial motions. Each defendant's position on severance will turn on which statements are admitted with limitations and which statements are suppressed. Will the government introduce statements by a doctor to the detriment of the annuitants? Or perhaps a statement by an annuitant to the detriment of the alleged facilitators? Which doctor, which annuitant, and which facilitator? The web of *Bruton/Crawford* statements in this case creates myriad possible severance permutations, depending on which statements are admitted. This uncertainty renders intelligent cooperation among the defendants on severance

impossible. The only truly safe course for any individual defendant would be to ask for severance from every other defendant that has made a statement. This is surely not a request this Court wishes to entertain, nor one defendant Walsh envisions making in a more sensible world.

At this juncture, we do not ask this Court to decide the appropriate mix of limiting instructions, suppression and severance required to cure these *Bruton/Crawford* issues. Rather, we request that the Court recognize that, in this massive case, suppression of *Bruton/Crawford* statements or severance of the defendants is plainly on the table. We request that this Court recognize that the defendant Walsh cannot address these issues without knowing which *Bruton/Crawford* statements are at issue, much less coordinate with other counsel on the issue of severance. The Court should therefore grant the relief requested, pursuant to Rule 12(b)(4)(B), and direct the government to identify those statements it intends to introduce in its case-in-chief, so that Walsh (and her co-defendants, to the extent they are implicated) may properly address the intertwined issues of severance and suppression.

## CONCLUSION

## THE APPLICATION FOR RELIEF SHOULD BE GRANTED

Dated:   New York, New York
         June 5, 2012

                                        Yours, etc.

                                        PAUL B. BERGMAN, P.C.

                       By:

                                        /S/_____
                                        PAUL B. BERGMAN, ESQ.
                                        Attorney for Regina Walsh
                                        950 Third Avenue
                                        New York, NY 10022
                                        Tel. No.: (212) 355-7711
                                        Fax No.: (212) 755-5509
                                        Email: paul.bergman@paulbbergmanpc.com

*Of counsel:*
    Paul B. Bergman, Esq.
    Michael J. Van Riper, Esq.