UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

........................................................................x

UNITED STATES OF AMERICA      :

      - against -             :       S1 11 Cr. 1091 (VM)

PETER J. AJEMIAN,            :
PETER J. LESNIEWSKI,
MARIA RUSIN,                :
MARIE BARAN,
JOSEPH RUTIGLIANO,        :
GREGORY NOONE,
REGINA WALSH,             :
SHARON FALLOON,
GARY SATIN                  :
STEVEN GAGLIANO,
RICHARD EHRLINGER,       :
BRIAN DELGIORNO
PHILIP PULSONETTI         :
GREGORY BIANCHINI
FRANKLIN PLAIA            :
MICHAEL STAVOLA
MICHAEL DASARO          :
KARL BRITTEL
KEVIN NUGENT             :
GARY SUPPER, and
THOMAS DELALLA,         :

               Defendants.    :

........................................................................x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WALSH'S MOTION FOR RELIEF PURSUANT TO RULE 12(b)(4)(B), FED. R. CRIM. P.

PAUL B. BERGMAN, PC
950 Third Avenue
32nd Floor
New York, NY 10022
(212) 355-5571
paulbbergman@paulbbergmanpc.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 3

I.      RULE 12(b)(4)(B), FED. R. CRIM. P., APPLIES WHERE THE
        DEFENDANT SEEKS NOTICE OF THE GOVERNMENT'S INTENT
        TO USE STATEMENTS THAT ARE SUBJECT TO CHALLENGE
        BASED ON *BRUTON/CRAWFORD* ERROR ............................................................ 3

        A.  The Government's Narrow Approach Contravenes the Interpretive
            Framework Set Forth in Rule 2 and the Advisory Committee Notes to
            Rule 12 Actually Support the Defense ........................................................... 4

        B.  Rule 12(b)(4)(B) Notice is Appropriate Because a Motion to "Suppress"
            Includes a Motion Seeking to Exclude Statements Obtained in Violation of
            the Confrontation Clause ................................................................................ 5

            1.  The Definition of "Suppress" ................................................................ 5

            2.  The Advisory Committee Notes .......................................................... 7

            3.  Cases Referring to *Bruton* Motions as Motions to Suppress ................ 8

II.     PRUDENTIAL CONCERNS FAVOR THE USE OF RULE 12(b)(4)(B)
        NOTICE .............................................................................................................. 10

III.    AS AN ALTERNATIVE TO RULE 12(b)(4)(B) NOTICE, THE COURT
        COULD PERMIT RULE 14 SEVERANCE MOTIONS TO BE FILED AT
        THE *IN LIMINE* STAGE OF THE CASE ........................................................ 13

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Bruton v. United States*, 391 U.S. 123 (1968) ........................................................................................3

*Burns v. Alcala*, 420 U.S. 575 (1975) ....................................................................................................6

*Crawford v. Washington*, 541 U.S. 36 (2004) .......................................................................................3

*Gray v. Maryland*, 523 U.S. 185 (1998) ..............................................................................................12

*Kansas v. Ventriss*, 129 S.Ct. 1841 (2009) ............................................................................................7

*Miranda v. Arizona*, 384 U.S. 436 (1966) .............................................................................................4

*Perrin v. United States*, 444 U.S. 37 (1979) ..........................................................................................6

*Richardson v. Marsh*, 481 U.S. 200 (1987) .........................................................................................12

*State ex rel Rasmussen v. Tahash*, 141 N.W. 2d 3 (Minn. 1965) ..........................................................7

*United States v. Aquino*, 2011 WL 6761066 (W.D.N.Y. Dec. 23, 2011) ..............................................8

*United States v. Bozeman*, 2012 WL 1071207 (E.D. Tenn. Mar 29, 2012) ..........................................9

*United States v. Colombo*, 2006 WL 2012511 (S.D.N.Y. July 18, 2006) .................................... 10, 11

*United States v. Debrow*, 346 U.S. 374 (1953) ......................................................................................4

*United States v. De La Cruz*, 2006 WL 2322692 (S.D.N.Y. Aug 8, 2006) ................................. 10, 11

*United States v. Gomez*, 758 F. Supp. 145 (S.D.N.Y. 1991) .................................................................8

*United States v. Jass*, 569 F.3d 47 (2d Cir. 2009) ......................................................................... 12, 13

*United States v. Kirsh*, 54 F.3d 1062 (2nd Cir. 1995) ...........................................................................9

*United States v. Lanier*, 578 F.2d 1246 (8th Cir. 1978) ........................................................................9

*United States v. Lung Fong Chen*, 393 F.3d 139 (2d Cir. 2004) .................................................... 12, 13

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) ..........................................................................4

*United States v. RW Professional Leasing Services Corp.*, 317 F. Supp. 2d 167
(E.D.N.Y. 2004) ........................................................................................................................ 8

*United States v. Solomonyan*, 451 F. Supp. 2d 626 (S.D.N.Y. 2006) .......................................... 10, 11

*United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989) ........................................................................ 12

## Constitutions

U.S. Const. amend. IV ............................................................................................ 4, 5, 7, 12

U.S. Const. amend. V ...................................................................................................... 4, 7

U.S. Const. amend. VI .................................................................................................... 5, 7

## Rules

Fed. R. Crim. P. 1 .............................................................................................................. 5

Fed. R. Crim. P. 2 .......................................................................................................... 3, 4

Fed. R. Crim. P. 12 ........................................................................................................ 1, 3

Fed. R. Crim. P. 16 ............................................................................................................ 9

## Treatises and Secondary Sources

*Black's Law Dictionary* (4th ed. rev. 1968) ........................................................................ 6

*Black's Law Dictionary* (5th ed. 1979) .............................................................................. 6

Charles Alan Wright and Andrew D. Leipold, *Federal Practice and Procedure: Criminal*
(4th ed. 2008) ................................................................................................................ 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

.....................................................................................x

UNITED STATES OF AMERICA               :

        - against -                                    :               S1 11 Cr. 1091 (VM)

PETER J. AJEMIAN, et al.                     :

                        Defendants.        :

.....................................................................................x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WALSH'S MOTION FOR RELIEF PURSUANT TO RULE 12(b)(4)(B), FED. R. CRIM. P.

