UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                       :

UNITED STATES OF AMERICA
                                                       :

       - v. -                                      S1 11 Cr. 1091 (VM)
                                                       :

PETER J. AJEMIAN,                            ECF Case
PETER J. LESNIEWSKI,              :
MARIA RUSIN,
MARIE BARAN,                               :
JOSEPH RUTIGLIANO,
GREGORY NOONE,                         :
REGINA WALSH,
SHARON FALLOON,                        :
GARY SATIN,
STEVEN GAGLIANO,                       :
RICHARD EHRLINGER,
BRIAN DELGIORNO,                       :
PHILIP PULSONETTI,
GREGORY BIANCHINI,                  :
FRANKLIN PLAIA,
MICHAEL STAVOLA,                      :
MICHAEL DASARO,
KARL BRITTEL,                               :
KEVIN NUGENT,
GARY SUPPER,                                :
THOMAS DELALLA,
                                                       :
        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION BY DEFENDANTS RUTIGLIANO, GAGLIANO, BIANCHINI, NUGENT, DELGIORNO AND DELALLA TO VACATE THE RESTRAINING ORDER

                                                      PREET BHARARA
                                                      United States Attorney for the
                                                      Southern District of New York
                                                     Attorney for the United States of America

ANDREW D. GOLDSTEIN
Assistant United States Attorney
- Of Counsel -
One St. Andrew's Plaza
New York, New York
(212) 637-1559

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.      The Charged Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.      The Restraining Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.      Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.      Defendant-Movants Do Not Make the Threshold Showings Required for a *Monsanto* Hearing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      1.      Defendant-Movants Have Not Provided Any Evidence of Insufficient Assets to Pay for Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      2.      Defendant-Movants Have Not Established That The Restrained Assets Are Not Forfeitable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**INTRODUCTION**

The Government respectfully submits this memorandum of law in opposition to the motion by defendant Joseph Rutigliano ("Rutigliano"), joined by defendants Steven Gagliano ("Gagliano"), Gregory Bianchini ("Bianchini"), Kevin Nugent ("Nugent"), Brian Delgiorno ("Delgiorno") and Thomas Delalla ("Delalla") (together, the "Defendant-Movants"), seeking to vacate, with respect to themselves, this Court's Restraining Order (the "Restraining Order") dated October 12, 2012.  The Restraining Order prohibits the United States Railroad Retirement Board (the "RRB") from continuing to issue monthly disability payments to fourteen Annuitant Defendants, including Defendant-Movants, and orders the RRB instead to transfer the value of those monthly disability payments into the Seized Asset Fund of the United States Marshals Service in order to preserve the status quo and prevent the assets from being dissipated pending the resolution of this criminal case.

As set forth in the Government's Application for the Restraining Order (the "Government's Application"), the monthly payments at issue are derived directly from the criminal conduct alleged in the Indictment in this case – namely, false claims for disability submitted in order to attain fraudulent disability benefits from the RRB.  Accordingly, the monthly payments at issue constitute, by their very nature, direct proceeds of the offenses alleged in the Indictment.  In light of the nature of the payments and the allegations in the Indictment, there can be no question that there is probable cause to believe that the assets at issue are subject to forfeiture, and, accordingly, that the Restraining Order was properly entered.

Moreover, under settled law, for the Defendant-Movants to be entitled to a hearing on the legitimacy of the Restraining Order – let alone to have the Order vacated – they must show not

1

only that there is no probable cause for forfeiture (which they cannot show), but also that the restrained funds are "demonstrably necessary" to pay for their legal defense in this action.  *See United States* v. *Monsanto*, 924 F.2d 1186, 1193, 1203 (2d Cir. 1991).  Defendant-Movants do not even attempt to make such a showing here.  For these reasons and those set forth below, the motion to vacate should be denied.

