UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA,          :
                                   :
          - v. -                   :         S1 11 Cr. 1091 (VM)
                                   :
PETER J. AJEMIAN, et al.,          :
                                   :
          Defendants               :
------------------------------------------x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PRETRIAL MOTIONS OF REGINA WALSH

**PAUL B. BERGMAN, PC**
950 THIRD AVENUE
NEW YORK, NY 10022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,          :
                                   :
            - v. -                 :     S1 11 Cr. 1091 (VM)
                                   :
PETER J. AJEMIAN, et al.,          :
                                   :
            Defendants             :
                                   :
------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF PRETRIAL MOTIONS OF REGINA WALSH

### REPLY TO POINTS II AND III OF THE
### GOVERNMENT'S MEMORANDUM

(1)

Throughout its submission, the government attempts to present Count One and Count Two as run-of-the mill conspiracy charges, "straightforward" it says, Gov't Memo. at 1, thereby justifying the trial of Mrs. Walsh with other LIRR workers who also applied for RRB occupational disability payments. Yet its papers reveal the opposite of a straightforward, run-of-the-mill conspiracy case involving either a chain-link or hub-spoke-wheel variety of conspiracy. It is nothing more than a collection of LIRR employees each one of whom have been alleged to have committed the same crime, the submission of a false application for RRB occupational disability benefits. This Court should make no mistake: these single conspiracy and scheme charges are unprecedented and will not be sustained in fact and law at the lengthy trial the government predicts.[1]

---

[1] While the defendant Walsh has suggested that the case, if tried under the government's mistaken single conspiracy theory, should be divided for Rule 14 purposes into three groups, see Walsh Supporting Memo at Point VI, at 38-40, we believe that the only so-called "conspiracy" that could exist if the government's allegations of wrongdoing are

If successful in its endeavor, this would not be the first time that the government will have persuaded a district court to mistakenly adopt an overly expansive view of the substantive law of conspiracy as it relates to the multiple versus single conspiracy issue. *See, e.g., United States v. Johansen*, 56 F.3d 347, 350-51 (2d Cir. 1995); *United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979);[2] *United States v. Bertolotti*, 529 F.2d 149, 156 (2d Cir. 1975) ("the possibility of prejudice resulting from a variance increases with the number of defendants tried and the number of conspiracies proven.")[3]

The government's purported single conspiracy theory is that, as it had unsuccessfully argued in *Kotteakos v. United States*, 328 U.S. 750, 768-69 (1946), there is a "similarity of

---

*footnote continued...*
sustainable with respect to Mrs. Walsh, would be with Dr. Ajemian, Ms. Rusin and Marie Baran. Such a grouping would not alleviate other severance issues (*Bruton*, adverse defenses, etc.) but it would address the impending "single" conspiracy debacle which this indictment presents. Basically, no straight thing can be made from the crooked timber of this indictment, but this is the best.

[2]   *Cambindo Valencia*, a narcotics conspiracy case, is principally cited for the Court's rejection of the government's expansive single conspiracy charge, which had not much more glue than that the shipments of drugs came in on the same Columbian shipping line. It drew from Judge Oakes this initial observation, before reversing the convictions of several of the defendants:

> Despite the prodigious literature written on the subject of single and multiple conspiracies, it remains shrouded in confusion, as evidenced through the bringing of this prosecution as well as through the rulings of the court below. *Cambindo Valencia*, 609 F.2d at 621.

The government has cited *Cambindo Valencia* for an ordinary trial practice point, Gov't Memo. at 90 (the conditional admissibility of co-conspirator statements), instead of its trenchant observation, applicable to this prosecution as well, which was:

> We know of no case, however, where the boundaries of the alleged single conspiracy have been so diffuse as this one. *Id.* at 622.

[3]   *Bertolotti* concluded that the single conspiracy charged in the indictment "was, in substance, a product of the Government's imagination," 529 F.2d at 155, a turn of phrase which Judge McGaughlin employed in *Johansen*, 56 F.3d at 351. The same can be said here.

