ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/27/12

UNITED STATES OF AMERICA

— against —

PETER AJEMIAN, et al.,

Defendants.

**DECISION AND ORDER**

**VICTOR MARRERO**, United States District Judge.

Defendants in this case have submitted a number of motions for varying forms of pretrial relief on grounds relating to, among other things, insufficiency of pretrial discovery, insufficiency of the superseding indictment (the "Indictment"), and suppression of certain evidence.[1] (See, e.g., Docket Nos. 213, 220, 230, 231, 236, 244, 246, and 258.) The Government has filed an omnibus brief in opposition (see Docket No. 274),[2] and defendants have in turn submitted a number of reply briefs (see, e.g., 279, 288, 290, 291, 294, 295, and 296). Having reviewed the

---

[1] Defendants further submitted varying severance proposals, a topic already addressed by the Court by Order dated December 13, 2012 (the "Severance Order"). (Docket No. 310.) Because the Severance Order addresses at least some of the concerns raised in defendant Regina Walsh's ("Walsh") June 5, 2012 motion (Docket No. 138) regarding potential Confrontation Clause issues, the Court denies the motion. The Court will address defendants' specific Confrontation Clause challenges to statements sought to be introduced by the Government as these issues arise.

[2] Subsequent citations to the individual defendants' memoranda of law will be designated as "[Last Name] Brief." Citations to "Ehrlinger Brief" will correspond to Docket No. 222. The Government's memorandum of law will be designated as "Government Brief."

parties' submissions, the Court now **GRANTS** in part and **DENIES** in part defendants' pretrial motions for the reasons set forth below.[3]

## I. Motions for Expedited Government Disclosure or Production

Defendants argue, citing in part the size and complexity of this case, in favor of expedited production of certain discovery material, including prior witness statements under the Jencks Act, "other act" evidence pursuant to Federal Evidence Rule 404(b), exhibit lists and other trial materials, witness lists, and names and summaries of expert witnesses. (See, e.g., Ehrlinger Brief at 4-12.) The Government has proposed the following timetable the remaining categories of materials: 1) production of Jencks Act material 14 days prior to trial; 2) notification of Rule 404(b) evidence 30 days prior to trial; 3) production of exhibit list 14 days prior to trial; 4) production of witness list 30 days prior to trial; 5) notification of expert witnesses 60 days prior to trial. The Government's proposal further requires defendants to provide defense expert notification 30 days prior to trial. (Government Brief at 89.)

---

[3] For the sake of efficiency, the Court has organized its consideration of defendants' motions roughly by subject matter.

The Court finds that the Government's timetable acceptable here because it is "consistent with accepted practice in this District and appears reasonable under the circumstances of this case." United States v. Bosch, 385 F. Supp. 2d 387, 391 (S.D.N.Y. 2005) (finding defendant's discovery requests "premature"). Accordingly, defendants' motions are denied insofar as they seek earlier production of the trial materials in question.

Certain defendants, including, for example, Peter Ajemian ("Ajemian") and Gregory Bianchini ("Bianchini"), have raised a separate issue regarding potentially exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972), requesting that the Government search for and produce evidence from the files of the Railroad Retirement Board ("RRB") and the U.S. Attorney's Office for the Eastern District of New York ("USAO EDNY"). (See Ajemian Brief 14-16; Bianchini Brief 2-15.) The Government has represented that it has turned over all exculpatory information from the RRB of which it has been made aware (see Government Brief at 68), and that it has requested and subsequently produced materials from the USAO EDNY stemming from that office's investigation into this matter (see id. at 73). Based on these representations, the Court is satisfied that

the Government is meeting its Brady obligations and denies defendants' motions. See United States v. Canter, 338 F. Supp. 2d 460, 462 (S.D.N.Y. 2004).[4]

Finally, Peter Lesniewski ("Lesniewski") moves for a pretrial hearing or Government proffer to assess the admissibility of co-conspirator statements. As the Lesniewski Brief recognizes, the Second Circuit does not require a preliminary determination on this matter. The Court sees no reason to deviate from standard practices here and denies this motion. See United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985).

