UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA      :         S1 11 Cr. 01091 (VM)
                                    :
        - against -           :
                                    :        (Electronically Filed)
PETER LESNIEWSKI, et al.,      :
                                    :
                  Defendant.    :
-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PETER
LESNIEWSKI'S MOTIONS FOR A JUROR QUESTIONNAIRE
AND INDIVIDUALIZED CASE-SPECIFIC *VOIR DIRE***

JOSHUA L. DRATEL
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

THOMAS ANTHONY DURKIN
DURKIN & ROBERTS
2446 N. Clark Street
Chicago, Illinois 60614
(312) 981-0123

*Attorneys for Defendant Peter Lesniewski*

– Of Counsel –

Joshua L. Dratel
Thomas Anthony Durkin
Janis D. Roberts
Lindsay A. Lewis
Joshua G. Herman

TABLE OF CONTENTS

Table of Contents……..……………………………………………………………i

INTRODUCTION…...…………………………………………………………….1

ARGUMENT

POINT I

THE COURT SHOULD ORDER THE USE OF
A CASE -SPECIFIC JUROR QUESTIONNAIRE……………………………………….2

A.      *Dr. Lesniewski's Case Has Attracted Widespread Media Attention
        And A Juror Questionnaire Is Necessary to Identify Prejudice
        Generated By Adverse Publicity*……………………………………………..2

B.      *A Juror Questionnaire Should be Permitted In
        The Interests of Judicial Efficiency and Economy*……………………………...5

POINT II

THE COURT SHOULD ORDER THE USE OF
INDIVIDUALIZED CASE-SPECIFIC *VOIR DIRE*……………………………………….6

A.      *Individualized Case-Specific* Voir Dire *Questioning Ensures That
        Potential Jurors Will Provide Unequivocal Answers As to Their Ability
        to Decide the Case Solely on the Evidence Presented to Them in Court
        Rather Than on The Basis of Any Preconceived Opinions or Prejudices*………………...7

B.      *Individualized Case-Specific* Voir Dire *Prevents the Court From Improperly
        Relying On a Prospective Juror's Self-Assessment Of His or Her Impartiality*…………..8

C.      *"Searching" Inquiry of Prospective Jurors Is Necessary Due to
        the Substantial and Pervasive Pretrial Publicity In this Case*……………………………8

D.      *The Court Can Conserve Time and Judicial Resources By Zeroing
        in On Juror Bias Through Individualized Case-Specific* Voir Dire………………………9

POINT III

DR. LESNIEWSKI ALSO JOINS IN HIS CO-DEFENDANT
JOSEPH RUTIGLIANO'S REQUEST FOR ADDITIONAL PEREMPTORIES………………10

Conclusion…………………………………………………………………………..10

**Introduction**

This Memorandum of Law is submitted on behalf of Defendant Dr. Peter Lesniewski in support of his motions for an Order permitting the use of a juror questionnaire (attached as Exhibit A to the accompanying Declaration of Joshua L. Dratel, Esq. (hereinafter "Dratel Dec.")), and individualized case-specific *voir dire* of prospective jurors (attached as Exhibit B to the accompanying Dratel Dec.),  pursuant to Rule 24(a) of the Federal Rules of Criminal Procedure, and the Fifth and Sixth Amendments to the United States Constitution.

The right to exercise peremptory and cause challenges, which play a critical role in guaranteeing a fair and impartial jury, as protected by the Fifth and Sixth Amendments, has long been seen as "one of the most important of the rights secured to the accused," such that "[a]ny system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right must be condemned." *Pointer v. United States*, 151 U.S. 396, 408 (1894).  *See also Duncan v. Louisiana*, 391 U.S. 145 (1968).

Courts have thus held that in cases such as Dr. Lesniewski's, which involve sensitive issues and have received extensive pretrial publicity, the right to exclude biased jurors is meaningless in the absence of a reasonable system for identifying such jurors, and therefore procedures to determine whether a juror can be fair and impartial "should be liberal."  *United States v. Napoleone*, 349 F.2d 350, 353 (3d Cir. 1965) (prejudice against liars), *quoting United States v. Daily*, 139 F.2d 7, 9 (7th Cir. 1944).  *See also*, *e.g.*, *United States v. Baldwin*, 607 F. 2d 1295 (9th Cir. 1979) (bias in favor of law enforcement officers); *United States v. Washington*, 819 F. 2d 221 (9th Cir. 1987) (knowledge of government witnesses).

