UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                            :
UNITED STATES OF AMERICA                    :    S14 11 Cr. 1091 (VM)
                                            :
            Plaintiff,                      :    NOTICE OF DEFENDANT PETER
                                            :    LESNIEWSKI'S MOTION TO
   - against -                              :    RECUSE THE DISTRICT COURT
                                            :    PURSUANT TO 28 U.S.C. §455(a)
PETER LESNIEWSKI                            :
                                            :    (Electronically Filed)
            Defendant.                      :
-------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PETER LESNIEWSKI'S
MOTION TO RECUSE THE DISTRICT COURT PURSUANT TO 28 U.S.C. §455(a)**

                                            Joshua L. Dratel
                                            JOSHUA L. DRATEL, P.C.
                                            29 Broadway, Suite 1412
                                            New York, New York 10006
                                            (212) 732-0707
                                            jdratel@joshuadratel.com

                                            Thomas Anthony Durkin
                                            DURKIN & ROBERTS
                                            2446 N. Clark Street
                                            Chicago, Illinois 60614
                                            (312) 981-0123
                                            tdurkin@durkinroberts.com

                                            *Attorneys for Defendant Peter Lesniewski*

-Of Counsel-

Thomas Anthony Durkin
Joshua L. Dratel
Janis D. Roberts
Joshua G. Herman
Lindsay A. Lewis

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

POINT I

THE COURT SHOULD RECUSE ITSELF BECAUSE
ITS STATEMENT AT DR. AJEMIAN'S SENTENCING
ESTABLISHES THAT ITS "IMPARTIALITY MIGHT
REASONABLY BE QUESTIONED" AT TRIAL HEREIN . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


A.      *The Legal Standards Applicable to Recusal*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

B.      *Recusal Is Necessary Here to Guarantee Dr. Lesniewski a Fair Trial* . . . . . . . . . . . . . . .  6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Introduction

This Memorandum of Law is submitted on behalf of Defendant Dr. Peter J. Lesniewski in support of his motion to recuse the District Court pursuant to 28 U.S.C. §455(a).  As detailed below, recusal is required because the Court's remarks at the May 24, 2013, sentencing of Dr. Peter J. Ajemian, a co-defendant in this case, provide a basis to conclude that the Court's "impartiality might reasonably be questioned," and that "an objective, disinterested observer fully informed of the underlying facts" would "entertain significant doubt that justice would be done absent recusal[.]"  *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).

As discussed below, absent recusal Dr. Lesniewski will suffer irremediable prejudice because, *inter alia*,

(1) the Court's remarks failed to distinguish Dr. Ajemian from Dr. Lesniewski, and instead lumped together the medical professionals charged in the case, and declared them responsible for a vast disability fraud against the Long Island Railroad (hereinafter "LIRR") and/or the Railroad Retirement Board (hereinafter "RRB");

(2) in a case that has already received substantial media attention, and in which Dr. Lesniewski's trial is scheduled to commence July 15, 2013, less than two months from Dr. Ajemian's sentencing, the Court disseminated its remarks even wider than usual by publishing them in a separate document filed via the Electronic Case Filing (hereinafter "ECF") system;  and

(3) when, as is customary, the Court delivers a preliminary instruction at trial that the Court does not have a position on the facts of the case, and that the Court's

1

> evidentiary and other rulings should not be deemed to convey any such opinion, that instruction will have been fatally undermined by the Court's widely reported remarks at Dr. Ajemian's sentencing.

Accordingly, it is respectfully submitted that recusal is required in this case.

## Statement of the Facts

At the May 24, 2013, sentencing of Dr. Peter J. Ajemian – attended by a fairly large contingent of journalists, many of whom have covered this case extensively since its inception – the Court read a prepared statement into the record. The statement excoriated Dr. Ajemian, and adopted wholesale the government's version of the nature of the charged conspiracy.

While Dr. Ajemian had pleaded guilty, he had vigorously contested the government's depiction of the nature of the conspiracy and his role in it. *See* Ajemian Sentencing Memoranda (Dkt. #s396 & 399). Central to Dr. Ajemian's objection was the allegation that Dr. Ajemian, and by inference the other two physicians implicated in the Indictment (including Dr. Lesniewski, who has been charged therein), served as the "gatekeepers" for fraud committed against the RRB's occupational disability program. Of course, that same issue will be critical, and fundamental, as well at Dr. Lesniewski's trial.

