UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | S14 11 Cr. 1091 (VM) |
| PETER LESNIEWSKI,<br>MARIE BARAN,<br>JOSEPH RUTIGLIANO, and<br>STEVEN GAGLIANO,<br>            Defendants. | :<br><br>:<br>:<br><br>: | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --x

# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
## <u>DEFENDANT PETER LESNIEWSKI'S MOTION TO RECUSE</u>

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

NICOLE FRIEDLANDER
JUSTIN S. WEDDLE
DANIEL B. TEHRANI
Assistant United States Attorneys
    *Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

    -v.-                              :          S14 11 Cr. 1091 (VM)

PETER LESNIEWSKI,                 :
MARIE BARAN,
JOSEPH RUTIGLIANO, and             :
STEVEN GAGLIANO,                  :
        Defendants.
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PETER LESNIEWSKI'S MOTION TO RECUSE

The Government respectfully submits this memorandum in opposition to the application of defendant Peter Lesniewski ("Lesniewski") to disqualify the Court from this case, pursuant to Title 28, United States Code, Sections 455(a). Lesniewski asserts that an appearance of partiality exists based on the Court's statements during the recent sentencing of co-defendant Dr. Peter Ajemian ("Ajemian") in which the Court, in imposing a 97-month sentence on Ajemian, stated that its reasons for doing so included the fact that the fraud could not have succeeded without Ajemian's participation as a physician, and the fact that Ajemian and others deliberately misused medical methods and instruments intended to treat people in order to commit the crime. Lesniewski adopts a tortured reading of the Court's statements to make an argument of partiality that would be baseless even if Lesniewski's reading of the Court's statement were reasonable. The motion should be denied.

### BACKGROUND

The Government has charged a total of 32 defendants, including 21 defendants in the case before this Court, with perpetrating a massive scheme to obtain disability pensions for

employees of the Long Island Railroad ("LIRR") through fraud.  In particular, the Government has alleged that the LIRR employees paid certain "facilitators," including defendants Joseph Rutigliano and Marie Baran, to create fraudulent disability pension applications, and paid certain doctors, including Lesniewski and Ajemian, to create a bogus, medical record "paper trail" in support of those applications, in order for the LIRR employees to obtain disability pensions to which they were not entitled.  The Government has alleged that each doctor knowingly and falsely claimed that hundreds of LIRR employees were disabled in exchange for cash payments and reimbursements from medical insurance companies for unnecessary tests and visits billed by the doctors as they created each employee's medical paper trial.

Seventeen of the defendants charged in the instant case have pleaded guilty, and three, including Ajemian, have been sentenced by the Court.  During his guilty plea, Ajemian informed the Court that, as part of an agreement with others, and beginning in or about 2002:

> I began seeing large numbers of Long Island Railroad employees who sought my assistance and had them declared occupationally disabled as of their retirement date from the Long Island Railroad knowing that these employees were not in fact disabled.
>
> And from 2004 to 2008 I prepared narratives for submission to the Railroad Retirement Board on behalf of these employees.  These narratives recited a medical basis for these claims of disability when, in essence, in truth and in fact these employees were not in fact disabled and could have continued working in their railroad jobs as they had without complaint right up to the time of their retirement date.  I knew that the narratives I prepared would be used by the claimants and relied upon by the Railroad Retirement Board and private insurers to pay benefits to Long Island Railroad claimants.
>
> I further knew that many private insurers and healthcare benefit providers . . . were in fact billed for unnecessary tests, treatments, and procedures.

2

Transcript of Peter Ajemian Plea at 19-20.  Following the plea, in connection with Ajemian's sentencing, the Court received sentencing submissions from Ajemian and the Government, and a Pre-Sentencing Report ("PSR") from the U.S. Probation Department ("Probation") which, among other things, set forth numerous findings of fact regarding the nature of the conspiracy and Ajemian's role in the scheme.  At the sentencing, the parties stated that they had no objections to the PSR's findings, which the Court adopted, and the Court heard arguments from the parties in support of their respective views as to what Ajemian's sentence should be.  In the context of those arguments, Ajemian claimed that his culpability was reduced because others were at fault in permitting the fraud to succeed --- an argument that went not to his guilt or innocence of the crimes to which he pled guilty, but only to the appropriate sentence.  The Government argued in response that Ajemian's role in the offense deserved greater, rather than less punishment, and his arguments about the purported negligence of the victim likewise demonstrated that a substantial sentence was warranted.

