UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | S14 11 Cr. 1091 (VM) |
| PETER LESNIEWSKI, MARIE BARAN, JOSEPH RUTIGLIANO, and STEVEN GAGLIANO, | : : : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT PETER LESNIEWSKI'S MOTION FOR A JURY QUESTIONNAIRE**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

JUSTIN S. WEDDLE
NICOLE FRIEDLANDER
DANIEL B. TEHRANI
Assistant United States Attorneys
   *Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | : S14 11 Cr. 1091 (VM) |
| PETER LESNIEWSKI, MARIE BARAN, JOSEPH RUTIGLIANO, and STEVEN GAGLIANO, | : : |
| Defendants. | : : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PETER LESNIEWSKI'S MOTION FOR A JURY QUESTIONNAIRE**

The Government respectfully submits this memorandum in opposition to the motion of defendant Peter Lesniewski ("Lesniewski") for a jury questionnaire and for other special jury voir dire procedures. Lesniewski has proposed a 77-question written questionnaire (not including sub-parts), wrongly suggesting that the use of such a questionnaire will "substantially shorten[] the jury selection process," and is "necessary" to ensure an impartial jury based on what Lesniewski claims are "countless" news articles related to this case. (*See* Proposed Questionnaire at 1; Lesniewski Mem. at 3). The Government submits that a written questionnaire is unnecessary, inappropriate, and would waste a substantial amount of time at trial, and that a standard voir dire will ensure a fair and impartial jury. In addition, the Government notes that Lesniewski proposes a number of intrusive and unnecessary questions for prospective jurors, and the Government has submitted under separate cover a proposed

examination of prospective jurors, which the Government respectfully submits is a more standard and appropriate questionnaire designed to meet the purposes of voir dire.

## I. The Court Should Follow Its Standard Voir Dire Procedures and Decline to Use a Written Questionnaire

### A. Applicable Law

It is well-settled that "judges have been accorded ample discretion in determining how best to conduct the *voir dire*," *Rosales–Lopez v. United States,* 451 U.S. 182, 189 (1981), and that "an appellate court will not interfere with the manner in which it has been conducted absent a clear abuse of discretion." *United States v. Salameh,* 152 F.3d 88, 121 (2d Cir.1998) (internal quotation marks omitted); *accord* Fed. R. Crim. P. 24(a) (describing court's authority to examine prospective jurors or permit parties to do so). Indeed, the Second Circuit has stated that the methodology of voir dire is not only within the district court's discretion, but "quintessentially so." *United States v. Lawes,* 292 F.3d 123, 128 (2d Cir.2002).

Thus for example, in affirming Judge Rakoff's refusal to issue a written questionnaire in the high profile prosecution of a corporation's chief executive officer arising out of the Wall Street "options backdating" scandal earlier this decade, the Second Circuit noted that it was well within the district court's "extensive discretion" to refuse to use a written questionnaire in the case. *United States v. Treacy***,** 639 F.3d 32, 47 (2d Cir. 2011) (stating also that it was within the district court judge's discretion to state that he had a policy of refusing to use written questionnaires "because he offered a rational, non-arbitrary reason for his policy – that, in his experience, jurors tended to understand written questions differently from those who drafted the questions, leading to substantial difficulty in parsing their responses").

2

Courts in the Southern District of New York have routinely exercised their substantial discretion to deny defendants' requests for written questionnaires, including in cases that were far more high-profile, and involved far more inflammatory allegations, than this one. *See*, *e.g.*, *United States v. Salameh*, No. S5 93 Cr. 0180 (KTD), 1993 WL 364486, at *2 (rejecting a motion for a written questionnaire at the trial of the defendants allegedly responsible for the 1993 World Trade Center bombing); *United States v. Tomero*, 486 F. Supp. 2d 320, 324 (S.D.N.Y. 2007) (denying request for questionnaire in RICO murder case involving the Genovese crime family and requiring anonymous jury); *United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003) (rejecting motion for use of a written questionnaire at the trial of the former president of the New York City Housing Development Corporation, who was charged with fraud and possession of child pornography); *Treacy*, 639 F.3d at 47 (affirming district court's refusal to use questionnaires).

### B. A Written Questionnaire Is Unnecessary and Inappropriate, and Would Waste Substantial Time at Trial

Lesniewski has made no showing that a written questionnaire is necessary or appropriate, and the Government submits that the opposite is true. To begin with, the most Lesniewski alleges is that this case has received pre-trial publicity. While it has received news coverage, the case is far from "permeated" with media attention. Indeed, a search of Westlaw's United States Newspapers database ("USNP") reveals that from February 1, 2013 to date, there have been only 10 articles or letters published (including one opinion piece published in multiple

3

papers) that mention this case at all.[1]  This is far from the type of saturation coverage that might warrant unusual procedures.[2]  Furthermore, Lesniewski has made no showing as to why it would be inappropriate or less useful to follow the typical procedure of questioning a prospective juror outside the presence of the venire as to any particularly sensitive matter, including knowledge of the case gleaned from news reports.

