UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

   -v.-                                    :            S14 11 Cr. 1091 (VM)

PETER LESNIEWSKI,                           :
MARIE BARAN, and
JOSEPH RUTIGLIANO,                          :

             Defendants.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## GOVERNMENT'S RESPONSE TO
## PETER LESNIEWSKI'S MOTION *IN LIMINE*


PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America


Nicole Friedlander
Justin S. Weddle
Daniel B. Tehrani

Assistant United States Attorneys
- Of Counsel –

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                          :

    -v.-                                              :                    S14 11 Cr. 1091 (VM)

PETER LESNIEWSKI,                                 :
MARIE BARAN, and
JOSEPH RUTIGLIANO,                                :

               Defendants.                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### GOVERNMENT'S RESPONSE TO PETER LESNIEWSKI'S MOTION *IN LIMINE*

The Government respectfully submits this memorandum of law in response to defendant

Peter Lesniewski's motion *in limine*, seeking to bar any evidence – including testimony,

documents or other physical objects – regarding Dr. Ajemian and Dr. Parisi (the "Ajemian and

Parisi Evidence") at the trial scheduled for July 15, 2013 ("Lesniewski Motion").[1]  In the event

the Ajemian and Parisi Evidence is not precluded at the July 15, 2013 trial, Lesniewski

alternatively asks for a severance or a continuance.  Lesniewski's motion is without merit and

should be denied.

---

[1] Lesniewski also seeks an order requiring the Government to provide a formal written proffer of
co-conspirator statements the Government plans to offer at trial.  Lesniewski Motion, at 6.  The
defendant previously requested this same relief in connection with his pretrial motions.  *See*
Memorandum of Law in Support of Peter Lesniewski's Pretrial Motions, dated September 14,
2012, at 41-50.  The Court denied the defendant's motion.  *See* December 27, 2012 Order, at 4
("Finally, Peter Lesniewski . . . moves for a pretrial hearing or Government proffer to assess the
admissibility of co conspirator statements.  As the Lesniewski Brief recognizes, the Second
Circuit does not require a preliminary determination on this matter.").  The Government opposes
the defendant's renewed request on that same basis.

## I.      The Evidence to Be Presented

The Government intends to present at trial certain evidence relating to Dr. Ajemian and Dr. Parisi, which will be fall into three main categories: testimony of fact witnesses who were LIRR employees (supported by documentary evidence), expert testimony of Dr. Alton Barron regarding his review of Ajemian's files, and numerical analysis, such as an analysis that during a relevant time period, approximately 86% of LIRR disability claimants went to one of these three doctors.

As to the first category, certain former LIRR employee witnesses who were clients of defendants Marie Baran or Joseph Rutigliano are expected to testify regarding their interactions with Ajemian or Parisi – the physicians who variously recommended them for disability.[2]  These and other LIRR witnesses, including patients of Lesniewski, are also expected to testify that, based on what they had heard from other LIRR employees, they understood that Lesniewski, Ajemian and Parisi, were the "go to" doctors to support occupational disability applications.

With respect to the second category of evidence, the Government anticipates that Dr. Barron, an orthopedic surgeon who is expected to testify primarily about Lesniewski's patients, is also expected to testify in a more summary fashion about certain medical records of Ajemian patients, most of whom are also testifying witnesses and all of whom also used consulted either Baran or Rutigliano regarding their disability.

Finally, the third category of evidence consists of numerical analyses regarding all three of these doctors.  Thus, as noted, the Government intends to prove that during a relevant time period, approximately 86% of all LIRR disability claimants used one of these three doctors.  The Government also intends to prove that the vast majority of the LIRR patients of both Lesniewski

_____
[2] A summary witness may also testify about documents regarding Ajemian and Parisi patients who were also clients of Baran and Rutigliano.

and Ajemian ultimately obtained disability annuities, and that for a certain group of LIRR employees (those that first visited one of these doctors in 2005), both Lesniewski and Ajemian declared the vast majority to be disabled and unable to work within approximately two years of their first visit, when they were all working.  All of these analyses consist of a simple summary chart and brief testimony regarding how the charts were prepared and how the individuals reflected in those charts were identified.

