```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/12/2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X
                            :

UNITED STATES OF AMERICA,     :
                            :
                            :     11 Cr. 1091
       - against -          :
                            :     <u>DECISION AND ORDER</u>
                            :

PETER LESNIEWSKI, et al.,     :
                            :
               Defendants.   :
---------------------------------X

**VICTOR MARRERO, United States District Judge.**

     The Government has filed three motions in limine
("Government's Motions") related to the upcoming trial in
this matter. (Dkt. Nos. 406, 426 & 427.) Defendant Peter
Lesniewski ("Lesniewski") has filed a motion in limine
("Lesniewski's Motion"), to which defendants Joseph
Rutigliano ("Rutigliano") and Marie Baran ("Baran,"
collectively with Lesniewski and Rutigliano, the
"Defendants") joined. (Dkt. Nos. 410, 419 & 430.)[1]
Finally, Rutigliano filed a motion in limine (Dkt. No. 450)
seeking to preclude certain expert testimony ("Rutigliano's
Expert Motion"), a motion in limine (Dkt. No. 455) seeking
to preclude certain statements ("Rutigliano's <u>Bruton</u>
Motion"), and a motion in limine (Dkt. No. 460) seeking to

---

[1] In addition, Baran submitted a letter to the Court requesting
permission to use an expert (Dkt. No. 437) which the Court treats as a
motion ("Baran's Motion"). Baran later withdrew this motion in a
subsequent memorandum.

preclude certain statistical charts ("Rutigliano's Statistics Motion"). For the reasons discussed below, the Government's Motions are **GRANTED in part** and **DENIED in part**, Lesniewski's Motion is **DENIED,** Baran's Motion is **DENIED**, Rutigliano's Expert Motion is **DENIED**, Rutigliano's Bruton Motion is **DENIED**, and Rutigliano's Statistics Motion is **DENIED.**

## I.   BACKGROUND

On May 6, 2013, the Government filed superseding indictment (the "Indictment") S14 11 Cr. 1091 charging Lesniewski, Baran, Rutigliano, and Steven Gagliano with conspiracy to commit mail fraud, wire fraud and health care fraud in violation of 18 U.S.C. § 1349, conspiracy to defraud the United States Railroad Board ("RRB") in violation of 18 U.S.C. § 371, health care fraud in violation of 18 U.S.C. §§ 1347 and 2,[2] mail fraud in violation of 18 U.S.C. §§ 1341 and 2,[3] and wire fraud in violation of 18 U.S.C. §§ 1343 and 2.[4]   The Indictment

---

[2] Rutigliano and Baran were each charged with three counts of health care fraud, Lesniewski was charged with two, and Gagliano was charged with one.

[3] Gagliano was not charged with mail fraud. Rutigliano was charged with six counts of mail fraud, Baran was charged with three, and Lesniewski was charged with two.

[4] Rutigliano was charged with six counts of wire fraud, Lesniewski was charged with four, Baran was charged with three, and Gagliano was charged with one.

further charged Baran and Rutigliano with additional counts of conspiracy to commit mail fraud, wire fraud and health care fraud in violation of 18 U.S.C. § 1349 and conspiracy to defraud the RRB in violation of 18 U.S.C. § 371 based on their alleged work with Peter Ajemian ("Ajemian"), a defendant who pleaded guilty to charges in a separate indictment alleging offenses similar to those involved in the instant action.  Finally, the Indictment charged Rutigliano with making false statements in violation of 18 U.S.C. § 1001.  (See Dkt. No. 383.)  Gagliano subsequently entered a guilty plea, leaving Lesniewski, Baran, and Rutigliano as the remaining defendants in this matter, and thus the focus of the Government's Motions.

## II.  **DISCUSSION**

The Government's Motions raise five main arguments: 1) the Court should preclude evidence suggesting that the RRB was allegedly negligent or careless in failing to stop the alleged fraud; 2) the Court should preclude reference to the RRB's "Continuing Disability Reviews"; 3) the Court should limit use of certain prior statements made by Lesniewski and Baran; 4) the Court should admit certain tax returns filed by Rutigliano and Baran; and 5) the Court should preclude testimony from expert witnesses proposed by Lesniewski and Baran.  Rutigliano's Bruton Motion argues

-3-

against admission of Lesniewski's statements because they violate the Confrontation Clause. Rutigliano's Expert Motion argues the Court should preclude testimony from an expert witness proposed by the Government. Rutigliano's Statistics Motion argues the Court should preclude introduction of certain statistical charts prepared by the Government. Lesniewski's Motion, buttressed by Rutigliano's memorandum, argues the Court should preclude the Government from introducing any evidence relating to Ajemian or Ralph Parisi ("Parisi"), another defendant charged with participating in offenses similar to those asserted against Ajemian and Lesniewski.[5] Baran's Motion -- since withdrawn -- sought the Court's permission to retain an orthopedist to testify as an expert at trial. The Court considers each argument in turn.[6]

A. PRECLUSION OF EVIDENCE SUGGESTING THE RRB WAS NEGLIGENT OR CARELESS IN FAILING TO STOP THE ALLEGED FRAUD

The Government argues that the Court should preclude any suggestion by the Defendants that the RRB was somehow negligent or careless in failing to stop the fraud with which they are charged because any such evidence would be irrelevant and likely to be used by the jury for an

_____

[5]  Parisi has passed away.
[6]  In an attempt to organize the information at least somewhat thematically, the Court will consider Rutigliano's Bruton Motion directly after its discussion of the Government's motion relating to statements by Lesniewski and Baran.

improper purpose.   Lesniewski's Motion responds that he will not advance this argument, thus mooting the Government's request.   However, as neither Baran nor Rutigliano have similarly pledged, and as this issue bears on the next subject of the RRB's "Continuing Disability Rules," the Court will address it.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."   Fed. R. Evid. 401 ("Rule 401").   But relevancy alone is insufficient for admission at trial. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403 ("Rule 403").

