UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| -v.- : | S14 11 Cr. 1091 (VM) |
| PETER LESNIEWSKI, : <br> MARIE BARAN, and <br> JOSEPH RUTIGLIANO, : | |
| : | |
| Defendants. | |
| : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# GOVERNMENT'S RESPONSE TO JOSEPH RUTIGLIANO'S MOTION FOR A *DAUBERT* HEARING

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

Nicole Friedlander
Justin Weddle
Daniel B. Tehrani

Assistant United States Attorneys
- Of Counsel –

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

  -v.-                                :         S14 11 Cr. 1091 (VM)

PETER LESNIEWSKI,                     :
MARIE BARAN, and
JOSEPH RUTIGLIANO,                    :

                                      :
        Defendants.
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**GOVERNMENT'S RESPONSE TO JOSEPH RUTIGLIANO'S MOTION FOR A
*DAUBERT* HEARING**

The Government respectfully submits this response to defendant Joseph Rutigliano's motion for a *Daubert* hearing regarding the proffered opinions of the Government's expert, a practicing orthopedic surgeon, regarding defendant Dr. Peter Lesniewski's medical treatment of Rutigliano. Rutigliano suggests that the Government's expert could not properly render any opinion about the quality of Lesniewski's diagnoses (rendered in 1999) or the nature and extent of Rutigliano's purported orthopedic condition given the unavailability of Rutigliano's x-rays, and the fact that the Government's expert has not examined or ordered ancillary tests on him. Rutigliano's motion misstates both the nature and the bases of the proffered opinions. Indeed, the fact that Rutigliano waited over two months, until the middle of trial, to file this motion, when the Government provided expert notice in May, further underscores that the motion is meritless and should be denied.

2

## I. Background

In his medical records and "narrative" submitted in support of Rutigliano's application for disability benefits, Lesniewski claimed that Rutigliano suffered from, among other things, purportedly disabling low back and cervical osteoarthritis, purportedly disabling rotator cuff disease and carpal tunnel syndrome, and a purportedly disabling right knee meniscal tear. Lesniewski claimed that these conditions were "permanent in nature." In his "medical assessment" in further support of Rutigliano's application, Lesniewski further claimed that as a result of these purportedly disabling conditions, Rutigliano was "never" able to bend, squat, or reach about shoulder level, and that Rutigliano could not even use his hands for "simple grasping." *See* Exhibits A and B (9/28/99 Lesniewski narrative, 10/26/99 Lesniewski medical assessment).

## II. Expert Opinion

Over two months ago, in May, the Government notified Rutigliano that it intends to call Dr. Alton Barron to testify at trial. As the Government explained, Dr. Barron is expected to offer particular opinions at trial based on his training and experience, as well as his review of certain records in this case. In particular, among other things, Dr. Barron is expected to testify that:

- Dr. Lesniewski frequently and improperly made medical diagnoses for which he ultimately recommended disability without determining and documenting the requisite objective physical findings that would provide a basis for those diagnoses; and

- Even if there was a proper medical basis to conclude that his patients suffered from the conditions that Dr. Lesniewski diagnosed, which there was not, Dr. Lesniewski makes the baseless and improper assertion that there is no or virtually no likelihood that the patients' conditions will improve. In fact, Dr. Lesniewski generally did not provide or offer his patients any meaningful treatment for their purported conditions, although most of these conditions, even if they actually

existed in his patients as he claimed, are entirely treatable to the point where the patient can return to work at 100% capacity.

In addition, three weeks ago, the Government provided a draft copy of a summary chart reflecting Dr. Barron's opinions related to Lesniewski's treatment of Rutigliano.  As reflected in the chart, the particular records on which the chart is based include the available medical records related to Lesniewski's treatment of Rutigliano.  As Rutigliano has long known, those records are contained in the RRB's claim file for Rutigliano, which is a paper file that does not include ancillary diagnostic tests such as x-rays or MRIs.[1]

### III. Argument

With respect to the admissibility of expert opinion testimony under Rule 702, the Supreme Court has adopted a two-step inquiry to determine "whether the reasoning or methodology underlying the [expert's] testimony is . . . valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.  Before admitting such testimony, the district court must determine: (1) that the proffered testimony is scientifically based and therefore reliable; and (2) that the proffered testimony will be relevant and helpful to the trier of fact.  *See United States* v. *Kwong*, 69 F.3d 663, 668 (2d Cir. 1995) (*Daubert* standard requires that "the proffered scientific evidence is both relevant and reliable"). In *Kumho Tire Co*. v. *Carmichael*, the Supreme Court emphasized that *Daubert* is to be applied flexibly and that "*Daubert*'s list of specific factors," however, "neither necessarily nor exclusively applies to all experts or in every case."  526 U.S. 137, 141 (1999).

