UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | S14 11 Cr. 1091 (VM) |
| PETER LESNIEWSKI, MARIE BARAN, AND JOSEPH RUTIGLIANO, | : : | |
| Defendants. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE OF PETER LESNIEWSKI'S MALPRACTICE RECORDS TO REFUTE THE UNFOUNDED ASSERTION THAT LESNIEWSKI WAS "A RESPECTED SURGEON," AND TO SHOW HIS MOTIVE TO COMMIT THE CHARGED CRIMES**

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

Nicole Friedlander
Justin Weddle
Daniel B. Tehrani

Assistant United States Attorneys
- Of Counsel –

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

   -v.-                                :            S14 11 Cr. 1091 (VM)

PETER LESNIEWSKI,                   :
MARIE BARAN, and
JOSEPH RUTIGLIANO,                  :

                                                      :
                 Defendants.
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE OF PETER LESNIEWSKI'S MALPRACTICE RECORDS TO REFUTE THE UNFOUNDED ASSERTION THAT LESNIEWSKI WAS "A RESPECTED SURGEON," AND TO SHOW HIS MOTIVE TO COMMIT THE CHARGED CRIMES**

The Government respectfully submits this memorandum of law to seek a ruling that it may offer evidence of defendant Peter Lesniewski's malpractice records to refute the assertion, made in Lesniewski's opening statement, that Lesniewski was "a respected surgeon" with a "wide range of practices" who has devoted his "life to service to his. . . profession" and would never "throw away his career, his profession" for this fraud.  Contrary to this claim, Lesniewski has a long history of serious negligence leading to huge malpractice payouts to patients injured by him, awards which grew dramatically in size and frequency during the years of this conspiracy, led to two separate Office of Professional Medical Conduct warnings to Lesniewski, and culminated in the refusal of Lesniewski's insurer to renew his malpractice insurance well before his fraud was uncovered.  This refusal, and his staggering malpractice history, effectively ended Lesniewski's career as a surgeon in New York.  The Government seeks to admit this evidence under Rule 404(b) to show intent, since Lesniewski "opened the door" by arguing that

2

he was a busy and well-respected surgeon who would never intentionally commit such a crime. The evidence is also directly admissible to show Lesniewski's motive to commit the charged fraud.

### I. Background

In opening statements, counsel argued:

> [Y]ou will hear that Dr. Lesniewski is a respected surgeon, a busy surgeon, someone with a wide range of practices throughout his career, including underserved communities, Bronx Lebanon Hospital in a clinic, someone who's given his life to service to his community and his profession, a pillar of his community, a pillar of his church, a deacon in his church. Well, you will hear that 5 percent of his patients were Long Island Rail Road employees seeking disability. You will hear that he got eight hundred to a thousand dollars from these patients. You will hear that he would not throw away his life, his career, his profession for that.

(Tr. at 135-136). Counsel further suggested that Lesniewski moved to Illinois in early 2008 from New York, where he had lived for decades, merely to be closer to family members.

The facts are entirely at odds with the picture of Lesniewski painted in the defense's opening statements. In reality, Lesniewski's career has been littered with malpractice actions, massive malpractice awards, and disciplinary investigations. Moreover, malpractice claims paid to patients injured by Lesniewski's negligence increased dramatically during the time of the conspiracy, including the three largest awards, paid out successively by his insurer, in the amounts of $390,000, $1,250,000, and $525,000, respectively. The following is a list of the malpractice awards paid by his medical liability insurer, MLMIC (which is owned and operated by physicians, and New York's largest medical liability insurer), leading up to the company's

3

notice of revocation of his malpractice insurance in December 2007, well before the fraud was uncovered:

| Accident Date | Date Reported to Insurer | Paid to Victim |
| --- | --- | --- |
| 6/17/1987 | 4/5/1988 | $212,500 |
| 1/12/1990 | 5/28/1991 | $270,000 |
| 7/26/1989 | 10/25/1991 | $300,000 |
| 10/11/1990 | 11/26/1991 | $7,500 |
| 11/07/1990 | 2/13/1992 | $172,500 |
| 1/29/1990 | 11/13/1992 | $248,451 |
| 9/7/1994 | 10/31/1996 | $125,000 |
| 7/6/1997 | 512/2000 | $125,000 |
| 2/1/1999 | 3/19/2001 | $390,000 |
| 10/14/1999 | 4/2/2002 | $150,000 |
| 12/21/2000 | 8/1/2002 | $287,500 |
| 2/27/2003 | 2/7/2005 | $390,000 |
| 9/25/2003 | 1/20/2006 | $1,250,0000 |
| 2/10/2005 | 6/21/2007 | $525,000 |
| 11/19/2007 | 4/7/2009 | $75,000 |