The government's opposition to the relief we have requested, namely the pretrial identification of the specific *Bruton/Crawford* statements which it will use at trial, is not substantive opposition in the sense that it argues we are not entitled to that identification before trial. The government acknowledges that we are, except not now. Going forward, it argues, the defense should rely upon the government's beneficence in applying the constraints of the Confrontation Clause to the statements and, if dissatisfied, make our constitutional arguments in response to a government *in limine* motion "a short time before trial." Gov't. Memo. at 2.

The government also does not disagree that this application involves "evidence that the defendant may be entitled to discover under Rule 16," *see* Rule 12(b)(4)(B). So, it cannot be said that we are seeking information that the defense is not otherwise entitled to receive. Instead, the government argues the narrow proposition that the Federal Rules of Criminal Procedure, which it claims does not expressly sanction the relief requested, should be interpreted to preclude this relief. The government's illogical argument hinges on the phrase

1

"motion to suppress" in Rule 12(b)(3)(C), which it asserts applies only to the trial exclusion of evidence <u>obtained</u> in violation of a defendant's constitutional rights, but not evidence which will be <u>used</u> in violation of a defendant's constitutional rights. In effect, the government claims that the drafters intended that the phrase in Rule 12(b)(3)(C), "a motion to suppress evidence," should be read to state, "a motion to suppress *illegally obtained* evidence." Basically, it argues that there is a footnote to the Rule which carves out motions to suppress under the Confrontation Clause and makes them subject to the local *in limine* motion practice of the Southern District of New York. Not surprisingly, the government has not cited any direct case authority, nor even a local rule of the Court for this extraordinary preemption and undermining of the Rules.

In Point I of this reply we deal with the government's mistaken argument that the dictionary definition of "suppression," the Advisory Committee Notes to the Rules and various cases support its interpretation of the Rule. In Point II we argue that, even if the government is correct in its cramped interpretation of Rule 12(b)(4)(B), the Court should simply accelerate the government's proposed *in limine* motion schedule as the natural complement to the Court's desire to have the defendants make joint submissions where possible at the formal pre-trial motion stage of this case, which presently requires defense motions to be made on September 7th. We also deal briefly in Point II with the government's attempt to sidestep the procedural issue by arguing, in contradiction of its argument that the issues should be dealt with later, that the *Bruton* decision will not be an issue in the case in any event. That argument plainly begs the question presented by this application.

2

In Point III we suggest that, if the Court views the informal local *in limine* practice as trumping the Rules, the Court should simply defer receipt of the defense Rule 14 severance motions until such time in the Fall as the case has settled out in terms of the number of defendants who are actually going to trial, the exhaustion of mutual efforts by the government and the defense to agree upon the issue of severance, subject of course to the Court's approval, and after the government's proposals for dealing with the numerous *Bruton/Crawford* issues have been presented to the defense.

## ARGUMENT

I.    **RULE 12(b)(4)(B), FED. R. CRIM. P., APPLIES WHERE THE DEFENDANT SEEKS NOTICE OF THE GOVERNMENT'S INTENT TO USE STATEMENTS THAT ARE SUBJECT TO CHALLENGE BASED ON *BRUTON/CRAWFORD* ERROR**

Relying on the use of the word "suppress" in Rule 12(b)(4)(B), Fed. R. Crim. P., the government takes the position that the notice provision of that rule does not apply to a contemplated motion alleging error pursuant to *Bruton v. United States*, 391 U.S. 123 (1968) and *Crawford v. Washington*, 541 U.S. 36 (2004). In essence, the government argues that a motion to "suppress" is a motion to exclude illegally obtained evidence, while a *Bruton/Crawford* challenge, while it may also seek the exclusion of relevant evidence on constitutional grounds, must be dealt with on a schedule that depends upon the government's stage in its pretrial preparation and its initiation of an *in limine* motion procedure. The argument, which is nonsensical, fails for several principal reasons. First, the government's narrow interpretative approach contravenes the preference for prudential and liberal interpretation set forth in Rule 2, Fed. R. Crim. P. Second, the Advisory Committee Notes provide more support for the defense position than the government's. Third, even

3

applying the government's narrow approach, a motion seeking to exclude a statement taken

in violation of *Crawford* or *Bruton* is no less a motion to "suppress" than is a motion to

exclude, for example, physical evidence obtained in violation of a defendant's Fourth

Amendment rights, or statements obtained in violation of the Fifth Amendment. *See, e.g.,*

*Miranda v. Arizona*, 384 U.S. 436 (1966). All such motions seek to "suppress" evidence

obtained in violation of a defendant's constitutional rights.

## A. The Government's Narrow Approach Contravenes the Interpretive Framework Set Forth in Rule 2 and the Advisory Committee Notes to Rule 12 Actually Support the Defense

At the threshold, this Court should take note that the government advocates

an unduly technical interpretive approach to the issue. Rule 2, Fed. R. Crim. P., provides:

These rules are to be interpreted to provide for the just determination of
every criminal proceeding, to secure simplicity in procedure and fairness in
administration, and to eliminate unjustifiable expense and delay.

The Rule was designed to simplify procedures, prevent undue delay and eliminate outmoded

technicalities in favor of a prudential and flexible approach to criminal procedure. *See*

*generally* 1 Charles Alan Wright and Andrew D. Leipold, *Federal Practice and Procedure: Criminal*

§ 31 (4th ed. 2008); *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (the Federal Rules

"to be construed to secure simplicity in procedure." (quoting *United States v. Debrow*, 346 U.S.