## BACKGROUND

**A.    The Charged Conduct**

The Government's Application, and the Indictment attached thereto, sets forth the background of this case.  In short, Rutigliano, Gagliano, Bianchini, Nugent, Delgiorno, and Delalla, along with their co-defendants, are charged with participating in a fraud by which Long Island Railroad ("LIRR") workers who were ready to retire falsely claimed disability in order to receive disability benefits to which they were not entitled, in addition to their pension benefits. Specifically, LIRR employees, who were eligible to retire as early as age 50 with an LIRR pension, sought to supplement their LIRR pension with a separate RRB disability annuity which, when combined with their LIRR pension, resulted in a total income level that often approximated their pre-retirement working income.

As set forth in Counts One and Two of the Indictment, which charge the Defendant-Movants and others with conspiracy to commit mail fraud, wire fraud, and health care fraud (Count One), and conspiracy to defraud the RRB (Count Two), the defendants participated in a disability fraud mill involving, primarily, three doctors who falsely declared retiring LIRR workers to be disabled when in truth and in fact the workers were not disabled.  (Indictment ¶ 7). The Indictment alleges that Rutigliano, who was a former LIRR conductor and union president,

not only applied for and received occupational disability benefits for himself, but also performed a crucial role in the scheme as a "facilitator," in which he coordinated the disability benefit applications of LIRR employees and acted as a liaison between the employees and the doctors. (Id. ¶¶ 5, 7, 8(f) and (g)).  Gagliano, Bianchini, Nugent, Delgiorno and Delalla are charged primarily based on their own false applications for disability payments.  (Id. ¶¶ 6, 33, 39).[1]

The Indictment also contains forfeiture allegations as to Counts One, Four, and Five through Nineteen, seeking forfeiture to the United States, pursuant to 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461, of all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the respective offenses. (Indictment ¶¶ 42-46).

**B.    The Restraining Order**

On October 12, 2012, the Court granted the Government's *ex parte* application for a post-Indictment restraining order, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), 28 U.S.C. § 2461 and 21 U.S.C. § 853(e) and (f).  In support of its motion, the Government submitted an affidavit by Special Agent Adam M. Suits of the Office of the Inspector General, Office of

---

[1] The Indictment includes several additional charges against the Defendant-Movants. Count Three charges the Defendant-Movants and others with making false claims upon and against the United States by making false and fraudulent statements to the RRB in order to obtain disability benefits (Indictment ¶¶ 34-35).  Count Four charges the Defendant-Movants and others with health care fraud. (Id. ¶¶ 36-37).  Rutigliano is also charged with three counts of mail fraud (Counts Nine, Twelve and Sixteen), for his facilitation in three specific fraudulent RRB disability applications.  (Id. ¶ 39).  Bianchini, Nugent, Delgiorno and Delalla are each charged with one count of mail fraud (Counts Twelve, Seventeen, Ten, and Eighteen, respectively), for signing false RRB disability applications and mailing to or causing to be mailed to the RRB's office in Manhattan, New York, false disability recertification forms.  (Id. ¶¶ 33(r), 33(s), 33(t), 33(y), 33(z), 33(nn), 33(oo), 33(rr), 33(ss), and 33(tt)).  Finally, the six Defendants-Movants are charged with wire fraud (Count Nineteen) for their participation in a scheme that resulted in the transmission of disability payments by wire through this jurisdiction.  (Id. ¶ 41).

Investigations, United States Railroad Retirement Board ("RRB-OIG"). The assets subject to the Restraining Order are:

> as of October 12, 2012, the monthly disability benefits payments scheduled to be transferred by the RRB to the following defendants: Joseph Rutigliano, Gregory Noone, Regina Walsh, Sharon Falloon, Steven Gagliano, Richard Ehrlinger, Brian Delgiorno, Philip Pulsonetti, Gregory Bianchini, Franklin Plaia, Michael Stavola, Karl Brittel, Kevin Nugent, and Thomas Delalla (the "Annuitant Defendants")

(collectively, the "Restrained Assets").[2] The monthly annuity amounts that would otherwise have been paid, as of October 1, 2012, were as follows: to Rutigliano, $2,395.21 per month; to Gagliano, $3,502.18 per month; to Bianchini, $3,235.36 per month; to Nugent, $3,712.45 per month; to Delgiorno, $3,725.52 per month; and to Delalla, $3,504.01 per month.