2

purpose." In *Kotteakos* the purpose was "a similarity of purpose presented in various applications for loans." *Cambindo Valencia*, 609 F.2d at 623. Here the similarity of "purpose" is in the individual applications for disability benefits. But the view that a similarity of purpose separately dispersed among many people engaged in many separate transactions, "obviously confuses the common purpose of a single enterprise with the several, through similar, purposes of numerous separate adventures of like character." *Kotteakos*, 329 U.S. at 769. The point, which is ignored by the government, is that "to determine whether one or multiple conspiracies have been proven, *Kotteakos* directs the inquiry to whether there was a 'single enterprise.'" (footnote omitted). *Cambindo Valencia*, 609 F.2d at 623. The essence of conspiracy is thus an agreement to further the common objective of an enterprise, and not the mere assemblage of individuals who have allegedly committed the same substantive crime and who may also share some other characteristics. *See also, United States v. Borelli*, 336 F.2d 376, 380 (2d Cir. 1964) (Friendly, J.) ("the gist of the offense [conspiracy] remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed <u>as to each defendant</u>."(emphasis added)).

In this case, no LIRR retiree disability applicant had any interest whatsoever in the disability applications of <u>other</u> retirees. In fact, an applicant would be affirmatively disinterested in seeing that other LIRR workers file <u>false</u> applications. It is, therefore, ludicrous to structure a single conspiracy on the central premise that individual retirees somehow furthered the goals of a <u>single</u> enterprise in which other LIRR workers routinely filed false applications. To advance that theory would involve arguing that the unimaginable <u>objective</u> of the "conspiracy" was to generate so many false applications that the widespread impact of the applications would attract the attention of investigative authorities and the

3

eventual undoing of their own individual applications for disability payments. Stated in a different way, the indictment does not allege, nor will the proof show, that a LIRR worker defendant had "a role" in the supposed conspiracy beyond obtaining disability payments for himself or herself.[4]

This fundamental flaw in the government's single conspiracy position is pointedly illustrated by the government's litmus test for a LIRR worker's membership in the conspiracy: it is whether he or she committed the substantive crime of filing a false disability application. By the government's lights, if they submitted a false application, they are *ipso facto* members of the conspiracy, otherwise they are not. The government acknowledges so much in the "amnesty" letter it has written to LIRR retirees, in which it states: **"If your application and statements submitted to the RRB relating to disability benefits were truthful, the Program is not relevant to you."** (bolded in original; see Gov't Memo. at 48; Lesniewski Memo. Ex. 1). This is nothing less than a concession by the government that in order for a LIRR retiree-defendant to be found to have joined the supposed conspiracy, the jury would need to first find that they had lied on their disability application.

But that is plainly insufficient, even if true, to draw a defendant into the conspiracy. To paraphrase the Court in *United States v. Bufalino*, 285 F. 2d 408, 417 (2d Cir. 1960), a case

---

[4] Not even drug cases, which involve the operation of "an illegal business," to use Judge Friendly's phrase in *Borelli*, 336 F. 2d at 382, treat end-users or customers of these illegal ventures as co-conspirators. *See, e.g., United States v. Gore*, 154 F.3d 34, 40-41 (2d Cir. 1998) (buyer-seller relationship insufficient to support inference of agreement to distribute narcotics). For this reason and given how unlikely it is that the government will be able to establish that the statements of one LIRR worker retiree made to anyone are "in furtherance" of a single conspiracy, defendant Lesniewski's request for a pretrial hearing or formal written proffer from the government, see Point V of Dkt. #234, makes perfect sense, even if it departs from the usual practice in the District.

in which a conspiracy case proceeded (to ultimate reversal on appeal) on just such an erroneous trial theory, it is fallacious to reason, as this indictment does, that the falsity of many applications establishes the falsity of each and hence, a single conspiracy. To allow the trial of this indictment to go forward will permit "the jury to substitute a feeling of collective culpability for a finding of individual guilt." *Id.*[5]

The single conspiracy charge in this case is nothing more a false skein designed to circumvent the principles which protect defendants from conviction based upon the prejudice deriving from the conduct of others. It is a stark reminder of Justice Jackson's observation with respect to the conspiracy charged in *Krulewitch v. United States,* 336 U.S. 440, 445 (1949)(concurring opinion) (quoting Benjamin N. Cardozo, *The Nature of the Judicial Process* 51 (1921)) of the "tendency of a principle to expand itself to the limit of its logic." *See also, Borelli,* 336 F.2d at 380.[6]