## II. Motions for Bill of Particulars

Certain defendants - Ajemian, Walsh, Joseph Rutigliano ("Rutigliano"), Gregory Noone ("Noone"), Kevin Nugent ("Nugent"), and Thomas Delalla ("Delalla") - have moved for an order directing the Government to provide a bill of particulars featuring more specific information. (See, e.g., Noone Brief 28-30.) Ajemian, joined by Walsh, specifically includes in his request the disclosure of the

---

[4] The Court is further satisfied by the Government's good-faith representations that a number of defendants' specific requests for production have been mooted. For example, defendant Peter Lesniewski requested the data underlying the Government's statistics alleged in the indictment and complaint (see Lesniewski Brief at 36-40), but the Government explained in its response that this information has since produced underlying data runs and a compilation database (see Government Brief at 8 n.2). Of course, defendants are free to renew a Brady motion should they become aware of the Government's failure to meet its ongoing obligations. See United States v. Dames, 380 F. Supp. 2d 270, 273 (S.D.N.Y. 2005).

identity of unindicted co-conspirators. (See Ajemian Brief 11.)

Under Rule 7(f) of the Federal Rules of Criminal Procedure, a defendant may seek a bill of particulars to 1) enable the defendant to prepare for trial, 2) prevent surprise, and 3) interpose a plea of double jeopardy should a second prosecution occur. United States v. Dames, 380 F. Supp. 2d 270, 273 (S.D.N.Y. 2005). Because the Court finds that the Indictment in this action is "sufficiently particular" to address these concerns (with one exception, addressed below), the motions are denied. See United States v. Minaya, 395 F. Supp. 2d 28, 34 (S.D.N.Y. 2005).

Ajemian's request for information related to the identities of unindicted co-conspirators requires its own analysis. The factors that should be considered in considering this motion include: "(1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government has otherwise provided adequate notice of the particulars; (4) the volume of pre-trial disclosures; (5) the potential danger to co-conspirators; and (6) the potential harm to the Government's investigation." United States v. Santiago, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001) (citing United States v. Nachamie, 91 F. Supp. 2d 565, 572 (S.D.N.Y.

2000)). Although the Government has otherwise provided adequate notice, the other five factors favor disclosure. See United States v. Falkowitz, 214 F. Supp. 2d 365, 390-92 (S.D.N.Y. 2002). Given the large number of named co-conspirators (and unspecified number of unnamed co-conspirators), the extended duration of the alleged conspiracy, the volume of pre-trial disclosures, the apparent lack of potential harm to co-conspirators, and the fact that the potential harm to the Government's investigation is limited by the impending trial date, the Court finds it appropriate to order the Government to show cause as to why it should not produce a limited bill of particulars identifying the names of the unidentified co-conspirators referred to in the Indictment.

### III. Motions Relating to Sufficiency of the Indictment

Defendants move to dismiss the Indictment, either in whole or in part, alleging a number of fatal deficiencies, including facial duplicity of counts one and two (see Rusin Brief 2-17), facial insufficiency due to lack of specificity (see Baran Brief 10-12; Walsh Brief 17-21), and impermissible "surplusage" (see Walsh Brief 6-17).

Maria Rusin ("Rusin") argues that the Indictment improperly charges multiple conspiracies in counts one and two, and further argues that the Government's plan (now

adopted by the Court) to sever the trials into the "Ajemian Group" and "Lesniewski Group" does not moot the issue. (See Rusin Reply Brief 6.) However, in the interim, the Government has also stated its intention to file a superseding indictment corresponding to the two trial groups, thus rendering Rusin's motion moot once and for all.

Marie Baran ("Baran") and Walsh present similar arguments regarding invalidity of the Indictment based on a lack of specificity required by Federal Rule of Criminal Procedure 7(c)(1). Baran argues that the Indictment insufficiently alleges her role in the charges, while Walsh argues that certain counts – three, four, and 19 – do not contain essential facts and circumstances. The Court is not persuaded and thus denies both motions. "Essentially, a sufficient indictment will track the language of the statute charged and identify the approximate time and place of the alleged crime." Falkowitz, 214 F. Supp. 2d at 373. The Indictment in this case, including counts three, four, and 19, meets this standard, and contains sufficient allegations against all named defendants, including Baran. See United States v. Kozeny, 493 F. Supp. 2d 693, 711 (S.D.N.Y. 2007) ("Taken as a whole, the allegations in the Indictment are plainly sufficient to withstand a motion to

dismiss. Whether the evidence ultimately will be sufficient to support a conviction is a separate issue not before the Court.")