Accordingly, as set forth by the Honorable  James G. Carr, United States District Judge, 2009, Northern District of Ohio, "[a] well-crafted case-and defendant-specific questionnaire is

1

indispensable, along with attorney involvement in the *voir dire* process, to accomplishing that most basic of objectives—an unbiased and open-minded jury."  *See* Linda Moreno, *The Truth and Nothing But*, 33 JUL Champion 20, 21 (2009).

The Court should therefore Order the use of a juror questionnaire (*see* Exhibit A to accompanying Dratel Dec.) and individualized case-specific *voir dire* (*see* Exhibit B to the accompanying Dratel Dec.) both to permit a sufficiently thorough exploration of potential jurors' prejudices, biases and preformed conceptions about this case (in particular in light of pretrial publicity) that might render any one of them less impartial, and also to minimize intrusions into the Court's and potential jurors' time.

## ARGUMENT

## POINT I

## THE COURT SHOULD ORDER THE USE OF <u>A CASE -SPECIFIC JUROR QUESTIONNAIRE</u>

As explained in detail herein, the Court should Order the use of a juror questionnaire in Dr. Lesniewski's case (*see* Exhibit A to accompanying Dratel Declaration) both to ferret out potential jurors that have been biased against Dr. Lesniewski as a result of pretrial publicity, and to save judicial in-court time significantly by refining and streamlining the in-court questioning process.

**A.**   *Dr. Lesniewski's Case Has Attracted Widespread Media Attention And A Juror Questionnaire Is Necessary to Identify Prejudice Generated By Adverse Publicity*

It is well-settled by the Supreme Court that "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences" and thus that "[g]iven the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the juror, the trial courts must take strong measures to ensure that the balance

is never weighed against the accused." *Nebraska Press Ass'n v. Stewart*, 427 U.S. 539, 553

(1976), quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966).

      In this age, and in Dr. Lesniewski's case, in particular -- which has generated countless

articles from print and wire services, extensive television coverage, and for which a Google

search of Dr. Lesniewski's name brings up over 6,000 results -- pretrial publicity is the sole

external influence most likely to taint the venire and jeopardize Dr. Lesniewski's ability to

receive a fair trial by an impartial jury, and a juror questionnaire is therefore necessary to target

underlying juror prejudice, and to aid in the removal of prejudiced jurors from the venire pool.[1]

---

      1 *See, e.g.*, Benjamin Weiser, *Doctor Gets Eight Years in L.I.R.R. Fraud Scheme*, N.Y. Times, May 24, 2013 (available at http://www.nytimes.com/2013/05/25/nyregion/doctor-sentenced-to-8-years-in-lirr-disability-scheme.html?_r=0); Rich Schapiro, Doctor who helped LIRR workers scam $1 billion in benefits sentenced to eight years, N.Y. Daily News, May 24, 2013, (available at: http://www.nydailynews.com/new-york/lirr-scamming-doctor-sentenced-years-article-1.1354240); Alex Costello, Rockville Centre doctor sentenced to 8 years, LIHerald.com, May 29, 2013, (available at: liherald.com/stories/Rockville-Centre-doctor-sentenced-to-8-years,47968?content_source=&category_id=5&search_filter=&event_mode=&event_ts_from=&list_type=&order_by=&order_sort=&content_class=&sub_type=&town_id=); Frank Rosario and Josh Saul, Crooked Doc gets 8 years, N.Y. Post, May 25, 2013 (available at: http://www.nypost.com/p/news/local/crooked_doc_gets_years_TXtt3JAbtI8i7dRiA9Il1M); John Riley, 8 years in LIRR scandal for Dr. Peter Ajemian, Newsday, May 24, 2013 (available at: http://www.newsday.com/long-island/8-years-in-lirr-scandal-for-dr-peter-ajemian-1.5333778); FBI Press Release, Disability Doctor Peter J. Ajemian Sentenced in Manhattan Federal Court to Eight Years in Prison for His Role in LIRR Fraud Scheme, May 24, 2013 (available at: http://www.fbi.gov/newyork/press-releases/2013/disability-doctor-peter-j.-ajemian-sentenced-in-manhattan-federal-court-to-eight-years-in-prison-for-his-role-in-lirr-fraud-scheme); Walter Bogdanich, A Disability Epidemic Among a Railroad's Retirees, N.Y. Times, Sept. 20, 2008 (available at: http://www.nytimes.com/2008/09/21/nyregion/21lirr.html); Walter Bogdanich and Nicholas Phillips, Retirees May Be Abusing Insurance, L.I.R.R. Says, N.Y. Times, October 7, 2008 (available at: http://www.nytimes.com/2008/10/08/nyregion/08lirr.html).; Walter Bogdanich, Doctors Eased Path for L.I.R.R. Disability Claims, N.Y. Times, October 26, 2008 (available at: http://www.nytimes.com/2008/10/27/nyregion/27lirr.html); Walter Boganich and Nicholas Phillips, The Disability Board That Couldn't Say No, N.Y. Times, Dec. 14, 2008 (available at: http://www.nytimes.com/2008/12/15/us/15rail.html?_r=0)**;** Robert Gearty, Feds Offer Amnesty to Hundreds of LIRR Pension Disability Scammers, N.Y. Daily News, May 22, 2012 (available at: http://www.nydailynews.com/news/crime/10-busted-lirr-disability-pension-scam-