The Court's statement ascribed to the medical professionals, including Dr. Ajemian, primary responsibility for fraud committed against the LIRR and RRB disability programs. The statement did not confine its comments specifically to Dr. Ajemian, but also included "others" who misused the practice of medicine to commit the charged offenses.

In fact, the Court declared during Dr. Ajemian's sentencing that

> [t]his proceeding presents an illustration of the staggering harm the criminal mind can bring about by means of another [criminal

> instrumentality] device not ordinarily perceived as meant for breaking the law:  the stethoscope. The case demonstrates, at least symbolically, how professional methods and instruments developed to advance medical treatment *were perversely misused by this defendant and others to further criminal ends.*  Procedures presumably meant for application by physicians to address illnesses and improve the health of patients were instead plied to fake disabilities in the service of crime.

*See* Transcript, May 24, 2013, at 14 (emphasis added).

Dr. Lesniewski is the only other medical professional – and thus the only other defendant capable of using a "stethoscope" or "professional methods and instruments developed to advance medical treatment" – charged in the Indictment, and the only such defendant proceeding to trial. In addition, at sentencing the Court concluded Dr. Ajemian had ""facilitated the conversion of many LIRR employees into convicted felons." *Id*., at 5.  Ultimately, according to the Court, "[i]n the final analysis, without the type of *phony medical services Dr. Ajemian rendered to the LIRR employees, the fraud he was convicted of would not have come to fruition.*"  *Id*., at 7 (emphasis added).

Following Dr. Ajemian's sentencing, the Court posted its statement, entitled "Statement By The Court Regarding The Defendant's Sentence, Victor Marrero, United States District Judge," on the ECF system.  *See* Dkt. #369.

**ARGUMENT**

**THE COURT SHOULD RECUSE ITSELF BECAUSE ITS STATEMENT AT DR. AJEMIAN'S SENTENCING ESTABLISHES THAT ITS "IMPARTIALITY MIGHT REASONABLY BE QUESTIONED" AT TRIAL HEREIN**

Regardless whether the Court intended to convey the impression that it believed Dr. Lesniewski is guilty of the crimes charged, unfortunately that was the message imparted by its statement at Dr. Ajemian's sentencing. Examined in the context of the standards for recusal applicable to the relevant statute, 28 U.SC. §455(a), it is respectfully submitted that recusal is required in order to ensure that Dr. Lesniewski receives the fair trial to which he is entitled.

**A.**   *The Legal Standards Applicable to Recusal*

The standards for disqualification of judges are set forth in 28 U.S.C. §455, which provides in §455(a) that "[a]ny justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In determining if a judge's "impartiality might reasonably be questioned" as set forth in §455(a), the Second Circuit has identified the following question as constituting the relevant inquiry: "would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).

As the Supreme Court has observed, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555(1994); *see also United States v. Diaz*, 176 F.3d 52, 112 (2d Cir. 1999). Moreover, as set forth in *Liteky*, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or

partiality motion." *Liteky*, 510 U.S. at 555.

Nevertheless, as the Court in *Liteky* also noted, opinions formed by the judge based on judicial, as opposed to extrajudicial facts, will require recusal when "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. *See also Diaz*, 176 F.3d at 112; *United States v. Conte*, 99 F.3d 60, 65 (2d Cir. 1996).

The standard appropriate to requiring recusal due to "deep-seated favoritism or antagonism" is illustrated in *United States v. Antar,* 53 F.3d 568 (3d Cir. 1995) (*abrogated on other grounds*).  In *Antar,* the Third Circuit reversed convictions for racketeering, securities fraud, and mail fraud offenses and ordered new trials before a different district judge because, at sentencing, the district judge disclosed that its "object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others." *Id*., at 573.

In remanding for a new trial, the Third Circuit recognized in *Antar* that while opinions meriting recusal must generally be based on extrajudicial factors, "particularly strong" biases formed during a judicial proceeding may merit recusal. *Id*. Considering the district judge's statement, the Third Circuit observed that it was "difficult to imagine a starker example of when opinions formed during the course of judicial proceedings display a high degree of antagonism against a criminal defendant." *Id*., at 576.

Central to the Court's analysis in *Antar* was that the inquiry under §455(a) is *objective*, rather than subjective, and turns on what a "reasonable person could think." 53 F.3d at 579. Thus, recusal did not hinge on whether the district judge was, in fact, biased. Indeed, the defendants' convictions were reversed and their cases remanded to a different judge because the

5

district judge's "failure to recuse in this context has *the appearance of affecting the fairness and integrity of the trial* and because it *seriously affects the public reputation of the judicial proceeding.*" *Id*. (emphasis added) (internal quotation marks omitted). *See also In re United States*, 441 F.3d 44, 66 (1st Cir. 2006) (internal quotation marks omitted) (recusing district judge because "under § 455(a), what matters is not the reality of bias or prejudice but its appearance, and quite simply and quite universally, recusal is required whenever impartiality might reasonably be questioned").