     Ultimately, the Court imposed a 96-month sentence on Ajemian, and it stated in open court its reasons for doing so, as it was bound by law to do.  See 18 U.S.C. §3553(a) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence. . . .").  Among those were the reasons which Lesniewski complains about here, namely, the tremendous harm that Ajemian and his co-conspirators caused through their misuse and abuse of professional medical methods and instruments for treatment, and the fact that "without the type of phony medical services Dr. Ajemian rendered to the LIRR employees, the fraud he was convicted of would not have come to fruition."  Ajemian Sentencing Transcript at 5, 7.

3

## ARGUMENT

There is no basis in law or fact for a reasonable observer to question the Court's impartiality based on the Court's statements at Ajemian's sentencing regarding the seriousness and nature of Ajemian's crimes. Accordingly, Lesniewski's motion should be denied.

### A. Applicable Law

Title 28, United States Code, Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute also enumerates specific circumstances in which a judge must disqualify himself, including when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

The Second Circuit has noted that Section 455 "adopts the objective standard of a reasonable observer." *United States* v. *Bayless*, 201 F.3d 116, 126 (2d Cir. 2000).

> [A] court of appeals must ask the following question: Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?

201 F.3d at 126 (quoting *Diamondstone* v. *Macaluso*, 148 F.3d 113, 120-21 (2d Cir. 1998)). A judge is presumed to be impartial and the defendant bears a substantial burden to prove otherwise. *See Farkas* v. *Ellis*, 768 F. Supp. 476, 478 (S.D.N.Y. 1991); *McCann* v. *Communications Design Corp.*, 775 F. Supp. 1506, 1522 (S.D.N.Y. 1991).

Thus, the objective standard of Section 455(a) is not to be applied "by considering what a straw poll of the only partly informed man-in-the-street would show." *Bayless*, 201 F.3d at 126-

4

27 (internal quotation marks and citations omitted).  Accordingly, a judge weighing recusal "must ignore rumors, innuendos, and erroneous information," *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981), and avoid granting recusal motions for reasons that are "remote, contingent, or speculative." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).  "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Drexel*, 861 F.2d at 1312.  Judges "must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning [the judge's] impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Id.*  Thus, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *Aguinda*, 241 F.3d at 201.  Recusal motions "are committed to the sound discretion of the district court, and this Court will reverse a decision denying such a motion only for abuse of discretion." *United States* v. *LoCascio*, 473 F.3d 493, 495 (2d Cir. 2007).

In *Liteky* v. *United States*, 510 U.S. 540 (1994), the Supreme Court discussed the high burden a party must meet in order to make judicial disqualification appropriate.  The Court noted that "opinions held by judges as a result of what they learned in earlier proceedings" are not "subject to deprecatory characterization as 'bias' or 'prejudice,'" 510 U.S. at 551, and that a court's comments during a proceeding that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555 (noting also that "[t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill-disposed towards the defendant, who has been

5

shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings"). The Court went on to state that "opinions formed by judges on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." 510 U.S. at 555; *see United States* v. *Carlton*, 534 F.3d 97 (2d Cir. 2008) (citing *Liteky* and finding that the district court properly presided over the criminal trial of a defendant whom the court had previously determined to be guilty of the same offense in a revocation hearing).