By contrast, juror questionnaires are time-consuming to create, and copying and reviewing completed questionnaires is a substantial administrative burden and time-consuming for both the Court and counsel, and there is no reason to believe that any written questionnaire would elicit a juror's views in any clearer or better fashion than the Court's standard voir dire procedure.  Indeed, as the district court noted in refusing to use a questionnaire in *Treacy*, there is every reason to think that the parties will find written responses ambiguous and confusing, ultimately requiring the very oral questioning that Lesniewski purportedly seeks to avoid. *Treacy*, 639 F.3d at 47 (noting the district court's expressed view that "jurors tended to understand written questions differently from those who drafted the questions, leading to substantial difficulty in parsing their responses").  Thus, on top of wasting substantial time among the parties and the Court in pre-trial preparation, because it is likely to require substantial follow-up questioning on jurors' answers, a written questionnaire is likely to waste a substantial

---

[1] *See* USNP database at www.westlaw.com (accessed on June 22, 2013 using the terms "disability w/p (fraud or payments) and (LIRR or RRB)")).

[2] In an effort to bolster his claim about the purportedly great extent of his pre-trial publicity, Lesniewski cites a Google search of his own name, which he alleges returns 6,000 results.  The Government respectfully submits that, in this digital age, that is a low figure.  A similar Google search conducted on June 23, 2013 for the names of each of Lesniewski's two attorneys, along with the word "attorney," pulls up over 11,000 hits and 19,000 hits, respectively.

amount of trial time. The Court's standard voir dire practice is more efficient, and has the added benefit of permitting the Court and counsel to observe the demeanor of prospective jurors in answering questions.

## II. There is No Need for an "Individualized" Voir Dire, and Lesniewski's Proposed Voir Dire Includes Questions That Are Inappropriate and Overly Intrusive in Any Event

Lesniewski also requests that the Court conduct an "individualized" *voir dire*. While it is not clear what Lesniewski means by "individualized," to the extent Lesniewski is suggesting that each prospective juror should be questioned outside the presence of any other prospective juror, the Government submits that such a procedure is unnecessary and inefficient. To being with, because voir dire is subject to the normal rules requiring public proceedings, it is logistically difficult to conduct a voir dire of each prospective juror alone while ensuring full access by the public and the press (absent a justified limitation on access after consideration of the factors set forth in *Waller v. Georgia*, 467 U.S. 39, 48 (1984)). *See United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012).[3] Moreover, only a relatively small number of prospective jurors' answers would raise privacy concerns or issues of taint that would require measures to ensure that other prospective jurors not hear them, and those matters, as in any typical voir dire, can be discussed at side bar or in the robing room. Thus, the Government submits that the Court should conduct a voir dire in open court, and where appropriate because of privacy concerns or issues of taint, to pose certain questions at sidebar or in the robing room.

---

[3] The four *Waller* factors are: "(1) the party seeking to close the proceeding must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make findings adequate to support the closure." *Gupta*, 699 F.3d at 687 (internal quotation marks and brackets omitted).

5

Finally, the Government objects to a number of Lesniewski's proposed voir dire questions, which are inappropriate, overly intrusive, and unnecessary, as set forth below. "The decision as to the questions to be asked in voir dire largely rests within the informed discretion of the trial judge." *United States v. Tutino,* 883 F.2d 1125, 1133 (2d Cir. 1989) (citing *Rosales–Lopez v. United States,* 451 U.S. at 189), and the decision as to what questions will be asked will not be disturbed absent a clear abuse of discretion. *United States v. Silva,* 715 F.2d 43, 50 (2d Cir. 1983). A trial judge is required to permit at least some questioning with respect to any material issue that may actually or potentially arise during the trial, but the questioning "need not include specific points requested by a particular defendant." *Tutino*, 883 F.2d at 1133 (citing *United States v. Taylor,* 562 F.2d 1345, 1355 (2d Cir. 1977)). "As long as a defendant's substantial rights are protected by a voir dire designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal." *United States v. Barnes,* 604 F.2d 121, 140 (2d Cir. 1979).

A number of the voir dire questions proposed by Lesniewski are inappropriate (e.g., proposed question 10, regarding race and ethnicity) and unnecessarily intrusive (questions 34-35 (hobbies and political activity), 37-44 (multiple questions on reading, television and radio habits), 50 (desire to be a police officer)), and the Government submits that the Court should not ask such proposed questions. Particularly inappropriate are Lesniewski's proposed questions 62, and 67-73, which ask about how prospective jurors "feel" about various legal rules. The Government submits that rather than asking jurors about their "feelings" about legal rules, the Court should follow the standard practice of courts in this district, and simply inform the

prospective jurors that they will be instructed on certain legal principles, and ask whether they have any reason to believe they will be unable to follow those instructions.

In sum, the Government submits that a normal voir dire will provide more than enough information for the Court and the parties to assess the fairness of prospective jurors and their fitness to serve, and to exercise peremptory challenges. The Government is separately submitting a proposed set of voir dire questions, which the Government respectfully submits is a standard set of questions designed to address these goals.

## CONCLUSION

For the foregoing reasons, the Court should deny Lesniewski's motion for a jury questionnaire and for other special jury voir dire procedures

Dated: New York, New York
June 24, 2013

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:     /S/ Justin S. Weddle
Justin S. Weddle
Nicole Friedlander
Daniel B. Tehrani
Assistant United States Attorneys
Tel.: 212-637-2211/2312/2455