## II.      The Evidence Is Proper, Integral to Proving the Schemes, and Non-Prejudicial

As explained below, the evidence described above is necessary to explain the scheme, is highly probative of the crimes charged and is not unduly prejudicial.  In fact, without the Ajemian and Parisi Evidence, the jury will be left with a prejudicially distorted view of the scheme and Lesniewski's role in it.  Accordingly, the evidence should be admitted.

### A.      The Evidence Is Relevant and Necessary to Prove the Charges Against Lesniewski

The Ajemian and Parisi Evidence is directly relevant to the charges against Lesniewski. Lesniewski is charged in two conspiracy counts with conspiring with Baran, Rutigliano and others to defraud the United States Railroad Retirement Board (the "RRB") and private insurance companies.  Those conspiracy counts will be proven, among other ways, by evidence of the widespread understanding, among LIRR employees and facilitators such as Baran and Rutigliano, that there were three doctors who would virtually ensure that a patient would inevitably become disabled and be recommended for occupational disability from the RRB at the time chosen by the employee.  Thus, the testimonial evidence and numerical analyses described above are relevant and necessary in a number of ways.

First, although the Government anticipates that certain witnesses will testify about isolated conspiratorial discussions and referrals to Lesniewski, Ajemian and Parisi by LIRR

employees and facilitators, information about the conspiracies was also communicated through diffuse word of mouth.  In other words, this was not a scheme hatched in a dark room among the thousands of participants, with a detailed discussion of the necessary steps that needed to be taken and the lies that needed to be told.  Rather, the broader scheme, and Lesniewski's participation in it, will be demonstrated by the widespread knowledge of the key steps and participants, as well as the extraordinarily high success rates of the scheme participants.  This evidence will be offered through the witness testimony and numerical analyses described above.  Thus, the Ajemian and Parisi Evidence is direct evidence of the existence of the conspiracies in which Lesniewski is charged and of his participation in them.

Second, the Ajemian and Parisi Evidence – demonstrating the widespread knowledge of the scheme and the primary participants – is necessary to explain the background and nature of the scheme, putting in context the witness testimony, the conversations the scheme participants had (and did not need to have), and the steps the participants took.  *See United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (evidence is admissible as direct evidence and not Rule 404(b) evidence if it "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.")  For example, the Government anticipates calling witnesses who will say that they never had to have overt discussions about the reason for their visits with the disability doctors; the purpose was understood.  Moreover, at least one witness who will testify that he saw Lesniewski because he was a known disability doctor, but one less used than, and therefore less likely to cause suspicion than Ajemian or Parisi.  This background evidence is clearly admissible.  *See United States* v. *Salameh*, 152 F.3d 88, 111 (2d Cir. 1998)  ("[E]vidence that provides background information necessary to the jury's

understanding of the nature of the conspiratorial agreement properly is admitted 'to furnish an explanation of the understanding or intent with which certain acts were performed.'" (quoting *United States* v. *Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988))).

In fact, without the Ajemian and Parisi Evidence, the jury will be left with a fundamentally distorted view of the scheme.  As an initial matter, the evidence will incorrectly suggest that there was only one "go to" disability doctor.  The jury will then hear from a number of cooperating witnesses who did not go to Lesniewski, but instead went to some unnamed doctor.  This will not only create internally inconsistent testimony (the witness did not go to the "go to" doctor), but will leave the misimpression that the witnesses went to numerous other independent doctors who otherwise had no involvement in the scheme, and were somehow duped and/or corrupted by their devious patients.[3]  This, the jury can incorrectly assume, is what happened to Lesniewski.  In addition, without the Ajemian and Parisi Evidence, the jury will not understand how this was a scheme that persisted, successfully for years.  Without evidence that the scheme involved a handful of facilitators and three doctors, the jury is left with the implausible conclusion that thousands of LIRR employees going to their own personal doctors and filling out applications independently, managed to orchestrate a scheme this successfully.  In other words, the jury would be misled into thinking either that: (1) no widespread scheme existed as the Government otherwise alleges; or (2) any conspiracy was purely among the LIRR co-workers themselves, who (the jury will be misled into thinking) tricked the doctors they visited (and by extension, Lesniewski).  Therefore, the Ajemian and Parisi Evidence is critical to explain the scheme.

---

[3] This is particularly improper and misleading because the jury will be able to observe the obvious normal physical condition of the witnesses.  The jury could therefore easily be misled into thinking that reasonable doctors could mistakenly find patients to be disabled who are so apparently healthy and able to work.