Under the circumstances presented in this case, the Court cannot conceive of any reasonable ground under which the RRB's negligence or carelessness would be relevant.   In order to establish a violation of the federal fraud statutes, the Government must demonstrate a scheme to defraud, which includes a showing of the defendant's fraudulent intent.   See United States v. Thomas, 377 F.3d

-5-

232, 242 (2d Cir. 2004).  But while courts have previously described such schemes as being "reasonably calculated to deceive persons of ordinary prudence and comprehension," id. at 241, (quoting Silverman v. United States, 213 F.2d 405, 407 (5th Cir. 1954)), this language is to "assure that the defendant's conduct was calculated to deceive, not to grant permission to take advantage of the stupid or careless," id. at 242.  See also United States v. Amico, 486 F.3d 764, 780 (2d Cir. 2007) ("In Thomas we disagreed with [the] 'unreasonable victim' standard.  We held that 'the victim's gullibility . . . is not relevant to the inquiry as to whether the defendants were properly convicted.'") (quoting Thomas, 377 F.3d at 242-43).  As such, any evidence proffered by Defendants for the purpose of establishing that the RRB was negligent or careless would be irrelevant to the inquiry of whether they possessed the requisite intent to commit the fraud at issue in this case.

Moreover, evidence suggesting negligence and carelessness by the RRB, even if it somehow passed the test of relevance, would be nevertheless inadmissible under Rule 403 due to the substantial risk of prejudice and confusion. Such evidence might allow the jury to improperly conclude that, even if it found that Defendants did engage in

-6-

fraudulent conduct as charged, they should not be held responsible because the RRB should have known about the fraud in question. Cf. United States v. Kaplan, 490 F.3d 110, 122 (2d Cir. 2007) (disallowing evidence that had limited probative value and increased likelihood that jurors would hold defendant liable because he "should have known of the fraud" perpetrated by others). The Court therefore GRANTS the Government's motion to preclude evidence suggesting that the RRB was negligent or careless in failing to stop the alleged fraud.

B. PRECLUSION OF REFERENCE TO THE RRB'S "CONTINUING DISABILITY REVIEWS"

For reasons related to the discussion above, the Government argues that the Court should preclude any reference to the RRB's "Continuing Disability Reviews" of certain Long Island Railroad employees' disability annuity files that occurred after the annuities were awarded, and did not result in the termination of benefits. The Government argues that these reviews are irrelevant under Rule 401, or that any relevance is substantially outweighed by the risk of prejudice, jury confusion, and waste of trial time under Rule 403. Lesniewski argues that such evidence is relevant to the question of whether or not his representations to the RRB were material, and also relevant

-7-

to his defense that he did not intend to defraud the RRB in his initial disability determinations.

The Court finds that evidence relating to the "Continuing Disability Reviews" is irrelevant to the question of materiality. As the Supreme Court held in Neder v. United States, materiality is an element of the federal bank, wire, and mail fraud statutes. See 527 U.S. 1, 25 (1999). In so doing, the Court "'adopted a "natural tendency test" for materiality, which focuses on the potential effect of the false statement when it is made rather than on the false statement's actual effect after it is discovered.'" United States ex rel. Anti-Discrimination Ctr. of Metro N.Y. v. Westchester Cnty., N.Y., 668 F. Supp. 2d 548, 569 (S.D.N.Y. 2009) (quoting United States v. Bourseau, 531 F.3d 1159, 1171 (9th Cir. 2008)) (emphasis in original). Here, any "re-confirmation" by the RRB in the form of these "Continuing Disability Reviews" threatens to improperly supplant the "natural tendency" test with supposed evidence of actual ratification by the RRB. This threat is particularly acute because of a more direct, and fatal challenge to Lesniewski's arguments regarding relevancy: it does not appear that the reviews in question are in fact probative of the position "that the occupational disability standard was so low that any

-8-

'exaggerations' were material." (Dkt. No. 422 at 2.) First, as the Government emphasizes in its reply, the RRB employed a different standard in conducting the subsequent reviews than it did in making the initial disability determination. (See Dkt. No. 434 at 5-6.) Second, in conducting the reviews, the RRB continued to rely on the same allegedly false statements made by doctors and the employees themselves. Combined, these considerations substantially reduce, if not extinguish outright, the relevancy of the reviews as they relate to any demonstration of the operative occupational disability standard. They establish that the reviews, thought conducted later in time, are not merely independent determinations that Lesniewski's initial statements, even if false as the Government charges, were immaterial.

For similar reasons, the Court finds that the "Continuing Disability Reviews" are irrelevant to Lesniewski's intent. As discussed above, the reviews did not function, as Lesniewski claims in his memoranda, as a "subsequent ratification" of his initial allegedly false statements, and any "further review" the RRB did conduct in the form of a "Continuing Disability Review" lends minimal support to his intent argument because it is clear that the reviews were based in part on the same initial false

statements in question.  That the RRB subsequently adopted Lesniewski's medical reports, in part in reliance on his misrepresentations, does nothing to overcome the three critical facts the jury must find that stand inconveniently in the way of Lesniewski's theory: the statements were false, Lesniewski knew they were false, and with that awareness he made them intentionally to the RRB in furtherance of fraud.  Finally, any relevancy as to intent is further undercut by the fact that Lesniewski would have formed his intent when making his initial false disability determinations, before he was aware of the "Continuing Disability Reviews."

Moreover, any attenuated relevance the RRB reviews may have to the issue of materiality or intent is more than outweighed by the risk of confusion and prejudice for the same reasons stated above: it would allow the jury to conclude that the RRB was negligent or careless in discovering the alleged fraud.  This particular evidence adds a heightened risk of confusion because it invites jurors to travel what amounts to a circular Mobius Strip where one conclusion -- that Lesniewski lacked intent to deceive the RRB -- is inevitable because his initial false statements are later "confirmed" by the RRB -- based in part on its reliance on the same false evidence provided by

Lesniewski.    Accordingly,  the  Court  GRANTS  Government's
motion  to  preclude  evidence  relating  to  the  "Continuing
Disability Reviews."