The Second Circuit uses a particularly broad standard in determining the admissibility of expert opinion testimony under Rule 702.  *See*, *e.g*., *Boucher* v. *United States Suzuki Motor*

---

[1] The Government sought to obtain patient files and x-rays from Lesniewski during the course of the investigation, but was informed by Lesniewski's counsel that, despite a diligent search, the records no longer exist.

*Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (holding that testimony is to be admitted unless purely conjectural or based on totally unfounded assumptions).  In carrying out its gatekeeper function, a district court should keep in mind the Supreme Court's admonition in *Daubert* that, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the  traditional and appropriate means of attacking. . . admissible evidence." *Daubert*, 509 U.S. at 596.  Whether the proponent of the expert testimony has satisfied the requirements of Rule 702 is to be determined by the trial judge, Fed. R. Evid. 104, and the Second Circuit applies "an abuse of discretion standard when it review[s] a trial court's decision to admit . . . expert testimony." *Kumho Tire Co.*, 526 U.S. at 152 (quotation omitted); *accord United States* v. *Salameh*, 152 F.3d 88, 129 (2d Cir. 1998).

As has been repeatedly been made clear, while the gatekeeping function requires the district court to ascertain the reliability of an expert witness's methodology, there is no requirement that a separate hearing be held in order to do so.  *Kumho Tire*, 526 U.S. at 152 (district courts possess "latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability"); *United States* v. *Williams*, 506 F.3d 151, 161 (2d Cir. 2007) (separate hearing not necessarily required to determine reliabiltiy of methodology); *United States* v. *Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere . . . does the Supreme Court mandate the form that the inquiry into . . . reliability must take . . ."); *see also United States* v. *Crisp*, 324 F.3d 261, 268 (4th Cir. 2003) ("Under *Daubert*, a trial judge need not expend scarce judicial resources reexamining a familiar form of expertise every time opinion evidence is offered.  In fact, if a given theory or technique is "so firmly established as to have attained the status of scientific law," then it need not be examined at all, but instead may properly be subject to judicial notice); *United States* v.

5

*Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999) (pre-trial hearing not required because "the challenged evidence does not involve any new scientific theory and the testing methodolgies are neither new or novel")

Dr. Barron is expected to render his opinions regarding Dr. Lesniewski's improper diagnosis of disabling low back osteoarthritis in Rutigliano, and his lack of meaningful treatment of that purported condition. In particular, Dr. Barron is expected to testify that Lesniewski did not determine and document the requisite objective physical findings that would provide a basis for that diagnosis, and that even if Rutigliano had that condition, it is a treatable condition that Lesniewski made no meaningful effort to treat. Dr. Barron is also expected to testify that a person with significant low back osteoarthritis as described by Lesniewski and Rutigliano could not play golf. Dr. Barron is testifying based on his experience and training as an orthopedic surgeon, which is a well-recognized medical specialty that requires years of clinical training and experience. There can be no serious question that his opinions are scientifically based and relevant, and thus Daubert is plainly satisfied here without need for a hearing.

Leaving aside that Dr. Barron's testimony is plainly reliable and relevant under *Daubert*, Rutigliano's motion is separately baseless because Dr. Barron's opinions clearly do not depend on the availability of any x-ray taken by Lesniewski of Rutigliano's lower back in 1999, or on a medical exam or ancillary diagnostic tests performed. With respect to Rutigliano's claimed low back osteoarthritis, Dr. Barron's opinions do not depend on what an x-ray showed or did not show. Irrespective of what's on an x-ray, Dr. Barron's opinions regarding Lesniewski's lack of physical findings, his opinions on the lack of meaningful treatment, and his opinion that if Rutigliano's conditions were as described, Rutigliano would not be able to play golf, are sound and admissible, and the motion should be denied.

**CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the Court should deny Rutigliano's motion for a *Daubert* hearing.

Dated: New York, New York
July 22, 2013

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York

By:        s/Nicole Friedlander
                              Nicole Friedlander
                              Justin Weddle
                              Daniel B. Tehrani
                              Assistant United States Attorneys
                              (212) 637-2211/2312/2455