Following its payout of these huge malpractice awards, in December 2007, before the Government's investigation started and ten months before allegations of Lesniewski's fraud surfaced in the *New York Times*, MLMIC notified Lesniewski that his loss experience had fallen below acceptable standards and that his insurance would be non-renewed effective July 1, 2008,

an extraordinary measure that could effectively end his career as a surgeon.  To contest this decision, Lesniewski requested and received an interview with the Medical Society of the State of the New York which, following that interview, stated that it recommended that MLMIC refuse to renew Lesniewski's coverage.  In response to his subsequent appeal to MLMIC, the company stated that it would only extend non-surgical coverage to Lesniewski at the level of a family/general practice physician.

Rather than inform Island Orthopedic, the Long Island practice where he had worked for several years (not as a partner, but as an independent doctor who shared overhead costs with other physicians) of what happened, Lesniewski moved quickly to Illinois.  There, he obtained insurance from another company, and worked for a brief time at another practice, Genesis Orthopedics which, based on Government interviews, fired him because of the poor quality of his surgical work.  Thereafter, and contrary to counsel's claim that Lesniewski served underprivileged communities in the Bronx as an orthopedic surgeon, Lesniewski secured employment at Bronx Lebanon Hospital until his arrest in this case by agreeing that he would act only as a non-operating physician.

In addition to large malpractice awards related to his medical negligence, Lesniewski has been the subject of multiple investigations by the New York State Office of Professional Medical Conduct ("OPMC"), which resulted in two separate administrative warnings issued to Lesniewski during the time of the conspiracy, one related to two separate botched surgeries, and another stemming from Lesniewski's administration of large quantities of narcotics to an addict who apparently died from an overdose of them.  In particular, on January 18, 2002, Lesniewski received an administrative warning from OPMC in connection with his treatment of a 32-year old pain medication addict who subsequently died.  The investigation revealed that Lesniewski

had written prescriptions for over 10,650 Vicodin tablets to this young woman in a period of just over two years. Although the investigation was not able to conclude that Lesniewski's prescriptions were the cause of the woman's death, Lesniewski was cited for failure to maintain records that adequately documented the dose of medication used with the patient, and the location of trigger point injections that he gave her. In particular, the investigator noted that Lesniewski's progress notes did not identify the prescription being given, or the amount of drugs prescribed.

Further, on April 23, 2004, OPMC issued another administrative warning to Lesniewski in connection with two botched surgeries by him. In the first, among other problems, Lesniewski performed a back surgery at the wrong area of the patient's spine. The patient was required to undergo a second surgery, by another surgeon, to correct Lesniewski's error. The second surgery involved a failed hip surgery performed by Lesniewski. An orthopedist who evaluated the patient after Lesniewski's surgery concluded that the patient's leg was twisted inward and, if left alone, the patient would never walk again. The screw Lesniewski used was protruding out the side of her hip bone rather than in the center of the hip. According to an expert review, Lesniewski's placement would have a 100% chance of failure; and a properly placed screw would have had minimal complications.

## II. Lesniewski Has Opened the Door to Admission of His Malpractice Records by Arguing that He Is a "Respected Surgeon" Who Would Never Intentionally Sacrifice That Purported Reputation, and the Evidence is Also Directly Admissible to Show Motive

By arguing in his opening statement that Lesniewski is a respected surgeon who would never willingly sacrifice that reputation, and his career, by engaging in this fraud, Lesniewski has opened the door to the admission of his malpractice records, which completely belie his claim. The Government seeks to introduce simply (1) a list of the dates and amounts of malpractice

claims paid, and evidence of the non-renewal of his malpractice insurance; and (2) that Lesniewski received OPMC administrative warnings in 2002 stemming from his issuance of prescription medication, and in 2004 in connection with two failed surgeries.  The Government intends to introduce this evidence through documents amounting to just a few pages, which can be introduced through representatives of MLMIC and OPMC, or by stipulation, if counsel prefers.