374, 376 (1953)). The overarching command of Rule 2 thus builds a pragmatic approach

into every other Rule, including Rule 12, to ensure that justice shall be done. Wright, *supra*, §

31. That is why the original Chairman of the Advisory Committee, Arthur T. Vanderbilt,

regarded Rule 2 as "the most important rule of the whole set." *Id.* Accordingly, the

4

government's insistence on an overly technical interpretive approach to Rule 12(b)(4)(B) should give this Court immediate pause.

### B. Rule 12(b)(4)(B) Notice is Appropriate Because a Motion to "Suppress" Includes a Motion Seeking to Exclude Statements Obtained in Violation of the Confrontation Clause

The government argues that the word "suppress" limits the scope of Rule 12(b)(4)(B) to situations in which a defendant wishes to exclude evidence "illegally obtained" and argues that this definition does not encompass a motion based on a prospective *Bruton / Crawford* trial error. In other words, while it agrees, for example, that a prospective trial evidentiary violation of a defendant's Fourth Amendment rights can (indeed, must) be addressed by pretrial motion under Rule 12(b)(3)(C), the government argues that the prospective trial violation of a defendant's Sixth Amendment confrontation right must abide the government's trial preparation schedule and its decision to employ an *in limine* motion process. The government, however, reads the Rule too narrowly: a motion to "suppress" encompasses any motion in which the claimed basis for the exclusion of trial evidence derives from settled constitutional principles.

### 1. The Definition of "Suppress"

"Suppress" or "Suppression" is not defined in the definitional section of the Rules. *See* Fed. R. Crim P. 1, nor is the word given precise definition in Rule 12 itself. In the absence of such definition, the government cites the current edition of Black's Law Dictionary in support of its argument. Gov't. Memo. at 2 (motion to suppress defined as "[a] request that the court prohibit the introduction of illegally obtained evidence at a criminal trial"). Of course, when one applies a purely textualist approach to statutory

construction – or, in this case, the construction of the Rules – words are assigned their ordinary meaning in use at the time of adoption. *See, e.g., Perrin v. United States*, 444 U.S. 37, 42 (1979) (citing *Burns v. Alcala*, 420 U.S. 575, 580-81 (1975)). In 1974, when Rule 12(b)(4)(B) was originally proposed as Rule 12(d), the 4th Revised Edition of Black's Law Dictionary gave no definition of the phrase "motion to suppress," *Black's Law Dictionary* 1164 (4th ed. rev. 1968), so it is somewhat pointless to deal with a "definition" at all. By 1979, however, the authors had added the following definition to the 5th Edition, which expressly contemplates motions, made pursuant to Rule 12(b), to suppress statements taken in violation of the Confrontation Clause:

> Motion to suppress: Device used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self-incrimination), or the Sixth Amendment (right to assistance of counsel, <u>right of confrontation</u>, etc.), of U.S. Constitution. See Fed.R.Crim.P. 12(b) and 41(f); also Suppression Hearing.

*Black's Law Dictionary* 914 (5th ed. 1979) (emphasis added).[1] *Bruton* was decided in 1968: it remains a key part of the revolution in constitutional jurisprudence that birthed the concept of suppression as defined in this entry and as incorporated into Rule 12. The ordinary meaning of the term "suppression" in use at the time of the adoption of Rule 12 does not support the government; rather, it indicates that Rule 12 applies to all constitutionally based evidentiary objections, including challenges based on *Bruton / Crawford* error.

---

[1]     Due to the fact that these editions are out of print and not readily available online, we have attached our copies of the relevant pages as an Appendix.

6

## 2. *The Advisory Committee Notes*

The government also relies on the Advisory Committee Notes to Rule 12(b)(4)(B),

quoting language to the effect that Rule 12 applies to suppression based on Fourth

Amendment or Fifth Amendment (i.e., *Miranda*) violations. Gov't. Memo. at 2.[2] However,

by specifically referencing Fourth and Fifth Amendment doctrines, the government's

selection does not thereby exclude all other constitutionally based evidentiary objections

from the scope of Rule 12. On the contrary, the last sentence of the government's selection

(which we have emphasized) makes it clear that, at a minimum, Rule 12 is co-extensive with

the exclusionary rule, a doctrine that also applies in the Sixth Amendment context. *See*

*Kansas v. Ventris*, 129 S.Ct. 1841, 1845 (2009) (exclusionary-rule balancing applies to

violations of Sixth Amendment).

More importantly, other Advisory Note comments show that Rule 12 sweeps broadly

enough to encompass motions to suppress based on the Confrontation Clause. The

Advisory Committee Note to the 1974 Amendment further states that Rule 12(b)(4)(B)

"provides a mechanism for insuring that a defendant knows of the government's intention

to use evidence to which the defendant may want to object" and approvingly cites the

following language from the Supreme Court of Minnesota's decision in *State ex rel Rasmussen*

*v. Tahash*, 141 N.W. 2d 3, 14-15 (Minn. 1965):

---

[2]      The 1974 Advisory Note relied upon by the government, without the internal
citations, reads in relevant part as follows: " 'Subdivision (b)(3) [now numbered as (b)(3)(C)]
makes clear that objections to evidence on the ground that it was illegally obtained must be
raised prior to trial. This is the current rule with regard to evidence obtained as a result of an
illegal search. It is also the practice with regard to other forms of illegality such as the use of
unconstitutional means to obtain a confession. <u>It seems apparent that the same principle
should apply whatever the claimed basis for the application of the exclusionary rule of
evidence may be.</u>' " (emphasis added)

> The procedure which we have outlined deals only with evidence obtained as the result of a search and seizure and evidence consisting of or produced by confessions on the part of the defendant. <u>However, the steps which have been suggested as a method of dealing with evidence of this type will indicate to counsel and to the trial courts that the pretrial consideration of other evidentiary problems, the resolution of which is needed to assure the integrity of the trial when conducted, will be most useful and that this court encourages the use of such procedures wherever practical. (emphasis added)</u>

Furthermore, the Advisory Committee Notes to the 2002 Amendments state that Rule 12(b)(4)(B) "addresses the government's requirement to disclose discoverable information for the purpose of facilitating timely defense objections and motions..." These selections indicate that the notice provision of Rule 12(b)(4)(B) sweeps much more broadly and sensibly than the government contends.