On October 18, 2012, Rutigliano filed the pending motion to vacate the Restraining Order. In his motion, Rutigliano does not assert or provide any evidence that he needs the monthly payments to pay for his legal defense in this action, nor does he dispute that the payments, if permitted to continue, would be dissipated prior to final resolution of this case. Instead, Rutigliano's motion challenges the probable cause supporting, and the prompt need for, the Restraining Order, and claims a deprivation of his constitutional rights to due process. By letters to the Court dated October 22, 26, and November 5 and 6, 2012, defendants Gagliano, Bianchini, Nugent and Delalla (both November 5, 2012), and Delgiorno, respectively, joined in Rutigliano's motion to vacate, without providing any additional support for the motion, and without providing any evidence that the monthly payments are needed to support their respective legal defenses.

---

[2] The Government has entered into Stipulations with defendants Walsh and Noone regarding the Restraining Order, based on Walsh's and Noone's current eligibility for full pension benefits as opposed to disability benefits.

# ARGUMENT

## A. Legal Standard

As set forth in the Government's Application, Section 853(e)(1)(A) of Title 21 of the United States Code provides that the Government may move for a restraining order upon the filing of an indictment charging a violation for which forfeiture may be ordered in order to preserve the availability of assets subject to forfeiture. *See* 21 U.S.C. § 853(e)(1)(A). By its terms, Section 853(e)(1)(A) does not require a district court to hold a probable cause hearing prior to issuing a pretrial restraining order. *Id.*

It is well-settled that the restraint on a defendant's use of potentially forfeitable property serves an important public interest and is an appropriate means of "fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions." *United States* v. *Nichols*, 841 F.2d 1485, 1501 (10th Cir. 1988) (quoting *Calero–Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974) (Brennan, J.)). In *United States* v. *Monsanto* ("*Monsanto IV*"), the Second Circuit noted that the Government's ability to secure forfeitable assets on an *ex parte* basis prior to trial serves several important public ends, including "separating a criminal from his ill-gotten gains," "permitting recovery of assets by their rightful owners" and "promptly heading off any attempted disposal of assets that might be made in anticipation of a criminal forfeiture." 924 F.2d 1186, 1192 (2d Cir. 1991) (internal citations omitted); *see also id.* at 1209 (Cardamone, J., dissenting on other grounds) (noting that in the Senate Report accompanying 21 U.S.C. § 853, "Congressional concerns initially [before turning to additional Governmental interests] focused on making the protective order easy to obtain to prevent the dissipation of assets prior to conviction" (*citing* S. Rep. No. 225, 98th Cong., 2d

5

Sess. 196, reprinted in 1984 U.S.C.C.A.N. 3182, 3379)).

To obtain a post-Indictment restraining order, the Government must show only that there is "probable cause to believe that the assets are forfeitable." *United States* v. *Monsanto,* 491 U.S. 600, 615 (1989) ("*Monsanto III*"); *see also United States* v. *Egan*, 10 Cr. 191 (JFK), 2010 WL 3000000, at *2 (S.D.N.Y. July 29, 2010).

Under *Monsanto IV* and its progeny, once such a restraining order has been issued, a defendant is entitled to a hearing challenging the enforcement of the order only if he can establish "(1) that [he] lacks assets sufficient to pay counsel . . ., and (2) that there is a bona fide reason to believe that the prior determination of probable cause as to forfeitability was erroneous." *United States* v. *All Funds on Deposit in Account Nos. 94660869 . . . Bongiorno* ("*Bongiorno*"), 10 Civ. 4858 (BSJ), 2012 WL 2900487, at *1 (S.D.N.Y. July 6, 2012) (quoting *United States* v. *Kam*, No. 10–CR–875, 2011 WL 3039589, at *4 (E.D.N.Y. Mar. 18, 2011)); *see also United States* v. *Jones*, 160 F.3d 641, 647 (10th Cir. 1998); *United States* v. *Farmer*, 274 F.3d 800, 804-05 (4th Cir. 2001); *Egan*, 2010 WL 3000000, at *5 ("most courts require 'an initial showing that [the defendant] has no other assets with which to retain private counsel' as a pre-requisite to a pre-trial hearing to challenge a restraining order") (quoting *United States* v. *Kramer*, No. 06 Cr. 200, 2006 WL 3545026, at *4 n. 4 (E.D.N.Y. Dec. 8, 2006)).