---

[5] It bears noting that the government's proposed use of statistical evidence, which the defense has opposed, is a particularly glaring effort by the government to establish "collective guilt." The government has yet to complete discovery with respect to its proposed statistical evidence – Walsh had asked for it in April, *see* Bergman Declaration, Ex. J at p. 2 – so, as with other trial matters, we will address the proper scope, if any, of such evidence, at the *in limine* stage. Plainly, though, such evidence implicates the protections provided for in Rule 702 and Rule 404(b), Fed. R. Evid. *See United States v. Figueroa,* 618 F.2d 934, 944 (2d Cir, 1980)( "There are few areas in which it is as important for this court to keep a watchful eye as on the admissibility of similar offenses in a case involving more than a single defendant.") The statistical framework which the government has proposed is simply a masquerade for the improper inference of associational guilt.

[6] It is noteworthy in this context, we submit, that the United States Attorney's Office for the Eastern District of New York, which the government concedes previously investigated this matter, nonetheless declined to prosecute these charges. Gov't Memo. at 73. The government states that, "the SDNY did not request, and generally has not received the EDNY's work product, such as, for example, opinions of the prosecutors as contained in memoranda and emails." *Id.* But if the SDNY knows that the EDNY declined to prosecute because it could discern no viable single conspiracy, the SDNY should take steps to provide that information to the defense, or at least to the Court for its *in camera*

5

(2)

The *Bruton* redactions are still a work in progress for the government and it has proposed that the "final determinations" which it will make await the *in limine* stage. Gov't Memo. at 36. The government therefore states that the defendant Walsh's severance argument based upon *Bruton* "remains unripe for adjudication," *id.* at 33, presumably to await the government's "final determinations." We continue to believe, as we had advanced in our earlier motion to the Court, see Dkt. #138, that the government should be required to make those determinations prior to the *in limine* stage. The Court did not decide that application, and although we believe in its merit, understand that the Court wishes to proceed as the government had argued in opposition to the motion, namely that the Court and counsel await the *in limine* stage of the case to sort out the impact of *Bruton* on the Rule 14 severance applications.

We await, therefore, the government's motions *in limine* and respectfully reserve our final Rule 14 severance arguments until that submission. We do wish, however, to briefly address one argument which the government has advanced in which it purports to ferret irony out of Walsh's position that the facially incriminating character of the *Bruton* statements by her co-defendants does not hinge on the use of proper names. Gov't Memo. at 37. The statement is ironic only if the *Bruton* or *Tutino* lines of precedent apply exclusively to statements referencing proper names. Neither does.

---

*footnote continued . . .*
consideration. *Cf., Bertolotti*, 529 F.2d at 155 ("internal memorandum. . .[of DEA agent] turned over to defendants as 3500 material"); *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (obligation to provide *Brady* material "exists without regard to whether that information has been recorded in tangible form.")

6

*United States v. Lung Fong Chen*, 393 F.3d 139 (2d Cir. 2004) is instructive in this regard, even though the Second Circuit ultimately sided with the government. In that case, the non-declarant defendants were members of a corporate board. They claimed that the admission in evidence of statements made to a government investigator by their co-defendant, Tu, while attempting to become a cooperating witness, imputed criminal intent to the entire board. *Id.* at 148-49. The Second Circuit, while expressly noting that "in certain instances, evidence that does not directly name a co-defendant can implicate *Bruton*," nevertheless held that these statements did not present a *Bruton* (or *Crawford*) issue because of the "substantial evidence used to link them" to the non-declarant's statement. *Id.* at 149-50. If the government is correct that a *Bruton* statement must use the non-declarants' names, that inquiry would never have taken place. In a similar case, the Eleventh Circuit reached the opposite conclusion, holding that the admission of an affidavit detailing fraudulent transactions made by corporations controlled by a defendant violated *Bruton* even though the affidavit did not expressly name that defendant. *United States v. Schwartz*, 541 F.3d 1331, 1352-53 (11th Cir. 2008).

Accordingly, the crux of the dispute for Rule 14 purposes centers on whether Walsh's co-defendant's statements facially incriminate her and the other non-declarants and, if so, whether that fact supports severance. Here, as we have pointed out in our supporting memorandum, the statements are plainly inculpatory and refer directly to Walsh and the other LIRR worker defendants through the use of collective nouns, not the sort of neutral pronouns held harmless in *Richardson*. Moreover, there is no substantial additional evidence necessary to make these statements incriminating: the jury need only realize that Walsh is indeed an LIRR retiree, a fact that is not even in dispute.