Finally, Walsh's motion to dismiss the indictment on the grounds that it contains an overload of non-essential "surplusage" is also denied. To the extent that Walsh is expressing concerns about future jurors viewing the indictment, the Court disagrees with her conclusion that the "sole remedy" is to dismiss the indictment in its entirety. Walsh's concerns may be addressed by redaction as necessary and appropriate. See United States v. Cirami, 510 F.2d 69, 74 (2d Cir. 1975) ("[I]f a jury is permitted to see the indictment, and if any language of that indictment is surplusage or other matter that a jury may properly be instructed to disregard, we think the preferable course is to prepare a retyped 'clean' version of the indictment. . . .") (emphasis added). Moreover, the language Walsh highlights (see Docket No. 228, Ex. A) is relevant and therefore not "surplusage." See United States v. Rubin/Chambers, Dunhill Ins. Servs., 798 F. Supp. 2d 517, 522 (S.D.N.Y. 2011) (challenged allegations can be struck as surplusage only where they are "'not relevant to the crime charged and are inflammatory and prejudicial.'") (quoting United States v. Hernandez, 81 F.3d 1023, 1030 (2d

Cir. 1996). The Court therefore also denies Walsh's motion in the alternative to strike the offending passages.

### IV. Motions to Strike and/or Preclude Certain Evidence

Defendants have advanced several motions to strike certain evidence from the Indictment or to preclude its introduction entirely. Specifically, defendants have moved to strike evidence relating to Rusin in paragraph two of the Indictment (see Rusin Brief at 23-24), strike statistical "surplusage" and preclude statistical evidence (see, e.g., Gagliano Brief at 2-9), and preclude evidence specific to Noone's "golf pass application" (see Noone Brief at 17-22).

The Court follows the longstanding policy in this jurisdiction to refrain from striking alleged surplusage from indictments except in circumstances where, as discussed above, the allegations are not relevant and inflammatory. See Rubin/Chambers, Dunhill Ins. Servs., 798 F. Supp. 2d at 522. Rusin claims that mention of her injury while working for Ajemian and her subsequent receipt of disability benefits is irrelevant to this case and that its inclusion "borders on the offensive." (Rusin Brief at 24.) While Rusin is not an LIRR employee, the Court cannot say that her submissions for disability benefits – done with the assistance of Ajemian - are not relevant in a case

involving multiple submissions for disability benefits done with the assistance of Ajemian, and therefore denies her motion to strike. Likewise, the statistical evidence offered by the Government in the Indictment (including, among other things, disability rates among LIRR employees and comparisons between disability rates of LIRR employees and Metro North employees), is plainly relevant and provides a reasonable basis for making comparisons and drawing inferences. The Court therefore denies defendants' motions to strike this evidence.

The Court similarly denies defendants' motions to preclude certain evidence. Although the Court declines to issue a final ruling regarding admissibility of either the statistical evidence or Noone's "golf pass application," it likewise declines to issue a blanket ruling precluding such evidence from introduction because it is not convinced that the probative value of such evidence is substantially outweighed by the risk of prejudice or confusion. See Fed. R. Evid. 403; see also Latino Officers Ass'n, Inc. v. The City of N.Y., No. 99 CV 9568, 2006 WL 238989, at *4 (S.D.N.Y. Jan. 31, 2006) (denying motion to preclude statistical evidence and noting that "the Court is capable of instructing the jury as to the proper role of the

statistical data, and it must assume that the jury would follow such instructions").[5]

## V. Motions Relating to Amnesty Program

The Government, in partnership with the RRB and the Long Island Railroad ("LIRR"), has implemented what it terms a "voluntary disclosure and disposition program," whereby the United States Attorney's Office has agreed not to prosecute or commence any administrative proceedings against any LIRR retirees wrongfully obtaining RRB disability benefits who voluntarily agree to give up those benefits. (See Government Brief at 47-49.) Lesniewski, joined by others, argues all witnesses and information acquired as a result of this program must be suppressed because it violates defendants' Fifth Amendment right to Due Process by 1) improperly inducing cooperation among former LIRR employees, and 2) improperly intimidating and discouraging witnesses from offering testimony beneficial to defendants. (See Lesniewski Brief at 9-10.) The Court does not find that the Government's conduct has been improper and denies these motions.

First, the inducements offered by the Government do not require suppression of the resulting testimony. In

---

[5] In addition, Nugent asks the Court to preclude "evidence relating to golfing activity by defendant Nugent." (Nugent Brief at 3.) He offers no further explanation. The motion is denied.

assessing beneficial arrangements between the Government and witnesses, the Second Circuit has noted in United States v. Persico that the "overwhelming majority of courts . . . have permitted the informant's testimony to be introduced at trial and have deemed the [benefit] 'a matter for the jury to consider in weighing the credibility of the informant.'" 832 F.2d 705, 716-17 (2d Cir. 1987) (quoting United States v. Hodge, 594 F.2d 1163, 1167 (7th Cir. 1979)). Second, the Court is not persuaded by Lesniewski's hints and allegations regarding witness intimidation that the Government is abusing its grand jury power. The right to present a defense is subject to countervailing public interests, and "courts have held that a due process violation does not arise merely because the prosecutor interviews a potential defense witness in hopes of obtaining his testimony . . . or because the government warns a defense witness of the consequences of committing perjury." United States v. Williams 205 F.3d 23, 29 (2d Cir. 2000) (internal citations omitted).