Indeed, the Supreme Court, in *Nebraska Press Ass'n v. Stewart*, 427 U.S. at 564, suggested that a "searching questioning of prospective jurors" to locate prejudice generated by adverse publicity was warranted. *See also United States v. Dellinger*, 472 F.2d 340, 374-75 (7th Cir.1972), quoting *Silverthorne v. United States*, 400 F.2d 627, 637-38 (9th Cir.1968) cert. denied, 400 U.S. 1022 (1971) ("when pretrial publicity is great the trial judge must exercise correspondingly great care in all aspects of the case relating to publicity which might tend to defeat or impair the rights of an accused" and must "insure that the *voir dire* examination of the jurors affords a fair determination that no prejudice has been fostered").

 Reviewing courts have also repeatedly found reversible error when the trial courts relied solely upon the assessment by a venire person of his or her own preconceptions and biases in cases involving extensive pretrial publicity. *See, e.g., Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Coleman v. Kemp*, 778 F.2d 1487 (11th Cir.1985); *Isaacs v. Kemp*, 778 F.2d 1482 (11th Cir.1985); *Jordan v. Lippman*, 763 F.2d 1265, 1274-82 (11th Cir.1985); *United States v. Davis*, 583 F.2d 190, 197-98 (5th Cir.1978).

Thus, in Dr. Lesniewski's case, as in many others before it, the "searching questioning of prospective jurors" begins with a thorough questionnaire, designed to elicit those personal and candid opinions that reveal what jurors *really* think, not what they imagine they *should* say in the artificial environment of a courtroom, and to hone in on any prejudices developed as a result of pretrial publicity.

---

article-1.1082449);  William K. Rashbaum and Mosi Secret, 11 Charged in L.I.R.R. Disability Fraud Plot, N.Y. Times, Oct. 27, 2011 (available at: www.nytimes.com/2011/10/28/nyregion/charges-in-lirr-disability scheme.html?ref=longislandrailroad&_r=0);  Russ Buettner, More L.I.R.R. Retirees Charged in Disability Fraud, N.Y. Times, May 22, 2012 (available at: www.nytimes.com/2012/05/23/nyregion/more-lirr-retirees-charged-with-disability-fraud.html)

**B.**     ***A Juror Questionnaire Should be Permitted In***
***The Interests of Judicial Efficiency and Economy***

While as set forth **ante**, a juror questionnaire is necessary in this case to identify juror prejudice and ensure a fair and impartial jury, a juror questionnaire should also be permitted in the interests of conserving judicial time and resources.

Confirming the value of the questionnaire, Judge Barbara M.G. Lynn (N.D. Texas) wrote in *From the Bench: A Case for Jury Questionnaires,* that the responses to the questionnaires provided "…more information in a faster and more organized way, than could be gathered in a reasonable amount of time by questioning in court, and mitigate the very real problem of jurors miming one another's answers, which often occurs in *voir dire*." 33 LITIGATION MAGAZINE No. 4 (Summer 2007). *See also* Judge Gregory E. Mize, *On Better Jury Selection: Spotting UFO Jurors Before They Enter the Jury Room,* 1999 COURT REVIEW 10 (Spring 1999).

Thus, a juror questionnaire is optimal and should be permitted because it encourages panelists to be candid in their answers -- free from the embarrassment of sharing their privately held beliefs in front of strangers -- and allows the Court the opportunity to review such answers without the threat of jury pool contamination, and because it organizes and streamlines the entire *voir dire* process.  Indeed, in counsel's experience, a questionnaire effectively and efficiently identifies jurors which both sides agree should be excused without having to appear at all, thereby saving time.