Case law in the Second Circuit follows suit, requiring recusal under §455(a) to safeguard against the "appearance of partiality, even though actual partiality has not been shown." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003). *See also In re IBM Corp.*, 45 F.3d 641 (2d Cir. 1994) (recusing because it was "manifestly clear that a reasonable observer would question the Judge's impartiality on the pending issue[,]" and making no findings as to the subjective disposition of the district judge); *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007) (§455(a) "test deals exclusively with appearances. Its purpose is the protection of the public's confidence in the impartiality of the judiciary").

**B.**     ***Recusal Is Necessary Here to Guarantee Dr. Lesniewski a Fair Trial***

Here, the Court's statement at Dr. Ajemian's sentencing provide ample basis for the conclusion that its "impartiality might reasonably be questioned." The general nature of the comments (without confining them to Dr. Ajemian) and the singling out of physicians as the main culprits and architects of the fraudulent scheme – not only without limiting the description to Dr. Ajemian specifically, but also adding "others," which any objective analysis would have to include only Dr. Lesniewski among the remaining defendants – manifests those doubts about

6

impartiality.

Also, the contents of the comments were compounded by their close proximity to the trial date for Dr. Lesniewski. Nor can it be suggested that the Court's statements at Dr. Ajemian's sentencing – subsequently posted on ECF to enhance its availability – were not intended to reach the widest audience possible. Indeed, at the June 7, 2013, pretrial conference, Assistant United States Attorney Justin S. Weddle offered that he "imagine[d] that the interest of the public were [sic] served by your Honor filing that document." Transcript, June 7, 2013, at 18.

Moreover, regardless whether the Court itself is partial, here recusal is necessary to avoid "the appearance of affecting the fairness and integrity of the trial." In that context, a failure to recuse would "seriously affect[] the public reputation of the judicial proceeding" because any jurors exposed – either directly or indirectly – to the Court's statement at Dr. Ajemian's sentencing will conclude that the Court has declared the physicians guilty.

Under such circumstances, admonitions and other instructions would be futile. Indeed, the customary preliminary instruction that the Court's rulings or comments during trial are not to be considered as opinions on the facts would be particularly unavailing. Indeed, such contradictory messages to the jury would certainly adversely affect "the fairness and integrity of the trial" as well as "seriously affect[] the public reputation of the judicial proceeding."

In addition, not only the jurors, but the defendants and observers would wonder throughout the trial whether any particular ruling by the Court was motivated or affected by the opinions the Court had previously expressed at Dr. Ajemian's sentencing. That, too, would reflect negatively on the reputation of the judicial proceeding.

Consequently, it is respectfully submitted that recusal is necessary pursuant to §455(a).

In the event the Court does not recuse itself, it is respectfully submitted that a particularly searching and comprehensive *voir dire* be conducted to eliminate any possibility that any juror has been exposed to the Court's statements at Dr. Ajemian's sentencing, either directly or indirectly.  *See, e.g., United States v. Salim*, 189 F. Supp.2d 93, 97 (S.D.N.Y. 2002) (denying change of venue motion, but noting problem of negative pretrial publicity and attitudes toward defendant would be sufficiently ameliorated because "a careful and searching voir dire and expanded jury pool are remedies used routinely in high-profile cases and are appropriate here").

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully requested that the Court recuse itself from Dr. Lesniewski's trial.

Dated: 20 June 2013
      New York, New York

                                Respectfully submitted,

                                /s/Joshua L. Dratel
                                Joshua L. Dratel
                                JOSHUA L. DRATEL, P.C.
                                29 Broadway, Suite 1412
                                New York, New York 10006
                                (212) 732-0707
                                jdratel@joshuadratel.com

                                /s/Thomas Anthony Durkin
                                Thomas Anthony Durkin
                                DURKIN & ROBERTS
                                2446 N. Clark Street
                                Chicago, Illinois 60614
                                (312) 981-0123
                                tdurkin@durkinroberts.com

                                *Attorneys for Defendant Peter Lesniewski*

-Of Counsel-

Thomas Anthony Durkin
Joshua L. Dratel
Janis D. Roberts
Joshua G. Herman
Lindsay A. Lewis