### B. Discussion

Lesniewski has utterly failed to establish that the Court's impartiality might reasonably be questioned. Just as, ordinarily, "opinions formed by judges on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion," *Liteky*, 510 U.S. at 551, it was entirely appropriate for the Court (and indeed, incumbent upon the Court under Section 3553(a)) to express views at Ajemian's sentencing about the nature and extent of the crimes to which Ajemian had pleaded guilty to committing. This conclusion is amply supported by *Carlton*, in which the Second Circuit rejected a claim that the district court should have recused itself where the court presided over the criminal trial of a defendant whom the court had previously determined to be guilty of the same offense in a supervised release revocation hearing. 534 F.3d

6

at 101 ("[k]nowledge acquired by the judge while he performs judicial duties does not constitute grounds for disqualification").

Here, as in *Carlton*, knowledge of the conspiracy acquired by the Court in the performance of its duties in connection with this case and Ajemian's sentencing are no grounds for disqualification. 534 F.3d at 101. Moreover, the circumstances leading to Lesniewski's claim of partiality or bias here do not even come to close to those at issue, and deemed totally insufficient to warrant recusal, by the Second Circuit in *Carlton*. Here, far from a situation in which, prior to presiding over the defendant's criminal trial, a court found the same defendant guilty of the same offense alleged at trial (a situation the Second Circuit deemed insufficient to warrant recusal), the most Lesniewski even (wrongly) alleges here is that, if one construes and extrapolates from the Court's remarks about a similarly situated defendant, then those remarks could be read "by inference" to suggest that the Court has an unexpressed view about Lesniewski's culpability. Def. Mot. at 2. This allegation is wholly inadequate to meet the high standard of *Liteky*, *Carlton*, and their progeny. See *Liteky*, 510 U.S. at 551 (noting that a trial judge need not be recused because that judge presided over the prior trials of co-defendants and learned damaging facts about the defendant, or learned about evidence, later suppressed, that is damaging to a defendant); *Carlton*, 534 F.3d at 101; *United States* v. *Cowden*, 545 F.2d 257, 265-66 (1st Cir. 1976) ("[T]he judicial system could not function if judges could deal but once in

7

their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case.").[1]

On top of being wholly insufficient as a matter of law, Lesniewski's allegation about the supposed partiality expressed in the Court's statements is also baseless as a matter of fact.  The Court's statements at Ajemian's sentencing were an entirely appropriate description of the nature and seriousness of Ajemian's participation in the conspiracy.  To begin with, the Court's statement did not simply "adopt[] wholesale" the Government's views of the Ajemian's offense, as Lesniewski suggests, Def. Mot. at 2, but reflected (1) the findings and recommendation of the Probation Department, which described Ajemian's instrumental role in a huge and long-running conspiracy, and his perversion of his duties as a physician in order to effectuate the scheme; and (2) Ajemian's own allocution, in which Ajemian plainly admitted his major role in a wide-ranging conspiracy and fraud.  Put simply, there is no question that the Court's statement was soundly based on the record before it.

Nor can the Court's statements reasonably be read as saying anything about Lesniewski at all.  Lesniewski adopts a tortured and decidedly unreasonable reading of the Court's comments in attempting to attribute some partiality (or the appearance of partiality) to the Court. Lesniewski complains principally about two statements: first, the statement that "[t]he case demonstrates, at least symbolically, how professional methods and instruments developed to advance medical treatment were perversely misused by this defendant and others to further

---

[1] In addition, of course, contrary to Lesniewski's interpretation of the Court's statements about Ajemian, at the parties' most recent pre-trial conference, the Court stated explicitly, on the record, that the Court has no personal views about Lesniewski's culpability in this case.