Finally, the Ajemian and Parisi Evidence corroborates the testimony of witnesses whose credibility will undoubtedly be attacked.  The witnesses will testify about their knowledge of the scheme, what steps were necessary to take, whom they needed to see, their perceived likelihood of success and how they learned about all of the above.  This evidence is corroborated by the numerical analyses demonstrating, among other things, that Lesniewski, Ajemian and Parisi accounted for approximately 86% of all LIRR disability applications, and that Lesniewski and Ajemian almost invariably declared their LIRR employee patients to be disabled within a limited time frame and despite the fact that they were working at their first visit.

Without the Ajemian and Parisi Evidence, however, the witnesses' anticipated testimony will be called into question in a number of respects.  First, the Government anticipates that several Lesniewski patients will testify that they had very limited discussions with Lesniewski about their physical conditions, were offered little to no treatment, and returned on a regular basis for brief visits serving no apparent medical purpose.  If the jury is left to believe that numerous doctors not involved in the scheme also recommended their patients for occupational disability, it will again appear that Lesniewski too was duped and the witnesses are lying about their interactions with him.  In this way, the jury will be misled into thinking: (1) the cooperating witnesses are lying because it will (wrongly) appear that many went to independent doctors, and it cannot be the case that so many doctors simply declared their patients disabled given such limited interactions with their patients; or (2) the cooperating witness are telling the truth and reasonable doctors could declare their patients disabled even where their patients do not complain of substantial pain.

Similarly, if the jury were left with the misimpression that many other presumably honest doctors concluded that their LIRR patients were occupationally disabled, that misapprehension could improperly call into the question the expert testimony of Dr. Barron, who will testify that Lesniewski's diagnoses were largely baseless and that the doctor's files are remarkable in failing to reflect any meaningful effort to treat the patients.  If the jury were wrongly led to conclude that many independent doctors found these otherwise healthy looking people disabled, it could improperly call into question Dr. Barron's opinion that Lesniewski's records are unusual and his diagnoses egregiously lacking in objective findings and other support.

In sum, the Ajemian and Parisi Evidence is necessary to explain the scheme, how it operated, the steps participants took, the conversations they did and did not have, and why it was so successful, and crucial to avoid presenting a distorted picture of the scheme to the jury.

Indeed, it is for these reasons that, as explained in the Government's proposed severance plan set forth in its opposition to defendants' pretrial motions, even in the proposed severance along doctor lines (with Lesniewski and Ajemian in separate trials), the same numerical analyses would be offered at both trials.  *See* Government's Memorandum in Opposition to Defendants' Pretrial Motions, dated October 15, 2012 (the "Government Pretrial Opp."), at 24 n.9.  And in fact, such evidence would be admissible in a trial against even a single annuitant to demonstrate the existence of the widespread scheme.  Accordingly, the Ajemian and Parisi Evidence is highly relevant and admissible in a trial against Lesniewski.

### B.        The Evidence Is Relevant to the Charges Against Baran and Rutigliano

In addition, the Ajemian and Parisi Evidence is directly relevant to Counts Two and Four of the Indictment, which charge Baran and Rutigliano with conspiring with Ajemian.  The Government anticipates testimonial evidence by (and about) individuals who were clients of

Baran or Rutigliano and also patients of Ajemian. Far from "other acts" evidence about Lesniewski, this evidence is direct proof of the charged conspiracy between Baran, Rutigliano and Ajemian. Although Lesniewski is not charged in Counts Two and Four, all Counts in the Indictment, and all three defendants are properly joined, and Lesniewski does not suggest otherwise. *See* Fed. R. Crim. P. 8(b) ("The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count."); *United States* v. *Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) ([Rule 8(b) requires that] "acts must be 'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme.'" (internal quotations omitted)). Accordingly, the evidence is properly admitted at the July 15, 2013 trial.