C. <u>TREATMENT OF PRIOR STATEMENTS BY LESNIEWSKI AND BARAN</u>

        The  Government  seeks  to  introduce  certain  inculpatory
statements  made  by  Lesniewski  and  Baran  that  each  made  in
connection  with  their  separate  pre-arrest  interviews  in
2008.    The  Government  argues  that  the  statements  can  be
offered  to  establish  the  truth  of  the  matter  asserted
because,  as  statements  of  an  opposing  party,  they  are  not
hearsay,  or,  alternatively,  that  the  statements  can  be
offered  to  show  that  Lesniewski  and  Baran  made  false
representations  to  the  authorities,  from  which  the  jury
could  infer  consciousness  of  guilt.    <u>See</u>  Fed.  R.  Evid.
801(d)(2)(A)  (statement  is  not  hearsay  where  it  was  offered
against  an  opposing  party  and  made  by  that  party);  <u>United
States  v.  Marin</u>,  669  F.2d  73,  84  (2d  Cir.  1982)
(defendant's  statement  may  be  offered  into  evidence  either
under  Federal  Rule  of  Evidence  801(d)(2)(A)  or  to  establish
inference  of  guilt  based  on  defendant's  false
representations  to  authorities).    Neither  Lesniewski  nor
Baran  has  challenged  the  Government's  introduction  of  the
statements  in  question.    The  Court  finds  that  they  are
admissible  for  the  reasons  the  Government  articulated,  <u>see</u>

Marin, 669 F.2d at 84, and thus turns its attention to the permissibility of Lesniewski and Baran introducing, purportedly for the purpose of completeness, other statements stemming from the 2008 interviews.

The Government seeks to limit Lesniewski and Baran from introducing other statements made in these interviews, arguing that their mere proximity to statements the Government seeks to introduce does not dictate inclusion under Federal Rule of Evidence 106 ("Rule 106") and that they are hearsay when offered by the defense.

The so-called "rule of completeness" allows a party to require the introduction of "any other part" of a written or recorded statement introduced by an adverse party "that in fairness ought to be considered at the same time." Fed. R. Evid. 106; see also United States v. Alvarado, 882 F.2d 645, 650 n.5 (2d Cir. 1989) (applying Rule 106 to oral testimony) overruled on other grounds Bailey v. United States, 516 U.S. 137 (1995). Lesniewski and Baran advance similar arguments that statements positioned in between, preceding, or following the passages sought to be introduced by the Government must also be admitted under this rule. But even the standard they cite makes clear that mere proximity is a poor metric in deciding "fairness" under the rule. See Marin, 669 F.2d at 84 (2d Cir. 1982)

-12-

("We have interpreted this Rule to require that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact . . . or to ensure a 'fair and impartial understanding' of the admitted portion. The completeness doctrine does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages.") (internal citations omitted).

The two statements Lesniewski highlights because they are sandwiched in between portions offered by the Government underscore the conclusion that Rule 106 does not compel inclusion in this case. The statements in question -- "I thought that an independent doctor would have determined that my statements would fall short of the level for disability," and "If I would have known that there was no oversight, I would have [characterized descriptions of physical exertions differently]" -- offer context only insofar as they represent Lesniewski's self-serving attempts to shoehorn after-the-fact justifications for his actions into his descriptions of his actions. This is not the type of material envisioned by Rule 106. See United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) (finding no abuse of discretion where district court omitted

-13-

portions of statements it noted "consisted largely of [defendant's] self-serving statements, which, as offered by him, are inadmissible hearsay").[7]

Lesniewski and Baran next argue that the statements qualify for admission as a hearsay exception. As a general matter, a statement is hearsay when it is made out of court and offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Such statements are, subject to certain exceptions, inadmissible. Fed. R. Evid. 802. One exception, identified by Lesniewski here, allows admission of a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition. . . ." Fed. R. Evid. 803(3) ("Rule 803(3)"). In addition to the statements referenced above, Lesniewski identifies three others, two of which he contends further explain his motives for inserting certain statements in the disability forms, and the other which expresses his willingness to

---

[7] More expansively, Baran's Motion offers a list of paraphrased points representing what Baran actually said to investigators as a basis for the argument that all of Baran's statements must be admitted to provide proper context for what the Government seeks to offer. (See Dkt. No. 454 at 2-6.) This argument fails for the same reasons already discussed: at least some of the proposed additions do not help explain the portions submitted by the Government (e.g., "[t]he law needs to be changed" (id. at 5)), and others are self-serving inadmissible hearsay (e.g., "[s]he was tough on the applicants and they sometimes did not like what she told them" (id. at 2)).

-14-

meet with government officials to review the disability forms he prepared. (See Dkt. No. 422 at 5.)

The Court finds that only one of these statements -- Lesniewski's expression of his willingness to discuss his disability forms with officials -- is actually representative of his then-existing state of mind and thus admissible under Rule 803(3), and that statement is inadmissible because it is not relevant to any fact or issue in this case. The remaining statements are not declarations of Lesniewski's state of mind at the time he made the disability determinations in question; they are later statements of "memory or belief [offered] to prove the fact remembered or believed," which is squarely omitted from the ambit of this exception. See Fed. R. Evid. 803(3). As the Second Circuit held in United States v. Cardascia, "To admit statements of one's state of mind with regard to conduct that occurred [] months earlier . . . would significantly erode the intended breadth of this hearsay exception." 951 F.2d 474, 488 (2d Cir. 1991) (distinguishing United States v. DiMaria, 727 F.2d 265 (2d Cir. 1984), in which the court held that a prior statement

should not have been excluded where that statement "negated a present intent").[8]

Baran's Motion offers a list of paraphrased points representing what Baran actually said to investigators as a basis for the argument that all of Baran's statements must be admitted to provide proper context for what the Government seeks to offer. (See Dkt. No. 452 at 2-6.)