    A.    **Applicable Law**

It is well-settled that "other acts" evidence is admissible under Rule 404(b) so long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect.  *See, e.g., United States* v. *Guang*, 511 F.3d 110, 121 (2d. Cir. 2007) (citations omitted).   The Second Circuit takes an "'inclusionary" approach to the admission of prior act evidence, under which "evidence of prior crimes, wrongs, or acts 'is admissible for any purpose other than to show a defendant's criminal propensity'" so long as it is not substantially outweighed by the danger of unfair prejudice.  *United States* v. *Paulino*, 445 F.3d 211, 221 (quoting *United States* v. *Pitre*, 960 F.2d 1112, 1118-19 (2d Cir. 1992)); *see also United States* v. *Teague,* 93 F.3d 81, 84 (2d Cir. 1996) (providing that proof of state of mind, such as intent, is a "proper purpose" for admission of other crimes evidence under Rule 404(b) (quoting *Huddleston* v. *United States,* 485 U.S. 681, 691 (1988))); *see also United States* v. *Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity.").

The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its ruling will be reviewed only for abuse of discretion.  *See United States* v.

*Mitchell*, 328 F.3d 77, 82 (2d Cir. 2003).   If requested, such evidence must be admitted with limiting instructions to the jury.  *See United States* v. *Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States* v. *Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (citing *Huddleston* v. *United States*, 485 U.S. at 691-92).

In addition, other act evidence may be admitted without reference to Fed. R. Evid. 404(b) if it constitutes direct proof of charged criminal conduct, if it is inextricably linked with the charged conduct, or if it is necessary to complete the story of the crimes on trial.  *See United States* v. *Quinones,* 511 F.3d 289, 309 (2d Cir. 2007); *United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)) (internal quotation marks omitted) ("[e]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial");  *United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); *Weinstein's Federal Evidence*, § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged").   In such circumstances, the uncharged crime evidence is appropriately treated as "part of the very act charged," or, at least, proof of that act.  *United States* v. *Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

    **B.**    **The Lesniewski Malpractice and OPMC Evidence Is Relevant, Admissible, and Necessary In Order for the Government to Refute Lesniewski's Unfounded Claim About His Reputation and Purported Lack of Motive or Intent**

The evidence relating to Lesniewski's paid malpractice claims and OPMC history is relevant and admissible for two independent purposes.  First, they rebut the unfounded claim, made during opening statements, that Lesniewski was a reputable surgeon, when in fact he was facing serious and potentially career-ending difficulties when he was attempting to practice orthopedic surgery and medicine.  The proof already presented at trial demonstrates that with respect to his Long Island Rail Road patients, Lesniewski was not attempting to practice medicine, but attempting simply to provide the false raw material for fraudulent disability claims, and to fill his calendar with needless office visits billed to United Health Care and cash payments from LIRR workers for fraudulent disability narratives.  Second, contrary to the claim made in opening, Lesniewski's serious difficulties also provided a strong motive for Lesniewski to engage in this fraud.  The magnitude of his insurer's payouts is staggering, and many of the largest payouts occurred during the heart of the fraud, including, for example, from approximately 2005 to 2007, claims reported to MLMIC that resulted in payouts of $390,000, $1.25 million, and $525,000, respectively.  These payments, and the threat to Lesniewski's ability to continue to perform surgery due to his insurance difficulties, provides an explanation to the jury about Lesniewski's strong motive to replace his medical income with fraud proceeds, and to replace his medical patients with LIRR retirees.

    **III.**    **Rule 403 Does Not Bar The Admission Of The Malpractice Evidence**

There is no basis to exclude the malpractice and OPMC evidence under Federal Rule of Evidence 403.  First, the proffered evidence is no more sensational than any of the direct evidence concerning Lesniewski's participation in the sweeping disability fraud scheme charged

9

in the Superseding Indictment. See *United States* v. *Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (in narcotics case, evidence of prior narcotics transactions admitted where other acts evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'" (quoting *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990))); *United States* v. *Peters*, 791 F.2d 1270, 1294 (7th Cir. 1986) (evidence is unfairly prejudicial under Rule 403 if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence). The Government proposes to admit the evidence in a neutral way, and for a proper purpose. [1] Indeed, if the Government were not allowed to present the evidence, the Government would be unfairly prejudiced, as Lesniewski will have been allowed to present a baseless and easily disproved argument to the jury in an effort to convince it, wrongly, that he lacked the intent or motive that this evidence plainly shows he had. Furthermore, the proffered evidence will not measurably expand or increase the length of the trial. As set forth above, the Government intends to call, at most, two witnesses to introduce, in minutes, a very small set of documents.

---

[1] Of course, if Lesniewski testifies, the Government intends to introduce not only this limited detail, but the additional evidence of the nature and extent of his medical malpractice and other misconduct.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should grant the Government's motion.

Dated: New York, New York
July 23, 2013

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York

By:            _s/Nicole Friedlander_____
                              Nicole Friedlander
                              Justin Weddle
                              Daniel B. Tehrani
                              Assistant United States Attorneys
                              (212) 637-2211/2312/2455