### 3. *Cases Referring to* Bruton *Motions as Motions to Suppress*

Additional support for Walsh's position comes from those cases that expressly refer to *Bruton/Crawford* challenges as motions to suppress. *See United States v. Gomez*, 758 F. Supp. 145, 148 (S.D.N.Y. 1991); *United States v. Aquino*, 2011 WL 6761066, at *2 (W.D.N.Y. Dec. 23, 2011). The government has attempted to get in front of these two decisions by mischievously citing them for the proposition that "Defendant Walsh is not the first defendant incorrectly to use the word 'suppress' in connection with a motion pursuant to *Bruton*." Gov't. Memo. at 3 n. 2. Yet in none of these cases does the court chide a defendant for making this supposed category error; rather, *the court itself* uses the word "suppress" in its written opinion. *See also United States v. RW Professional Leasing Services Corp.*, 317 F. Supp. 2d 167, 177 (E.D.N.Y. 2004) (Spatt, J.)("the defendants' motion to suppress Roger Drayer's statement on the ground that its admission would allegedly violate the *Bruton* rule is denied without prejudice and with leave to renew."). The government thus implicitly

asks this Court to conclude that, in each of these opinions, the district court thoughtlessly parroted the language of the defendants appearing before it. We are thus left with reported decisions expressly categorizing *Bruton* challenges as motions to suppress, a characterization eminently sensible in light of the constitutional lineage of a Confrontation Clause challenge.

The government's citation of *United States v. Kirsh*, 54 F.3d 1062, 1068 (2nd Cir. 1995) is similarly unavailing. *Kirsh* simply demonstrates the obvious point that *Miranda* and *Bruton* constitute independent constitutional grounds for the exclusion of a defendant's statement. *Id. Kirsh* does not hold that the former is best characterized as "suppression" while the latter is merely an evidentiary dispute that must await resolution until the government decides to move *in limine*. *Id.* The government appears to concede this limitation in its discussion of the case, but it is nevertheless worth emphasizing. *See* Gov't. Memo. at pp. 2-3. Similarly, *United States v. Lanier*, 578 F.2d 1246, 1254 (8th Cir. 1978), Gov't Memo. at p. 4, explains that Rule 12(b)(4)(B) is further constrained by Rule 16, Fed. R. Crim. P. The government sensibly does not argue that the statements of the defendants are not discoverable under Rule 16.

The government also cites *United States v. Bozeman*, 2012 WL 1071207, at *10 (E.D. Tenn. Mar 29, 2012) for the proposition that Rule 12(b) is not designed to allow a defendant to attack evidence generally. Along those same lines, the government argues in a footnote that, were this Court to accept Walsh's position, Rule 12(b) would swallow all evidentiary disputes by operation of the 12(e) waiver provision. It should now be apparent that this scenario need not trouble this Court: Walsh does not argue that Rule 12(b) encompasses any and all objections to the admission of evidence. Obviously, to say that all suppression

motions involve the admissibility of evidence does not logically mean that the pretrial resolution of all evidentiary issues are governed by rule 12(b)(3). Rather, Walsh argues that *Bruton/Crawford* challenges fall within the scope of the Rule.  Non-constitutional objections to the admission of evidence (and there will surely be many in this case) may be properly addressed *in limine* or earlier as appropriate, but it is not our contention that such evidence is subject to Rule 12(b)(4)(B) notice.

## II.   PRUDENTIAL CONCERNS FAVOR THE USE OF RULE 12(b)(4)(B) NOTICE

The government points out that courts have in the past treated *Bruton* and *Crawford* challenges as motions *in limine*, citing as examples *United States v. Solomonyan*, 451 F. Supp. 2d 626 (S.D.N.Y. 2006), *United States v. De La Cruz*, 2006 WL 2322692 (S.D.N.Y. Aug 8, 2006) and *United States v. Colombo*, 2006 WL 2012511 (S.D.N.Y. July 18, 2006).  The government thus argues that this Court should also handle the defendants' *Bruton/Crawford* challenges *in limine*.  This argument fails because it completely glosses over the unique characteristics of this case.

Walsh's original Memorandum in Support of this motion set forth the prudential concerns justifying Rule 12(b)(4)(B) notice at great length. There is no need to fully recapitulate those reasons here, but, to summarize, Rule 12(b)(4)(B) notice is particularly appropriate because the sheer number of potential *Bruton/Crawford* statements, coupled with the likelihood that the redaction and/or limiting instructions will be insufficient to cure that error, puts the twin remedies of severance or suppression front and center in any Rule 14 severance motion.  In response, the government cites cases in which the court treated *Bruton*

motions *in limine*. That is no response at all: the government completely ignores the specific context by making general claims about supposedly ideal practice.