Courts in this district have routinely rejected motions to vacate or limit pre-trial restraining orders where the defendant did not provide sufficient evidence that the assets at issue were "demonstrably necessary" to fund the defendant's legal defense. *See, e.g.*, *Egan*, 2010 WL 3000000, at *5-6 (noting that the defendant provided no affidavit, sworn testimony, or other evidence demonstrating that the funds were necessary to pay for counsel of defendant's choice);

*Bongiorno*, 2012 WL 2900487, at *1-2 (declarations provided in support of defendant's motion "provided the Court with insufficient information for it to make any determination as to his ability to fund his own defense with unrestrained funds"); *United States* v. *Martinez*, No. 11 Cr. 445 (NRB), 2011 WL 4949873, at *2 (S.D.N.Y. Oct. 18, 2011) (defendant's "conclusory statements" about his need for funds to pay private counsel were insufficient absent "at least *some* tangible evidence supporting [his] claim").

Likewise, courts in this district have rejected motions for *Monsanto* hearings on the independent ground that the defendant failed to show that the assets at issue were not subject to forfeiture. *See, e.g.*, *Martinez*, 2011 WL 4949873, at *2 (defendant "failed to make a prima facie showing that the funds are not forfeitable in the event of his conviction"); *see also United States* v. *Dupree*, 781 F.Supp.2d 115, 143 (E.D.N.Y. 2011) (hearing not warranted where defendant "has not made a *prima facie* showing that the seized funds are not forfeitable in the event of his conviction"); *United States* v. *Kam*, No. 10 Cr. 875 (RJD), 2011 WL 3039589, at *5 (E.D.N.Y. Mar. 18, 2011) ("defendant offers no evidence to undercut the prior determinations of the grand jury and two magistrate judges that there was probable cause to believe that the seized accounts were funded largely through tainted assets").

**B.     Defendant-Movants Have Not Made the Threshold Showings Required for a *Monsanto* Hearing**

**1.     Defendant-Movants Have Not Provided Any Evidence of Insufficient Assets to Pay for Counsel**

As set forth above, the law in this Circuit is clear: a defendant is not entitled to challenge a post-indictment restraining order issued pursuant to 21 U.S.C. § 853(e)(1) except by establishing the prerequisites to a *Monsanto* hearing. *See, e.g.*, *United States* v. *Egan*, 2010 WL

7

3000000, at *5 ("as a condition precedent to a pre-trial hearing," there must be some showing that the restrained asset is necessary to fund a legal defense); *Bongiorno*, 2012 WL 2900487, at *1.

Here, the Defendant-Movants do not even attempt to establish the first prerequisite – that the Restrained Assets are required to pay for defense counsel. Indeed, the submissions by Rutigliano, Gagliano, Bianchini, Nugent, Delgiorno and Delalla say nothing at all about the need to use the Restrained Assets to pay for defense counsel, let alone provide affidavits, bank records or any other evidence showing that the Restrained Assets are "demonstrably necessary" to pay for counsel. These omissions, by themselves, constitute sufficient grounds to deny the motion. *See, e.g.*, *Monsanto*, 924 F.2d at 1194; *Egan*, 2010 WL 3000000, at *5-6; *Bongiorno*, 2012 WL 2900487, at *1; *Martinez*, 2011 WL 4949873, at *2.