7

## REPLY TO POINT V OF THE
## GOVERNMENT'S MEMORANDUM

(1)

The government has not given the defense much to reply to insofar as the requirement of Rule 7(c)(1) that an indictment be a "plain, concise and definite written statement of the essential facts constituting the offense." Rather than deal with that language, the government focuses instead on <u>remedial</u> measures which courts customarily apply to isolated instances of claimed surplusage, which use "relevant" as the test, not "essential." The cases it relies upon have no extended discussion of the foregoing language of the Rule. The government has invited the Court, therefore, to also ignore the language of the Rule and ignore, as it also ignores, the persuasive decisions of courts outside the Circuit which <u>have</u> considered the issue.[7] Basically, the government has abstracted the remedy associated with "surplusage," and, by divorcing it from the underlying right created by the Rule, eliminated the Rule. *Cf. In Re Kings Terrace Nursing Home and Related Facility*, 184 B.R. 200, 202 (S.D.N.Y. 1950) (Kaplan, J.) ("It confuses the remedy with the right.")

The government's position necessarily ignores well-settled principles of statutory construction. No more need be said than what the Court of Appeals recently observed in *United States v. Aleynikov*, 676 F.3d 71, 81 (2d Cir. 2012):

> "[O]ne of the most basic interpretive canons, [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L.Ed.2d 443 (2009) (internal quotation marks and alteration omitted); *see also*

---

[7] *See, e.g., United States v. Cooper*, 384 F. Supp.2d 958, 960 (W.D. Va. 2005), discussed at p.8 of Walsh Memo. No Second Circuit authority of which we are aware has explicitly considered, much less rejected, the argument that what might be "relevant" is not necessarily "essential."

8

Duncan v. Walker, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L.Ed.2d 251 (2001)("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)).

The government's argument writes out of the Rule the words "essential" and substitutes in its stead, "relevant."

(2)

The government argues that the defendant Walsh's motion to dismiss Counts Three, Four and Nineteen has no merit, basing its argument on a principle with which we do not disagree, namely, that an indictment is sufficient so long as the defendant is apprised of the offense with which she is charged. *See, e.g., United States v. Berlin*, 472 F.2d 1002, 1007 (2d Cir. 1973) (Lumbard, J.) But even that broad proposition requires that the charge delineate what the defendant is alleged to have done, *i.e.*, her identifiable conduct, which, if done, constitutes the offense. These counts simply do not provide that information, nor has that information been provided in a bill of particulars. The government has offered no response to the settled authority we have provided which plainly requires such information to be set forth in the charge, or at the least, in a bill of particulars. *See, e.g., United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992); *United States v. Abrams*, 539 F. Supp. 378, 384 (S.D.N.Y. 1982); *United States v. Mermelstein*, 487 F. Supp. 2d 242, 249 (E.D.N.Y. 2007). Notably, the government does not discuss any of these authorities, nor basically the other authoritative cases cited in Point II of the defendant Walsh's Memorandum, at p. 17-21. We respectfully, therefore, draw the Court's attention once again to that submission.[8]

---

[8] Defendant Walsh joins in so much of the reply submissions of the co-defendants Rusin (Dkt# 294), Ajemian (Dkt# 290), Ehrlinger (Dkt# 288), Noone (Dkt# 291), and Rutigliano (Dkt# 279), and those anticipated from the defendant Lesniewski, which are consistent with the relief requested by Mrs. Walsh.

9

## CONCLUSION

### THE COURT SHOULD GRANT THE RELIEF REQUESTED BY THE DEFENDANT WALSH

Dated:   New York, New York
         November 16, 2012

                              Yours, etc

                              PAUL B. BERGMAN, PC

                     By: /s/ Paul B. Bergman
                            PAUL B. BERGMAN, ESQ.
                            Attorney for Regina Walsh
                            950 Third Avenue
                            New York, NY 10022
                            Tel. No.: (212) 355-7711
                            Fax No.: (212) 755-5509
                            Email: paul.bergman@paulbbergmanpc.com

*Of counsel:*
    Paul B. Bergman, Esq.
    Michael Van Riper, Esq.