### VI. Noone's Motion to Dismiss Charges Due to Violation of Kastigar v. United States

Noone moves for dismissal of the charges against him on the grounds that the use of his immunized state grand jury testimony from 2009 improperly led to his prosecution

in this case, which he claims constitutes a violation of Kastigar v. United States, 406 U.S. 441 (1972). (See Noone Brief at 23-27.) As it is the general practice in this Circuit to defer Kastigar hearings until after the trial if grounds for it then exist, this motion is dismissed as premature. See United States v. Fuller, 149 F. Supp. 2d 17, 26 (S.D.N.Y. 2001) (collecting cases).

### VII. Motion to Inspect Grand Jury Minutes

Based in part on the grounds of complexity and alleged deficiencies in the Indictment, Lesniewki, joined by others, requests the Court to order inspection of the grand jury minutes, or, in the alternative, their *in camera* production. (See Lesniewski Brief at 2-5.) The Court has discussed and rejected defendants' arguments regarding the sufficiency of the Indictment elsewhere in this Decision and Order and adopts the same reasoning in denying the motion regarding grand jury minutes, adding only that Lesniewski's speculation that "sufficiently serious doubt might exist" (Lesniewski Brief at 4) regarding the grand jury's indictment decision does not meet the burden of "particularized need" necessary to overcome the presumption of secrecy afforded to grand jury minutes. United States v. Forde, 740 F. Supp. 2d 406, 413-14 (S.D.N.Y. 2010) (internal quotation and citation omitted).

## VIII.    Renewed Motion for Jury Pool Information

Walsh renews her application for jury pool information with respect to the representation of participants aged 70 and older, noting that the Court previously has denied this application in this case.  (Docket No. 197.)  To preserve this issue for appeal, Walsh again contends that allowing potential jurors aged 70 and older to opt out of the jury pool violates the fair cross-section requirement of the Sixth Amendment and the Jury Selection Act.  (See Walsh Brief at 42-44.)  Walsh now also contends that this practice violates the Jury Selection Act's requirement that juries be randomly selected.  See 28 U.S.C. § 1867(a).  This twist does not compel a different result.

Even if a policy of granting deferrals introduces a "non-random element," it does not violate the Jury Selection Act where there is no evidence that it "caused juries to consist of something other than a fair cross-section of the community, or that it provided opportunity to discriminate against any cognizable group or any individuals in the selection process."  See United States v. Clay, 159 F. Supp. 2d 1357, 1368 (M.D. Ala. 2001).  Having already held that the practice does not violate the fair cross section requirement and that the group in

question is not cognizable, the Court denies Walsh's renewed motion.

## IX. Rutigliano's Motion to Vacate Restraining Order

Finally, Rutigliano, joined by Bianchini, Nugent, Delalla, Steven Gagliano, and Brian Delgiorno, has moved to vacate the order issued by the Court on October 12, 2012 directing the transfer of monthly payments from the RRB to a seized asset fund instead of to certain defendants, including those listed above (see Docket No. 266), and asks the Court to hold a hearing where the Government must establish "probable cause" and "prompt need." But "as a condition precedent to a pre-trial hearing, there must be some showing that the restrained funds are necessary to fund a legal defense." United States v. Egan, No. 10 CR 191, 2010 WL 3000000, at *5 (S.D.N.Y. July 29, 2010); see also United States v. Martinez, NO. 11 CR 445, 2011 WL 4949873, at *1 (S.D.N.Y. Oct. 18, 2011) (applying "Jones-Farmer Rule" requiring defendant to demonstrate lack of assets to retain counsel and make prima facie showing that assets in question are not forfeitable). None of the defendants have made any showing that links their requests to their need to retain counsel, and thus have not met the condition precedent to challenge the Court's October 12, 2012 Order. Accordingly, the motion is denied.

## X. Conclusion

For the reasons discussed above, it is hereby

**ORDERED** that the Government is directed to show cause within seven days of the date of this Order as to why it should not produce a limited bill of particulars identifying the names of the unidentified co-conspirators referred to in the Indictment; and it is further

**ORDERED** that defendants' pending motions in this action are otherwise **DENIED**.

**SO ORDERED:**

Dated:   New York, New York
         27 December 2012

_____
Victor Marrero
U.S.D.J.