**POINT II**

**THE COURT SHOULD ORDER THE USE OF
INDIVIDUALIZED CASE-SPECIFIC *VOIR DIRE***

Individualized case-specific *voir dire* questions, as proposed by Dr. Lesniewski in

Exhibit B to the accompanying Dratel Dec., serve a dual purpose.  The primary purpose is to

ensure that the jury selected to decide this complicated and high-profile case will be fair to both

sides, and in particular that questions asked during the *voir dire* process root out any potential

jurors whose pre-conceived notions about the case and/or the defendants would prevent Dr.

Lesniewski from receiving a fair trial by an impartial jury as guaranteed by the Fifth and Sixth

Amendments.  The secondary purpose, as set forth **ante**, is to expedite the *voir dire* process by

narrowing individualized questioning to those issues most relevant to picking an impartial jury in

this case.

Also, individualized *voir dire* would insulate an entire panel of jurors from a single

juror's exposure to pretrial publicity, personal knowledge about the case, or other sources of

bias.  In this case, that is particularly important.

Conversely, a remark by a single juror could irreparably taint an entire courtroom of

potential jurors, necessitating their disqualification.  This is too great a risk to take given the

Court's concern that it will already be challenging to select a jury for a long trial occurring

during the summer.

Indeed, in the event that the Court declines to use a questionnaire, case-specific *voir dire*

questions assume enhanced importance in the *voir dire* process.  Thus, to satisfy the dual goals

set forth above, and to protect Dr. Lesniewski's constitutional right to a fair trial, the Court

should Order the use of Dr. Lesniewski's Proposed Case-Specific *Voir Dire* Questions.

**A.**    ***Individualized Case-Specific* Voir Dire *Questioning Ensures That Potential Jurors Will Provide Unequivocal Answers As to Their Ability to Decide the Case Solely on the Evidence Presented to Them in Court Rather Than on The Basis of Any Preconceived Opinions or Prejudices***

Individualized case-specific *voir dire* ensures that when prospective jurors are questioned about their impartiality, they will be made to swear *unequivocally* that they "can lay aside any opinion [they] might hold and render a judgment solely on the evidence presented in court." *United States v. Rhodes*, 177 F.3d 963, 965 (11th Cir. 1999); *see also Thompson v. Altheimer & Gray*, 248 F.3d 621, 627 (7th Cir. 2001) (citation omitted) ("[m]issing are those 'unwavering affirmations of impartiality' that permitted the district judge . . . to find the challenged juror unbiased").

This is necessary because courts have found that even when a juror has made a good faith promise that s/he will "try to be impartial," despite admitting to preconceived opinions or prejudice in the case, such assurances fall short of the Sixth Amendment guarantee of impartiality.  *See Thompson*, 248 F.2d at 626 (7th Cir. 2001) (the trial judge did not "push hard enough to determine whether [the prospective juror] could relinquish her prior beliefs" where the juror stated merely that "I can try to be as fair as I can, as I do every day"); *Wolfe v. Brigano*, 232 F.3d 499, 503 (6th Cir. 2000) ("it appears that the trial judge based his findings of impartiality exclusively upon each juror's tentative statements that they would try to decide this case on the evidence presented at trial.  Such statements, without more, are insufficient"); *United States .v Gonzalez*, 214 F.3d 1109, 1114 (9th Cir. 2000) (finding that where the juror promised to try to be impartial, but did not give an "unqualified affirmative" statement of impartiality, the Court should "have no confidence that the juror will 'lay aside' her biases or her prejudicial personal experience.").

These doubts about impartiality, which must be resolved against the juror, are most

effectively and economically drawn out by individualized case-specific *voir dire* questioning.

**B.**     ***Individualized Case-Specific* Voir Dire *Prevents the Court From Improperly Relying On a Prospective Juror's Self-Assessment Of His or Her Impartiality***

Individualized case-specific *voir dire* also avoids the need to rely on a potential juror's self-assessment of impartiality, which is of particular importance in Dr. Lesniewski's case where substantial pretrial publicity runs the risk of prejudicing the jury.