8

criminal ends," and second, that "without the type of phony medical services Dr. Ajemian rendered to the LIRR employees, the fraud he was convicted of would not have come to fruition." Def. Mot at 3 (citing the Ajemian sentencing transcript). The first statement expresses nothing more than the fact that Ajemian's crime was a conspiracy, a fact that Ajemian and nearly a dozen of his former patients admitted in pleading guilty in this case. Lesniewski's suggestion – that the Court simply must have been tacitly referring to Lesniewski in stating that medical methods and instruments were misused by Ajemian and others – is neither reasonable nor plausible. Eleven of Ajemian's former patients pleaded guilty in this case, prior to Ajemian, to charges including health care fraud and conspiracy to commit health care fraud in connection with their visits to Ajemian in the scheme. Each of them has allocuted in open court to visiting Ajemian with the intent of creating a medical paper trail of unnecessary medical tests and visits in order to support a bogus disability claim. In other words, Ajemian wielded his medical license and methods, and his co-conspirators (1) misused his willingness to do so to commit health care fraud on their private health insurance, and (2) misused the fraudulent results of his conduct to support their fraudulent claims on the RRB and others. The Court's statement, that Ajemian's professional methods and instruments were misused by Ajemian and others to advance criminal ends, is nothing more than a summary of what Ajemian and eleven other defendants in this case have already stated, and Lesniewski's attempt to twist it into something else should be rejected.

The other statement about which Lesniewski complains – that the fraud could not have occurred without Ajemian's phony medical services – requires even more twisting in order to read it in a way that remotely suggests any partiality by the Court in Lesniewski's case. The

9

Court's statement plainly addressed Ajemian's conduct and Ajemian's culpability in the scheme, and nothing else.[2]

Lesniewski's citation to *United States* v. *Antar*, 53 F.3d 568 (3d Cir. 1995) is inapposite. In *Antar*, the district court informed the parties that his personal goal, from the outset of the prosecution, was to enforce a judgment that had been issued against the defendant in a related civil proceeding and return the defendant's fraudulently obtained money to the public. 53 F.3d at 575. In remanding for a new trial, the Third Circuit noted that the circumstances presented in that case were highly unusual and extreme, and explicitly distinguished them from a situation in which a defendant simply alleges (as Lesniewski essentially does here) "that judge's previous experience with the case may have left him disdainful of one party's position." *Id.* at 575-76 (noting that '[p]ost– *Liteky* cases involving allegations of bias derived from judicial proceedings have construed the exception to the extrajudicial source requirement narrowly."). Lesniewski does not allege, and obviously there is no basis to suggest, that the Court expressed any personal preference or goal with respect to the outcome of this case as the district court improperly did in *Antar*.

Lastly, while Lesniewski complains that the Court's statements came in "close proximity" to his trial date, Def. Motion at 7, there is nothing unusual or uncommon about a defendant being sentenced prior to the trial of co-defendants; indeed, Lesniewski was well

---

[2] It should be noted that whether a defendant serves as a "gatekeeper" in the fraud is primarily an issue of punishment. Thus, although the Government anticipates that the trial evidence will demonstrate that Lesniewski, as a medical doctor willing to corrupt his license and experience in furtherance of a fraud and to line his pockets, played a critical role in the fraud, his guilt of the charged crimes depends not at all on whether he is a "gatekeeper" or not.

aware, as were all the parties, of Ajemian's scheduled sentencing date, and made no objection to it. Furthermore, as set forth above, it was not only appropriate, but incumbent upon the Court, for the Court to place on the record during the sentencing its reasons for imposing the 96-month sentence it imposed on Ajemian, and the Court would have committed reversible error had it failed to do so. See 18 U.S.C. § 3553. Lesniewski's final claim, that the Court demonstrated partiality by filing its remarks on ECF, is also baseless. Ajemian's sentencing was an open and public proceeding, attended by several journalists (some of whom asked the court reporter to provide them with a same-day transcript of the proceeding) and the Court's statements were made on the record. The document filed by the Court was nothing more than a transcript of its statements which, as set forth above, were totally appropriate and unobjectionable.

## CONCLUSION

For the foregoing reasons, the Court should reject Lesniewski's motion to recuse in its entirety.

Dated: New York, New York
June 22, 2013

          Respectfully submitted,

          PREET BHARARA
          United States Attorney for the
          Southern District of New York

By:   /S/ Nicole Friedlander
      NICOLE FRIEDLANDER
      JUSTIN S. WEDDLE
      DANIEL B. TEHRANI
      Assistant United States Attorneys
      Tel.: 212-637-2211/2312/2455