On June 24, 2013, defendant Rutigliano filed a memorandum in support of Lesniewski's motion, adding as an additional basis for the exclusion of the Ajemian and Parisi Evidence, the argument that the evidence is not relevant. This argument is wrong for a number of reasons: First, and most importantly, as set forth above, the evidence of the scheme is relevant in a number of different respects to the defendants' participation in the charged scheme. Second, Rutigliano is charged with conspiring with Ajemian. Among the peculiar results of Rutigliano's argument is that his motion seeks to preclude any evidence referring to his charged co-conspirator – testimonial or documentary – on the basis that the evidence is not relevant to prove the conspiracy. Third, Rutigliano bases his argument on the fact that neither Ajemian nor Parisi will be called as a witness at the July 15, 2013. Under his theory, therefore, unless Lesniewski testifies at this trial, all evidence of Lesniewski's participation in the scheme would be irrelevant

as to Rutigliano's participation in the conspiracy.  That, of course, is not the case.  <u>Fourth</u>,

Rutigliano's reliance on *United States* v. *Kaplan*, 490 F.2d 110 (2d Cir. 2007), is legally and

factually misplaced.  Kaplan stands for the limited proposition that "evidence regarding the

knowledge of individuals other than the defendant should be admitted only if there is some other

evidence in the record—concerning, for example, the nature of the fraud or the relationship of

the parties—from which to conclude that the defendant would have the same knowledge."  *Id.* at

120.  As an initial matter, the Ajemian and Parisi Evidence is evidence of the fraudulent scheme

itself.  It is not being offered to prove Rutigliano's knowledge of the scheme through evidence of

the doctors' knowledge.  Even if the evidence were being offered to prove Rutigliano's

knowledge, however, in this case, there is ample "other evidence in the record" – including

evidence that he too fraudulently obtained an RRB occupational disability annuity, and

testimony from numerous witnesses who have pled guilty to conspiring with Rutigliano and

Ajemian – to demonstrate that Rutigliano, Ajemian and Parisi had a shared understanding of the

scheme.[4]  Accordingly, Rutigliano's supplemental motion should also be denied.

### C.    Rule 403 Does Not Bar the Admission of the Evidence

There is no basis to preclude the Ajemian and Parisi Evidence under Rule 403.  Rule 403

permits the Court to "exclude relevant evidence if its probative value is substantially outweighed

by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading

the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R.

Evid. 403.  Lesniewski argues that the Ajemian and Parisi Evidence is unfairly prejudicial

because it creates an unfair inference that: (a) the entirety of the LIRR disability program was

---

[4] Rutigliano also mischaracterizes the nature of the evidence in *Kaplan*.  The witness testified
solely about the witness's understanding of the fraud, not conversations the witness had with the
defendant about the fraud.  Conversations involving the defendant about the fraud would of
course be relevant to the defendant's knowledge of the fraud.

fraudulent; (b) doctors who regularly rendered conclusions that an LIRR employee was disabled were engaged in fraud; (c) findings of a particular type of disability were fraudulent; and (d) doctors associated with specified facilitators were engaged in fraud.  Lesniewski also argues that the Ajemian and Parisi Evidence unfairly allows the Government to buttress its "statistical analysis."  None of these arguments has any merit.  The Ajemian and Parisi Evidence is not unfairly prejudicial, let alone sufficiently so to substantially outweigh the probative value of the evidence.

The Government agrees that the evidence supports several of the identified inferences, but these inferences are prejudicial only in the sense that all evidence that proves a defendant's guilt prejudices him.  *United States* v. *Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986) ("[A]ll evidence incriminating a defendant is, in one sense of the term, 'prejudicial' to him:  that is, it does harm to him. . . . What "prejudice" as used in Rule 403 means is that the admission is, as the rule itself literally requires, "unfair" rather than "harmful.").  Under the rule, evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).  The evidence showing the staggering number of LIRR employees who saw one of a handful of facilitators and one of three doctors who almost invariably recommended the employees for disability will show a massive fraud in which Lesniewski was a primary participant.[5]  Thus, the evidence is incriminating, not unfairly prejudicial.[6]  Indeed, at bottom, Lesniewski's motion is nothing more than a rehash of defense

---

[5] To be clear, with respect to Lesniewski's inference that the entirety of the LIRR disability program is fraudulent, the Government is not arguing as much nor does the evidence suggest as much.  Rather, the Government believes that a permissible inference from the evidence is that there was a widespread scheme to defraud at the LIRR.

[6] With respect to Lesniewski's claim that the evidence will create an inference that findings of a particular type of disability were fraudulent, the Government does not currently anticipate

pretrial motions seeking to exclude the numerical analyses that demonstrate the widespread nature of the fraud and that shed important light on the criminal intent of the participants.  For all of the reasons set forth in the Government's opposition to those motions, Lesniewski's argument is meritless.