To the extent that either Lesniewski or Baran seek to introduce other, as yet unidentified portions of statements offered by the Government, the Court's preceding analysis will govern future rulings. Based on the examples listed above, the Court GRANTS the Government's motions to introduce certain statements from Lesniewski and Baran stemming from their 2008 interviews, and to limit reference to certain other portions of those interviews.[9]

D. ADMISSION OF PRIOR STATEMENT BY LESNIEWSKI AS TO RUTIGLIANO

Rutigliano contends that Lesniewski's statement to investigators on October 29, 2008 that disability

---

[8] Similarly, it is plainly not the case that Baran's entire statement goes to her then existing state of mind, emotion, sensation, or physical condition as Baran's Motion appears to argue. For example, her statement that she tried to stop one non-disabled applicant from filing (see Dkt. No. 454 at 6), offered an undisclosed amount of time after the incident, is inadmissible as to her state of mind at the time she gave the advice.

[9] The Government's initial motion also sought to limit Defendants' cross-examination of a particular witness to the scope of the direct examination. (See Dkt. No. 406 at 24-25.) The Government's reply, however, indicates that it no longer intends to call this witness, and thus the Court need not address this topic.

information "was exaggerated on approximately 20 percent of the narratives" runs afoul of the Supreme Court's decision in United States v. Bruton, 391 U.S. 123 (1968) because Rutigliano will be unable to cross-examine Lesniewski as to his "confession" to establish that Rutigliano's application and those that he "facilitated" were not among those that were exaggerated.

This "confession" by Lesniewski does not implicate Bruton because it does not, on its face, implicate Rutigliano. See United States v. Lung Fong Chen, 393 F.3d 139, 150 (2d Cir. 2004) (finding that Bruton is not violated where certain defendants not were not explicitly named and the statements "inculpate [those defendants] only in the context of the substantial evidence used to link them to [the] statements"). Indeed, even redaction or omission, a common solution to a Bruton issue, would be inapposite here because what Rutigliano seeks to remove -- references to the percentages of exaggerated narratives -- already do not allow for an inference tying him to the statement without the introduction of other evidence. See Gray v. Maryland, 523 U.S. 185, 196 (1998) (noting that a prior case fell outside Bruton because its inferences "involved statements that did not refer directly to the defendant himself and which became incriminating 'only when

linked with evidence introduced later at trial'") (quoting Richardson v. Marsh, 481 U.S. 200, 208 (1987)).

Any potential confusion or prejudice can be addressed through a proper limiting instruction.  Cf. United States v. Taylor, 767 F. Supp. 2d 428, 431 (S.D.N.Y. 2010) ("The redacted confession must be viewed in isolation from other evidence at trial to determine whether it incriminates a co-defendant.  If the statement standing alone is not incriminating, then it 'may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the [co-defendant].'") (quoting United States v. Williams, 936 F.2d 698, 701 (2d Cir. 1991)) (internal citation omitted).  The Court DENIES Rutigliano's Bruton motion.

E. ADMISSION OF TAX RETURNS FILED BY RUTIGLIANO AND BARAN

The Government argues that evidence relating to tax returns filed by Rutigliano and Baran disguising, failing to report, or underreporting income from the alleged fraud is admissible as direct proof of the charged conduct for Rutigliano, and as "other act" evidence under Federal Rule of Evidence 404(b) ("Rule 404(b)") for both Rutigliano and Baran.  Specifically, the Government points to Rutigliano's tax returns from 1999-2007, which it alleges underreports

-18-

and/or fails to report income he derived as a facilitator of the scheme (facts to which it expects certain witnesses to testify), and to Baran's tax return from 2007, which it alleges underreported income from her "retirement consultant" business and which she subsequently amended (facts to which it expects her tax preparer will testify).

The Second Circuit has held that "evidence of uncharged criminal conduct is not evidence of 'other crimes, wrongs, or acts' under Rule 404(b) if that conduct is 'inextricably intertwined with the evidence regarding the charged offense.' In such circumstances, the uncharged crime evidence is necessary to 'complete the story of the crime on trial,' and, thus, appropriately treated as 'part of the very act charged,' or, at least, proof of that act." United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007) (internal citations omitted). In this case, Rutigliano is charged with fraudulently obtaining "total and permanent" disability benefits and with making false statements to the RRB that he had not worked while receiving occupational disability benefits. Rutigliano's failure to disclose or his decision to underreport income helps complete the story of these charges because any record (or lack thereof) of this income is arguably intertwined with his claimed "total

and permanent" disability and his statements that he had not in fact worked.

In any event, the Court need not rest its holding on that ground alone. The tax return evidence in question is admissible against both Rutigliano and Baran under Rule 404(b). Rule 404(b) provides that evidence of prior bad acts "may" be admissible to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Second Circuit "follows the 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under [Federal Rule of Evidence] 403 or not relevant under [Federal Rule of Evidence] 402." United States v. Carlton, 534 F.3d 97, 101 (2d Cir. 2008) (citation omitted). A district court properly admits such evidence under Rule 404(b) of the Federal Rules of Evidence when "(1) the prior acts evidence [i]s offered for a proper purpose; (2) the evidence [i]s relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweigh[s] the danger of its unfair prejudice; and (4) the court administer[s] an appropriate limiting instruction." United States v. Brand, 467 F.3d

-20-

179, 196 (2d Cir. 2006) (citation omitted).   A district court enjoys "broad discretion" in determining whether to admit evidence pursuant to Rule 404(b).   Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991).