Moreover, the cases the government cites are entirely dissimilar from the case at bar, most notably because none of them involved a defense pre-motion request for designation under Rule 12(b)(4)(B). *Solomanyon* and *Colombo* both involved many defendants, but no *Bruton*-based argument for severance. *See Solomanyon*, 451 F. Supp. 2d at 649-51 (arguing for severance based on the length and complexity of the trial, prejudicial spillover and the defendant's desire to call co-defendant as a witness, not exclude his testimony); *Colombo*, 2006 WL 2012511 at *2 (various non-*Bruton* severance arguments). *De La Cruz* involved no *Bruton*-based severance motion either and appears to have involved only one defendant with a post-arrest statement. *De La Cruz*, 2006 WL 2322692, at *3-5. With only one defendant making a statement, Rule 12(b)(4)(B) notice would not have been necessary to winnow the *Bruton* issue in *De La Cruz*, even if the non-declarant defendants had fully pressed the matter. Quite simply, none of these cases has even a remote resemblance to the case before this Court.

The government also quickly briefs the Second Circuit's approach to Rule 14 severance motions. Gov't. Memo. at 5. In so doing, the government comes dangerously close to suggesting that the *Bruton/Crawford* issues should be treated *in limine* because the defendants will never prevail on a severance motion anyway, so no harm can arise from putting off the issue. Suffice it to say that the government's winking assertion that defendants cannot prevail on severance cannot deprive the defendants of their right to make a Rule 14 motion in conjunction with an alternative Rule 12 motion to suppress, with the

11

relevant *Bruton/Crawford* statements in the open pursuant to Rule 12(b)(4)(B). It would be as if, in a claimed unlawful Fourth Amendment search context, the government argued that no notice under Rule 12(b)(4)(B) was required because the search was lawful.

Finally, the government attempts to minimize the linked suppression and severance issue by suggesting that the case will involve few, if any, *Bruton/Crawford* statements. Gov't. Memo. at 6-8. Relying extensively on *Richardson v. Marsh*, 481 U.S. 200 (1987) and Second Circuit decisions including *United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989) and *United States v. Jass*, 569 F.3d 47 (2d Cir. 2009), the government argues that Walsh's motion "misreads" *Bruton*. Gov't. Memo. at 5. Yet, in making this argument, the government itself overstates *Richardson* and *Tutino* while minimizing *Gray v. Maryland*, 523 U.S. 185, 195-96 (1998) and eliding past a key caveat in *Jass*, 569 F.3d at 56 n. 5.

The government cites these cases for the proposition that *Bruton* applies to facially incriminating statements and that, per *Richardson*, redaction or alteration (possibly with limiting instructions) may cure a statement of *Bruton* error. But the government overstates its case when it implies that no statement can violate *Bruton* unless that statement includes a specific reference to the defendant. Inferential incrimination can absolutely trigger a Confrontation Clause violation: "*Richardson* must depend in significant part upon the *kind* of, not the simple *fact* of, inference." *Gray*, 523 U.S. at 196 (emphasis in original). The issue turns on the amount of extrinsic evidence required to connect the statement to the non-declarant.[3] *Id.; see also United States v. Lung Fong Chen*, 393 F.3d 139, 150 (2d Cir. 2004). The

---

[3]     Contrary to the government's contentions, Defendant Lesniewski's statement is in fact an excellent example of the difficulties that arise in this context. The government points out that the statement makes no explicit reference to any other defendant. Yet the

Second Circuit recognized this in *Jass*, even as it held that admission of the statements at

issue did not violate *Bruton*:

> Our *Tutino* line of precedents should not be understood to hold
> that *Bruton* concerns can invariably be resolved by the substitution of neutral
> pronouns for redacted names. As we have observed, 'the line between
> testimony that falls within *Bruton*'s scope and that which does not is often
> difficult to discern.'

*Jass*, 569 F.3d at 56 n. 5 (quoting *Lung Fong Chen*, 393 F.3d at 149).

The line is even more difficult to discern in the dark. Rule 12(b)(4)(B) notice is

manifestly appropriate. If nothing else, it serves to prevent the cart from being placed in

front of the horse, which is what the government has attempted to do here.

## III. AS AN ALTERNATIVE TO RULE 12(b)(4)(B) NOTICE, THE COURT COULD PERMIT RULE 14 SEVERANCE MOTIONS TO BE FILED AT THE *IN LIMINE* STAGE OF THE CASE

The government's opposition indirectly raises the possibility of an alternative

solution: allowing defendants to bring their Rule 14 severance motions *in limine*, after the

government has indentified *Bruton* statements and offered proposed redactions. Setting aside

the interpretive and prudential arguments at issue here, it is clear that the defendants and the

government are more at loggerheads over timing than over substance. The government has

suggested that the Court address the potential *Bruton/Crawford* issues as part of the *in limine*

motion schedule to be set for some time between the December 7th pre-trial conference and

---

government does not truly grapple with the inference that leaps off the page: that half of
LIRR patients submitted false claims. This is an explosive claim, which requires no extrinsic
evidence, additional testimony or context to connect it with the defendants. Half of all
LIRR patients submitted false claims. The defendants in this case are LIRR patients.
Therefore, these defendants are likely fraudsters. This statement should not be admitted
without vigorous cross-examination, but cross-examination of Lesniewski is impossible. In
other words, this is a textbook *Bruton/Crawford* statement.

February 11, 2013 trial date. The defendants' key objection is that, by then, the ship has sailed on the linked issues of suppression or severance as remedies for *Bruton/Crawford* error, because initial Rule 14 motions are currently due on September 7th. The Court could resolve that problem by making a scheduling adjustment, setting a deadline for Rule 14 severance motions on a date <u>after</u> the government has had time to negotiate the guilty pleas it believes will be inevitably forthcoming, offer immunity (if necessary) and identify any *Bruton* statements with proposed redactions, and discuss possible severance with the remaining defense counsel. With both the statements and the government's proposed redactions on the table, the entire matter can be properly briefed to this Court. Either way, however, these matters cannot be properly litigated while the exact statements which will be at issue remain cloaked. If such a scheduling adjustment is not workable, then Rule 12(b)(4)(B) is the appropriate mechanism for disclosure and this Court should grant the motion.