    **2.**    **Defendant-Movants Have Not Made a Prima Facie Case That The Restrained Assets Are Not Forfeitable**

The Defendant-Movants also have not established – nor can they establish – the second prerequisite to a *Monsanto* hearing, namely, that the assets at issue are not in fact forfeitable. That is because in this case the Restrained Assets – the disability payments from the RRB to the Defendant-Movants – are themselves the direct proceeds of the alleged fraud. No asset tracing is necessary: if the Defendant-Movants are convicted, the Restrained Assets will necessarily be subject to forfeiture.

Nevertheless, Rutigliano asserts that the Court did not have a sufficient factual basis to have found probable cause that the Restrained Assets are subject to forfeiture. (Rutigliano Br. at 5-6). That is plainly wrong. The Indictment in this case, which was incorporated in the

Government's Application, contains detailed factual allegations that clearly and specifically set forth the Defendant-Movants' roles in the scheme, including how each of the Defendant-Movants submitted fraudulent disability applications to the RRB and as a result received disability benefits from the RRB to which they were not entitled. *See, e.g.*, Indictment ¶ 5 (citing Rutigliano's receipt of RRB occupational disability benefits after his retirement, and his role as a facilitator); Indictment ¶¶ 32, 33(s), (r), (t), (y), (z), (nn), (oo), (rr), (ss) and (tt) and 39 (charging Bianchini, Nugent, Delgiorno and Delalla with specific health care fraud and mail fraud acts); and Indictment ¶ 35 (charging the Defendant-Movants, including Gagliano, with false statements to RRB). Those allegations, combined with the facts set forth in the affidavit submitted by Special Agent Suits – which, among other things, detail the nature of the disability payments paid by the RRB and the RRB's inability to withhold such payments pending trial absent a court order – are more than sufficient to establish probable cause that the Restrained Assets are subject to forfeiture.

In his brief, Rutigliano refers to his purported defense to the charges in this case, including his argument that certain doctors made "independent" findings regarding his supposed disability. (Rutigliano Br. at 2-3). The Government plainly has a different view of the evidence in this regard, but this dispute is beside the point: the question for the purposes of this motion is whether there is *probable cause* that the assets at issue are forfeitable, and as set forth above, there can be no real question that there is. The ultimate merits of Rutigliano's defense will be decided at trial, absent a plea. As Judge Keenan explained in *Egan*, unless the defendant can establish both of the *Monsanto* prerequisites, including that the assets at issue are not subject to forfeiture, the defendant is not entitled to a pre-trial hearing because "[i]t is then the

9

Government's interests against a pre-trial hearing—including preserving forfeitable assets, conserving prosecutorial resources, and avoiding the premature disclosure of its trial strategy—that tip the balance towards waiting until trial to provide the defendant his opportunity to be heard." *Egan*, 2010 WL 3000000, at *5.

Rutigliano's brief also repeats his request for additional particulars regarding his involvement in the scheme. (Rutigliano Br. at 3). The Government responded to this request in its Memorandum in Opposition to Defendants' Pretrial Motions, dated October 23, 2012 (*see* Docket No. 274), and the request is irrelevant here as additional particulars are not necessary to establish probable cause. It should be noted, however, that in addition to the facts set forth in the Indictment, Rutigliano was initially charged in a detailed 73-page complaint (that was referenced in the Government's Application, *see* page 3, n. 1) that included extensive information regarding the falsity of Rutigliano's application for disability benefits and that provides yet further support for the Court's finding of probable cause. *See* Complaint ¶¶ 53, 54, 56 (alleging, *inter alia*, that Rutigliano falsely stated in support of his disability application that "'I was no longer able to do this work because of the severe disabilities I suffer,'" and that contrary to his statement, Rutigliano played golf regularly in 2008 and can be seen in a video in which he "appears to swing a golf club and walk on a golf course with ease, notwithstanding his claims to the RRB about his shoulder, knee, wrist and back conditions"; and setting forth how as early as 1991, Rutigliano began planning to retire in the fall of 1997, and in the twelve months before he ultimately retired in 1999, while claiming "severe disabilities," he worked hundreds of hours of overtime and took no sick leave).