The Supreme Court has held that "[t]he juror's assurances that he is equal to the test cannot be dispositive of the accused rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" *Murphy v. Florida*, 421 U.S. at 800 (citations omitted); *see Wells v. Murray*, 831 F.2d 468, 471, n. 2 (4th Cir. 1987) (in pretrial publicity cases jurors "affirmations [of impartiality] are not universal guarantees of prospective jurors' impartiality."); *id*. ("[t]The veniremen's avowals of impartiality, however, are most suspect where the jury is comprised of individuals from a community deeply hostile to the accused"); *Kirk v. Raymark Indus*., 61 F.3d 147, 153 (3d Cir. 1995) ("[t]he district court should not rely simply on the jurors' subjective assessments of their own impartiality"). As the Eleventh Circuit stated in *Jordan,* **"**[t]he reason the court cannot rely on conclusory statements by jurors of their impartiality is apparent. In situations where the community is inflamed, '[t]he juror is poorly placed to make a determination as to his own impartiality.'" 763 F.2d at 1281, n.18.

**C.**     ***"Searching" Inquiry of Prospective Jurors Is Necessary Due to the Substantial and Pervasive Pretrial Publicity In this Case***

Where media pervades a particular trial and risks prejudicing jury, the Supreme Court has endorsed "searching questioning of prospective jurors . . . to screen out those with fixed opinions as to guilt or innocence" at *voir dire*. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 564 (1976)

(noting that Chief Justice Marshall set the example for thorough, "searching" *voir dire* at the highly publicized trial of Aaron Burr, even by 1807 standards).

The concurrence in *Neb. Press Ass'n* sets forth the method for such searching inquiry:

> In particular, the trial judge should employ the Voir dire to probe fully into the effect of publicity. The judge should broadly explore such matters as the extent to which prospective jurors had read particular news accounts or whether they had heard about incriminating data such as an alleged confession or statements by purportedly reliable sources concerning the defendant's guilt. Particularly in cases of extensive publicity, defense counsel should be accorded more latitude in personally asking or tendering searching questions that might root out indications of bias, both to facilitate intelligent exercise of peremptory challenges and to help uncover factors that would dictate disqualification for cause.

*Id.* at 601-02 (Brennan, J., concurring) (citations omitted).

Dr. Lesniewski's Proposed Case-Specific *Voir Dire* Questions follow Justice Brennan's parameters for effective *voir dire*, and as such, they should be utilized in this case to offset juror impartiality and bias as a result of prejudicial media. This is especially important in light of the coverage given the Court's remarks at Dr. Ajemian's sentencing.

**D.**    ***The Court Can Conserve Time and Judicial Resources By Zeroing in On Juror Bias Through Individualized Case-Specific* Voir Dire**

By targeting partial jurors through individualized case-specific *voir dire* employing the tactics described **ante**, the Court can dramatically reduce the amount of time it would otherwise spend on *voir dire*, while also ensuring a fair and impartial jury to the satisfaction of both parties. Indeed, if the Court does not endorse a juror questionnaire, it would be virtually impossible without case-specific *voir dire* to draw out biases specific to this case and these defendants. Thus, the Court should order the use of case-specific *voir dire*, as set forth in Dr. Lesniewski's Proposed Case-Specific *Voir Dire* Questions.

**POINT III**

**DR. LESNIEWSKI ALSO JOINS IN HIS CO-DEFENDANT JOSEPH RUTIGLIANO'S REQUEST FOR ADDITIONAL PEREMPTORIES**

**Conclusion**

For all the reasons set forth herein it is respectfully requested that the Court grant Dr. Lesniewski's motions for an Order permitting the use of a juror questionnaire in this case, in accordance with the Proposed Juror Questionnaire (Exhibit A to the accompanying Dratel Dec.), and for individualized case-specific *voir dire*, in accordance with Dr. Lesniewski's Proposed *Voir Dire* Questions (Exhibit B to the accompanying Dratel Dec.).

Dated:  June 17, 2013
        New York, New York

                                        Respectfully submitted,


                                        /s/Joshua L. Dratel
                                        JOSHUA L. DRATEL
                                        JOSHUA L. DRATEL, P.C.
                                        29 Broadway, Suite 1412
                                        New York, New York 10006
                                        (212) 732-0707
                                        jdratel@joshuadratel.com

                                        THOMAS ANTHONY DURKIN
                                        DURKIN & ROBERTS
                                        2446 North Clark
                                        Chicago, Illinois 60614
                                        (312) 913-9300
                                        tdurkin@durkinroberts.com

                                        *Attorneys for Defendant Peter Lesniewski*