Nor will the Ajemian and Parisi Evidence result in undue delay or wasted time.  No additional witness will be called to provide testimony solely about Ajemian or Parisi.  Such testimony will be offered by individuals who are otherwise testifying about their interactions with Baran and Rutigliano (or by a summary witness testifying about a small number of documents about clients of Baran or Rutigliano who saw Ajemian).  The Government does not anticipate that the witnesses will testify at lengthy about their interactions with Ajemian or Parisi.  The numerical analyses will also be presented through the same number of witnesses (likely two) whether or not those analysis specifically mention Ajemian or Parisi.  Accordingly, there is no basis under Rule 403 to exclude the Ajemian and Parisi Evidence from the July 15, 2013 trial.

## III.   Neither Severance Nor a Continuance Is Warranted

As alternatives, Lesniewski argues that if the Ajemian and Parisi Evidence is not precluded, he should be granted a severance or continuance.  Neither is necessary nor appropriate relief.

Lesniewski's severance argument is based solely on the misconception that at a trial of him alone, the Ajemian and Parisi Evidence would not be admissible.  As set forth above, Lesniewski is incorrect.  Even at a trial with Lesniewski as the sole defendant, evidence about

---

offering numerical analyses demonstrating the disproportionate prevalence of musculoskeletal disabilities among LIRR disability applicants.  Witnesses will, however, discuss their own purported diagnoses – primarily musculoskeletal conditions – that did not prevent them from continuing to work despite what they, their facilitators and their doctors falsely claimed.

Ajemian and Parisi would be admissible to show the existence and background of the widespread conspiracies in which Lesniewski himself is charged, and to corroborate witness testimony.  In addition, as discussed above, the evidence is necessary to avoid misleading the jury about the nature of the scheme and Lesniewski's role in it.  In this regard, a severance would result in unnecessary duplication of evidence.  Much of the same evidence, including evidence by the same witnesses testifying about the same subjects as well as the numerical analyses described above, would be presented at both trials.  Thus, in these circumstances, a severance would be extremely burdensome and needlessly disadvantage the public, the Court, and the Government with lengthy, duplicative trials, resulting in no lessening of any "prejudice" against Lesniewski.

A trial continuance is also unwarranted.  The Government has consistently maintained that the Ajemian and Parisi Evidence – including the numerical analyses highlighting the scope of the entire scheme – would be offered in any trial involving Lesniewski.  *See, e.g.*, Government Pretrial Opp., at 24 n.9; Transcript of January 18, 2013 Pretrial Conference (the "Jan. 18 Transcript"), at 7-8 ("If we combine the trials, much of the evidence will be the same, because we will have a series of cooperator testimony and other witnesses who were annuitants or who saw the doctors.  We will have the statistics comparing Metro-North Railroad and Long Island Railroad disability rates, and then we will have analyses of Dr. Lesniewski and Dr. Ajemian's practices with respect to declaring virtually everybody who saw them in certain time periods to be disabled.").  The Government's estimate of the trial length – which included the anticipated admission of testimonial evidence about and numerical analyses including Ajemian and Parisi – has also consistently been approximately four weeks.  *See, e.g.*, Jan. 18 Transcript, at 9 ("COURT: How long a trial would the government contemplate if it were to have a combined trial of these remaining defendants?  [GOVERNMENT]: I believe a four-week trial, your

13

Honor."); *id.* at 13 ("[LESNIEWSKI'S COUNSEL]: Judge, could I ask a question perhaps pertaining to the government?  If it were just the Lesniewski trial, would we still be talking about a four-week trial?  [GOVERNMENT]: Yes, your Honor.  It is really the same trial at this point, your Honor.").  Thus, the Ajemian and Parisi Evidence would not "lengthen the trial," as Lesniewski suggests; the evidence has always been contemplated as part of Lesniewski's trial. Accordingly, a continuance based on admission of the Ajemian and Parisi Evidence is not warranted.

**CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the Court should deny Lesniewski's motion *in limine* in its entirety.


Dated:  New York, New York
        June 24, 2013

                                     Respectfully submitted,

                                     PREET BHARARA
                                     United States Attorney
                                     Southern District of New York

By:                            
                                     Nicole Friedlander
                                     Justin S. Weddle
                                     Daniel B. Tehrani
                                     Assistant United States Attorneys
                                     (212) 637-2211/2312/2455