The Government alleges that the tax return evidence is probative of Rutigliano and Baran's intent, plan, knowledge, and absence of mistake or accident in engaging in the charged crimes.   In addition to demonstrating Rutigliano's lack of mistake or accident in claiming total disability benefits and affirming to the RRB that he had not worked, his tax return evidence distorting his income is probative of his lack of mistake or accident and his intent to defraud the RRB in his ongoing role as facilitator.   The same analysis holds true for the money Baran underreported that she earned in her role as facilitator.

Rutigliano and Baran's argument that Rule 403 should preclude mention of the tax return evidence because it would convert the trial into a separate proceeding charging tax fraud is unavailing.   Given the high degree of relevance of the material in question, the Court is not inclined to exclude it on this basis, and finds that any concerns regarding either prejudice or improper uses of the evidence, such as propensity, highlighted in Baran's

-21-

memorandum, can be suitably addressed through a limiting jury instruction.[10]  Thus, the Court GRANTS the Government's motion to allow introduction of Rutigliano and Baran's tax returns.

## F. PRECLUSION OF EXPERT TESTIMONY FROM LESNIEWSKI AND BARAN'S WITNESSES

The admissibility of expert testimony is governed principally by Federal Rule of Evidence 702 ("Rule 702"), which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Courts typically engage in a three-step process under Rule 702 to determine whether testimony by a party's expert is

___

[10] Lesniewski raises the related argument that Rutigliano and Baran's tax return evidence may be unfairly prejudicial to him and thus supports his argument in favor of severance.  The Court is similarly persuaded that any such concerns can be ameliorated by a limiting instruction.  It does not appear to be the case that prior tax returns clearly filed by his co-defendants raise the specter of unfair prejudice against Lesniewski.  See United States v. Figueroa, 618 F.2d 934, 946 (2d Cir. 1980) ("Unlike a Bruton confession, prior act evidence is not so inevitably prejudicial to co-defendants that the worth of limiting instructions can be totally discounted.")

admissible.   They investigate: 1) whether the witness is qualified by knowledge, skill, experience, training, or education; 2) whether a proffered opinion passes the required measure of scientific reliability; and 3) whether the proposed testimony is relevant and will aid the factfinder in answering the questions at issue in the case. See Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 349-50 (S.D.N.Y. 2005).

The Government attacks the expert notices provided by Lesniewski and Baran.  The Court considers each in turn.

### 1. Lesniewski's Expert Notice

Lesniewski      proposes      calling      Julian      Freeman ("Freeman"), a physician who practices internal medicine and neurology.  Lesniewski offers Freeman's testimony on eight  different  topics,  and  the  Government  offers objections as to each topics.  The Court finds as follows:

a) General and specific concepts and definitions of disability by Government agencies, as well as terminology

Although Freeman's curriculum vitae contains extensive Government experience, testimony of this nature must be excluded  because  the  subject  of  government  agency definitions of disability entail matters of law, which would likely veer impermissibly into the Court's function at trial, and will not aid the factfinders in this case:

-23-

"Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." Hygh v. Jacobs, 961 F.3d 359, 364 (2d Cir. 1992).

> b) The Mechanics of the RRB disability determination process

Freeman's qualifications do not indicate any experience or familiarity with the "mechanics" of the RRB. He therefore fails the first prong of the Rule 702 inquiry as to this proposed topic. See United States v. Oscar Roldan-Zapata, 916 F.2d 795, 805-06 (2d Cir. 1990) (finding that exclusion of testimony was not manifest error where expert on drug cases sought to testify on law enforcement recordkeeping procedures).

> c) The materiality of Lesniewski's statements

As discussed above in section II(B), the materiality of Lesniewski's statements (and materiality as applied to the charges in this case) is a legal question. As such, this testimony threatens to invade the province of the Court and is properly excluded. See Hygh, 961 F.3d at 364.

> d) Lesniewski's examination findings did not contain any major or material errors of diagnosis or medical findings, or indications of falsifications

The Government does not challenge the admission of Freeman's testimony as to major or material errors of diagnosis or medical findings, and the Court finds no reason to exclude it.  The Government does seek to exclude Freeman's testimony relating to "indications of falsification" on the grounds that he has "no expertise in forensic analysis or fraud detection" (Dkt. No. 427 at 10), and that such testimony is not helpful because it invades the province of the jury.  However, the Court is not convinced that blanket preclusion is appropriate here. While Freeman may not have specific training in "fraud detection," his experiences in the medical field may allow him to offer some insight into potential falsification issues.  Further, the topic of falsification is not per se the province of the jury, and relevant qualified expert testimony in this regard may in fact be helpful: "An expert 'may opine on an issue of fact within the jury's province,' but 'may not give testimony stating ultimate legal conclusions based on those facts.'"  United States v. Jacques Dessange, Inc., 2000 WL 294849, at *2 (S.D.N.Y. Mar. 21, 2000) (quoting United States v. Bilzerian, 926 F.2d 1285, 1294 (2d. Cir. 1991)).  While not precluding Freeman's testimony on this point, the Court reserves

judgment on a case-by-case basis as to specific instances or areas in which Freeman's testimony might be permissible.

      e) Lesniewski's reports did not lead to any errors of final decision by the RRB or any loss by the Government

Without more explanation, this topic appears to be little more than a differently worded attempt by Freeman to address the topics of RRB mechanics and materiality discussed above. Testimony on this subject is excluded for the same reasons. See Roldan-Zapata, 916 F.2d at 805-06 (2d Cir. 1990); Hygh, 961 F.3d at 364.

      f) The documentary record from Lesniewski's medical records in the reviewed RRB files fall "within + or – 20 percentile in the median for orthopedists"

The Government, after declaring the description "not even comprehensible" (Dkt. No. 427 at 12) nevertheless offers several arguments as to why it should be excluded. The Court is likewise at a loss as to the meaning of this proffered testimony; it does not appear that, on its face, testimony as to whether Lesniewski's records fall "within + or – 20 percentile in the median for orthopedists" would be helpful, as this statement has already wrought confusion. The Court thus precludes such evidence as it falls under the current description.