## CONCLUSION

### THE APPLICATION FOR RELIEF SHOULD BE GRANTED

Dated:   New York, New York
         June 27, 2012

                            Yours, etc.

                            PAUL B. BERGMAN, P.C.

                    By:
                            /S/
                            PAUL B. BERGMAN, ESQ.
                            Attorney for Regina Walsh
                            950 Third Avenue
                            New York, NY 10022
*Of counsel:*               Tel. No.: (212) 355-7711
   Paul B. Bergman, Esq.    Fax No.: (212) 755-5509
   Michael J. Van Riper, Esq.   Email: paul.bergman@paulbbergmanpc.com

**APPENDIX – BLACK'S LAW DICTIONARY EXCERPTS**

# BLACK'S
# LAW DICTIONARY

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern
with
Guide to Pronunciation

By

## HENRY CAMPBELL BLACK, M. A.

Author of Treatises on Judgments, Tax Titles, Intoxicating Liquors,
Bankruptcy, Mortgages, Constitutional Law, Interpretation
of Laws, Rescission and Cancellation of Contracts, Etc.

## FOURTH EDITION

By
THE PUBLISHER'S EDITORIAL STAFF

ST. PAUL, MINN.
WEST PUBLISHING CO.
1951

## MORTUUS — MOTOR

**MORTUUS EXITUS NON EST EXITUS.** A dead issue is no issue. Co.Litt. 29. A child born dead is not considered as issue.

**MORTUUS SINE PROLE.** Dead without issue. In genealogical tables often abbreviated to "*m. s. p.*"

**MOS RETINENDUS EST FIDELISSIMÆ VETUSTATIS.** 4 Coke, 78. A custom of the truest antiquity is to be retained.

**MOSCOW INTERNATIONAL.** See Third International.

**MOSLEM LAW.** One of the two great systems of customary law which the English found in India. It regulated the life and relations of all Moslems, and parts of it, especially its penal provisions, were applied to both Moslems and Hindus. Bryce, Extension of the Law.

**MOST FAVORED NATION CLAUSE.** A clause found in most treaties providing that the citizens or subjects of the contracting states may enjoy the privileges accorded by either party to those of the most favored nations. It is said that the general design of such clauses is to establish the principle of equality of international treatment. The test of whether this principle is violated by the concession of advantages to a particular nation is, not the form in which such concession is made, but the condition on which it is granted; whether it is given for a price, or whether this price is in the nature of a substantial equivalent, and not of a mere evasion. The United States has always taken the stand that reciprocal commercial concessions are given for a valuable consideration and are not within the scope of this clause. Whitney v. Robertson, 124 U.S. 190, 8 S.Ct. 456, 31 L.Ed. 386. Great Britain has taken the opposite position.

See Consular Treaty Rights and Comments on the "Most Favored Nation" Clause, by Ernest Ludwig; 3 Amer.Journ.Int.L. 57; Herod, Most Favored Nation Treatment; Moore's Dig.Int.Law; 3 Amer. Journ.Int.Law 395.

**MOSTRENCOS.** In Spanish law, strayed goods; estrays. White, New Recop. b. 2, tit. 2, c. 6.

**MOTE.** Sax. A meeting; an assembly. Used in composition, as *burgmote*, *folkmote*, etc.

**MOTE-BELL.** The bell which was used by the Saxons to summon people to the court. Cowell.

**MOTEER.** A customary service or payment at the mote or court of the lord, from which some were exempted by charter or privilege. Cowell.

**MOTHER.** A woman who has borne a child. Gardner v. Hall, 132 N.J.Eq. 64, 26 A.2d 799, 807. A female parent, Guide Pub. Co. v. Futrell, 175 Va. 77, 7 S.E.2d 133, 138. Correlative to "son" or "daughter." The term includes maternity during prebirth period. Watson v. Independent Banner of Love Soc., 54 Ga.App. 370, 187 S.E. 897, 898.

**MOTHER-IN-LAW.** The mother of one's wife or of one's husband.

**MOTION.** Parliamentary law. The formal mode in which a member submits a proposed measure or resolve for the consideration and action of the meeting.

**Practice.** Primarily an application for a rule or order made viva voce to a court or judge, but the term is generally employed with reference to all such applications, whether written or oral. Irwin v. Gilson Realty Co., 117 Fla. 394, 158 So. 77.

**Special motion.** A motion addressed to the discretion of the court, and which must be heard and determined; as distinguished from one which may be granted of course. Merchants' Bank v. Crysler, Mo., 14 C.C.A. 444, 67 F. 390.

**MOTION FOR DECREE.** Under the chancery practice, the most usual mode of bringing on a suit for hearing when the defendant has answered is by motion for decree. Hunter, Suit Eq. 59; Daniell, Ch.Pr. 722.

**MOTION FOR JUDGMENT.** In English practice, a proceeding whereby a party to an action moves for the judgment of the court in his favor. S.Ct. Rules 1883, ord. 40.

**MOTION IN ARREST OF JUDGMENT.** It is intended to avoid judgment because of unamendable defect appearing on record. Turner v. Shackleford, 43 Ga.App. 271, 158 S.E. 439, 440.

**MOTION IN ERROR.** A motion in error stands on the same footing as a writ of error; the only difference is that, on a motion in error, no service is required to be made on the opposite party, because, being before the court when the motion is filed, he is bound to take notice of it at his peril. Treadway v. Coe, 21 Conn. 283.

**MOTION TO SET ASIDE JUDGMENT.** This is a step taken by a party in an action who is dissatisfied with the judgment directed to be entered at the trial of the action.

**MOTIVE.** Cause or reason that moves the will and induces action. Commonwealth v. Trunk, 311 Pa. 555, 167 A. 333, 338. An inducement, or that which leads or tempts the mind to indulge a criminal act. People v. Lewis, 275 N.Y. 33, 9 N.E.2d 765, 768.