Finally, the Defendant-Movants argue that there was no "prompt need" for the

Restraining Order because the Government did not move for such an order earlier in the case. (Rutigliano Br. at 7). Notably, however, not one of the Defendant-Movants challenges the Government's position that the assets at issue are likely to be dissipated absent a Court order. That is unsurprising due to the nature of the assets, which were being paid on a monthly basis directly into the Defendant-Movants' respective bank accounts and, as alleged in the Indictment, have allowed the Defendant-Movants to receive from the RRB in retirement monthly payments that approximate their pre-retirement incomes. If anything, the fact that the Government did not move for a Restraining Order earlier in the case cuts against the Defendant-Movants, as they have had access to tens of thousands of dollars in forfeitable funds for nearly a year, access which undoubtedly will make it more difficult for the Government to collect forfeiture and restitution following conviction(s) in this case.[3]

---

[3] The Defendant-Movants also suggest that they may have been "the subject of prosecutorial abuse," implicating their due process rights, based on the *ex parte* nature of the Government's motion. (Rutigliano Br. at 8-9.) This is hardly worthy of comment. The Government moved *ex parte* because that is the process envisioned by the statute. *See* 21 U.S.C. § 853(e).

11

## CONCLUSION

For the foregoing reasons, the motion to vacate the Restraining Order should be denied in its entirety.

Dated: November 9, 2012
      New York, New York

           Respectfully submitted,

           PREET BHARARA
           United States Attorney for the
           Southern District of New York

By:        /s/
           ANDREW D. GOLDSTEIN
           Assistant United States Attorney
           One Saint Andrew's Plaza
           New York, New York 10007
           Tel. (212) 637-1559
           Fax (212) 637-0421

## CERTIFICATE OF SERVICE

Andrew D. Goldstein, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.	I am an Assistant United States Attorney for the Southern District of New York, and am one of the Assistant United States Attorneys representing plaintiff United States of America in this case.

2.	On November 9, 2012, I caused a copy of the Government's Memorandum of Law in Opposition to the Motion by Defendants Rutigliano, Gagliano, Bianchini, Nugent, Delgiorno and Delalla to Vacate the Restraining Order, dated November 9, 2012 to be served:

	a.	By ECF on all defendants and their counsel; and

	b.	By U.S. Mail, by placing the same in an envelope with sufficient postage, on counsel for the Defendant-Movants, as follows:

		Joseph W. Ryan Jr
		225 Old Country Road
		Melville, NY 11530
		(631) 629-4968
		Attorney for Defendant-Movant Joseph Rutigliano

		Stephen P. Scaring, P.C.
		666 Old Country Road, Suite 501
		Garden City, NY 11530
		(516) 683-8500
		Attorney for Defendant-Movant Steven Gagliano

		Glenn A. Garber, P.C.
		350 Broadway
		Suite 1207
		New York, NY 10013
		(212) 965-9370
		Attorney for Defendant-Movant Gregory Bianchini

		Joseph Tacopina, P.C.
		275 Madison Avenue, 35th Floor
		New York, NY 10016
		(212) 227-8877
		Attorney for Defendant-Movant Kevin Nugent

        Leonard I. Ressler, Esq.
        125-10 Queens Boulevard
        Suite 15
        Kew Gardens, NY 11415
        (718) 263-6812
        Attorney for Defendant-Movant Brian Delgiorno

        Alan Jonathan Schwartz
        Law Offices of Alan J. Schwartz, PC
        1010 Franklin Avenue, 2nd Floor
        Garden City, NY 11530
        (516)-248-6311
        Attorney for Defendant-Movant Thomas Delalla

and causing the same to be placed in the mailroom for pick-up at the United States Attorney's Office, One Saint Andrew's Plaza, New York, NY 10007.

Dated:  New York, New York
        November 9, 2012

                                          _____/s/_____
                                          ANDREW D. GOLDSTEIN
                                          Assistant United States Attorney
                                          Southern District of New York