      g) Lesniewski's billing was "within the range of variation seen in billing practices by physicians"

This description is similarly puzzling, as Lesniewski does not appear to offer an explanation of what is encompassed by "the range of variation," or how Lesniewski would do anything but fall "within" it. In any event, it appears that this point is moot. In its opposition, the Government states that it no longer intends to offer testimony that Lesniewski overbilled for certain visits. As such, this testimony from Freeman would be unnecessary for rebuttal purposes. Standing on its own, testimony as to the propriety of Lesniewski's billing practice is inadmissible under Federal Rule of Evidence 405 because it amounts to specific instances of good conduct to show Lesniewski's character where character is not an essential element of the crime. See Christopher B. Mueller & Laird C. Kirkpatrick, 2 Federal Evidence § 4:44 (3d ed.) ("Almost never is character an 'element' of a charge or defense in criminal cases. . . .").

> h) The Government's statistical analysis is deficient in both concept and practice (including lay observation)

Much like the issue of testimony regarding the mechanics of the RRB, there is nothing in Freeman's background indicating expertise in deficiencies about the concept and practice of designing and executing statistical analysis. His proffered expert testimony on this subject

is therefore precluded.   See Roldan-Zapata, 916 F.2d at 805-06 (2d Cir. 1990).   To the extent Lesniewski seeks to offer Freeman's lay observations regarding the Government's statistical analysis, this type of split testimony -- expert testimony on some topics and lay testimony on others -- is in fact contemplated by the rules.   See In re WorldCom, Inc. Sec. Litig., NO. 02 Civ. 3288, 2005 WL 675601, at *1 (S.D.N.Y. Mar. 24, 2005) ("Certainly, it is possible for the same witness to provide both lay and expert testimony in a single case.") (quoting Fed. R. Evid. 701 Advisory Committee's Note (2000)).   However, the Court is inclined to preclude such testimony at this time because there appears to be no basis for Freeman's testimony on this topic.   To the extent Lesniewski can provide a proper foundation as to Freeman's lay opinion, the Court will consider it as appropriate.

        2. Baran's Expert Notice

    Baran proposes calling either William B. Fairley ("Fairley") or Alan J. Salzberg ("Salzberg"), both of whom are purported experts in statistics.   Baran offers Fairley or Salzberg's testimony on three different topics, and the Government offers objections as to each topic.   The Court finds as follows:

a) Comparing the LIRR to Metro North is improper because sound and proper statistical arguments must rely upon similar statistical groups and both systems are vastly different

Broadly speaking, testimony by a statistical expert regarding the hallmarks of sound and proper statistical arguments appear to satisfy all three prongs of the Rule 702 inquiry: the qualifications of the experts is uncontested, it appears to possess the required level of scientific reliability, and it is relevant and would aid the jury. Whether the LIRR and Metro North comparison is valid or whether the two are, as Baran's letter charges, "vastly different" from a statistical standpoint would appear to touch mainly upon credibility or weigh of the proffered evidence, and the Court is not inclined to preclude on that ground. However, any conclusion offered by either Fairley or Salzberg as to whether or not the Government's analysis is properly relied upon, or what proper inference should be drawn from it, is precluded because that testimony threatens to invade the province of the jury. See Jacques Dessange, Inc., 2000 WL 294849, at *2.

b) Statistically speaking, the percentage of Baran's clients charged with fraud is relatively minor and not indicative of or consistent with a pattern of fraud when placed in the total universe of clients who contracted with her consulting services

-29-

The Court finds that testimony on this subject is properly excluded because it will not be relevant or helpful to the jury and thus fails the third prong of the Rule 702 inquiry. That a certain number of Baran's clients -- even a very large percentage of her total clientele -- were not charged with fraud does not allow for any useful conclusions about the behavior of those clients who were. Indeed, there may be a multitude of reasons why fraud charges may have been limited to a small percentage of Baran's clients. The cumulative result of this statistical inquiry is that any expert testimony on this topic is unlikely to be relevant to the issues in this case -- namely, whether Baran acted fraudulently in the instances alleged by the Government -- and is thus ultimately unhelpful to the jury. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993) ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'") (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], p. 702-18 1988)); cf. Bank of N.Y. Mellon Trust Co., Nat'l Ass'n v. Solstice ABS CBO II, Ltd., 910 F. Supp. 2d 629,

640 (S.D.N.Y. 2012) ("'Where the record indicates that the
expert failed to consider necessary factors or that his
analysis rests on faulty assumptions, the trial court has
discretion to exclude his proffered testimony for lack of
probative value.'") (quoting Lightfoot v. Union Carbide
Corp., No. 98-7166, 175 F.3d 1008 (table), 1999 WL 110424
at *2 (2d Cir. Mar. 1, 1999)).

> c) Statistically speaking, Baran's clients evaluated or
> referred to one of the "offending doctors" has
> little significance "in that many factors" outside
> of Baran's control "might influence the result"

In its opposition, the Government states that it does
not intend to offer evidence regarding the "statistical
percentage of Ms. Baran's clients being evaluated or
referred to one of the offending doctors," thus mooting the
necessity of this proffered rebuttal testimony as to its
statistical significance.  Further, to the extent that
Bailey or Salzberg aim to offer conclusions regarding the
"significance" of this data based on myriad unnamed
"factors outside" Baran's control, such testimony threatens
to offer impermissible conclusions to the jury, and to
simply restate Baran's own claims.  See Jacques Dessange,
Inc., 2000 WL 294849, at *2; see also In re Rezulin Prods.
Liability Litig., 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004)
("[E]xperts should not be permitted to 'supplant the role

of counsel in making argument at trial, and the role of the jury in interpreting the evidence.' Examples of expert' testimony that courts have excluded on this basis include factual narratives and interpretations of conduct or views as to the motivation of parties.") (internal citations omitted).