In the popular mind intent and "motive" are not infrequently regarded as one and the same thing. In law there is a clear distinction between them. "Motive" is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result. "Motive" is that which incites or stimulates a person to do an act. People v. Weiss, 252 App.Div. 463, 300 N.Y.S. 249, 255.

**MOTOR VEHICLE.** In the Uniform Act Regulating Traffic on Highways, 11 U.L.A., and similar statutes, any self-propelled "vehicle," defined as including every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human or muscular power or used exclusively upon stationary rails or tracks. The term "motor vehicles," although sometimes regarded as synonymous with or limited to "automobiles," often has

# BLACK'S
# LAW DICTIONARY

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern

By

## HENRY CAMPBELL BLACK, M. A.

Author of Treatises on Judgments, Tax Titles, Intoxicating Liquors,
Bankruptcy, Mortgages, Constitutional Law, Interpretation
of Laws, Rescission and Cancellation of Contracts, Etc.

REVISED FOURTH EDITION

BY

THE PUBLISHER'S EDITORIAL STAFF

ST. PAUL, MINN.
WEST PUBLISHING CO.
1968

MORTUUS

MORTUUS EXITUS NON EST EXITUS. A dead issue is no issue. Co.Litt. 29. A child born dead is not considered as issue.

MORTUUS SINE PROLE. Dead without issue. In genealogical tables often abbreviated to "m. s. p."

MOS RETINENDUS EST FIDELISSIMIE VET-USTATIS. 4 Coke, 78. A custom of the truest antiquity is to be retained.

MOSCOW INTERNATIONAL. See Third International.

MOSLEM LAW. One of the two great systems of customary law which the English found in India. It regulated the life and relations of all Moslems, and parts of it, especially its penal provisions, were applied to both Moslems and Hindus. Bryce, Extension of the Law.

MOST FAVORED NATION CLAUSE. A clause found in most treaties providing that the citizens or subjects of the contracting states may enjoy the privileges accorded by either party to those of the most favored nations. It is said that the general design of such clauses is to establish the principle of equality of international treatment. The test of whether this principle is violated by the concession of advantages to a particular nation *is*, not the form in which such concession is made, but the condition on which it is granted; whether it is given for a price, or whether this price is in the nature of a substantial equivalent, and not of a mere evasion. The United States has always taken the stand that reciprocal commercial concessions are given for a valuable consideration and are not within the scope of this clause. Whitney v. Robertson, 124 U.S. 190, 8 S.Ct. 456, 31 L.Ed. 386. Great Britain has taken the opposite position.

*See* Consular Treaty Rights and Comments on the "Most Favored Nation" Clause, by Ernest Ludwig; 3 Amer.Journ.Int.L. 57; Herod, Most Favored Nation Treatment; Moore's Dig.Int.Law; 3 Amer. Journ.Int.Law 395.

MOSTRENCOS. In Spanish law, strayed goods; estrays. White, New Recop. b. 2, tit. 2, c. 6.

MOTE. Sax. A meeting; an assembly. Used in composition, as *burgmote, folkmote, etc.*

MOTE-BELL. The bell which was used by the Saxons to summon people to the court. Cowell.

MOTEER. A customary service or payment at the mote or court of the lord, from which some were exempted by charter or privilege. Cowell.

MOTHER. A woman who has borne a child. Gardner v. Hall, 132 N.J.Eq. 64, 26 A.2d 799, 807. A female parent, Guide Pub. Co. v. Futrell, 175 Va. 77, 7 S.E.2d 133, 138. Correlative to "son" or "daughter." The term includes maternity during prebirth period. Watson v. Independent Banner of Love Soc., 54 Ga.App. 370, 187 S.E. 897, 898.

MOTHER-IN-LAW. The mother of one's wife or of one's husband.

MOTION. Parliamentary law. The formal mode in which a member submits a proposed measure or resolve for the consideration and action of the meeting.

Practice. Primarily an application for a rule or order made viva voce to a court or judge, but the term is generally employed with reference to all such applications, whether written or oral. Irwin v. Gilson Realty Co., 117 Fla. 394, 158 So. 77.

Special motion. A motion addressed to the discretion of the court, and which must be heard and determined; as distinguished from one which may be granted of course. Merchants' Bank v. Crysler, Mo., 14 C.C.A. 444, 67 F. 390.

MOTION FOR DECREE. Under the chancery practice, the most usual mode of bringing on a suit for hearing when the defendant has answered is by motion for decree. Hunter, Suit Eq. 59; Daniell, Ch.Pr. 722.

MOTION FOR JUDGMENT. In English practice, a proceeding whereby a party to an action moves for the judgment of the court in his favor. S.Ct. Rules 1883, ord. 40.

MOTION IN ARREST OF JUDGMENT. It *is* intended to avoid judgment because of unamendable defect appearing on record. Turner v. Shackleford, 43 Ga.App. 271, 158 S.E. 439, 440.

MOTION IN ERROR. A motion in error stands on the same footing as a writ of error; the only difference is that, on a motion in error, no service is required to be made on the opposite party, because, being before the court when the motion is filed, he is bound to take notice of it at his peril. Treadway v. Coe, 21 Conn. 283.

MOTION TO SET ASIDE JUDGMENT. This is a step taken by a party ih an action who is dissatisfied with the judgment directed to be entered at the trial of the action.

MOTIVE. Cause or reason that moves the will and induces action. Commonwealth v. Trunk, 311 Pa. 555, 167 A. 333, 338. An inducement, or that which leads or tempts the mind to indulge a criminal act. People v. Lewis, 275 N.Y. 33, 9 N.E.2d 765, 768.