To recap: The Court GRANTS the Government's motion to preclude testimony from Lesniewski's expert witness as to topics a, b, c, e, f, g, and h, and DENIES the motion as to topic d. The Court GRANTS the Government's motion to preclude testimony from Baran's expert witness as to topics b and c, and DENIES the motions as to topic a.

G. <u>PRECLUSION OF EXPERT TESTIMONY FROM THE GOVERNMENT'S WITNESS</u>

Rutigliano seeks to preclude the Government's proffered expert Alton Barron ("Barron"), a medical doctor, from offering his expert opinion as to Rutigliano's ability to play golf because the Government has failed to provide a written summary under Federal Rule of Criminal Procedure 16(1)(a)(G) ("Rule 16"), which requires the Government to do so. Rutigliano asserts that he formally demanded this summary on May 24, 2013, ten days after the Government provided its first notice that Barron would testify, but that the Government has not done so. Further, Rutigliano

points to a Government exhibit suggesting that Barron will opine that Rutigliano would not be able to play golf if his disability existed as claimed.  He argues that Barron's testimony on this matter must be precluded because the defense cannot decipher the basis for it.

Rule 16(a)(1)(G) requires that, upon request, the Government must give to the defendant a written summary of any expert testimony it intends to use at trial.  "The summary provided . . . must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G). Courts have broad discretion in the event a party fails to comply with Rule 16: they "may order discovery, grant a continuance, preclude the introduction of evidence, or enter any other just order."  United States v. Healey, 860 F. Supp. 2d 262, 268 (S.D.N.Y. 2012); see also United States v. Thai, 29 F.3d 785, 804 (2d Cir. 1994) ("The district court's admission of evidence following a violation of Rule 16(a) is not an abuse of distraction requiring a new trial unless the violation caused the defendant substantial prejudice.")

The Court is not persuaded that prohibition of the proffered testimony is a "just order" in this case.  To begin, it is not clear that the Government has violated

-33-

Rule 16: it asserts in its opposition memorandum that it supplied Rutigliano with notice prior to his May 24, 2013 request that Barron was expected to offer opinions based on his training and experience and his review of certain records in the case, and specifically referenced the issue of whether or not Rutigliano had the ability to play golf given his disability.  The Government also asserts that it provided Barron's curriculum vitae. (See Dkt. No. 456 at 4.)  This response appears to satisfy the plain language of Rule 16(a)(1)(G).  In any event, any technical squabble as to sufficiency of notice does not merit complete prohibition.  Rutigliano's contention that he "cannot decipher" the basis for Barron's opinion regarding golf is hyperbole given the information the Government did supply: Barron is an orthopedist and the Government seeks to introduce his testimony regarding Rutigliano's physical capabilities.  Were Barron an accountant or a lawyer, or if the Government produced no evidence that Rutigliano did in fact play golf after the determination of his total physical disability, the analysis may change, but in this instance the Court sees a straight line from A to B. Accordingly, the Court DENIES Rutigliano's Expert Motion.

H. PRECLUSION OF STATISTICAL CHARTS

Rutigliano also seeks to preclude certain charts comparing disability applications filed by Metro North Railway workers compared with those filed by LIRR workers. He argues that such charts are irrelevant and prejudicial. As Rutigliano's Statistics Motion notes, the Court previously rejected arguments to preclude the Government from introducing such evidence in its December 27, 2012 Order, stating that although it "declines to issue a final ruling regarding admissibility of . . . the statistical evidence . . . it likewise <u>declines to issue a blanket ruling precluding such evidence from introduction</u> because it is not convinced that the probative value of such evidence is substantially outweighed by the risk of prejudice or confusion." (Dkt. No. 317 at 10 (emphasis added).)

Rutigliano's renewed attack has not persuaded the Court to deviate from this course. Charts listing disability applications of both the LIRR and Metro North Railway employees are plainly relevant to the charges in this case. Rutigliano's arguments -- e.g., that they lack certain "analysis" and that they do not speak to Rutigliano's medical condition -- are better framed as challenges to their weight, and do not warrant blanket preclusion. See <u>Latino Officers Ass'n, Inc. v. The City of</u>

N.Y., No. 99 Civ. 9568, 2006 WL 238989, at *4 (S.D.N.Y. Jan. 31, 2006 ("[T]he Court is capable of instructing the jury as to the proper role of the statistical data, and it must assume that the jury would follow such instructions.") To the extent that Rutigliano's Statistics Motion challenges the methods by which the Government will seek to admit these charts, such arguments can be raised in the form of objections at trial.

## I. PRECLUSION OF EVIDENCE RELATING TO AJEMIAN AND/OR PARISI

Lesniewski offers several related arguments regarding the prohibition of any evidence relating to the conduct of Ajemian and/or Parisi (the "Ajemian/Parisi Evidence") in the underlying fraudulent activities with which Lesniewski is charged. Lesniewski principally argues that the Court should preclude such evidence on grounds that it would be unfairly prejudicial to him because it would allow jurors to draw a number of unwarranted inferences and because it is not part of the same conspiracy as alleged against him.[11] In the alternative, Lesniewski argues that if the

---

[11] In a similar vein, Rutigliano argues that the Court should bar admission of any Ajemian/Parisi Evidence because it is irrelevant under Rule 401 and any relevance would in any event be outweighed by the risk of unfair prejudice under Rule 403.