In the popular mind intent and "motive" are not infrequently regarded as one and the same thing. In law there is a clear distinction between them. "Motive" is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result. "Motive" is that which incites or stimulates a person to do an act. People v. Weiss, 252 App.Div. 463, 300 N.Y.S. 249, 255.

MOTOR VEHICLE. In the Uniform Act Regulating Traffic on Highways, 11 U.L.A., and similar statutes, any self-propelled "vehicle," defined as including every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human or muscular power or used exclusively upon stationary rails or tracks. The term "motor vehicles," although sometimes regarded as synonymous with or limited to "automobiles," often has

# BLACK'S
# LAW DICTIONARY

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern

By

## HENRY CAMPBELL BLACK, M. A.

Author of Treatises on Judgments, Tax Titles, Intoxicating Liquors,
Bankruptcy, Mortgages, Constitutional Law, Interpretation
of Laws, Rescission and Cancellation of Contracts, Etc.

## FIFTH EDITION

BY

### THE PUBLISHER'S EDITORIAL STAFF

Contributing Authors

JOSEPH R. NOLAN
Associate Justice, Massachusetts Supreme Judicial Court
and
M. J. CONNOLLY
Associate Professor of Linguistics
and Eastern Languages, Boston College

ST. PAUL MINN.
WEST PUBLISHING CO.
1979

**MOTION**

**Motion for judgment notwithstanding verdict.** A motion that judgment be entered in accordance with the movant's earlier motion for a directed verdict and notwithstanding the contrary verdict actually returned by the jury. Huff v. Thornton, 287 N.C. 1, 213 S.E.2d 198, 204. See Fed.R.Civil P. 50(b).

**Motion for judgment on pleadings.** Under Fed.R.Civil P. 12(c) any party may move after the pleadings are closed for judgment thereon. It is a device for disposing of cases when the material facts are not in dispute and only questions of law remain. See also **Summary judgment.**

**Motion for more definite statement.** If a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement. Fed.R.Civil P. 12(e).

**Motion for new trial.** A request that the judge set aside the judgment and order a new trial on the basis that the trial was improper or unfair due to specified prejudicial errors that occurred. Fed.R.Civil P. 59.

**Motion in bar.** One which, if allowed, will absolutely bar the action; e.g. plea of double jeopardy. U. S. v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543.

**Motion in limine.** A written motion which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements. Robinson v. State, Ind.App., 309 N.E.2d 833, 854. Purpose of such motion is to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial and granting of motion is not a ruling on evidence and, where properly drawn, granting of motion cannot be error. Redding v. Ferguson, Tex.Civ.App., 501 S.W.2d 717, 724.

**Motion to dismiss.** One which is generally interposed before trial to attack the action on the basis of insufficiency of the pleading, of process, venue, joinder, etc. Fed.R.Civil P. 12(b).

**Motion to strike.** On motion of either party, the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent or scandalous matter. Fed.R.Civil P. 12(f).

**Motion to suppress.** Device used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation etc.), of U.S. Constitution. See Fed.R.Crim.P. 12(b) and 41(f); also Suppression hearing.

**Motive.** Cause or reason that moves the will and induces action. An inducement, or that which leads or tempts the mind to indulge a criminal act. People v. Lewis, 275 N.Y. 33, 9 N.E.2d 765, 768.

In common usage intent and "motive" are not infrequently regarded as one and the same thing. In law there is a distinction between them. "Motive" is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result. "Motive" is that which incites or stimulates a person to do an act. People v. Weiss, 252 App.Div. 463, 300 N.Y.S. 249, 255.

As to criminal motive, see **Criminal.** See also **Intent.**

**Motor Carrier Act.** Federal statute (administered by ICC) which regulates (routes, rates, etc.) motor carriers of freight and passengers in interstate commerce. 49 U.S.C.A. § 301 et seq.

**Mouth of river.** By statute in some states, the mouth of a river or creek, which empties into another river or creek, is defined as the point where the middle of the channel of each intersects the other.

**Movable.** That which can be changed in place, as movable property; or in time, as movable feasts or terms of court. Compare **Fixture.**

**Movable estate.** A term equivalent to "personal estate" or "personal property."

**Movable freehold.** A term applied by Lord Coke to real property which is capable of being increased or diminished by natural causes; as where the owner of seashore acquires or loses land as the waters recede or approach.

**Movables.** Things movable; movable or personal chattels which may be annexed to or attendant on the person of the owner, and carried about with him from one place to another. Things which may be carried from one place to another whether they move by themselves or whether they are inanimate objects capable of being moved by extraneous power. Succession of Young, La.App., 205 So.2d 791, 796.

**Movant.** One who moves; one who makes a motion before a court; the applicant for a rule or order.

**Move.** To make an application to a court for a rule or order, or to take action in any matter. The term comprehends all things necessary to be done by a litigant to obtain an order of the court directing the relief sought. See **Motion.**

To propose a resolution, or recommend action in a deliberate body.

To pass over; to be transferred, as when the consideration of a contract is said to "move" from one party to the other.

To occasion; to contribute to; to tend or lead to.

**Movent.** An alternative spelling of movant.

**Move out.** To vacate; to yield up possession.

**Moving papers.** Such papers as are made the basis of some motion in court proceedings, e.g. a motion for summary judgment with supporting affidavits.

**Mrs.** Title of courtesy prefixed to name of woman to indicate that she is or has been married. Guide Pub. Co. v. Futrell, 175 Va. 77, 7 S.E.2d 133, 138.

**Muciana cautio** /m(y)ùwsìyéynə kɔ́sh(iy)ow/. See **Cautio.**

**Mug book.** Collection of pictures or "mug shots" of suspects in criminal cases kept by police and FBI and displayed to victim or witnesses in order to obtain identification of criminal offender.

**Mugshot.** Pictures taken when person is booked; usually used as an official photograph by police officers.