Ajemian/Parisi Evidence is introduced that he should be granted either a severance or a continuance.[12]

As a starting point, broadly speaking, the Ajemian/Parisi Evidence appears plainly relevant under Rule 401 as to all three defendants. The Government seeks to admit three types of evidence: fact witnesses who were LIRR employees, expert testimony reviewing Ajemian's files, and numerical analysis regarding, at least, the extent to which disability applicants visited one of the three doctors in question. Both Baran and Rutigliano are charged with conspiring with Ajemian. All three types of evidence, if otherwise proper, would appear to offer direct evidence of the alleged conspiracy itself: namely, that LIRR employees were aware of its existence and that Ajemian's medical records were false and/or exaggerated. Further, as the Government notes in its response, the numerical analysis may help corroborate witnesses whose credibility will be

---

[12] Lesniewski also renews his previous request (see Dkt. No. 234 at 41-51) for a formal written proffer by the Government of the co-conspirator statements it intends to seek to offer at trial. The Court again denies this request as contrary to the established practices of this jurisdiction. See United States v. Giraldo, No. 90 Cr. 085, 1990 WL 134883, at *1 (S.D.N.Y. Sept. 12, 1990) ("In this Circuit the rule is well settled that rather than prolong the proceedings and provide defendant with a full preview of the Government's case through a pre-trial hearing, the Court should provisionally admit alleged co-conspirators' statements, subject to its determination, at the close of the Government's case, that there is sufficient evidence to make the required findings pursuant to Rule 801(d)(2)(E).")

attacked regarding their knowledge of the alleged scheme.[13]
And although Lesniewski is not charged with conspiring with
either Ajemian or Parisi, the testimonial evidence from the
LIRR employees and the numerical analysis appears to be
relevant for the same reason discussed above.[14]

The proffered Ajemian/Parisi Evidence passes muster
under Rule 403 as well. Lesniewski argues that the
evidence would allow the jury to draw a number of improper
and prejudicial inferences, including: 1) that a
substantial percentage or the entirety of the LIRR
disability program was fraudulent; 2) that doctors who
regularly treated LIRR employees and concluded they were
disabled deliberately engaged in fraud; 3) that findings of
a particular disability type for an LIRR employee would
always be considered fraudulent; 4) that doctors who
associated with certain facilitators were deliberately
engaged in fraud; and 5) that the statistical analysis
offered by the Government is improperly probative against

---

[13] The Court notes Rutigliano's argument that <u>United States v. Kaplan</u>,
490 F.3d 110 (2d Cir. 2007) bars introduction of at least some
Ajemian/Parisi Evidence where offered to prove Rutigliano's <u>knowledge</u>
of the scheme but has no reason to rule on this ground at this time
given the Government's representation that this evidence "is not being
offered to prove Rutigliano's knowledge of the scheme through evidence
of the doctors' knowledge." (Dkt. 423 at 10.)  Rutigliano is of course
free to re-raise this issue should it arise.

[14] The Government does not appear to argue that its expert testimony
regarding Ajemian's diagnoses is relevant as to the charges against
Lesniewski.

Lesniewski.  Put another way, Lesniewski argues that this evidence, "[i]n effect . . . is 'propensity' evidence about the <u>disability</u> <u>process</u> <u>itself</u>, and not about [his] allegedly fraudulent participation in that process."  (Dkt. No. 412 at 3.)

The Court recognizes the potential risks inherent in the use of evidence pertaining to two non-defendants (one of whom has pled guilty) in a case against another defendant alleged to have engaged in substantially similar acts.  However, the sheer size of the fraudulent scheme alleged by the Government should not act as a bar to information relevant to that alleged scheme: that other doctors may have provided allegedly fraudulent disability diagnoses -- and that LIRR employees had an understanding of this alleged arrangement -- is not by itself unfairly prejudicial to Lesniewski.  As noted above (<u>see</u> n.10), the Government does not appear to argue that certain of the Ajemian/Parisi Evidence is relevant as to Lesniewski; concerns over relevance and proper inferences from the Ajemian/Parisi Evidence as to each of the Defendants can be appropriately handled through a limiting instruction to the jury.

Finally, for the same reasons, the Court declines to grant Lesniewski a severance or continuance.  The

Government has consistently made clear its intent to introduce at least some form of Ajemian/Parisi Evidence regardless of the composition of defendants and consistently estimated the trial length accounting for the inclusion of this evidence.  The Court therefore DENIES Lesniewski's Motion.

J. PERMISSION FOR BARAN TO RETAIN AN ORTHOPEDIC DOCTOR TO APPEAR AS AN EXPERT WITNESS

Baran's Motion, a brief letter to the Court dated July 2, 2013, sought permission to retain an orthopedist to testify as an expert witness.  Baran subsequently withdrew this request as part of her memorandum in opposition to the Government's motion in limine.  (See Dkt. No. 452 at 13.) The Court DENIES it as moot.[15]

### III. ORDER

For the reasons discussed above, it is hereby

ORDERED that the Government's motion in limine (Dkt. No. 406) is GRANTED; and it is further

ORDERED that the Government's motion in limine regarding Marie Baran's statements (Dkt. No. 426) is GRANTED; and it is further

---

[15] In addition, Baran's Motion was untimely under an Order issued December 27, 2012 directing defendants to provide expert notice no later than 30 days prior to trial (see Dkt. No. 317 at 2-3). This alone is grounds to deny the request. See United States v. Wilson, 493 F. Supp. 2d 484, 488 (E.D.N.Y. 2006).

ORDERED that the Government's motion in limine seeking to preclude proffered expert testimony (Dkt. No. 427) is **GRANTED in part** and **DENIED in part**; and it is further

ORDERED that Joseph Rutigliano's motion in limine regarding a potential Bruton violation (Dkt. No. 455) is **DENIED**; and it is further

ORDERED that Joseph Rutigliano's motion in limine regarding expert testimony (Dkt. No. 450) is **DENIED**; and it is further

ORDERED that Joseph Rutigliano's motion in limine regarding statistical charts (Dkt. No. 460) is **DENIED**; and it is further

ORDERED that Peter Lesniewski's motion in limine (Dkt. No. 410) is **DENIED**; and it is further

ORDERED that Marie Baran's motion requesting permission to retain an expert (Dkt. No. 437) is **DENIED.**


**SO ORDERED**

DATED:     New York, New York
           12 July 2013

                                    VICTOR MARRERO
                                    U.S.D.J.