D81nles1
                                  Trial

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

            v.                               S14 11 Cr. 1091 (VM)

PETER LESNIEWSKI, MARIE BARAN
and JOSEPH RUTIGLIANO,

                 Defendants.

------------------------------x

                                             August 1, 2013
                                             10:10 a.m.


Before:

                      HON. VICTOR MARRERO,

                                             District Judge


                        APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  JUSTIN S. WEDDLE
     DANIEL BEN TEHRANI
     NICOLE WARE FRIEDLANDER
     Assistant United States Attorneys

LAW OFFICES OF JOSHUA L. DRATEL, P.C.
     Attorneys for Defendant Peter Lesniewski
BY:  JOSHUA LEWIS DRATEL
     LINDSAY A. LEWIS

DURKIN & ROBERTS
     Attorneys for Defendant Peter Lesniewski
BY:  THOMAS ANTHONY DURKIN

D81nles1
                          Trial

1                    APPEARANCES CONTINUED

2   KOEHLER & ISAACS, LLP
         Attorneys for Defendant Marie Baran
3   BY:   JOEY JACKSON

4   JOSEPH W. RYAN, JR.
    KEVIN MENEILLY
5        Attorneys for Defendant Joseph Rutigliano

6            - also present -

7   Annie Chen
    Emma Larson, Government Paralegals
8

9   SA Frank LoMonaco, FBI

10  Yeni Yrizarry, Defendant Baran Paralegal

11                        oOo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

D81nles1
                              Trial

1

2              THE COURT:  Good morning.  Thank you.  Be seated.

3         My clerk distributed a revised black-line copy of the

4    draft instructions yesterday evening.

5              Has the draft been received?

6              MR. DRATEL:  Yes, your Honor.

7              MR. WEDDLE:  Yes, your Honor.

8              MR. RYAN:  Yes, your Honor.

9              MR. JACKSON:  Yes, your Honor.

10             THE COURT:  As you can see, it's still quite lengthy,

11   and I am looking for ways of cutting back.  One way which I am

12   going to propose that is that in the sections where we go into

13   the indictment, I don't think we need to read all of the text

14   of the indictment and the statutes.  It may be better to

15   summarize that because they are going to have a copy of the

16   indictment.  If we just give them a summary of the relevant

17   portions and then go straight into the elements, it could save

18   a lot of time and eliminate the most tedious parts of the

19   instruction, which is reading straight from the indictment.

20             That is one thought.

21             There are a few other items that, as we go through,

22   you will probably pick up that I have some further comments on,

23   but we can get to those as we go through the draft in due

24   course.

25             I have received from Mr. Ryan a supplemental request

D81nles1
                          Trial

 1   to charge to behalf of Mr. Rutigliano.  Has the government

 2   received this?

 3         MR. WEDDLE:  Yes, your Honor.  There have been a

 4   number.  I think you are referring to the one that just came

 5   in.

 6         THE COURT:  The one that came in last night dated July

 7   31, 2013.  There had been one the previous day, July 30, in

 8   which Mr. Ryan made four different requests, actually three,

 9   which includes the one he sent last night as a supplement.  So

10   I am not sure, Mr. Ryan, what your intent was with regards to

11   the other two items that you have put into your --

12         MR. WEDDLE:  Your Honor.  I'm sorry.

13         THE COURT:  -- memo of the previous day.

14         Yes, Mr. Weddle.

15         MR. WEDDLE:  I addressed briefly at yesterday's

16   charging conference Mr. Ryan's July 30 requests, and I think

17   they basically fell into two categories.  He had a lengthy

18   defense contention request which I thought was not appropriate

19   since it sounded more like proposed testimony by the defendant

20   who did not testify, and the second issue was the statute of

21   limitations issue.

22         The request that Mr. Ryan put in last night, the July

23   31 one, was also a different version of a statute of

24   limitations instruction.

25         I think neither one of them is correct.  If statute of

D81nles1
                                    Trial

1    limitations is something that your Honor would like to address

2    in the charge, and we don't have a problem with it, I think the

3    proper thing to do is, with respect to the conspiracy charges,

4    just tell the jury that in order to convict on the conspiracy

5    charge you must find that an overt act was committed after

6    December 18, 2006.

7            I think it should say you must find that at least one

8    overt act was committed after December 18, 2006, and that would

9    cover it for the conspiracy charges.

10           I don't think Mr. Ryan has submitted something with

11   respect to the substantive charges, but if he would like some

12   kind of charge relating to statute of limitations issues on the

13   substantive charges, we can think of how that should be worded.

14   I think that would be, again, relatively simple for the wire

15   fraud charges.  You must find at least one wiring in

16   furtherance of the scheme was made or caused after December 18,

17   2006, something like that.

18           THE COURT:  All right.  Thank you.

19           Mr. Ryan.

20           MR. RYAN:  Your Honor, the law as I understand it is

21   that Mr. Rutigliano would have to agree that applications for

22   disability were filed by others, fellow conspirators within the

23   five years.  It is undisputed here that the two applications

24   that he was involved with, one occurred in 2003, James Maher,

25   and the other one in 2005, which is beyond the five-year

D81nles1
                              Trial

1    limitation.

2              The only applications that are within the five years

3    are Regina Walsh and Michael Stavola.  The jury would have to

4    find that Mr. Rutigliano had agreed that the Walsh application

5    would be filed and the Stavola application would be filed for

6    him to be liable for their filings.

7              The government's evidence shows on the Walsh filing

8    that she went to Dr. Ajemian, and Ms. Baran helped her prepare

9    and file it.  There is no evidence that Mr. Rutigliano had

10   anything to do with it.

11             With respect to Mr. Stavola, he went to Dr. Parisi and

12   his application was filed with the assistance of Edward Yule.

13   There is another application.  Two applications were filed

14   within the five years.  That was the subject of my Rule 29,

15   that there is no reasonable basis a rational juror could find

16   that Mr. Rutigliano caused either one of those applications to

17   be filed.  Having denied that motion, the jury would have to

18   find that these two applications, Stavola and Walsh, were filed

19   within five years with Mr. Rutigliano's agreement.

20             The cases I have cited, the Second Circuit case

21   clearly holds for the proposition that a conspirator is only

22   liable for something that happened within the five years

23   pursuant to his agreement.

24             Judge Breyer pointed out in the other case I cited

25   when he sat on the Third Circuit -- withdrawn, that is not

D81nles1
                         Trial

1     relevant to this point.  It is relevant to another point.

2          So that my suggestion is that your Honor do read to

3     the jury, you have a section in your charge on limitations

4     citing the 18 U.S.C. 3282.

5          With respect to conspiracy count the charge should

6     include our suggested supplemental charge that the Stavola and

7     Walsh applications were filed pursuant to an agreement with

8     Mr. Rutigliano.

9          It makes sense.  Why should he be liable for something

10    someone else did unless it was within this agreement?  The

11    evidence here is he had an agreement to help Parlante in '05

12    and he agreed to help Maher in 2003, ten years ago.

13         So having denied it on sufficiency, I think it's

14    important that your Honor has a chapter on the limitations

15    issue for that reason.

16         THE COURT:  All right.  Thank you.

17         Mr. Weddle, anything else on this issue?

18         MR. WEDDLE:  I think it's relatively straightforward,

19    your Honor.  Any act in furtherance of the conspiracy within

20    the statute of limitations satisfies it.  It doesn't have to be

21    the application that Mr. Ryan is talking about.  Among the many

22    acts in furtherance of the conspiracy is, of course, Joseph

23    Rutigliano's own continuing disability certification in 2011.

24    There are other certifications that happened recently.  There

25    are wires, there are repeated payments that each are in

D81nles1
                              Trial

1    furtherance of the conspiracy.  Every disability payment that

2    comes through is in furtherance of the conspiracy.  There are

3    innumerable acts in furtherance of the conspiracy.

4           There are some acts in furtherance of the conspiracy

5    that also predate December 2006.  But the conspiracy continued

6    and is presumed to continue because there was no withdrawal by

7    anybody.

8           MR. RYAN:  Your Honor, now Justice Breyer's opinion is

9    relevant, because Mr. Weddle is telling your Honor that because

10   Mr. Rutigliano filed a continuing disability report in which he

11   allegedly falsely stated he was not self-employed.  It cannot

12   be found in furtherance of the conspiracy, because this

13   conspiracy was to get approval from the Railroad Retirement

14   Board for the annuity.  Once that happened, the object of the

15   conspiracy was completed.

16          It has nothing to do with the March '11 CDR, which is

17   the subject now, I think it's Count 21, that has nothing to do

18   with getting money from the RRB which is the objective of the

19   conspiracy.  As Justice Breyer points out, that when that

20   objective is completed, the subsequent act is not in

21   furtherance of the conspiracy.

22          So there's really no relationship between the March

23   2011 CDR with respect to the application that Mr. Rutigliano

24   filed for himself to get the approval in 2000.  April of 2000

25   he got the approval.

D81nles1
Trial

1          THE COURT:  All right.  Thank you.

2          We'll have a provision that deals with the statute of

3     limitations issues, and we'll consider how to reflect the

4     various positions.

5          With that can we then turn to the draft that was

6     circulated and, again, go over global comments and then turn to

7     specific page-by-page edits.

8          Mr. Weddle.

9          MR. WEDDLE:  Thank you, your Honor.

10          One thing that I noticed is missing, and it's probably

11     my fault because I think it was also missing from the last

12     draft, but your Honor has instructed the jury that guilt is

13     individual in a number of different places in this draft.

14          One thing that's missing is that the counts themselves

15     should be considered individually.  That is, it shouldn't be

16     all or nothing for a particular defendant about whether he or

17     she is guilty of all the counts or no counts.

18          There are a number of places that that could go in.  I

19     marked one place which I think may cover it, but that is an

20     idea that I think -- it just takes a few words.

21          The place that I put it is on page 32.  On page 32, I

22     guess it's the fourth sentence on the page, the draft says, "In

23     reaching a verdict, however, you must bear in mind that you

24     must consider each defendant" and there I would just insert

25     "and each count individually with respect to whether the

D81nles1
Trial

1      government has proved its case beyond a reasonable doubt."

2             And then in the next sentence again I would insert

3      three words, "Your verdict as to each defendant" on each count

4      "must be determined separately with respect to him or her."

5             MR. JACKSON:  No objection.

6             MR. DRATEL:  No objection.

7             THE COURT:  That's fairly standard language which we

8      do use generally.  Also one place where I usually deal with

9      that is in instructing them on the verdict form.  We have not

10     talked about the verdict form, but I will distribute to you a

11     draft of the verdict form that we usually use giving, you the

12     format that is fairly standard in this court.

13            MR. WEDDLE:  Your Honor, I thought of a verdict form

14     late last night and we received Mr. Ryan's proposed verdict

15     form this morning.  I think it's unnecessarily detailed.  It's

16     basically a special verdict form.  We drafted a simple one and

17     submitted it to your Honor, but I'm sure it's very similar to

18     what your Honor typically uses.

19            My next comment was on pages 22 to 23 with respect to

20     the subpoena instruction that your Honor took out.  Mr. Durkin

21     explicitly made this argument in his summation.  I was looking

22     for the citation, but I haven't had a chance to find it.  He

23     said basically the Gary Supper letter was turned over to the

24     government and how could Dr. Lesniewski be guilty if he turned

25     that over to the government.

D81nles1
                           Trial

1           So that's why we included the proposal on if I

2     could --

3           MR. DURKIN:  Can I have the page.

4           THE COURT:  Page 22 and 23.

5           My trouble with that language, Mr. Weddle, is that it

6     went well beyond the issue that was raised by Mr. Durkin

7     concerning the one subpoena that was at issue, and it just

8     seemed unduly complicated in light of what was the issue

9     insofar as it was touched upon here.

10          MR. WEDDLE:  OK, your Honor.  Thank you.

11          My next comment is on page 29 to 30.  This is the

12    limiting instruction relating to similar act evidence or 404(b)

13    evidence.

14          Mr. Rutigliano's false tax returns that he filed year

15    after year in which he reported no consulting income are acts

16    in furtherance of the conspiracy.  So that's direct evidence,

17    because the testimony here was that the RRB routinely

18    cross-checks against tax-reported wages and self-employment

19    income in order to make sure that people who are receiving

20    disability are not receiving it improperly because they're

21    working or because they're making wages that are, making money

22    more than the $700 cutoff, which he certainly was.

23          So each of those tax returns are direct evidence of

24    the charges in the case, and I think maybe we could modify this

25    a little bit so it only covered Marie Baran's taxes, which were

D81nles1
                              Trial

1   admitted as going to her intent in committing the crime.

2          MR. JACKSON:  Judge, I would have a lot to say about

3   that.  I don't know what Mr. Ryan will have to say.  But in the

4   event that you are doing that, now you're unduly singling out

5   one defendant over another, and you are basically inviting a

6   jury to consider items that pertain to her.

7          I think in doing it that way it certainly becomes an

8   issue of prejudice, and I think it also becomes an issue of

9   confusion in that this jury has heard about a number of taxes

10  and now we're going to focus on Ms. Baran unduly.  I will have

11  a lot more to say about that when it's my turn, but I think

12  that would be objectionable on that ground.

13         In terms of whether Mr. Rutigliano's is direct

14  evidence or not, that is something Mr. Ryan will address.

15         MR. WEDDLE:  Your Honor, if Mr. Jackson wants to waive

16  a limiting instruction on similar act evidence, he is obviously

17  free to do that as a strategic matter.  The instruction is

18  supposed to be protective of his client, but if he would prefer

19  not to have it, we don't need to have it.

20         I also just wanted to point out, your Honor --

21         MR. JACKSON:  Before he points something else out, I

22  don't want to interrupt him.  I don't like the transition

23  before we deal with an issue.

24         THE COURT:  Are we done with this issue, Mr. Weddle?

25         MR. WEDDLE:  I was just going to note that your

D81nles1
                              Trial

 1    Honor's decision of July 12 which granted our motion to admit

 2    the tax evidence expressly found that Rutigliano's taxes were

 3    direct evidence of the crime as well as admissible under

 4    404(b).  But one of the alternative grounds your Honor found

 5    was they were direct evidence of the crime and that is on page

 6    19 of your Honor's order.

 7              THE COURT:  Mr. Jackson?

 8              MR. JACKSON:  Yes, Judge.  I think Mr. Weddle

 9    indicated I might be waiving something.  I don't think that's

10    what I said.  My argument was vastly different from that.  I

11    just don't think we should be focusing the jury on one

12    particular defendant about one particular item.  The fact that

13    your order may have granted alternative theories to the

14    government on the issue of taxes for Mr. Rutigliano doesn't

15    take it out of the gambit of similar act evidence.  Therefore,

16    I believe Marie Baran standing alone on that issue would

17    thereby give it undue weight.  Therefore, Judge, I would

18    certainly object to that.

19              THE COURT:  Mr. Ryan.

20              MR. RYAN:  I object to this proposition.  The evidence

21    that Mr. Weddle is relying upon is the FBI agent who is part of

22    this investigative team.  He didn't work for the RRB.  He gave

23    some answers that suggested what Mr. Weddle was trying to

24    develop here.

25              MR. WEDDLE:  Marie Baran testified to those facts,

D81nles1
                              Trial

1    your Honor.

2              MR. RYAN:  Excuse me.  We had an IRS official who

3    acknowledged, and the government can't dispute this, that it

4    requires a court order to turn over tax returns to another

5    federal agency as in this case.  So that treating the

6    suggestion of the prosecutor here that it's evidence of intent

7    to defraud the RRB is totally unwarranted.

8              THE COURT:  All right.  I have heard the comments.

9    We'll have to figure out how to deal with it.  It touches upon

10   some potential complications and delicate questions, so we'll

11   have to think about it.

12             Mr. Dratel?

13             MR. DRATEL:  Your Honor, just because we are on that

14   particular issue, and if the Court is going to restructure that

15   charge, just right now it says, "In particular I'm referring to

16   the evidence admitted" -- this is on page 29 at the bottom.

17             THE COURT:  Yes.

18             MR. DRATEL:  -- "about whether certain defendants

19   properly reported on their federal tax returns," etc.

20             I understand the objective.  It is just also that

21   because Dr. Lesniewski's returns were also put in evidence, we

22   didn't want there to be any confusion that they were admitted

23   somehow with respect to some underreporting aspect.

24             I think it has to be delineated as to which defendants

25   we are talking about, or in some way that it is not

D81nles1
                              Trial

1    Dr. Lesniewski because they certainly were not admitted as

2    40(b) evidence.  They were admitted as part of the government's

3    theory about how much United Healthcare money meant to him.  I

4    am just concerned about the possible misapplication of those,

5    because there was also the references to cash during the course

6    of the trial that the government made even in its summation

7    about cash, cash.  I think they mentioned it two or three

8    times.  So in that context I just don't want there to be any

9    confusion.

10             THE COURT:  All right.  Thank you.

11             MR. DRATEL:  Thank you.

12             THE COURT:  Next issue, Mr. Weddle.

13             MR. WEDDLE:  The next issue that I have, your Honor,

14   is on page 40.  This is just I think essentially a

15   typographical error on page 40.  There are two paragraphs there

16   that I think should be deleted, the one that starts with the

17   word "third" and the following one.  That is just part of

18   executing this change relating to the fact that Section 1349

19   does not have an overt act requirement.

20             THE COURT:  Yes.  Agreed.

21             MR. DRATEL:  "Third" and "I will"?

22             MR. WEDDLE:  Yes.

23             MR. DRATEL:  OK.

24             THE COURT:  Page 40.  All right.

25             Next?

D81nles1
                              Trial

 1          MR. WEDDLE:  Just to reiterate what I said regarding

 2   statute of limitations, your Honor, on page 47.  Right where

 3   there's the stricken language, that might be an appropriate

 4   place to just put in a sentence that says, In order to convict

 5   on a conspiracy count you must find that at least some act in

 6   furtherance of the conspiracy was committed on or after

 7   December 18, 2006.  That would be an appropriate place for

 8   that.

 9          My next change is on page 52.

10          Later in the charge, your Honor, after page 52, your

11   Honor instructs the jury further about overt acts and correctly

12   states that the overt act need not, in fact, be listed in the

13   indictment.  Although the indictment does list overt acts, the

14   law in the Second Circuit is clear that the jury can convict on

15   an overt act that is not listed in the indictment.

16          So I just had a couple proposals to fix that language

17   on page 52, which says the opposite.  I guess it's six lines up

18   from the bottom.

19          It says, "Knowingly committed at least one of the . .

20   . ."  I would delete "of the" and then just make it "at least

21   one overt act" and then delete to the comma and then say "and

22   that the overt act which you find to have been committed was

23   committed" and then delete to where it says "in furtherance of

24   the conspiracy."

25          THE COURT:  Mr. Weddle, could we reread your language

D81nles1
                              Trial

1     changes so that everyone --

2               MR. WEDDLE:  Yes, your Honor.

3               THE COURT:  -- can get it down.

4               MR. WEDDLE:  So the clause would be, "But any one of

5     the parties involved in the conspiracy knowingly committed at

6     least one overt act, and that the overt act which you find to

7     have been committed was committed in furtherance of the

8     conspiracy."

9               That would be the clause.

10              MR. DRATEL:  So you are taking out some -- OK.

11              MR. JACKSON:  Is this new language?

12              THE COURT:  It is just modifying language on page 52.

13              MR. JACKSON:  Thank you.  Which paragraph, please?

14              THE COURT:  The bottom paragraph.  The last sentence

15    in that paragraph.

16              MR. JACKSON:  Thank you, your Honor.

17              THE COURT:  Beginning with the words, "But any of the

18    parties involved in a conspiracy knowingly committed at least

19    one" delete "of the," overt act, delete "as" through

20    "indictment," continue, "and that the overt act that you find

21    to have been committed was committed" delete "to further some

22    objective of the conspiracy," continue "in furtherance of the

23    conspiracy."

24              MR. JACKSON:  Got it, Judge.  Thank you.

25              THE COURT:  Next, Mr. Weddle.

D81nles1
Trial

1          MR. WEDDLE:  Next, on page 54 there's just a bunch of

2    repeated language coming right after the insertion.  That is a

3    paragraph that starts, "For the crime of conspiracy to have

4    been committed, that was just said in the insertion so I think

5    that paragraph can be deleted.

6          THE COURT:  All right.

7          MR. WEDDLE:  This is just typographical.

8          In the next sentence it says, "You need not find that

9    the defendant."  I think that should be "a defendant in the

10   case committed the overt act.  It's sufficient if you find that

11   at least one overt act was in fact performed by at least one

12   coconspirator, whether" a "defendant or another coconspirator."

13         On page 55, your Honor, there's a limiting instruction

14   relating to conduct by Dr. Ajemian during the course of the

15   trial.  Your Honor also gave the same limiting instruction

16   regarding conduct of Dr. Parisi.

17         So if you want to conform that by just adding or

18   Dr. Parisi to the end of that instruction, that might be

19   appropriate.

20         I think the language on page 56 to 57 is repeated

21   elsewhere because we made this change where we moved the overt

22   act instructions around.  So I think we've already covered this

23   language that is on page 56 and the top of 57.

24         THE COURT:  That is correct.

25         MR. WEDDLE:  With respect to unanimity on overt acts,

D81nles1
                              Trial

1      your Honor, the law in the Second Circuit is clear on that

2      issue, that unanimity is not required with respect to overt

3      acts, and I think we cited in our requests to charge or

4      possibly in the joint requests to charge the Kozeny case, which

5      is I think among the cases that stands for that proposition.

6      So I would suggest just deleting that.

7                 MR. JACKSON:  Deleting what where?

8                 THE COURT:  This is on page 57.

9                 MR. WEDDLE:  I'm sorry.  Page 57.  The sentence that

10     says, "but you must be unanimous on what the overt act is."  I

11     think that could be eliminated.

12                THE COURT:  We will take a look at that one.

13                I think my next change is on page 62, really 61 to 62,

14     where your Honor is talking about materiality.

15                The language that your Honor has in the draft is, "A

16     material fact is one that would reasonably be expected to be of

17     concern to a reasonable and prudent person in relying upon the

18     representation or statement to make a decision."

19                Then it continues to say, "The statement has to be one

20     that a reasonable person might have considered important in

21     making his or her decision."

22                I think that is language that appears in some older

23     case law and I think has been somewhat revised in subsequent

24     case law, namely, the Neder case from the Supreme Court, which

25     we cited in our motion in limine at page 12.  But the citation

D81nles1
                              Trial

 1   is Neder v. United States 527 U.S. 1.  The quotation that we

 2   would request that your Honor use to describe materiality

 3   appears on page 16 of that case.  The language in Neder says --

 4   well now I'm reading from our brief, "Materiality is an

 5   objective test that looks only at whether the false statement

 6   has" and then this is a quote from Neder, "a natural tendency

 7   to influence or is capable of influencing the decision of the

 8   decision-making body to which it was addressed."

 9           That's the Supreme Court's formulation, and I think

10   it's less confusing, particularly with respect to the settled

11   law that gullibility of a victim is no defense to the charge.

12   I think the language about reasonable and prudent people

13   creates confusion and tension with that settled proposition of

14   law.  So we would suggest that the Court instead just use the

15   quotation from Neder.

16           THE COURT:  All right.

17           MR. JACKSON:  What year is that case, please?

18           MR. WEDDLE:  1999.

19           MR. JACKSON:  Judge, I would just like to look at that

20   further.  That is the language I've always seen as it relates

21   to material facts.  But the fact that one court once upon a

22   time in 1999 indicated something different doesn't persuade me

23   that this should be taken out.

24           THE COURT:  It wasn't just one Court.

25           MR. JACKSON:  It was the biggest court obviously, but

D81nles1
                                      Trial

1    that is not to say that there have been formulations in

2    subsequent cases which had this language in it and that's what

3    would I like to check.

4              THE COURT:  We'll take a look at that, too.  1999 is

5    not last year or the year before, and there might be other case

6    law that might be Second Circuit and more recent than 1999 that

7    may address this issue.  We will take a look at it.

8              MR. WEDDLE:  I believe that is all we have, your

9    Honor.

10             THE COURT:  Thank you.  We will go to the defense.

11             Mr. Dratel?

12             MR. DRATEL:  Thank you, your Honor.

13             The only matter -- well, two things.

14             With respect to the overt act and unanimity, we think

15   that is appropriate because it is an element of the offense.  I

16   think because it is an element of the offense and because

17   elements of the offense need to be found unanimously by a jury

18   that that would apply here.  So that's our position.

19             THE COURT:  We'll take a look at the case law on that.

20             MR. DRATEL:  The only thing I have is on page 86

21   through 88 on the occupational disability instruction.

22             THE COURT:  Let me come back to -- sorry to interrupt.

23             MR. DRATEL:  That's OK.

24             THE COURT:  On the overt act issue, there are two

25   concepts.  One is how they determine which overt act, and

D81nles1
                              Trial

1   second is whether they are unanimous as to the finding of the

2   overt act.  In other words, there could be five overt acts

3   charged, and one juror may say let's find one and another may

4   say let's find two, etc., etc.  The issue, as I understood it,

5   is that they have to be unanimous as to which overt act they

6   are finding.

7            MR. DRATEL:  That's my position as well, your Honor.

8            Yes.

9            THE COURT:  As opposed to whether or not they are

10  unanimous or whether or not there is agreement that the overt

11  act did take place.

12           MR. DRATEL:  I think they would have to be unanimous

13  that it did occur, your Honor.

14           THE COURT:  We will take a look at that.

15           MR. DRATEL:  My analogy is to other types of compound

16  offenses.  For example, let's say a 848 continuing criminal

17  enterprise, where you have to have three drug felonies in order

18  to have an 848 conviction.  The jury has to be unanimous as to

19  the specific three they find.  In a RICO they have to be

20  unanimous as to the two predicate acts.  These are subelements

21  of an offense or elements of the offense, essentially an overt

22  act.  The Court has defined it as an element.  So I think they

23  would have to be unanimous.

24           THE COURT:  We will take a look at it.

25           MR. DRATEL:  That's the basis for our position.

D81nles1
                          Trial

 1              THE COURT:  Mr. Weddle, on this point?

 2              MR. WEDDLE:  Yes, your Honor.  Just to give your Honor

 3    a little bit more detail, United States v. Kozeny appears at

 4    667 F.3d 122.  The relevant portion of the case is at pages 131

 5    to 32.  That is a Second Circuit 2011 case wherein the Second

 6    Circuit said that the jury need not be unanimous about which

 7    overt act was committed, just that an overt act was committed.

 8              THE COURT:  Yes, Mr. Dratel.

 9              MR. DRATEL:  I was going to say I don't dispute the

10    case law.  I don't have it so I don't know whether it's

11    distinguishable in regard to what is precisely said, but

12    regardless, with all due respect to him, that's just wrong.

13    Because we had this issue for years with respect to objects of

14    a drug conspiracy, whether it was a particular type of drug.

15    Now it has to be the type of drug.  This is going to be worked

16    out in some way where it's going to be wrong if they don't have

17    to be unanimous because it is an element of the offense.  So

18    that is our position.

19              THE COURT:  The element is, Mr. Dratel, that an overt

20    act occurred.

21              MR. DRATEL:  But there is also an element -- look at

22    it this other way.  There is also an element that someone

23    conspired to sell drugs, but you have to know what drug.  It

24    has to be agreed as to what drug it is.  There has to be an

25    agreement.  You can't have someone who conspired to sell crack

D81nles1
                        Trial

1    and someone who conspired to sell cocaine and the jury be half

2    and half on that.  That was litigated for a long time before

3    now, and we have it.  I just want to cut to the chase of what

4    the proper analytical result should be.

5              THE COURT:  All right.  We will take a look at it.

6              MR. DRATEL:  Thank you, your Honor.

7              Can I move to 86 to 88?

8              THE COURT:  Yes.

9              MR. DRATEL:  That's the occupational disability

10   instruction.  The definition of occupational disability is

11   fine.

12             What I think is extraneous, unnecessary, and

13   misleading and incomplete, and I know this comes from the

14   government's proposed instruction is the final paragraph on

15   page 88.  That is not about defining occupational disability.

16   That is about the process.

17             It is a different section of the CFR than the

18   definitional section.  It's about medical conclusions.  There

19   are three additional subsections that would need to be read.

20             It is unnecessary.  It's really evidentiary and not

21   legal.  I think that has nothing to do with the definition of

22   occupational disability and should be deleted.

23             So that's one.

24             MR. JACKSON:  Judge we collectively don't think that

25   that has to do with occupational disability.  It is something

D81nles1
                          Trial

 1    we discussed and endorse.

 2              THE COURT:  All right.

 3              MR. DRATEL:  The second is, going back to the first

 4    paragraph, despite the government's opening summation, this is

 5    not about total and permanent disability, this case.  I don't

 6    know why we have a definition of it in there, starting with

 7    "There are two disability standards."

 8              I would eliminate "Starting with there are two

 9    disability standards" through -- actually, that whole sentence

10    and just say, "Under the Railroad Retirement Act to be

11    occupationally disabled," etc.

12              I think, again, it's confusing to the jury.  It's not

13    a charge in this case.  It is an amendment of the indictment to

14    suggest that because someone is not totally and permanently

15    disabled and is defrauding the government on that ground that

16    they are guilty.

17              That is an amendment, because that's not in the

18    indictment.  I read it carefully last night.  There's one

19    mention of total and permanent disability, and it has nothing

20    do with the allegations in the case.  Every allegation is about

21    Railroad Retirement occupational disability.

22              The charge itself is entitled "Occupational

23    Disability," and that's all it should cover.  Thank you.

24              THE COURT:  Thank you.  Mr. Weddle.

25              MR. WEDDLE:  Your Honor, the allegations in the

D81nles1
                              Trial

 1   indictment are the defendants made false claims in order to get

 2   this money.  The application is simply an application for

 3   disability.  It is not directed toward occupational disability

 4   or total and permanent disability.

 5          Mr. Rutigliano and Mr. Baran, based on their false

 6   claims and the false claims made on their behalf by

 7   Dr. Lesniewski, obtained total and permanent disability.

 8          I think that the opening statements of counsel really

 9   highlighted the fact that this isn't just a case about

10   occupational disability.  I think the evidence has all come in.

11   These are legal matters.  Everything in this instruction is

12   directly from the Code of Federal Regulations.  So these are

13   legal matters.  It shouldn't be something that the parties are

14   disputing factually.  They are legal matters that your Honor

15   can instruct the jury.

16          MR. DRATEL:  Your Honor, paragraph 1 of the

17   indictment:  "Lesniewski assisted retirees from the Long Island

18   Rail Road Company applying for occupational disability benefits

19   from the United States Railroad Retirement."  Statutory

20   allegations.

21          THE COURT:  All right.

22          MR. DRATEL:  It is all through here.  There is no

23   allegation here of total and permanent disability.  It's all

24   throughout the indictment.

25          THE COURT:  I see that this could cut both ways,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

D81nles1
                          Trial

1    Mr. Dratel.  Even if the case is about only occupational

2    disability, there was so much reference to total disability

3    that it would not be inappropriate to tell the jury that there

4    are two standards even though the case is about the one, so

5    that they don't confuse it.

6              MR. DRATEL:  I understand that position and there's

7    merit to that, but only if there is also an instruction that

8    this case is about occupational disability.  I don't want them

9    to be judging the applications in the context of total and

10   permanent disability, because there was not a single patient

11   who came in and testified that they went to Dr. Lesniewski and

12   said, by the way, I'm looking for a total and permanent

13   disability.

14             THE COURT:  We will take a look at it as well.

15             Mr. Jackson.

16             MR. JACKSON:  Judge, just on that issue, if we are

17   going to put anything about total and permanent, it needs to be

18   made clear that that determination is made by an RRB doctor.

19             Dr. Lesniewski did not opine or otherwise suggest

20   anything regarding or any other doctors.  Once you put in the

21   application, the RRB doctor makes an assessment as to whether

22   it's total and permanent.

23             So it has to be very clearly laid out for the jury if

24   we're going down the road, because your Honor doesn't think,

25   it's not inappropriate to let them know because of the

D81nles1
                              Trial

 1    discussion and the distinction between occupational disability

 2    and total and permanent disability, that the RRB and the

 3    officials at the RRB are the ones who make that assessment, no

 4    other doctors.

 5            THE COURT:  Here you are getting into a contradiction,

 6    Mr. Jackson.  You all indicated before that you don't want

 7    language dealing with process as opposed to definition.  I was

 8    going to take out the language at the end of the paragraph

 9    dealing with process.

10            MR. JACKSON:  Judge, it is not a contradiction

11    inasmuch as I think it's confusion.  Because certainly the jury

12    could come to the false conclusion that the doctors who in the

13    government's view were a fraud were opining or making

14    distinctions between what constituted total and permanent and

15    what constituted occupational disability.  And that's not so.

16            Anything having to do with total and permanent had

17    nothing to do and far exceeds the purview of what any doctors

18    here which were allegedly engaged in illegality were doing.  I

19    think if you put total and permanent, it might have the

20    tendency to confuse the jury such that these doctors were

21    opining in that regard, and they were not.  So it's not so much

22    a process issue.  It is a very important factual issue.

23            THE COURT:  All right.  Thank you.

24            Anything else from defense?

25            MR. JACKSON:  Judge, I have a number of things, but I

D81nles1
                                     Trial

1    think Mr. Ryan --

2               THE COURT:  Mr. Ryan, do you have anything else?

3               MR. RYAN:  I will go in reverse on this one.

4          At the bottom of 87 you cite the CFR section, and my

5    suggestion is that the jury consider the implementation of this

6    phrase based upon the testimony in the case.  Because the

7    agency in implementing this definition has testified that if

8    the worker was unable to perform one or more tasks or couldn't

9    perform the full range of his duties, that is the meaning of

10   this provision in 20 C.F.R. 220.13, etc.

11              THE COURT:  Mr. Ryan, your colleagues indicated

12   earlier what I just indicated to Mr. Jackson, that there are

13   concerns about getting beyond definitions and going into

14   process.  And I pretty much agreed, and I was inclined to

15   delete the references at the bottom of 87 top of 88 to

16   processes as opposed to the beginning of the paragraph dealing

17   with definitions.

18              MR. RYAN:  Other requests to charge which your Honor

19   has considered made the suggestion that occupational disability

20   is defined by the agency as one or more ways, etc.

21              Now I am going to go back, Judge, to the beginning.

22   If you want to shorten this charge, I suggest that you strike

23   all the withdrawal language on 47 and 57 concerning this

24   conspiracy because none of the defendants are alleging that

25   they were conspirators and that they withdrew.  Each defendant

D81nles1
                              Trial

 1   says there was no conspiracy, so it is irrelevant.  It is a

 2   suggestion made by the government.

 3            THE COURT:  Each defendant is saying that; the

 4   government is saying otherwise.  That's what the jury is going

 5   to find.

 6            MR. RYAN:  That is as to whether there is a

 7   conspiracy.

 8            THE COURT:  Right.

 9            MR. RYAN:  These charges deal with withdrawal from a

10   conspiracy.  You have to do something to withdraw from it.

11            None of the defendants are claiming that.  None of the

12   defendants are claiming if I was a member of the conspiracy

13   then I withdrew.  Mr. Rutigliano isn't claiming that.  He's

14   claiming he was never a member of the conspiracy.

15            So the withdrawal language is immaterial and

16   irrelevant, and it could confuse the jury.  And it would

17   shorten the charge significantly.

18            THE COURT:  Mr. Dratel, on this point?

19            MR. DRATEL:  I just wanted to make sure that we didn't

20   have to restate the objections we made yesterday.  Today I

21   didn't restate any objections that I had made yesterday that

22   had not been incorporated into the revised charge.  I wanted to

23   make sure.

24            THE COURT:  You can have objections as to other things

25   that we have not gone over.  They are preserved.

                                  Trial

1            MR. DRATEL:  Thank you, your Honor.

2            Also, just to clarify on 87 and 88, I did not mean to

3    eliminate what is on the bottom of 87 because I think that does

4    go to the definition in terms of railroad job.  It is only the

5    top of 88 which has to do with the process.

6            THE COURT:  We'll examine that.

7            MR. DRATEL:  Thank you, your Honor.

8            MR. RYAN:  Another way to shorten the charge is my

9    suggestion on 81 concerning negligence of the RRB.  There is no

10   defendant in this case that's claiming that the RRB was

11   gullible and negligent.  We are claiming they did their job.

12   They fulfilled their obligation.  They got this medical

13   evidence and they made objective findings as to whether or not

14   the applicants were eligible under the Railroad Retirement Act.

15           So negligence is not an issue in this case.  It was an

16   issue in the prior case.  Dr. Ajemian's lawyer was making that

17   claim, and the government relished it.  But it is not an issue

18   in this case.  So that would be another way to shorten the

19   charge.

20           THE COURT:  On that point, Mr. Ryan, you may recall

21   that at the end of yesterday's proceedings I indicated that I

22   thought this was appropriate.

23           MR. RYAN:  I understand that.

24           THE COURT:  Even if the defendants had not put it into

25   the case, it would not be unreasonable for jurors to speculate

D81nles1
Trial

1    about what was happening up there and why didn't they do what

2    they were supposed to do.  I know that you say that they did.

3    But I think on this record reasonable people might be inclined

4    to wonder and, therefore, make an improper conclusion based on

5    what they view to have been the real cause.

6            MR. RYAN:  There is a recent case on materiality.  I'm

7    sorry I don't have it here.  It was in the last week, the

8    Second Circuit, on materiality.  I will check it as soon as I

9    can.

10           THE COURT:  We will look for it, too.

11           MR. RYAN:  Mr. Weddle made a suggestion about striking

12   page 54 some language dealing with overt acts.  I found that

13   that paragraph on 54 the second paragraph was very helpful and

14   shouldn't be stricken.

15           THE COURT:  The reason he suggested striking it is

16   that the same point is covered in the text just above it.

17           MR. RYAN:  It doesn't say it in the same language.  I

18   think it's much more articulate and meaningful as it is.  I

19   think your Honor did a great job.

20           THE COURT:  We will examine it.

21           MR. RYAN:  Thank you.

22           THE COURT:  If there is something in that paragraph

23   that should be retained that is not expressed earlier, we will

24   retain it.

25           MR. RYAN:  My final point is the defendant's theory of

D81nles1
                              Trial

 1    the case.  The Second Circuit has held that a defendant is

 2    entitled to have the Court instruct the juries to what the

 3    defendant's theory of the case is.  The cross-examination in

 4    this case has brought out all of the points that we have set

 5    forth as the defendant's theory of the case.  I urge your Honor

 6    to include it in the charge.

 7              THE COURT:  Mr. Ryan, I have examined your proposed

 8    theory of the case.  The problem I have with it is that

 9    essentially it is argumentative, and it puts the Court in the

10    position of unduly suggesting to the jury material which is not

11    in the record, and it would sound almost like an endorsement of

12    the theory.

13              MR. RYAN:  That would be true of any defendant's

14    theory of the case.

15              THE COURT:  What matters is how it's worded, Mr. Ryan.

16    I will examine your language and see if we can articulate a

17    defense theory that does not raise the concerns that I have.

18              MR. RYAN:  Very well, your Honor.  Thank you.

19              THE COURT:  Mr. Jackson.

20              MR. JACKSON:  I would like to raise some concerns

21    about things not in the instructions that I think your Honor

22    might consider some curative instructions about.  I am very

23    concerned about the manner in which the government has alluded

24    to -- beyond alluded to, essentially attacked, diminished,

25    criminalized, and otherwise, just for lack of a better word,

D81nles1
                              Trial
1    body slammed Mr. Baran in this case, I think, and the

2    prejudicial effect it causes.

3           let me just back in to what I am saying to you.  One

4    of the things that was stated, and I think this doesn't only

5    apply to Mr. Baran, but it applies to the defendants

6    collectively.

7           One the of the things that Mr. Weddle said in his

8    closing, in his rebuttal, was that in the event that we as

9    defense attorneys are looking to have the jury examine the RRB

10   files, we are -- and I'll quote him -- we are asking them to

11   look at the tools of the fraud.  The tools of the fraud.

12          Most respectfully, Judge, there are a variety of

13   things in those RRB files that have nothing at all to do with

14   the doctor who is here being charged or the other doctors who

15   are allegedly coconspirators, namely, Parisi and Ajemian.

16          In fact, much of the RRB file is independent of those

17   doctors and assessments found by RRB officials as to

18   disabilities.

19          Certainly in inviting them to look at Mr. Baran's

20   file, I think the jury would be interested to find many items

21   in there having nothing to do with Lesniewski, and the fact

22   that the government's trying to attach Mr. Baran to

23   Mr. Lesniewski as if he's the only doctor that there would ever

24   be information about.

25          So to make a blanket statement that the RRB claim

D81nles1
                              Trial

 1   files -- that I am suggesting and we all, I believe, suggested

 2   that the jury look at -- would be inviting them to look at

 3   tools of the fraud, I think is extraordinarily misleading, and

 4   I think that needs to be cured.  Because I think what they will

 5   find is a number of things from doctors, including the RRB

 6   doctors, that confirm the disabilities that are noted.  So I

 7   think that needs to be addressed.  The other issue I have --

 8           THE COURT:  Before you go to another issue,

 9   Mr. Jackson, what you are suggesting is that -- let me put it

10   in the form of a question.  Which part of your closing argument

11   should the Court adopt into an instruction?

12           MR. JACKSON:  Judge, I am not looking for an adoption

13   of my closing argument into an instruction.  What I'm looking

14   for is the jury to know and understand that the RRB file

15   contains a lot more than quote-unquote tools of the fraud.

16           THE COURT:  That was what you told them.  The

17   government said they did, and you said they did not.

18           MR. JACKSON:  That is what Mr. Weddle told them.

19           THE COURT:  Yes.  I'm saying Mr. Weddle, the

20   government said they did; and you collectively essentially said

21   they are not, that those are perfectly legitimate records and

22   they contain not just one doctor but many doctors.  That was

23   what the whole dispute was all about.

24           MR. JACKSON:  It was about a lot more than that, which

25   I will get into.  But I just think that that transcends the

D81nles1
                              Trial

1    bounds of argument when you are telling them that we're telling

2    them to look at tools of the fraud.

3              That is not tools of the fraud.  Those are

4    confirmatory tests.  There are RRB doctors evaluated them and

5    determined them to be totally disabled or certainly confirmed

6    disability.

7              There are other doctor materials in those records.  So

8    to mislead the jury into thinking that those files are tools of

9    a fraud I think is certainly over the top.

10             THE COURT:  OK.  Again --

11             MR. WEDDLE:  I would just note, your Honor -- I'm

12   sorry.

13             THE COURT:  That was what this entire case is about.

14   The government has one theory of what those statements say, and

15   you have another.  Each of you argued it ad nauseam before the

16   jury.

17             MR. JACKSON:  All right.  Well --

18             THE COURT:  I don't know exactly where this would

19   lead.  I don't know how you would have the Court deal with that

20   issue in the instructions other than to --

21             MR. JACKSON:  By allowing to the jury to know that the

22   RRB files contain information from sources beyond people who

23   are on trial here, whether they be doctors or otherwise.

24             THE COURT:  That is exactly the problem that I have.

25   You are asking the Court to endorse matters of fact, to take

D81nles1
                              Trial

 1   issues that are factual disputes --

 2            MR. JACKSON:  I am not asking the Court to endorse

 3   facts.  I am asking the Court to take the cover off of

 4   misrepresentations that are made.  There are facts, and there

 5   are misrepresentations.

 6            THE COURT:  When you use words like "take the cover

 7   off misrepresentations" is that not having the Court

 8   essentially make a normative judgment that what the government

 9   said was a misrepresentation.

10            MR. JACKSON:  It is allowing the Court to say, you

11   know what, ladies and gentlemen --

12            THE COURT:  The government lied to you.  The

13   government misled you.

14            MR. JACKSON:  I don't want that to be said, although I

15   wouldn't mind it.  But I am not suggesting that, Judge.

16            THE COURT:  That's the problem, that I mind it.

17            MR. JACKSON:  I am just saying --

18            THE COURT:  Would the government mind if I said that?

19            MR. WEDDLE:  Your Honor, I would just note that that

20   was about the only sentence in my rebuttal that no defense

21   counsel objected to.

22            MR. JACKSON:  In any event, along those lines of a

23   curative instruction, I think something certainly needs to be

24   done about the fact that another thing that was very disturbing

25   is the burden shifting that was done.  The government alluded

D81nles1
                              Trial

1    to, Mr. Weddle did, that I had the right to call witnesses.

2              All right.  The fact is they called Dr. Barron.  Dr.

3    Barron, who doesn't examine, poke, or prune or do anything else

4    to Mr. Baran, he makes this opinion about the fact that he's

5    just not disabled at all.  He doesn't have spinal stenosis or

6    anything else, when there are 12 other doctors that they could

7    have called.

8              I make the argument, and it puts me in a very

9    difficult place when the government says, well, I could have

10   called whomever.  I don't represent Mr. Baran, Judge.  I can't

11   turn this into another minitrial about Mr. Baran by calling

12   other doctors, nor do I have that obligation or responsibility.

13   I think certainly it needs to be made clear that the jury that

14   I don't in ways that are beyond what is placed in the charges.

15             (Continued on next page)

16

17

18

19

20

21

22

23

24

25

D81LLES2

1          MR. JACKSON:  In addition to that, your Honor, I'm

2     just not sure in me not representing Mr. Baran or me having any

3     obligation even to have a defense, how the government could

4     suggest in their closing statement about subpoena powers that I

5     might have and I could call and I'm entitled, although I don't

6     really, the defense doesn't really have to call anybody, but

7     they could have called, Judge, that's not proper and it's

8     inappropriate.

9          And along those same lines, I think the whole

10     discussion about tying the albatross around Ms. Baran's neck

11     with her husband is unduly prejudicial.  And I think again

12     there comes a time where it transcends fair argument and it

13     just unduly gives the jury an impression that I think she

14     shouldn't get, or, in the event that they do, certainly could

15     lead them to draw inferences about Ms. Baran even though I

16     think obviously they'd be wrong in doing that.

17          But I just think there's something that needs to be

18     done with regard to alerting the jury about that.

19          THE COURT:  Well, Mr. Jackson, you may recall that we

20     had a discussion yesterday at side bar on one issue where

21     precisely that concern was raised.  I raised it.  You recall

22     the context in which we were trying to provide for a form of

23     curative instruction as to that one issue.  At that point you

24     objected.

25          MR. JACKSON:  Well, no, I objected to the instruction.

D81LLES2

1      Judge, I didn't object to a curative instruction.  I objected

2      to before I was about to give my opening statement a curative

3      statement that highlighted an exhibit that I objected to, I

4      didn't want to go into evidence.  I thought it was cumulative,

5      prejudicial, misleading, confusing.  And the moment before I

6      stand up to address it, we highlight and blow up for the jury

7      we heard this exhibit, you saw this exhibit, we know everybody

8      looked at the exhibit, but let's not factor that in because it

9      deals with Mr. Baran.  That's the reason I didn't object

10     because it would have drawn their attention to something that I

11     think I didn't want their attention drawn to.

12             THE COURT:  Are you suggesting that we come back to

13     that concern and find a way of, a curative instruction that

14     deals with that concern?  Not concern about the exhibit itself,

15     but the concern about the relationship, the spousal

16     relationship between Mr. and Mrs. Baran.

17             MR. JACKSON:  As long as it's a curative instruction

18     that doesn't unduly highlight a specific piece of evidence, we

19     could discuss it.  And in the event that we could agree to its

20     language, then, yes, it should be included.  In the event that

21     I think it unduly highlights something that as I thought again

22     your Honor's instruction did, then we could -- then I would go

23     in another direction.

24             THE COURT:  All right.  Thank you.

25             MR. JACKSON:  That's all I have.

D81LLES2

1              THE COURT:  Mr. Durkin hasn't been heard.

2              MR. DURKIN:  Your Honor, still on the theory of the

3    case.

4              THE COURT:  Yes.

5              MR. DURKIN:  Would you entertain a one sentence --

6    I'll show it to Mr. Weddle and I'll read it to you -- one

7    sentence theory of the case instruction for Dr. Lesniewski.  It

8    simply reads:  It is Dr. Lesniewski's theory of the case that

9    he did not intentionally enter into a conspiracy to defraud the

10   Railroad Retirement Board of the United States, United

11   Healthcare, or any other entity.

12             THE COURT:  Well, that's implicit in the instruction

13   where it says that the defendants have denied the charges, but

14   it's just another way of elaborating on the denial.

15             MR. DURKIN:  If you would give that, I'd appreciate

16   it.

17             THE COURT:  All right.

18             MR. JACKSON:  Judge, are you considering giving the

19   theory of the case instruction?  Because I certainly would hand

20   ours up.

21             THE COURT:  I invited each of you to submit what you

22   think would be the theory of your case in a way that does not,

23   in essence, put the Court in a position of endorsing the theory

24   of the case.

25             MR. JACKSON:  Thank you, Judge.

D81LLES2

| | |
|---|---|
| 1 | THE COURT:  And also does it in a brief, concise, to |
| 2 | the point, direct language. |
| 3 | MR. JACKSON:  You mean we can't submit our closing |
| 4 | argument. |
| 5 | THE COURT:  Correct. |
| 6 | MR. JACKSON:  OK. |
| 7 | THE COURT:  Anything else, Mr. Weddle? |
| 8 | MR. WEDDLE:  Just to respond to what Mr. Jackson said. |
| 9 | My argument was entirely proper.  It responded |
| 10 | directly to Mr. Jackson's argument that we should have called |
| 11 | other clients of Marie Baran and doctors of Mr. Baran.  I said |
| 12 | he's talking -- talking about Mr. Jackson -- he's talking about |
| 13 | Marie Baran's own clients, people she testified alternatively |
| 14 | she couldn't remember or they were close friends of hers.  She |
| 15 | can call them to the witness stand.  Feel free.  He's talking |
| 16 | about Gus Baran's doctors.  He can call them to the witness |
| 17 | stand. |
| 18 | So I wasn't talking about calling Gus Baran to the |
| 19 | witness stand.  I was talking about Gus Baran's doctors. |
| 20 | I should also add, your Honor, that if Mr. Jackson |
| 21 | has -- he went on in his argument and not only did he say that |
| 22 | the government should have called these other doctors, but he |
| 23 | invited the jury to speculate about what those other doctors |
| 24 | would have said had they been called.  And he had no good faith |
| 25 | basis for doing that because we have interviewed, for example, |

D81LLES2

1  Dr. Geiger, who Mr. Jackson spoke a lot about during this

2  trial, and Dr. Geiger told us and we informed Mr. Jackson that

3  if Gus Baran was out playing golf on a regular basis -- ever,

4  then Gus Baran lied to Dr. Geiger.  That's what his testimony

5  would have been.

6          So it's entirely improper for Mr. Jackson to get up

7  here and invite the jury to speculate about facts that are

8  simply false.

9          MR. JACKSON:  Judge.

10         MR. WEDDLE:  My argument was proper.  We've been over

11 this a couple of times, and I said expressly that the

12 defendants have no burden.  There's no burden shifting here.  I

13 did exactly what I was supposed to do.  I went back over the

14 transcript last night to make sure and there's nothing here.  I

15 think Mr. Jackson is just a little dissatisfied with the way

16 the arguments went.

17         MR. JACKSON:  Judge, I appreciate Mr. Weddle's

18 evaluation of my satisfaction or lack thereof.  Now we're

19 getting into mind reading.

20         But just getting into the facts of the case, Judge, in

21 terms of good faith/bad faith because the government likes to

22 throw argue accusations about people's faith and lack of faith,

23 let's just stick to the facts if we could.

24         In terms of good faith, I thought I questioned their

25 doctor about whether or not and I questioned him about whether

D81LLES2

1   he spoke to any of Mr. Baran's doctors, whether he conveyed any

2   thoughts to them, whether he got any files from them, whether

3   he evaluated them.  I also through Ms. Baran discussed the

4   totality of Mr. Baran's doctors and the nature of which he was

5   treated.

6        And so for them to say I had no good faith basis

7   about, you know, inferring that these doctors would have come

8   here and say anything other than the fact that he's disabled I

9   think is completely disingenuous.

10        And if they wanted to invite Dr. Geiger or anybody

11  else, they were welcome to.  And when the government told me

12  that, hey, we talked to Geiger and we're going to call him if

13  you open this door, my words to them were please call him.  We

14  have a lot of other doctors that we can call too.  Prove your

15  case.  I intend to prove mine.

16        So the fact they didn't call another doctor is up to

17  them.  It's their prerogative.  But it's not my job to be

18  calling a doctor to justify Mr. Baran, who I don't represent,

19  who they're pushing me into a position as if I do represent him

20  and suggesting and making innuendoes to the jury regarding what

21  I could do and could not do for a person not my client that

22  they're going to try to attach to mine.

23        And so I completely acted in good faith.  I'm not sure

24  that the government did.  Thank you.

25        THE COURT:  All right.  Thank you, Mr. Jackson.

D81LLES2

```
 1          This issue the parties are arguing now is not
 2    uncommon.  It comes up quite frequently in criminal cases.
 3    That is the reason why there's a fairly standard instruction
 4    which you will find here or certainly it comes straight out of
 5    Sand's instructions.  The government is not required to use any
 6    particular technique in trying its case or to call any
 7    particular witnesses, and if they don't, well, the government
 8    has the burden of proof.
 9          MR. JACKSON:  They sure do, Judge, but they shouldn't
10    be suggesting I have a burden of proof to the jury.
11          THE COURT:  It's also quite common for the government
12    in response to your kind of argument to say we didn't call a
13    particular doctor, well, that was our prerogative.  And if the
14    defendants wanted to hear from him, they could have called him.
15    That's not suggested that you have to do anything.  It's a
16    proper, very common way in which the government responds to
17    exactly the argument that defense always makes, why didn't they
18    call such and such a person, why the one that they called.
19    Very common.
20          So I'm not persuaded that we need to go into this
21    anymore.
22          Is there anything else?  We need time to come back,
23    reflect on your comments, do the research that we said we would
24    do and make adjustments and then come back with a set of
25    instructions that will be the final instructions.
```

D81LLES2

1          Yes, Mr. Weddle.

2          MR. WEDDLE:  This is beyond the instructions, your

3     Honor.

4          THE COURT:  Yes.

5          MR. WEDDLE:  Your Honor had mentioned that we should

6     formally describe which counts we're not proceeding on.  I

7     drafted up a letter.  Unfortunately, I only have one copy.  I

8     wonder if I can hand it up to your Honor and email to defense

9     counsel as soon as we break, but it is a chart that lists out

10    all the counts of the original indictment, a brief description

11    of them, and then, if applicable, whether they've been dropped

12    and then the count number in the redacted indictment.

13          And then at an appropriate time, once defense counsel

14    has had an opportunity to check over the letter and make sure

15    it looks OK to them, we would just move to dismiss the counts

16    that are listed as dropped.

17          MR. RYAN:  I would move for a judgment of acquittal.

18          THE COURT:  Again.

19          MR. RYAN:  Which I have done.

20          Judge, is this a good time to take a break and we can

21    consider these matters?

22          THE COURT:  Let's make sure you all look at this

23    before it gets handed up.

24          (Pause)

25          MR. RYAN:  The way I read this, Judge, the government

D81LLES2

1    dropped nine counts.  They conceded nine --

2                MR. WEDDLE:  Judge.

3                MR. RYAN:  -- against Mr. Rutigliano based upon their

4    failure to prove.

5                MR. WEDDLE:  I guess Mr. Ryan is just making that

6    comment for the press.  It's --

7                MR. RYAN:  Excuse me, my comments are made to the

8    Court.  Thank you very much.

9                THE COURT:  All right.  Mr. Weddle, anything else?

10               MR. WEDDLE:  Your Honor, as I said yesterday, we just,

11   because our proof was coming in in such an exceptionally

12   compelling fashion, we decided to streamline the case and

13   forego calling some additional witnesses who would have

14   testified in a similar manner to the witnesses that we did call

15   about the guilt of the defendants and, therefore, we elected

16   not to proceed on certain of the counts that are enumerated in

17   the letter that I sent to your Honor.

18               I should also add, your Honor, on a separate point, I

19   did circulate by email a second redacted indictment which made

20   the one change that I discussed with your Honor yesterday and

21   that is to just delete some of the language from Count 21

22   related to that other theory of false statements that was

23   originally charged in the indictment and we elected not to

24   pursue and instead just to rely on the single theory.

25               MR. RYAN:  Judge, I'll have to review that.  I didn't

D81LLES2

1    realize there was a second redacted indictment.

2            THE COURT:  Mr. Weddle, my law clerk has just raised a

3    technical question.  On page 28, you have a table listing the

4    counts and the defendants and the question has arisen as to

5    whether that listing of the charged defendants by count has

6    been adjusted to reflect the dropping of some particular

7    counts.  You may just want to take a look at it and see if

8    there's any technical difficulty in that light.

9            MR. WEDDLE:  I have a copy.  May I have a copy or may

10   I have my letter back?  I think I had it right.

11           THE COURT:  Why don't you examine that and what I

12   suggest we do is try to see if we can come back around 12:45, a

13   few minutes before the jury comes in to go over resolution and

14   the Court's disposition of some of these issues.  Thank you.

15           (Recess)

16           (Continued on next page)

17

18

19

20

21

22

23

24

25

D81nles3

                   A F T E R N O O N    S E S S I O N

                              (2:15 p.m.)

          THE COURT:  Thank you.  Be seated.

          We have a substantial amount to go over and a limited

amount of time to do it in given that the jury has already been

waiting for an hour and 15 minutes.

          First, I distributed a draft of the Court's version of

the verdict form.  Have all the parties received the Court's

draft verdict form?

          MR. WEDDLE:  Yes, your Honor.

          THE COURT:  We don't need to go into details about

that at this point because it is more important that I flag for

you the instructions where I made the substantive changes that

were the subject of much discussion earlier today.  You don't

have hard copies because we just were able to e-mail them to

you, so let me just highlight where the changes occur in the

black-lined version that we e-mailed to you.

          First is on pages 29 and 30, which deal with the

question of the tax returns.  What I did there is made

reference to the fact that tax return evidence was presented,

and I indicate that generically as to each of the defendants

this tax return evidence cannot be used, is not evidence -- let

me just back up.  I remind the jurors that none of the

defendants here is charged with any offense relating to tax

returns, either failure to file or failure to pay, and then go

D81nles3

specifically as to Ms. Baran and recall the limiting

instruction that was given at the time that the tax return

evidence was presented in connection with her and that that

limiting instruction directed the jury to consider that

evidence only for the purposes of intent, knowledge, motive,

etc.; and then, with regards to Mr. Rutigliano, to call to the

jury's attention that the government argues that the tax return

evidence is not only for the purpose of intent, knowledge, and

opportunity, etc., but that the government contends that it is

evidence of failure to report the income, is evidence of fraud

against the RRB because he was, according to the government,

required to inform the RRB of any other income.  So for that

purpose the jury may consider the evidence if it finds that, in

fact, Mr. Rutigliano received the income and failed to report

it to the IRS.

          The next big change is on page 56 of the black-line.

There is the issue pertaining to whether or not the overt act

must be found, whether the evidence of the overt act must be

found by unanimity.  I looked at the case law.  The Second

Circuit case that the government pointed out is directly on

point.

          The Second Circuit there indicates that it is going to

follow two other circuits, the Third and the Fifth, I believe,

that ruled that you need not consider the agreement -- the

language specifically says, "Although proof of at least one

D81nles3

1    overt act is necessary to prove an element of the crime, you

2    need not reach unanimous agreement on which particular overt

3    act was committed in furtherance of the conspiracy."  That is

4    what I read the Second Circuit to have ruled in the applicable

5    case.

6           With regards to the materiality issue, I read the

7    Second Circuit case that Mr. Rutigliano called our attention

8    to.  In fact, that Second Circuit case makes reference to and

9    quotes from the Supreme Court case of 1999 that the government

10   called to our attention pertaining to materiality, and

11   consequently we used the Supreme Court language on that issue.

12          Finally, with respect to the occupational disability,

13   on page 85 of the black-line I essentially made reference to

14   the two definitions, having indicated that there is evidence in

15   the record, testimony that made reference to both issues.  I

16   just define what they are.  To the extent that there is also

17   discussion about the railroad occupation, I leave the language

18   pertaining to what it means under the statute, railroad

19   occupation, but I delete the language that talks about the

20   process and procedure of what the RRB does and what it gives

21   weight to.

22          Those are the major changes.

23          Now, Mr. Ryan had submitted yet another formulation

24   with regards to the statute of limitations issue.  I looked at

25   it.  I am not persuaded that there is a sufficient basis for

D81nles3

1    any further instruction on that beyond what is adopted, which

2    is essentially to indicate that the applicable statute of

3    limitations for Counts Three and Four requires that the overt

4    act must have occurred after December 18, 2006.

5              That is on page 56.

6              So we must bring closure to the matter, and that is

7    the instructions as I have now revised them.  You may or may

8    not agree with the changes.  If you do not, of course, you have

9    the prerogative to express any further objections.

10             THE COURT:  Mr. Dratel.

11             MR. DRATEL:  Your Honor, I see that the Court did put

12   in a defendant's theory of the case on 78.

13             THE COURT:  Yes.  I'm sorry.  I should have called

14   your attention to that.

15             What I tried to do there, rather than having three

16   separate theories of the case, insofar as each defendant

17   essentially has similar elements of a theory of defense, I put

18   one generic one that pertains to all three, and then I follow

19   that with the good-faith language.

20             MR. DRATEL:  To the extent it wasn't clear before, we

21   on behalf of Dr. Lesniewski join in the requests that were made

22   by the other counsel for the other defendants as well.  I guess

23   I don't have to restate the objections on the overt act issue.

24   We discussed that already.

25             THE COURT:  All the objections have been recorded.  If

D81nles3

1     there are any new ones to what I flagged for you here, you may

2     express them at this point.  I will give you one last

3     opportunity to record any objections to the instructions after

4     I read them, and that will be the end.

5              MR. DRATEL:  Not on the instructions, your Honor, but

6     there is something we noticed in the indictment, the redacted

7     indictment.

8              THE COURT:  Yes.

9              MR. DRATEL:  If you look at page 2, paragraph 4, it

10    includes the description of Steven Gagliano as if he's still a

11    defendant.  We think that that paragraph needs to be deleted.

12    There are some references which, I think I found them all, but

13    obviously a word search on an electronic copy would help.  But

14    page 22, paragraph E, his name is capitalized in one of the

15    overt acts, on page 25 in the Counts Five Through Eight, Count

16    Five has him capitalized as the retiree.  The same with respect

17    to page 22, he is named as a defendant in Count Seventeen and

18    as the retiree.

19             So I think, as with those other retirees who are not

20    defendants, where it properly shows up as the person who did

21    the application, it should be lower case, you know, just like

22    the others and remove that paragraph 4 and also have his name

23    removed from Count Seventeen in terms of as a defendant.

24             THE COURT:  Mr. Dratel, we don't give the jury the

25    copy of the indictment until after the instructions.

D81nles3

1          MR. DRATEL:  Right.

2          THE COURT:  So we have a couple of hours.

3          MR. DRATEL:  That is fine.

4          THE COURT:  We need to work this thing out with the

5     government and get a conformed copy that we can then send into

6     the jury room.

7          MR. DRATEL:  That's why I wanted to raise it now, so

8     we don't waste time.

9          THE COURT:  I appreciate that.

10         MR. DRATEL:  Thank you.

11         THE COURT:  If there is nothing else --

12         MR. DURKIN:  Judge, have you made a final ruling on

13    dismissing the juror?

14         THE COURT:  Yes, I have.  As I indicated, I don't want

15    to do it here in open court.

16         MR. DURKIN:  Could I just make one last stand on that

17    so to speak?

18         THE COURT:  I made the ruling yesterday, Mr. Durkin.

19         You may recall when I made the ruling.

20         MR. DURKIN:  I know.

21         THE COURT:  I said that I was going to continue to

22    document for the record, which I have, and I will share it with

23    you those findings after I give the instructions and before I

24    announce the alternates.

25         MR. DURKIN:  Can I just be heard briefly then at that

D81nles3

1   time?

2                   THE COURT:  Yes.

3                   MR. DURKIN:  OK.  That is fine.

4                   THE COURT:  All right.

5                   MR. WEDDLE:  Your Honor, I had one thing which I

6   apologize for not noticing earlier.  I mentioned this to

7   Mr. Williams.  In the second paragraph of your instruction, you

8   mention that you are planning to lock the courtroom.

9                   THE COURT:  I lock the courtroom during the

10  instructions for obvious reasons.  I don't want to have people

11  outside come in and out of the courtroom while I am giving the

12  instructions because it is disruptive to the reporter.  It may

13  cause the reporter to miss something that I may have said.

14  That has been the practice.

15                  MR. WEDDLE:  I was just concerned about it in light of

16  the Second Circuit's fairly recent <u>Gupta</u> decision, which was an

17  en banc decision, where the courtroom was locked during voir

18  dire.  Unbeknownst to the parties, the courtroom was closed

19  during voir dire, and the Second Circuit reversed because the

20  Court had not made findings under the Waller factors.

21  Obviously this situation is different because in Gupta the

22  defendants didn't know about it, and now they do know about it

23  and none of them have raised an objection, so there would be a

24  waiver.

25                  THE COURT:  Well, voir dire is entirely different from

D81nles3

1    court instructions, I think.  So I don't think that locking the

2    courtroom during court instructions would be covered by Gupta,

3    but if you for the sake of belt and suspenders wish to invite

4    any objections from any defendants to the Court locking the

5    courtroom during the instructions, you may record them at this

6    point.

7              MR. JACKSON:  As long as you don't lock me out.  I

8    just have to go to the men's room.

9              THE COURT:  These instructions are going to take at

10   least two hours.  If you have any business on the outside, you

11   better take care of it now.

12             (Recess)

13             THE COURT:  Bring in the jury, please.

14         (Continued on next page)

15

16

17

18

19

20

21

22

23

24

25

D81nles3

1            (Jury present)

2            THE COURT:  Welcome back.  Thank you very much.  My

3     apologies again for keeping you waiting and for any

4     inconvenience it may have caused.  I indicated to you the other

5     day that as we draw to the closing stages of the trial things

6     become a little bit more unpredictable, and things come up

7     which through nobody's fault cause these kinds of delays.

8            Before you begin your deliberations, I am going to

9     instructs you on the law.  You must pay very close attention,

10    and I will be as clear as possible.

11           I take this opportunity to advise anyone in the

12    courtroom, in the audience, in the back benches, that while I

13    instruct the jury, the courtroom will be locked, and no one

14    will be permitted to enter or leave the courtroom until I have

15    concluded all my instructions to the jury.  These instructions

16    may take as much as two hours, or longer, so if you have any

17    business on the outside this is the opportunity for you to step

18    out.

19           It has been obvious to me and to counsel that until

20    now you have been faithfully discharging your duty to listen

21    carefully and to observe each witness who testified.  Your

22    interest never flagged, and you have followed the testimony

23    with close attention.  I ask you now to give me that careful

24    attention as I instruct you on the law.

25           Now, listening on these instructions may not be easy.

 1    It is important, however, that you listen carefully and

 2    concentrate, and I ask you to be patient and to pay close

 3    attention.

 4          You will have a copy of my instructions that you can

 5    take with you into the jury room after I complete reading the

 6    instructions, so you need not take notes.  It is more important

 7    for you to listen and not be distracted by note-taking at this

 8    point.

 9          You have heard all of the evidence in the case as well

10    as the final arguments of the lawyers for the parties.

11          My duty at this point is to instruct you on the law.

12    It is your duty to accept these instructions of law and to

13    apply them to the facts as you determine them, just as it has

14    been my duty to preside over the trial and decide what

15    testimony and evidence is relevant under the law for your

16    consideration.

17          On these legal matters, you must take the law as I

18    give it to you.  If any attorney has stated a legal principle

19    different from any that I state to you in these instructions,

20    it is my instructions that you must follow.  You must consider

21    the law only as I instruct you, and you must disregard any

22    contrary opinion of the relevant law that may be expressed by

23    anyone else, including members of your panel.  You are all

24    instructed that if, by whatever means or authority, you have

25    either heard or formed a view of the law relevant to this case

1      other than that now described to you by the Court in these

2      instructions, you are not to discuss it with your fellow jurors

3      during any part of this case or during your deliberations.

4      This is very important.

5           You should not single out any one instruction as

6      definitively stating the law alone, but you must consider my

7      instructions as a whole when you retire to deliberate to the

8      jury room.

9           You must not -- any of you -- be concerned with the

10     wisdom of any rule of law that I state.  Regardless of any

11     opinion that you may have as to what the law may be, or ought

12     to be, it would be violate your sworn duty to base your verdict

13     upon any view of the law other than that which I give you.

14          As members of the jury, you are the sole and exclusive

15     judges of the facts.  You pass judgment on the evidence.  You

16     determine the credibility of the witnesses.  You resolve such

17     conflicts as there may be in the testimony.  You draw whatever

18     reasonable inferences you decide to draw from the facts as you

19     have determined them.

20          I shall later discuss with you how to pass upon the

21     credibility -- or believability -- of the witnesses.

22          In determining the facts, you must rely upon your own

23     recollection of the evidence.  What the lawyers have said in

24     their opening statements, in their closing arguments, in their

25     objections or in their questions is not evidence.  Nor is

1    anything I that may have said during the trial or may say

2    during these instructions with respect to a fact matter to be

3    taken in substitution for your own independent recollection of

4    the facts.  What I say in this regard is not evidence.

5           The evidence before you consists of the answers given

6    by witnesses -- the testimony they gave, as you recall it --

7    and the exhibits that were received in evidence.  The evidence

8    does not include the questions posed by the lawyers.  Only the

9    answers are evidence.  But you may not consider any answer that

10   I directed you to disregard or that I directed be struck from

11   the record.  Do not consider such answers.

12          You may also consider the stipulations of the parties

13   as evidence.

14          In determining the facts, no one may invade your

15   province or function as jurors.  In order for you to determine

16   the facts, you must rely upon your own recollection of the

17   evidence.  Any notes that were taken by jurors during the trial

18   should only be used to refresh the recollection of the juror

19   who took the notes.  In addition, notes that you take may only

20   be used to assist you and are not a substitute for your

21   recollection of the evidence in the case.  Keep in mind that

22   just because you've written a note does not necessarily mean it

23   is accurate.  Along the same lines, the fact that a particular

24   juror has taken notes does not entitle that juror's views to

25   any greater weight than the views of any other juror.  Again,

1    you are not required to take notes, but if you decide to do so,

2    you may not discuss or share your notes with anyone else before

3    or during deliberations.  The notes that you took are for you

4    alone.

5         I have not expressed nor have I intended to suggest

6    any opinion as to which witnesses are or are not worthy of

7    belief, what facts have or have not been established, or what

8    inference or inferences should be drawn from the evidence.  If

9    any expression of mine has seemed to indicate an opinion

10   relating to any of these matters, I instruct you to disregard

11   it.  You are, I repeat, the exclusive and sole judges of all of

12   the questions of fact submitted to you and of the credibility

13   of the witnesses.

14        Your authority, however, is not to be exercised

15   arbitrarily.  It must be exercised with good judgment, sound

16   discretion and in accordance with the rules of law which I give

17   you.

18        You are reminded that you took an oath to render

19   judgment impartially and fairly and not to be swayed by

20   prejudice, sympathy, or fear and to be guided solely by the

21   evidence in the case and the applicable law.  You must fulfill

22   your oath in order to reach a just and true verdict.  You are

23   to perform the duty of finding the facts without bias or

24   prejudice as to any party.  You are to perform your final duty

25   in an attitude of complete fairness and impartiality.

1           The fact that the prosecution is brought in the name

2     of the United States of America entitles the government to no

3     greater consideration than that accorded to any other party to

4     a litigation.  By the same token, it is entitled to no less

5     consideration.  All parties, whether government or individuals,

6     stand as equals at the bar of justice.  The question before you

7     can never be:  Will the government win or lose the case?  The

8     government always wins when justice is done, regardless of

9     whether the verdict is guilty or not guilty.

10          Before I instruct you on the specific issues that you

11    must decide, I want to define for you the standard by which you

12    will decide whether the government has met its burden of proof

13    on a particular issue.  This is a criminal case, and as such

14    the government has the burden of proving all of the elements of

15    each of the charges against each defendant beyond a reasonable

16    doubt.

17          Although each defendant has been indicted, you must

18    remember that an indictment is only an accusation.  It is not

19    evidence.  Each defendant has pleaded not guilty to that

20    indictment.

21          As a result of each defendant's pleas of not guilty,

22    the burden is on the prosecution to prove guilt beyond a

23    reasonable doubt.  This burden never shifts to a defendant for

24    the simple reason that the law never imposes upon a defendant

25    in a criminal case the burden or duty of calling any witness or

1    producing any evidence.

2             It is a cardinal principle of our system of justice

3    that every person accused of a crime is presumed to be innocent

4    unless and until his or her guilt is established beyond a

5    reasonable doubt.

6             The presumption is not a mere formality.  It is a

7    matter of the most important substance.  I therefore instruct

8    that you the defendants, Peter Lesniewski, Marie Baran, and

9    Joseph Rutigliano, are to be presumed by you to be innocent

10   throughout your deliberations until such time, if ever, that

11   you as a jury are satisfied that the government has proven him

12   or her guilty beyond a reasonable doubt.

13            The defendants begin the trial with a clean slate.

14   This presumption of innocence alone is sufficient to acquit a

15   defendant unless you as jurors are unanimously convinced beyond

16   a reasonable doubt of his or her guilt, after a careful and

17   impartial consideration of all of the evidence in this case.  A

18   defendant has the right to remain silent and never has the

19   burden to present any evidence or to prove that he or she is

20   not guilty.  If the government fails to sustain its burden as

21   to any defendant and count that you are considering, you must

22   find that defendant not guilty on that count.

23            The presumption of innocence was with the defendants

24   when the trial began and remains with them even now as I speak

25   to you and will continue with each defendant into your

D81nles3                        Jury Charge

deliberations unless and until you are convinced that the

government has proven his or her guilt beyond a reasonable

doubt.

          I have said that the government must prove each

defendant guilty beyond a reasonable doubt.  The question

naturally is:  What is a reasonable doubt?  The words almost

define themselves.  It is a doubt based upon reason and common

sense.  It is a doubt that a reasonable person has after

carefully weighing all of the evidence.  It may arise from the

evidence or the lack of evidence or the nature of the evidence.

It is a doubt which would cause a reasonable person to hesitate

to act in a matter of importance in his or her personal life.

Proof beyond a reasonable doubt must, therefore, be proof of

such a convincing character that a reasonable person would not

hesitate to rely and act upon it in the most important of his

or her own affairs.  A reasonable doubt is not a caprice or

whim; it is not a mere speculation or suspicion.  It is not an

excuse to void the performance of an unpleasant duty.  And it

is not sympathy.

          In a criminal case the burden is at all times upon the

government to prove guilt beyond a reasonable doubt.  The law

does not require that the government prove guilt beyond all

possible doubt; proof beyond a reasonable doubt is sufficient

to convict.  This burden never shifts to a defendant, which

means that it is always the government's burden to prove each

D81nles3                         Jury Charge

of the elements of each crime charged beyond a reasonable

doubt.

          If after fair and impartial consideration of all of

the evidence, you are satisfied of a defendant's guilt beyond a

reasonable doubt, you must vote to convict that defendant.  On

the other hand, if after fair and impartial consideration of

all of the evidence, you have a reasonable doubt as to the

guilt of a defendant, it is your duty -- and you must -- acquit

that defendant.

          In making your determinations of fact in the case,

your judgment must be applied only to that which is properly in

evidence.

          I will now remind you of the preliminary instructions

that I gave you at the start of the trial as to what you should

consider as evidence, from which you are to decide what the

facts are.  The evidence in this case consists of:

          The sworn testimony of witnesses, on both direct and

cross-examination, regardless of who called the witness;

          The documents and exhibits which have been admitted

into evidence; and,

          The facts to which all the lawyers have agreed tore

stipulated.

          Again, nothing else is evidence -- not what the

lawyers say, not what I say, and not anything you heard outside

the courtroom.

1          As I previously instructed, evidence is the witnesses'
2    answers to the questions put to them, not the questions
3    themselves.  Arguments of counsel, no matter how passionate
4    their appeal, are not evidence, although you may give
5    consideration to those arguments in making up your mind as to
6    what inferences to draw from the facts which are in evidence.
7    What the lawyers have said to you in their opening statements
8    and the closing arguments I repeat is not evidence.  The
9    closing arguments are designed to present to you what the
10   parties believe the evidence has shown and what inferences they
11   believe may reasonably be drawn from the evidence.  If your
12   recollection of the facts differs from the lawyers' statements,
13   it is your recollection which controls.  Similarly, the
14   lawyers' characterization of the witnesses' testimony and
15   assessment of credibility is not evidence.  Only your own
16   evaluation of the testimony and credibility should influence
17   your deliberations.

18         You should only consider exhibits that have been
19   admitted into evidence.  Exhibits marked for identification but
20   not admitted are not evidence, nor are materials brought forth
21   only to refresh the recollection of any witnesses.  You cannot
22   consider or speculate as to the content of any exhibit not
23   received in evidence.

24         Similarly, you are to disregard any testimony when I
25   have ordered that it be stricken.  As I indicated before, only

1    the witnesses' answers are evidence, and you are not to

2    consider a question as evidence.

3           From time to time, the Court has been called upon to

4    pass upon the admissibility of certain evidence, although I

5    have tried to do so -- insofar as it was practicable -- out of

6    your hearing.  You should not be concerned with the reasons for

7    any such rulings, and you are not to draw any inferences from

8    them.  Whether offered evidence is admissible is purely a

9    question of law in the province of the Court and outside the

10   province the jury.

11          In admitting evidence to which an objection has been

12   made, the Court does not determine what weight should be given

13   to such evidence, nor does it pass on the credibility of the

14   evidence.  Of course, you are required to dismiss from your

15   mind completely any evidence which has been ruled out of the

16   case by the Court, and you must refrain from speculation or

17   conjecture or any guesswork about the nature or effect of any

18   discussions between the Court and counsel held out of your

19   hearing or presence.

20          It is the duty of the attorneys on each side of a case

21   to object when the other side offers testimony or other

22   evidence which the attorneys believe is not properly

23   admissible.  Counsel also have the right and duty to ask the

24   Court to make rulings of law and to request conferences at the

25   sidebar out of the hearing of the jury.

1          All of those questions of law must be decided by the

2     Court.  You are not to show any prejudice against an attorney

3     or his or her client because the attorney objected to the

4     admissibility of evidence or asked for a conference out of the

5     hearing of the jury or asked the Court for a ruling on the law.

6          Recall also that in my preliminary instructions I

7     described two kinds of evidence:  Direct and circumstantial.

8          Direct evidence is when a witness testifies about

9     something he or she knows by virtue of his or her own senses --

10    something he or she has seen, felt, touched, or heard.

11         Circumstantial evidence is evidence which tends to

12    prove a disputed fact by proof of other facts.  You infer on

13    the basis of reason and experience and common sense from one

14    established fact the existence or nonexistence of some other

15    fact.  If someone walked into the courtroom wearing a raincoat

16    covered with drops of water and carrying a wet umbrella, that

17    would be circumstantial evidence from which you could conclude

18    that it was raining outside.

19         Circumstantial evidence is of no less value than

20    direct evidence; it is a general rule that the law makes no

21    distinction between direct and circumstantial evidence, but

22    simply requires that, before convicting a defendant, the jury

23    must be satisfied of that defendant's guilt beyond a reasonable

24    doubt from all of the evidence in the case.

25         During the trial, you may have heard me or the

1    attorneys use the term "inference."  Inferences are deductions

2    or conclusions which you, the jury, may reach, using reason,

3    logic and common sense, based on facts which have been

4    established by the evidence in the case.

5            You may draw from the facts that you find have been

6    proved such reasonable inferences as seem justified in light of

7    your experience.  However, you should not treat your power to

8    draw reasonable inferences as permission to indulge in

9    conjecture, speculation, or guesswork.  Every inference relied

10   upon by the jury should be based on the evidence or lack of

11   evidence in the case and drawn on the basis of reason, logic

12   and common experience.

13           If you conclude that other persons may have been

14   involved in criminal acts charged in the indictment, you may

15   not draw any inference, favorable or unfavorable, towards the

16   government or the defendants from the fact that such persons

17   were not named as defendants in the indictment.  Whether a

18   person should be named as a coconspirator or indicted as a

19   defendant is a matter within the sole discretion of the United

20   States attorney and the grand jury.  Therefore, you may not

21   consider it in any way in reaching your verdict as to the three

22   defendants on trial.  Your task is limited to considering the

23   charges contained in the indictment and the three defendants

24   before you.

25           In this case you have heard evidence in the form of

D81nles3                    Jury Charge

stipulations.

         A stipulation of testimony is an agreement among the
parties that, if called, a witness would have given certain
testimony.  You must accept as true the fact that the witness
would have given the testimony.  However, it is for you to
determine the weight to be given that testimony.

         You also heard evidence in the form of stipulations
that contain facts that were agreed to be true.  In such cases,
you must accept those facts as true.  However, it is it is for
you to determine the weight to be given that fact.

         (Continued on next page)

D81LLES4                          Charge

1          THE COURT:  Those facts.

2          You had the opportunity to observe all the witnesses.

3   It is your job to decide how believable each witness was in his

4   or her testimony.  You are the sole judges of the credibility

5   of each witness and of the importance of his or her testimony.

6          In determining where the truth lies, you should use

7   all of the tests of truthfulness that I mentioned to you

8   earlier -- those that you would use in determining matters of

9   importance to you in your everyday life.

10          You should consider the opportunity the witness had to

11   see, hear, and know the things about which they testified, the

12   accuracy of their memory, their candor or lack of candor, their

13   intelligence, the reasonableness and probability of its

14   corroboration or lack of corroboration with other believable

15   testimony and evidence.

16          You watched the witnesses.  Everything a witness said

17   or did on this witness stand counts in your determination.  How

18   did the witness appear?  What was the witness's demeanor while

19   testifying?  Often it is not what people say but how they say

20   it that moves us.

21          When considering the credibility of each witness, you

22   may consider whether the witness is disposed to favor or

23   disfavor one party or another.  Bias, prejudice, or retaliatory

24   motive may affect the witness's perception or recollection of

25   events.  It is important to bear the motive of a witness in

D81LLES4                      Charge

1   mind when determining how much weight to give to his or her

2   testimony.

3           Inconsistencies or discrepancies in the testimony of a

4   witness, or between the testimony of different witnesses, may

5   or may not cause you to discredit such testimony.  Two or more

6   persons witnessing an incident or a transaction or

7   participating in the same conversation or meeting may see it,

8   may see or hear it differently.  Innocent failure of

9   recollection is a common experience.  In weighing the effect of

10  a discrepancy, always consider whether it pertains to a matter

11  of importance or an unimportant detail.  Ask yourselves whether

12  the discrepancy results from an innocent error, honest

13  confusion, or intentional falsehood, and that may depend on

14  whether it has to do with an important fact or with only a

15  small detail.

16          After making your own judgment, you will give the

17  testimony of each witness such weight, if any, as you think it

18  deserves.  You may accept or reject the testimony of any

19  witness in whole or in part.

20          In other words, what you must try to do in deciding

21  credibility is to size a witness up in light of his or her

22  demeanor, the explanations given, and all of the other evidence

23  or lack of evidence in the case.  Always remember that you

24  should use your common sense, your good judgment, and your life

25  experience.

D81LLES4                        Charge

 1          The fact that one party called more witnesses and
 2     introduced more evidence than the other party does not mean
 3     that you should necessarily find the facts in favor of the side
 4     offering the most witnesses.  By the same token, you should
 5     not -- you do not have to accept the testimony of any witness
 6     who has not been contradicted or impeached, if you find the
 7     witness not to be credible.  You also have to decide which
 8     witnesses to believe and which facts are true.  To do this you
 9     must look at all of the evidence, drawing upon your common
10     sense and personal experience.  After examining all the
11     evidence or lack of evidence, you may decide that the party
12     calling the most witnesses has not persuaded you because do you
13     not believe its witnesses, or because you did believe the fewer
14     witnesses called by the other side.

15          Keep in mind that the burden of proof is always on the
16     government and a defendant is not required to call any
17     witnesses or offer any evidence, since he or she is presumed to
18     be innocent.

19          In evaluating credibility of witnesses, you should
20     take into account any evidence that any witness who has
21     testified may benefit in some way from the outcome of a case.
22     Such an interest in the outcome creates a motive to testify
23     falsely and may sway a witness to testify in a way that
24     advances his or her own interest.  Therefore, if you find that
25     any witness whose testimony you are considering may have an

D81LLES4                         Charge

1    interest in the outcome of the trial, then you should bear that

2    factor in mind in evaluating the credibility of his or her

3    testimony.  You should not disregard or disbelieve that

4    testimony simply because the witness has such an interest, but

5    if you accept it, you should do so with great care.

6          This is not to suggest that every witness who has an

7    interest in the outcome of a case will testify falsely.  It is

8    for you to decide to what extent, if at all, a witness's

9    interest has affected or colored his or her testimony.

10         You have heard the testimony of law enforcement

11   officials and employees of the government.  The fact that a

12   witness has or may be employed as a law enforcement official or

13   employee does not mean that his or her testimony is necessarily

14   deserving of more or less consideration or greater or lesser

15   weight than that of an ordinary witness.

16         It is your decision, after reviewing all of the

17   evidence or lack of evidence, whether to accept the testimony

18   of the law enforcement or government employee witness and to

19   give to that testimony the weight you find it deserves.

20         One defendant has testified in this case and two have

21   not.  A defendant in a criminal case never has any duty to

22   testify or come forward with any evidence.  This is because, as

23   I have told you, the burden of proof beyond a reasonable doubt

24   remains on the government at all times, and each defendant is

25   presumed innocent.  In this case, a defendant did testify and

D81LLES4                        Charge

1    she was subject to cross-examination like any other witness.

2    You should examine and evaluate her testimony just as you would

3    the testimony of any other witness with an interest in the

4    outcome of the case.

5         You may not attach any significance to the fact that a

6    defendant did not testify.  No adverse inference against him

7    may be drawn because he did not take the witness stand.  You

8    may not consider this against a defendant in any way in your

9    deliberations in the jury room.

10        There are several persons whose names you have heard

11   during the course of the trial but who did not appear here to

12   testify, and as to whom there was no stipulation about what

13   they would testify if they appeared.  I instruct you that each

14   body had an equal opportunity or lack of opportunity to draw --

15   to call any of these witnesses.  Therefore, you should not draw

16   any inferences or reach any conclusions as to what they would

17   have testified to had they been called.  Their absence should

18   not affect your judgment in any way.

19        Thus, for example, you have heard testimony regarding

20   Peter Ajemian.  I instruct you that he was not available as a

21   witness to any party.  You should not speculate about why he

22   was not available.  Nor should you draw any inferences,

23   favorable or unfavorable, towards the government or the

24   defendants because he did not testify.  You must decide the

25   case based upon the evidence before you, not upon speculation.

1           You should, however, remember my instruction that the

2     law does not impose on a defendant in a criminal case the

3     burden or duty of calling any witnesses or producing any

4     evidence.

5           You should remember that there is no duty on either

6     side to call a witness whose testimony would be merely

7     cumulative of the testimony already in evidence, or who would

8     merely provide additional testimony of facts already in

9     evidence.

10          You have heard reference in the form of arguments of

11    defense counsel in this case to the fact that certain

12    investigative techniques were used by the government and

13    certain other investigative techniques were not.  There is no

14    requirement of the government to prove its case through any

15    particular means.  While you are to consider carefully the

16    evidence adduced by the government, you need not speculate as

17    to why they used the techniques they did or why they did not

18    use other techniques.  The government is not on trial, and law

19    enforcement techniques are not your concern.

20          Your concern is to determine whether or not, on the

21    evidence or lack of evidence, each defendant's guilt has been

22    proved beyond a reasonable doubt.

23          Some of the exhibits in this case are charts and

24    summaries.  These charts and summaries were admitted merely as

25    analysis and summaries of documents previously admitted or

1    certain testimony previously heard, and in some instances, to

2    set forth in detail the conclusions on calculations that

3    witnesses such as Robert Murray or Natasha Marx summarized

4    orally.  These charts and summaries are offered to assist you

5    as visual or organizational aides.  They're not, however,

6    themselves direct evidence of the transactions.  They are

7    graphic demonstrations of the underlying testimony and

8    documents.  Thus, it is the underlying evidence that determines

9    what weight, if any, these charts and summaries deserve.  It is

10   for you to decide whether the charts and summaries correctly

11   present the information contained in the testimony and exhibits

12   upon which they are based.  It is also for you to decide what

13   weight to give the underlying evidence.  You are entitled to

14   consider the charts and summaries if you find that they assist

15   you in analyzing and understanding the evidence.

16          We have, among the exhibits received in evidence, some

17   documents that are redacted.  Redacted means that part of the

18   document is taken out.  You are to concern yourself only with

19   the part of the item that has been admitted into evidence.  You

20   should not consider any possible reason why the other part of

21   it has been deleted.

22          You heard, you have heard witnesses who testified that

23   they were actually involved in the planning and carrying out

24   the crimes charged in the indictment.  There's been a great

25   deal said about these accomplice witnesses in the summaries of

1    counsel and about whether you should believe them.

2           Experience will tell you that the government

3    frequently must rely on the testimony of witnesses who admit

4    participating in the alleged crimes at issue.  The government

5    must take its witnesses as it finds them and frequently it must

6    use such testimony in a criminal prosecution, because otherwise

7    it would be difficult or impossible to detect and prosecute

8    wrongdoers.  A guilty plea of witnesses is not evidence of a

9    defendant's guilt.

10          You may properly consider the testimony of such

11   accomplices.  If accomplices could not be used, there would be

12   many cases in which there was real guilt and conviction should

13   be had, but in which convictions would not be obtainable.

14          Indeed, it is the law in the federal courts that the

15   testimony of a single accomplice witness may be enough in

16   itself for conviction, if the jury believes the testimony and

17   establishes the guilt beyond a reasonable doubt.

18          However, because of the possibility that an accomplice

19   may have an interest in or may derive a benefit from

20   testifying, an accomplice witness's testimony should be

21   scrutinized with special care and caution.  The fact that a

22   witness is an accomplice can be considered by you as bearing on

23   his or her credibility.  It does not follow, however, that

24   simply because a person has admitted participating in one or

25   more crimes that he or she isn't capable of giving a truthful

D81LLES4                          Charge

1    account of what happened.

2            Like the testimony of any other witness, accomplice

3    witness testimony should be given such weight as it deserves in

4    light of the facts and circumstances before you, taking into

5    account the witness's demeanor and candor, the strength and

6    accuracy of his or her recollection, background, and the extent

7    to which the testimony is or is not corroborated by other

8    evidence in the case.

9            You may consider whether an accomplice witness -- like

10   any other witness called in the case -- has an interest or may

11   derive a benefit, and if so, whether it has affected his or her

12   testimony.

13           You heard testimony about an agreement between the

14   government and the witness.  I caution you that it is of no

15   concern of yours why the government made an agreement with a

16   witness.  Your sole concern is whether the witness has given

17   truthful testimony here in this courtroom before you.

18           In evaluating the testimony of accomplice witnesses,

19   you should ask yourselves whether these witnesses would benefit

20   more by lying or by telling the truth.  Was it -- was his or

21   her testimony made up in any way because he or she believed or

22   hoped that he or she would somehow receive favorable treatment

23   by testifying falsely?  Or did he or she believe that her

24   interests would be best served by testifying truthfully?  If

25   you believe that the witness was motivated by hopes of personal

1    gain, was the motivation one that would cause him or her to

2    lie, or was it one that would cause him or her to tell the

3    truth?  Did this motivation color his or her testimony?

4            If you find that the witness -- that the testimony was

5    false, you should reject it.  However, if after cautious and

6    careful examination of an accomplice witness's testimony and

7    demeanor on the witness stand you are satisfied that the

8    witness told the truth, you should accept it as credible and

9    act upon it accordingly.

10           As with any witness, let me emphasize that the issues

11   of credibility need not be decided in an all-or-nothing

12   fashion.  Even if you find that a witness testified falsely in

13   one part, you still may accept his or her testimony in other

14   parts or may disregard it, disregard all of it.  That is a

15   determination entirely for you.

16           You have heard testimony that a defendant has a good

17   reputation for honesty in the community where she lives and for

18   truthfulness.  Along with all other evidence you have heard,

19   you may take into consideration the evidence and testimony

20   about the honesty and truthfulness of the defendant when you

21   decide whether the government has proven, beyond a reasonable

22   doubt, that the defendant committed the crimes with which he

23   has been charged.

24           You have heard evidence during the trial that

25   witnesses have discussed the facts of the case and their

1    testimony with the lawyers before the witnesses appeared in

2    court.

3              Although you may consider that fact when you are

4    evaluating a witness's credibility, I should tell you that

5    there is nothing either unusual or improper about a witness

6    meeting with lawyers before testifying so that the witness can

7    be aware of the subjects he or she will be questioned about,

8    focus on those subjects and have the opportunity to review

9    relevant exhibits before being questioned about them.  Such

10   consultation helps conserve your time and the Court's time.  In

11   fact, it would be unusual for a lawyer to call a witness

12   without such consultation.

13             Again, the weight you give to the fact that or nature

14   of the witness's preparation for his or her testimony and what

15   inferences you draw from such preparation are matters

16   completely within your discretion.

17             Your verdict must be based solely upon the evidence

18   developed at trial or the lack of evidence.  It would be

19   improper for you to consider in reaching your decision as to

20   whether the government has sustained its burden of proof any

21   personal feelings you may have about each defendant's race,

22   religion, national origin, sex or age.  Similarly, it would be

23   improper for you to consider any personal feelings you may have

24   about the race, religion, national origin, sex, or age of any

25   of the witnesses or anyone else involved in this case.  The

D81LLES4                         Charge

1    defendants are entitled to a trial free from prejudice and our

2    judicial system cannot work unless you reach your verdict

3    through a favor and impartial consideration of the evidence.

4            It would be equally improper for you to allow any

5    feelings you may have about the nature of the crimes charged to

6    interfere with your decision-making process.

7            To repeat, your verdict must be based exclusively upon

8    the evidence or lack of evidence in the case.

9            Under your oath as jurors, you're not to be swayed by

10   sympathy.  You're to be guided solely by the evidence in this

11   case, and the crucial question that you must ask yourselves as

12   you sift through the evidence is:  Has the government proven

13   the guilt of each of each defendant beyond a reasonable doubt?

14           It is for you alone to decide whether the government

15   has proven that the defendants are guilty of the crimes

16   charged, solely on the basis of the evidence and subject to the

17   law as I charge you.  It must be clear to you that once you let

18   fear or prejudice or bias or sympathy interfere with your

19   thinking, there is a risk that you will not arrive at a true

20   and just verdict.

21           Therefore, if you should find that the government has

22   met its burden of proving a defendant's guilt beyond a

23   reasonable doubt, you should not hesitate because of any other

24   reason to render a verdict of guilty as to that defendant.  But

25   on the other hand, if you have a reasonable doubt as to the

1    defendant's guilt, you should not hesitate for any reason to

2    find a verdict of not guilty as to that defendant.

3           Under your oath as jurors, you cannot allow a

4    consideration of possible punishment that may be imposed upon a

5    defendant, if convicted, to influence you in any way or in any

6    sense to enter into your deliberations.  The duty of imposing

7    sentence is mine and mine alone.  Your function to weigh the

8    evidence and to determine whether the government has proved

9    beyond a reasonable doubt that each defendant is or is not

10   guilty upon the basis of the evidence and the law.

11          Therefore, I instruct you not to consider punishment

12   or possible punishment in any way in your deliberations in this

13   case.

14          You are obliged under your oath as jurors to follow

15   the law as I instruct you, whether you agree or disagree with

16   the particular law in question.

17          Proof of motive is not necessary, a necessary element

18   of the crimes with which the defendants are charged.  Proof of

19   motive does not establish guilt, nor does a lack of proof of

20   motive establish that a defendant is not guilty.  If the guilt

21   of a defendant is shown beyond a reasonable doubt, it is

22   immaterial what that defendant's motive for the crime may be,

23   or whether his or her motive was shown at all.  The presence or

24   absence of motive is, however, a circumstance which you may

25   consider as bearing on the intent of a defendant.

 1          Certain evidence that was admitted at trial related to

 2     acts that are not themselves part of the charged crimed.  In

 3     particular, I am referring to the evidence admitted about

 4     whether certain defendants properly reported on their tax

 5     returns income that they received from the charged crimes.  Let

 6     me remind you that none of the defendants is on trial for

 7     offenses relating to tax returns.  Accordingly, you may not

 8     consider evidence relating to their tax returns as a substitute

 9     for proof that a defendant committed the crimes charged against

10     him or her.  Nor may you consider this evidence as proof that a

11     defendant has a criminal personality or bad character.  The

12     evidence of the other acts has been admitted for a much more

13     limited purpose and you may consider it only for that limited

14     purpose.

15          With regard to Ms. Baran, at the time this evidence

16     was introduced, I gave you a limiting instruction that the tax

17     return evidence was admitted for a limited purpose and may be

18     considered by you only as it bears upon Ms. Baran's intent,

19     knowledge, motive, opportunity, absence of mistake, or

20     accident, as to the acts that were alleged against her in the

21     indictment.

22          With regards to Mr. Rutigliano, the government argues

23     that the tax return evidence bears not only on his intent,

24     knowledge, motive, opportunity, absence of mistake, or

25     accident, but as a basis for a finding that he committed the

D81LLES4                        Charge

1    act of defrauding the United States Railroad Retirement Board,

2    or the RRB, by failure to report to the RRB the income that the

3    government contends he derived from his consulting services.

4    You may consider this evidence for this purpose as to

5    Mr. Rutigliano if you find that he did receive such income and

6    failed to report it to the Internal Revenue Service.

7              If you determine that a defendant committed the acts

8    charged in the indictment and the similar acts as well, then

9    you may, but you need not, draw an inference that in doing the

10   acts charged in the indictment that defendant acted knowingly

11   and intentionally and not because of some mistake, accident or

12   other innocent reason.

13             Evidence of similar acts may not be considered by you

14   for any other purpose.  Specifically, you may not use this

15   evidence to conclude that because a defendant committed the

16   other act or acts, he must also have committed the acts charges

17   in the indictment.

18             You have heard testimony from Dr. Alton Barron, who

19   testified as an expert.  An expert is allowed to express his

20   opinion as to matters about which he has special knowledge and

21   training.  Expert testimony is presented to you on the theory

22   that someone who is experienced in the field can assist you in

23   understanding the evidence and in reaching an independent

24   decision on the facts.

25             In weighing the expert's testimony, you may consider

D81LLES4                    Charge

1    the expert's qualifications, his opinions, his reasons for

2    testifying, as well as all of the other considerations that

3    ordinarily apply when you're deciding whether or not to believe

4    a witness's testimony.  You may give the expert testimony

5    whatever weight, if any, you find it deserves in light of all

6    of the evidence in the case.  You should not, however, accept

7    any of the witnesses' testimony merely because they are

8    experts.  Nor should you substitute it for your own reason,

9    judgment, and common sense.  The determination of the facts in

10   this case rests solely with you.  In addition, you must follow

11   my instructions on the law.  To the extent my instructions

12   differ from an expert's view of the law, you should disregard

13   the expert's view of the law and follow my instructions.

14          With these instructions in mind, let us turn to the

15   charges against the defendants as contained in the indictment.

16   As I instructed you at the outset of the case, the indictment

17   is a charge or accusation.  It is not evidence.  The indictment

18   in this case contains 21 counts and names three defendants who

19   are on trial together.  In reaching a verdict, however, you

20   must bear in mind that you must consider each defendant in each

21   count individually with respect to whether the government has

22   proved its case beyond a reasonable doubt.  Your verdict as to

23   each defendant on each count must be determined separately with

24   respect to him or her, solely on the evidence or lack of

25   evidence presented against him or her, without regard to

1    whether anyone else is guilty or not guilty.

2            In addition, some of the evidence in this case was

3    limited to one defendant.  Let me emphasize that any evidence

4    admitted solely against one defendant may be considered only as

5    against that defendant and may not in any respect enter into

6    your deliberations on any other defendant.

7            I will now summarize the offenses charged in the

8    indictment, and then I will explain in detail the elements of

9    the offenses for you.

10           The defendants, Peter J. Lesniewski, Marie Baran, and

11   Joseph Rutigliano, are formally charged in an indictment.  As I

12   instructed you at the outset of the case, the indictment is a

13   charge or accusation.  The indictment contains 21 separate

14   counts.

15           First, Count One of the indictment charges all three

16   defendants with conspiring to commit mail fraud, wire fraud,

17   and healthcare fraud based on their alleged participation in a

18   scheme to defraud the RRB by obtaining disability benefits for

19   Long Island Railroad retirees by means of false and fraudulent

20   applications and supporting material, and to defraud private

21   healthcare insurers by billing for unnecessary medical visits

22   and tests.

23           Count Two charges defendants Marie Baran and Joseph

24   Rutigliano with participating in a conspiracy to commit mail

25   fraud, wire fraud, and healthcare fraud with another doctor who

1    is not here on trial -- Peter Ajemian -- based on their alleged

2    participation in the same kind of scheme to defraud the RRB and

3    private health insurers, using the same methods described in

4    Count One.

5         Count Three charges all three defendants with

6    conspiring to defraud the United States, and specifically the

7    RRB, again through the same kind of scheme.

8         Count Four charges the defendants Marie Baran and

9    Joseph Rutigliano with conspiracy, together with Peter

10   Ajemian -- who I remind you again is not on trial here -- to

11   defraud the RRB through the same kind of scheme.

12        Counts Five through Eight charge different defendants

13   or a combination of defendants with committing healthcare fraud

14   in connection with the scheme.  These defendants are also

15   charged with aiding and abetting the commission of this crime.

16        Counts Nine through Thirteen charge different

17   defendants or combination of defendants with committing mail

18   fraud in connection with the scheme.  These defendants are also

19   charged with aiding and abetting the commission of this crime.

20        Counts Fourteen through Twenty charge different

21   defendants or a combination of defendants with committing wire

22   fraud in connection with the scheme.  These defendants are also

23   charged with aiding and abetting the commission of this crime.

24        Count Twenty-One charges Joseph Rutigliano with making

25   a false and fraudulent statement to the United States, namely,

D81LLES4                         Charge

1    Rutigliano is charged, Mr. Rutigliano is charged with falsely

2    informing the RRB that he had not worked or been self-employed

3    while he was receiving disability benefits.

4           As I mentioned earlier, Count One of the indictment

5    charges all three defendants with conspiring to commit mail

6    fraud, wire fraud, and healthcare fraud.  More details as to

7    Count One can be found in the indictment, which as I indicated

8    you will have a copy, in paragraphs 27 through 30.  Count Two

9    charges the defendants Marie Baran and Joseph Rutigliano with

10   participating in a conspiracy to commit mail fraud, wire fraud,

11   and healthcare fraud with another doctor who is not here on

12   trial -- Peter Ajemian.  Again, more detail as to Count Two can

13   be found in paragraphs 37 through 40 of the indictment.

14          A conspiracy is a kind of criminal partnership -- an

15   agreement of two or more persons to join together to accomplish

16   some unlawful purpose.

17          The crime of conspiracy -- or agreement -- to violate

18   a federal law, as charged in Counts One and Two of the

19   indictment, is an independent offense.  It is separate and

20   distinct from the actual violation of any specific federal

21   laws, which is the law -- which the law refers to as a

22   substantive crime.

23          Indeed, you may find a defendant guilty of the crime

24   of conspiracy even if you find that the substantive crime which

25   was the object of the conspiracy was never actually

 1   committed -- that is, the agreement did not succeed in its

 2   goal, and there was no actual mail fraud, wire fraud, or

 3   healthcare fraud committed.  Congress has deemed it appropriate

 4   to make conspiracy, standing alone, a separate crime, even if

 5   the conspiracy is not successful.

 6        In order to satisfy its burden of proof, the

 7   government must establish each of the following two essential

 8   elements beyond a reasonable doubt.  Again, this pertains to

 9   Counts One and Two, the conspiracy count.

10        First, that two or more persons entered the unlawful

11   agreement charged in the indictment; and

12        Second, that the defendant knowingly and willfully

13   became a member of the conspiracy.

14        Starting with the first element, what is a conspiracy?

15   As I mentioned just a few minutes ago, a conspiracy is an

16   agreement or an understanding between two or more persons to

17   accomplish by joint action a criminal or unlawful purpose.  In

18   this instance, the unlawful purpose alleged to be the object of

19   the conspiracy charged in Counts One and Two is mail fraud,

20   wire fraud, or healthcare fraud.

21        The gist, or the essence, of the crime of conspiracy

22   is the unlawful agreement between two or more persons to

23   violate the law.  As I mentioned earlier, the ultimate success

24   of the conspiracy, or the actual commission of the crime that

25   is the object of the conspiracy, is not required.

1          The conspiracy alleged here, therefore, is an

2    agreement to engage in mail fraud, wire fraud, or healthcare

3    fraud.  Now, to show a conspiracy, the government is not

4    required to show that two or more people sat around a table and

5    entered into a solemn pact, orally or in writing, stating that

6    they had formed a conspiracy to violate the law and spelling

7    out all of the details.  Common sense tells you that when

8    people agree to enter into a criminal conspiracy, much is left

9    to the unexpressed understanding.  It is rare that a conspiracy

10   can be proven by direct evidence of an explicit agreement.

11         In order to show that a conspiracy existed, the

12   evidence must show that two or more persons, in some way or

13   manner, either explicitly or implicitly, came to an

14   understanding to violate the law and to accomplish an unlawful

15   plan.

16         In determining whether there has been an unlawful

17   agreement as alleged in the indictment, you may consider the

18   actions of all of the alleged conspirators -- coconspirators

19   that were taken to carry out the apparent criminal purpose.

20   The old adage, "actions speak louder than words," applies here.

21   Sometimes, the only evidence that is available with respect to

22   the existence of a conspiracy is that of disconnected acts on

23   the part of the alleged individual coconspirators.  When all

24   are taken together and considered as a whole, however, that

25   conduct may warrant the inference that a conspiracy existed

1    just as conclusively as more direct proof, such as evidence of

2    an express agreement.

3            So, you must first determine whether or not the proof

4    established beyond a reasonable doubt the existence of the

5    conspiracy charged in the indictment.  In considering the this

6    first element, you should consider all of the evidence that has

7    been admitted with respect to the conduct and statements of

8    each of the alleged coconspirators, and any inferences that may

9    be reasonably drawn from that conduct and those statements.  It

10   is sufficient to establish the existence of the conspiracy, as

11   I just said, if, from the proof of all the relevant facts and

12   circumstances, you find beyond a reasonable doubt, beyond a

13   reasonable doubt that the minds of at least two alleged

14   coconspirators met in an understanding way to accomplish the

15   objective of the conspiracy charged in the indictment.

16           In this case, the defendants are charged with

17   conspiring to accomplish an illegal objective, that is, to

18   engage in mail fraud, wire fraud or healthcare fraud.  If the

19   government fails to prove that this was the object of the

20   conspiracy in which the defendants participated, then you must

21   find the defendants not guilty of the conspiracy count.

22           However, if you find that the defendants, any of the

23   defendants did agree with another person to accomplish the

24   objective of mail fraud, wire fraud, or healthcare fraud, then

25   you may find that defendant guilty of conspiracy if you find

D81LLES4                         Charge

1   the other elements of the crime satisfied.

2           Second, if you conclude that the government has proved

3   beyond a reasonable doubt that the conspiracy charged in the

4   indictment existed, you must determine next the second

5   question:  Whether the defendant you are considering

6   participated in the conspiracy with knowledge of its unlawful

7   purpose and in furtherance of its unlawful objective.

8           The government must prove beyond a reasonable doubt

9   that the defendant you are considering knowingly and

10  intentionally entered into the conspiracy with a criminal

11  intent -- that is, with a purpose to violate the law -- and

12  that that defendant agreed to take part in the conspiracy to

13  promote and cooperate in the unlawful objective.  In Count One

14  and Count Two, the defendants charged in that count, the

15  defendants are charged with conspiring to accomplish three

16  illegal objectives.  The first object the defendants are

17  alleged to have agreed to accomplish is to commit mail fraud.

18  The second object the defendants are alleged to have agreed to

19  accomplish is to commit wire fraud, and the third object is to

20  commit healthcare fraud.

21          It is not necessary for you to find that a charged

22  conspiracy embodied all of these unlawful objectives.  It is

23  sufficient if you find that the government has proved beyond a

24  reasonable doubt that conspirators agreed, expressly or

25  impliedly, on any one of the objectives -- to commit, that is,

D81LLES4                    Charge

1   to commit mail fraud, to commit wire fraud, or to commit

2   healthcare fraud.  An agreement to accomplish any one of these

3   objectives is sufficient.  However, in order to find the

4   defendant you are considering guilty you must find you must all

5   agree on at least one specific unlawful object charged, and you

6   must agree on the same object.

7           The terms "unlawfully" and "intentionally" and

8   "knowingly" are intended to ensure that if you find that the

9   defendant you are considering did join in the conspiracy, you

10  also conclude beyond a reasonable doubt that in doing so, he or

11  she knew what he or she was doing; in other words, that he or

12  she took the actions in question the actions in question

13  deliberately and voluntarily.

14          An act is done "knowingly" and "intentionally" if it

15  is done deliberately and purposely; that is, the defendant's

16  acts must have been the product of the defendant's conscious

17  objective, rather than the product of a mistake, accident, or

18  mere negligence or some innocent reason.

19          "Unlawfully" simply means contrary to law.  The

20  defendant you are considering need not have known that he or

21  she was breaking any particular law, but he or she must have

22  been aware of the generally unlawful nature of his or her acts.

23          Now, science has not yet devised a manner of looking

24  into a person's mind and knowing what the person is thinking.

25  However, you do have before you evidence of certain acts and

D81LLES4                          Charge

1   conversations alleged to have been taking place with the

2   defendants.  The government contends that each -- that these

3   acts or conversations show beyond a reasonable doubt the

4   defendant's knowledge of and participation in the alleged

5   purpose, unlawful purpose of the conspiracy.

6          The defendants deny they were a member of any

7   conspiracy.  It is for you to determine whether the government

8   has established beyond a reasonable doubt that such knowledge

9   and intent on the part of the defendants existed.

10         It is not necessary for the government to show that

11  the defendants were fully informed of all of the details of the

12  conspiracy in order for you to infer knowledge.  To have guilty

13  knowledge, a defendant need not know all of the extent -- need

14  not know the full extent of the conspiracy, or all the

15  activities of its participants.  It is not even necessary for a

16  defendant to know every other member of the conspiracy.  In

17  fact, a defendant may know only one member of the conspiracy

18  and still be a coconspirator.  Nor is it necessary that a

19  defendant receive any monetary benefit from participating in

20  the conspiracy or have a financial stake in its outcome, so

21  long as he or she participated in the conspiracy in the manner

22  I have explained.  Please keep in mind that it is enough if he

23  or she participated in the conspiracy unlawfully, intentionally

24  and knowingly, as I have defined those terms.

25         The duration of a defendant's participation has no

1    bearing on the issue of the defendant's guilt.  He or she need

2    not have joined a conspiracy at the outset.  He or she may have

3    joined it at any time in its progress, and he or she will still

4    be held responsible for all that was done before he or she

5    joined and all that was done during the conspiracy's existence

6    while he or she was a member.  Each member of a conspiracy may

7    perform separate and distinct acts.  Some conspirators play

8    major roles, while others play minor roles in the scheme.  An

9    equal role is not what the law requires.  In fact, even a

10   single act may be sufficient to draw a defendant within the

11   scope of a conspiracy.

12          However, I want to caution you that a person's mere

13   association with a member of the conspiracy does not make that

14   person a member of the conspiracy, even when that association

15   is coupled with knowledge that a conspiracy is taking place.

16   Mere presence at the scene of a crime when coupled, even when

17   coupled with knowledge that a crime is taking place is not

18   sufficient to support a conviction.  In other words, knowledge

19   without agreement and participation is not sufficient.

20          What is necessary is that the defendant you are

21   considering participated in the conspiracy with knowledge of

22   its unlawful purpose and with an intent to aid in the

23   accomplishment of its unlawful objective.  In this case, the

24   government alleges that the object of the conspiracy was to

25   commit fraud.  So to find any of the defendants guilty, you

D81LLES4                        Charge

1   must find that he or she knew that the object of the conspiracy

2   was to commit mail fraud, wire fraud, or healthcare fraud.

3           The defendant you are considering, with an

4   understanding of the unlawful nature of the conspiracy, must

5   have intentionally engaged, advised, or assisted in the

6   conspiracy for the purpose of furthering an unlawful

7   undertaking.  That defendant therefore becomes a knowing and

8   willing participant in the unlawful agreement -- that is to

9   say, a conspirator.

10          A conspiracy, once formed, is presumed to continue

11  until either its objective is accomplished or there is some

12  affirmative act of termination by its members.  So, too, once a

13  person is found to be a member of a conspiracy, he or she is

14  presumed to continue membership in the conspiracy until its

15  termination, unless it is shown by some affirmative proof that

16  he or she withdrew and disassociated himself or herself from

17  it.

18          Finally, you must find that either the agreement was

19  formed or that an act in furtherance of the conspiracy was

20  committed in the Southern District of New York, which includes

21  the borough of Manhattan.  I will later provide you with a more

22  detailed instruction regarding the boundaries of the Southern

23  District of New York as it relates to the proper venue in this

24  case.

25          I have now instructed you on the elements of Count One

1    and Two, but before we move on, let me briefly touch on a few

2    additional issues relating to the conspiracy charges.

3         The indictment states that a conspiracy existed from

4    at from at least on or about the 1990s and up to and including

5    on or about 2011.  As I mentioned before, it is not essential

6    that the government prove that the conspiracy started and ended

7    on any specific dates.  It is sufficient if you find that the

8    conspiracy was formed and existed for some time around the

9    dates set forth in the -- the dates set forth in the

10   indictment.

11        This is also a good opportunity to instruct you that

12   it does not matter if a specific event or transaction is

13   alleged to have occurred on or about a certain date and the

14   evidence indicates that it in fact occurred on another date.

15   The law requires only a substantial similarity between the

16   dates alleged in the indictment and the date established by the

17   testimony and other evidence.

18        Also, let me briefly discuss how you should consider

19   the acts and statements of coconspirators.  You will recall

20   that I have admitted at this trial evidence of the statements

21   of various individuals because they are persons who the

22   government claims were also confederates or coconspirators of

23   the defendants.

24        The reason for allowing this evidence to be received

25   against the defendants has to do with the nature of the crime

1    of conspiracy.  As I have said, a conspiracy is often referred

2    to as a partnership in crime.  As in other types of

3    partnerships, when people enter into a conspiracy to accomplish

4    an unlawful end, each and every member becomes an agent for the

5    other conspirators in carrying out the conspiracy.

6          Therefore, the reasonably foreseeable acts or

7    statements of any member of the conspiracy, committed in

8    furtherance of the common purpose of the conspiracy, are

9    deemed, under the law, to be acts or statements of all of the

10   members, and all of the members are responsible for such acts

11   or statements.

12         If you find beyond a reasonable doubt that the

13   defendant you are considering was a member of the conspiracy

14   charged in the indictment, then any acts done or statements

15   made in furtherance of the conspiracy by a person also found by

16   you to have been a member of the same conspiracy may be

17   considered against the defendant you are considering.  This is

18   so even if the acts were committed or such statements were made

19   in the defendant's absence, in that defendant's absence, and

20   without that defendant's knowledge.

21         However, before you consider the acts or statements of

22   a coconspirator in deciding the guilt of the defendant you are

23   considering, you must first determine that the acts were

24   committed or statements were made during the existence or in

25   furtherance of the unlawful scheme.  If the acts were done or

D81LLES4                        Charge

1   the statements were made by someone whom you do not find to

2   have been a member of the conspiracy, or if they were not in

3   furtherance of the conspiracy, they may not be considered by

4   you in deciding whether the defendant you are considering is

5   guilty or not guilty of the count.

6          That finishes the elements of the conspiracies charged

7   in Counts One and Two.  As I've told you earlier, Counts Three

8   and Four are also conspiracy counts, but they involve a

9   conspiracy to defraud the United States and an agency thereof

10  in violation of Title 18, United States Code, Section 371.

11  That statute provides that it is a crime:

12         If two or more persons conspire...to defraud the

13  United States, or any agency thereof, in any manner or for any

14  purpose, and one or more such persons do any act to effect the

15  object of the conspiracy...

16         As I mentioned, Count Three charges all three

17  defendants with conspiring to defraud the RRB.  More detail as

18  to the Count Three can be found in paragraph 42 of the

19  indictment.

20         Count Four charges the defendants Marie Baran and

21  Joseph Rutigliano with conspiring with Dr. Ajemian and others

22  to defraud the RRB.  More detail as to Count Four can be found

23  in paragraph 45 of the indictment.

24         In order for you to find that each of the defendants

25  guilty of the conspiracy charged in Counts Three and Four, the

D81LLES4                        Charge

1    government must prove beyond a reasonable doubt each of the

2    following three elements:

3              First, that two or more persons entered into the

4    unlawful agreement charged in the indictment.

5              And, second, that the defendant knowingly -- the

6    defendant you are considering knowingly and willfully became a

7    member of the conspiracy.

8              Third, that one of the members of the conspiracy

9    knowingly committed at least one of the overt acts charged in

10   the indictment to further some objective of the conspiracy.

11             In order for you to find a particular defendant guilty

12   of conspiracy to defraud the United States, the government must

13   prove beyond a reasonable doubt each of the three elements of

14   the first -- the first two of which are the same as they were

15   for the conspiracy charged in Counts One and Two.  That is, the

16   first element is the existence of a conspiracy, although of

17   course here the charged object of the conspiracy is to defraud

18   the United States.  The second element is the defendants'

19   knowingly and willful participation in the conspiracy.

20             The third element, which is new, is that any one of

21   the conspirators, not necessarily the defendant you are

22   considering, but any one of the parties involved in the

23   conspiracy knowingly committed at least one overt act, and that

24   the overt act which you have found to have been committed was

25   committed in furtherance of the conspiracy.  You should apply

1    the same instructions and definitions I've already given you

2    when considering the first and second elements of Count Two --

3    I'm sorry -- Counts Three and Four as well.

4            Just as with Counts One and Two conspiracies, the

5    charge of conspiracy to defraud the government does not mean

6    that one of the illegal objects must be to cause the government

7    to suffer a loss of money or property as a consequence of the

8    conspiracy.  It would also be a conspiracy to defraud if one of

9    the objects was to obstruct, interfere, impair, impede or

10   defeat the legitimate functioning of the government through

11   fraudulent or dishonest means.  And, I understand you that the

12   RRB is an agency of the United States under the meaning of this

13   conspiracy statute.

14           Now, let me explain in more detail the third element,

15   the overt act element, that applies to Counts Three and Four.

16   Under the statute criminalizing conspiracies to defraud the

17   United States, there has to be something more than just an

18   agreement, some overt step or action must be taken, must have

19   been taken by at least one of the conspirators in furtherance

20   of the conspiracy.  The government must prove beyond a

21   reasonable doubt that -- beyond a reasonable doubt to establish

22   the offense of conspiracy as charged in Counts Three and Four

23   that at least one member -- one of the conspirators committed

24   at least one overt act in furtherance of the conspiracy.

25           In other words, the overt act element is a requirement

D81LLES4                          Charge

1    that the agreement went beyond the mere talking stage, the mere

2    agreement stage.  Count Three, for Count Three, a number of

3    overt acts are alleged in the indictments in paragraph 43.

4    Similarly, for Count Four, a number of overt acts are alleged

5    in the indictment in paragraph 46.  I will not read them to you

6    now, but you will have the indictment with you in the jury

7    room.

8           You need not find the defendant you are considering in

9    this case committed the overt act.  It is sufficient if you

10   find that at least one overt act was in fact performed by at

11   least one coconspirator, whether a defendant or another

12   coconspirator, to further the conspiracy within the time frame

13   of the conspiracy.  It is not necessary for the government to

14   prove that the specified overt acts alleged were committed, so

15   long as the government proves, as I've explained, the existence

16   of the conspiracy charged in the indictment, and that the

17   defendant you are considering was a knowing and intentional

18   member of the conspiracy.

19          Remember, the act of any one of the members of the

20   conspiracy, done in furtherance of the conspiracy, becomes the

21   act of all the other members.  To be a member of the

22   conspiracy, it is not necessary for the defendant you are

23   considering to commit an overt act.

24          As I've already instructed you on several occasions

25   during the course of the trial, however, in considering the

D81LLES4                         Charge

1   evidence or lack of evidence against Dr. Lesniewski, you may

2   not consider the testimony of witnesses related to statements

3   or conduct of Dr. Ajemian or Dr. Parisi.

4          In order for the government to satisfy this element,

5   it must prove beyond a reasonable doubt that at least one overt

6   act was knowingly and willfully done by at least one

7   coconspirator in furtherance of some object or purpose of the

8   conspiracy, as charged in the indictment.  In this regard, you

9   should bear in mind that the overt act, standing alone, may be

10  an innocent, lawful act.  However, an apparently innocent act

11  sheds its harmless character if it is a step in carrying out,

12  promoting, aiding, or assisting the conspiratorial scheme.  You

13  are therefore instructed that the overt act does not have to be

14  an act which in and of itself is criminal or constitutes an

15  objective of the conspiracy.

16         You are further instructed that the overt act need not

17  have been committed as precisely the time alleged in the

18  indictment.  It is sufficient if you are convinced beyond a

19  reasonable doubt that it occurred at or about the time and

20  place stated.  The applicable statute of limitations for Counts

21  Three and Four require that the overt act must have occurred

22  after December 18, 2006.

23         Although proof of at least one overt act is necessary

24  to prove an element of the crime charged in Count Three and

25  Four, you need not reach unanimous agreement on which

 1    particular overt act was committed in furtherance of the

 2    conspiracy.

 3         A conspiracy, once formed, is presumed to continue

 4    until either its objectives are accomplished or there is some

 5    affirmative act of termination by its members.

 6         A defendant withdraws from a conspiracy when he or she

 7    abandons the agreement.  But, since it is all too easy after

 8    the fact for a defendant to claim that he or she withdrew from

 9    the plot, the law requires the taking of some affirmative

10    action on the part of the defendant who contends to have

11    withdrawn from the conspiracy.

12         Simply stopping to participate in the conspiracy is

13    not sufficient to demonstrate a withdrawal from the conspiracy.

14    Unless a conspirator produces affirmative evidence of

15    withdrawal, his or her participation in the conspiracy is

16    presumed to continue until the last overt act by any of the

17    conspirators.

18         In order to withdraw from a conspiracy, a defendant

19    must either make a clean break of it and report his or her

20    illegal acts to the law enforcement, or clearly explain to his

21    or her conspirators that he or she no longer wishes to be part

22    of the conspiracy.  The burden of establishing withdrawal lies

23    on the defendant.

24         Counts Five through Eight of the indictment charge

25    healthcare fraud in violation of section 1347 of Title 18 of

1    the United States Code.   The statute reads as follows in

2    pertinent part:

3              Whoever knowingly and willfully executes, or attempts

4    to execute, a scheme or artifice --

5              (1) to defraud any healthcare benefit program; or

6              (2) to obtain, by means of false or fraudulent

7    pretenses, representations, or promises, any of the money or

8    property owned by, or under the custody of or control of, any

9    healthcare benefit program, in connection with the delivery of

10   or payment for healthcare benefits, items, or services, shall

11   be guilty of a crime.

12             More detail as to the Counts Five through Eight can be

13   found in paragraph 48 of the indictment.

14             In order to prove a defendant guilty of healthcare

15   fraud, the government must establish beyond a reasonable doubt

16   each of the following elements as to that defendant.

17             First, that there was a scheme to defraud or a scheme

18   to obtain money or property by means of materially false or

19   fraudulent pretenses, representations, or promises in

20   connection with the delivery of or payment for healthcare

21   benefits, items, or services, as charged in the indictment;

22             Second, that the defendant knowingly and willfully --

23   the defendant you are considering knowingly and willfully

24   executed or attempted to execute that scheme with intent to

25   defraud; and

D81LLES4                          Charge

1            Third, that the target of the scheme was a healthcare

2      benefit program, as I will define that phrase for you.

3            The first element that the government must prove

4      beyond a reasonable doubt is that there was a scheme or

5      artifice to defraud a healthcare benefit program.  I instruct

6      you that as a matter of law, Medicare -- United Healthcare

7      constitutes a "healthcare benefit program" as that term is used

8      in the indictment.

9            The first element is almost self-explanatory.  A

10     "scheme or artifice" is merely a plan for the accomplishment of

11     an object.  A scheme to defraud is any plan, device, or course

12     of action to obtain money or property by means of false or

13     fraudulent pretenses and/or statements, which are reasonably

14     calculated to deceive a person of average prudence.  A

15     statement or claim is fraudulent if falsely made with the

16     intention to deceive.  "Fraud" is a general term that includes

17     all of the ways people can use false representations,

18     suggestions, deliberate disregard or truth, or suppression of

19     the truth, to attempt to gain an advantage over someone else.

20           Thus, a "scheme to defraud" is merely a plan to

21     deprive another of money or property by trick, deceit,

22     deception or swindle.

23           The deception need not be premised upon spoken or

24     written words alone.  The arrangement of the words, or the

25     circumstances in which they're used, may convey the false or

D81LLES4                          Charge

1    deceptive appearance.  If there is deception, the matter in

2    which it is accomplished is immaterial.

3            The false or fraudulent representation must relate to

4    a material fact or matter.  A matter -- a material fact is one

5    that has a natural tendency to influence, or is capable of

6    influencing, the decision of the decision-making body to which

7    it was addressed.

8            In addition to proving that a statement was false or

9    fraudulent and related to a material fact, in order to

10   establish a scheme to defraud, the government must prove that

11   the alleged scheme contemplated depriving United Healthcare of

12   money or property.

13           (Continued on next page)

14

15

16

17

18

19

20

21

22

23

24

25

D81FLES5                          Charge

1           THE COURT:  Furthermore, it is not necessary that the

2   government prove that the defendant you're considering actually

3   realize that he gained from the scheme or that the intended

4   victim actually suffered any loss.  The scheme to defraud need

5   not be shown by direct evidence but may be established by all

6   of the circumstances and facts in the case.

7           If you find that the government has sustained its

8   burden of proof that a scheme to defraud as charged did exist

9   you next should consider the second element.  That element is

10  that the government must establish beyond a reasonable doubt

11  that the defendant you are considering devised or participated

12  in the scheme to defraud knowingly and willfully and with the

13  intent to defraud.  The words devise, participated, are words

14  that you are familiar with and I don't need to spend much time

15  defining them for you.  To devise a scheme to defraud is simply

16  to concoct or plan it.  To participate in the scheme to defraud

17  means to associate one's self with it knowingly and willfully

18  with the intent to make it succeed.  While a mere onlooker is

19  not a participant in a scheme to defraud it's not necessary

20  that a participant be someone who personally and visibly

21  executes a scheme to defraud.  Moreover, it is not necessary

22  for the government to establish that the defendant you are

23  considering originated the scheme.

24          I have already explained to you that the words

25  "knowingly" and "willfully" mean what the words "knowingly" and

D81FLES5                        Charge

1    "willfully" mean in the course of instructing you on the

2    elements of conspiracy.  They have the same meaning here.  To

3    act with intent to defraud means to act willfully and with the

4    specific intent to deceive for the purpose of causing some

5    financial loss to another.  Intent to defraud, therefore, is a

6    fact question for you to decide that involves a person's state

7    of mind.

8         I have already instructed you that direct proof of

9    knowledge or fraudulent intent is not required.  The ultimate

10   facts of a person's state of mind such as intent to defraud may

11   be established by circumstantial evidence based on a person's

12   outward manifestations, his or her words, conduct, acts and all

13   the surrounding circumstances disclosed by the evidence and the

14   rational and logical inferences that may be drawn from them.

15        What is referred to as drawing inferences from

16   circumstantial evidence is no different from what people

17   normally mean when they say use your common sense.  Using your

18   common sense means that when you come to decide whether the

19   government has proved that the defendant you are considering

20   possessed the intent to defraud you need not limit yourself to

21   just what that defendant said, but you may also look at what

22   the defendant did and what all the evidence -- and all of the

23   evidence or lack of evidence.

24        I instructed you already that the success of the

25   scheme is not an element of the crime.

1           The third element that the government must establish

2    beyond a reasonable doubt is that the target of the scheme was

3    a health care benefit program.  The phrase "health care benefit

4    program" means any public or private plan or contract under

5    which any medical benefit, item or services provided to any

6    individual and includes any individual or entity who is

7    providing any medical benefit, an item or service for which

8    payment may be made under the plan or contract.  Thus the term

9    "health care benefit program" can include an insurance company

10   that pays medical providers to provide medical treatment.

11   Pursuant to an insurance contract in order to qualify as the

12   health care benefit program the program must affect interstate

13   commerce.  This means that the program must have had some

14   effect on the movement, transportation or flow of goods,

15   merchandise, money and individuals between and among the

16   states.

17           Counts Nine through Thirteen charge various defendants

18   with the substantive crime of mail fraud in violation of

19   Section 1341 of Title 18 of the United States Code.  I will

20   also remind you that Counts One and Two charge conspiracies

21   that had among their objects to commit mail fraud, so you

22   should consider the elements of mail fraud that I am about to

23   explain to you in connection with your consideration of Counts

24   One and Two as well.

25           The mail fraud statute prohibits the use of the mails

D81FLES5                         Charge

1    or commercial interstate carriers in connection with a scheme

2    to defraud.  The statute reads in pertinent part as follows:

3    Whoever having devised or intending to devise any scheme or

4    artifice to defraud or for obtaining money or property by means

5    of false or fraudulent pretenses, representations or

6    promises for the purposes of executing such scheme or artifice

7    or attempting to do so knowingly causes to be delivered by mail

8    or commercial interstate carrier according to the direction

9    thereof or at the place at which it is directed to be delivered

10   by the person to whom it is directed to be delivered by the

11   person to whom it is addressed any such matter or thing shall

12   be guilty of a crime.  More details as to Counts Nine through

13   Thirteen can be found in Count 50 of the indictment.

14            In order to sustain the charge of mail fraud against

15   the defendant you are considering the government must prove

16   each of the following three elements beyond a reasonable doubt:

17   First, that at or around the time alleged in the indictment

18   there was a scheme or artifice to defraud others of money or

19   property by false or fraudulent pretenses, representations or

20   promises.  Second, that the defendant you are considering

21   knowingly and willfully participated in the scheme or artifice

22   with knowledge of its fraudulent nature and with the specific

23   intent to defraud.  Third, that in the execution of that scheme

24   that defendant used or caused the use of the mails as specified

25   in the indictment.

1            Now, the first element that the government must prove

2    beyond a reasonable doubt is the existence of the scheme or

3    artifice to defraud others of money or property by means of

4    false or fraudulent pretenses, representations or promises.

5    I've already defined these terms for you and you should rely on

6    the instructions I gave you with respect to the first element

7    of health care fraud.

8            The second element the government must prove beyond a

9    reasonable doubt is that the defendant you are considering

10   knowingly and willfully participated in the scheme or artifice

11   to defraud with knowledge of its fraudulent nature and with

12   specific intent to defraud.  I've already defined these terms

13   for you and you should rely on the instructions I gave you with

14   respect to the second element of health care fraud.

15           The third element of mail fraud that the government

16   must establish beyond a reasonable doubt is the use of the

17   mails or commercial interstate carriers in furtherance of the

18   fraudulent scheme.  The use of the mails or commercial

19   interstate carriers can be from one state to another or just

20   within a state or even a single city.  It doesn't matter as

21   long as the United States mails or commercial interstate

22   carriers were used.  The mail matter does not itself have to

23   contain a fraudulent representation or a request for money.  It

24   must, however, further or assist in carrying out the scheme in

25   some way.

D81FLES5                          Charge

1            It is not necessary for the defendant you are

2    considering to have been directly or personally involved in the

3    mailing as long as the mailing was reasonably foreseeable to

4    that defendant in the execution of the scheme to defraud in

5    which the defendant is accused of participating.  In this

6    regard it is sufficient to establish this element of a crime if

7    the evidence justifies a finding that the defendant you are

8    considering caused the mailing in furtherance of this scheme by

9    somebody else.  This does not mean that the defendant must

10   specifically have authorized others to do the mailing.  When a

11   person does an act with knowledge that the use of the mails

12   will follow in the ordinary course of business or where such

13   use of the mails can reasonably be foreseen by that person even

14   if not actually intended then a person causes the mails to be

15   used.

16           With respect to this element the government must prove

17   beyond a reasonable doubt that the scheme involved the use of

18   the mails.  However, the government does not have to prove that

19   any particular use of the mails was made on the exact date

20   charged in the indictment.  It is sufficient if the evidence

21   establishes beyond a reasonable doubt that the mailing was made

22   on a date substantially similar to the date charged in the

23   indictment.

24           Counts Fourteen through Twenty charge various

25   defendants with substantive crimes of wire fraud in violation

1    of Section 1343 of Title 18 of the United States Code.  I will

2    also remind you that Counts One and Two charge conspiracies

3    that have among their objects to commit wire fraud, so you

4    should consider the elements of wire fraud that I am about to

5    explain to you in connection with your consideration of Counts

6    One and Two as well.  The wire fraud statute prohibits the use

7    of interstate wire or radio transmissions in connection with a

8    scheme to defraud.  The statute reads in pertinent part as

9    follows:  Whoever having devised or intending to devise a

10   scheme or artifice to defraud or for obtaining money or

11   property by means of false or fraudulent pretenses,

12   representations or promises transmits or causes to be

13   transmitted by means of wire, radio or television communication

14   in interstate or foreign commerce any writings, signs, signals,

15   pictures or sounds for the purpose of executing such a scheme

16   or artifice shall be guilty of a crime.  More details as to

17   Counts Fourteen to Twenty can be found in paragraph 52 of the

18   indictment.

19          In order to sustain a charge of wire fraud against a

20   defendant the government must prove each of the following three

21   elements beyond a reasonable doubt:  First, that there was a

22   scheme to defraud or to obtain money or property by materially

23   false or fraudulent pretenses, representations or promises as

24   alleged in the indictment.  Second, that the defendant you are

25   considering willfully -- knowingly and willfully participated

D81FLES5                         Charge

1   in the scheme or artifice to defraud with knowledge of its

2   fraudulent nature and with specific intent to defraud and,

3   third, that in execution of that scheme that defendant used or

4   caused the use of interstate wire or radio as specified in the

5   indictment.

6           Now, the first element the government must prove

7   beyond a reasonable doubt is the existence of a scheme or

8   artifice to defraud others of money or property by means of

9   false or fraudulent pretenses, representations or promises.

10  I've already defined these terms for you and you should rely on

11  the instructions I gave you with respect to the first element

12  of health care fraud.  The second element the government must

13  prove beyond a reasonable doubt is that the defendant you are

14  considering knowingly and willfully devised or participated in

15  the scheme or artifice to defraud with knowledge of its

16  fraudulent nature and with specific intent to defraud.  I've

17  already defined these terms for you and you should rely on the

18  instructions I gave you with respect to the second element of

19  health care fraud.

20          The third element of wire fraud that the government

21  must establish beyond a reasonable doubt is the use of an

22  interstate or international wire or radio communication in

23  furtherance of the fraudulent scheme.  The wire or radio

24  communication must pass between two or more states as, for

25  example, a telephone call between New York and New Jersey or it

1   must pass between the United States and a foreign country such

2   as a telephone call between New York and London.  A wire

3   communication also includes an electronic transfer of funds

4   between banks in different states or between a bank in the

5   United States and a bank in a foreign country.  The use of the

6   wires need not itself be a fraudulent representation.  It must,

7   however, further or assist in the carrying out of the scheme to

8   defraud.  It is not necessary for the defendant you are

9   considering to be directly or personally involved in the wire

10  communication as long as the communication was reasonably

11  foreseeable in the execution of the alleged scheme to defraud

12  in which the defendant you are considering is accused of

13  participating.

14          In this regard it is sufficient to establish this

15  element of the crime if the evidence justifies a finding that

16  the defendant you are considering caused the wires to be used

17  by others.  This does not mean that that defendant must

18  specifically have authorized others to make the call or

19  transfer the funds.  When one does an act with knowledge that

20  the use of the wires will follow in the ordinary course of

21  business or where such use of the wires can reasonably be

22  foreseen even though not actually intended, then he or she

23  causes wires to be used.

24          With respect to the use of the wires the government

25  must establish beyond a reasonable doubt the particular use

D81FLES5                    Charge

1    charged in the indictment.  The wires charged are the regular

2    electronic payments of disability payments to annuitants.  The

3    government need not prove all of these wire transmissions as

4    long as the government proves at least one of these

5    transmissions for the wire fraud count you are considering.  In

6    other words, the government must prove beyond a reasonable

7    doubt one interstate wire transmission for Count Nineteen and

8    at least one interstate wire transmission for Count Twenty and

9    so on.  You must be unanimous as to what that wire transmission

10   is for each count.

11          Count Twenty-One charges the defendant, Joseph

12   Rutigliano with making a false statement in a disability

13   recertification form filed with the RRB in violation of Section

14   1001 of Title 18, United States Code.  The statute reads as

15   follows in pertinent part:  Whoever in any matter within the

16   jurisdiction of the executive, legislative or judicial branch

17   of the government of the United States knowingly and willfully

18   makes any materially false, fictitious or fraudulent statement

19   or representation shall be guilty of a crime.  More detail as

20   to Count Twenty-One can be found in paragraph 54 of the

21   indictment.

22          The purpose of Section 1001 is to protect the

23   authorized functions of the various governmental departments

24   from any type of misleading or deceptive practice or from

25   adverse consequences that might result from such deceptive

 1    practices.  To establish a violation of Section 1001 it is

 2    necessary for the government to prove certain elements which I

 3    will describe to you beyond a reasonable doubt.  However, I

 4    want to point out now that it is not necessary for the

 5    government to prove that the government agency was in fact

 6    misled as a result of the defendant's action.  It does not

 7    matter whether the agency was actually misled or even that it

 8    knew of the misleading or deceptive act should you find that

 9    the act occurred.  These circumstances would not excuse or

10    justify a concealment undertaken or a false, fictitious or

11    fraudulent statement willfully and knowingly made about a

12    matter within the jurisdiction of the government of the United

13    States.

14            In order to sustain a charge of false statements

15    against a defendant the government must prove each of the

16    following five elements beyond a reasonable doubt:  Let me go

17    back.  In order to sustain a charge of a false statement

18    against the defendant, bear in mind in this case it's only one

19    defendant, Mr. Rutigliano, the defendant must prove each of the

20    following five elements beyond a reasonable doubt.  First, that

21    on or about the date specified the defendant made a statement

22    or representation.  Second, that this statement or

23    representation was material.  Third, that the statement or

24    representation was false, fictitious or fraudulent.  Fourth,

25    the false, fictitious or fraudulent statement was made

1    knowingly and willfully and, fifth, the statement or

2    representation was made in a matter within the jurisdiction of

3    the government of the United States or federal funds were

4    involved.

5            The first element that the government must prove

6    beyond a reasonable doubt is that the defendant made a

7    statement or representation.  In this regard the government

8    need not prove that the defendant physically made or otherwise

9    personally prepared the statement in question.  It is

10   sufficient that the defendant caused the statement charged in

11   the indictment to have been made.  Under the statute there is

12   no distinction between written and oral statements.

13           The second element the government must prove beyond a

14   reasonable doubt is that the facts falsified or concealed or

15   covered up was material.  A fact is material if it is capable

16   of influencing the government's decisions or activities.

17   However, proof of actual reliance on the statement by the

18   government is not required.

19           The third element that the government must prove

20   beyond a reasonable doubt is that the statement or

21   representation was false, fictitious or fraudulent.  A

22   statement is false or fictitious if it was untrue when made and

23   known at the time to be untrue by the person making it or

24   causing it to be made.  A statement is fraudulent if it was

25   untrue when made and was made or caused to be made with the

D81FLES5                    Charge

1    intent to deceive the government agency to which it was

2    submitted.

3          The fourth element the government must prove beyond a

4    reasonable doubt is that the defendant acted knowingly and

5    willfully.  I've already defined these terms for you in

6    discussing the conspiracy charged in the case and you should

7    rely on those definitions.

8          The fifth element that the government must prove

9    beyond a reasonable doubt is that the statement or concealment

10   be made or undertaken with regards to a matter within the

11   jurisdiction of the government of the United States.  I charge

12   you that the RRB is a department of the United States

13   government.  There is no requirement that the document be

14   actually directed to or given to the RRB.  All that is

15   necessary is that you find that it was contemplated that the

16   document was to be utilized in a matter that was within the

17   jurisdiction of the government of the United States or that

18   federal funds were involved.  To be within the jurisdiction of

19   the government of the United States means that the statement

20   must concern an authorized function of that department or

21   agency.  It is not necessary for the government to prove that

22   the defendant had actual knowledge that the false statement was

23   to be utilized in a matter that was within the jurisdiction of

24   the government of the United States.  It is sufficient to

25   satisfy this element if you find that the false statement was

1   made with regards to a matter within the jurisdiction of the

2   government of the United States.

3          It is each defendant's theory of the case that he or

4   she did not possess the requisite intent to satisfy either the

5   conspiracy charges or the substantive charges listed in the

6   indictment.  That is, each of the defendants contends that he

7   or she did not knowingly or willfully enter into any of the

8   charged conspiracies and that he or she did not possess an

9   intent to defraud anyone.  Since an essential element of the

10  crimes charged is intent to defraud it follows that good faith

11  on the part of the defendant you are considering is a complete

12  defense to a charge of mail fraud, wire charge or health care

13  fraud.  A defendant, however, has no burden to establish a

14  defense of good faith.  The burden is on the government to

15  prove fraudulent intent and the consequent lack of good faith

16  beyond a reasonable doubt.  However misleading or deceptive a

17  plan may be it is not fraudulent if it was devised or carried

18  out in good faith.  An honest belief of the truth of a

19  representation made by a defendant is a good defense however

20  inaccurate the statements may turn out to be.

21         However, if a defendant knew that his or her

22  representations were false and material it is not a defense

23  that he or she believed that the victim would recognize the

24  falsity and decide not to rely on those statements.  As a

25  practical matter, then, in order to sustain the charge against

1    the defendant you are considering the government must establish

2    beyond a reasonable doubt that he or she knew that his or her

3    conduct as a participant in the scheme was calculated to

4    deceive and nonetheless he or she associated himself or herself

5    with the alleged fraudulent scheme for the purpose of causing

6    some loss to another.

7            To conclude on this element, if you find that the

8    defendant you are considering was not a knowing participant in

9    the scheme or that he or she lacked the specific intent to

10   defraud you should find that defendant not guilty.  On the

11   other hand, if you find that the government has established

12   beyond a reasonable doubt not only the first element, namely,

13   the existence of the scheme to defraud, but also this second

14   element, that the defendant you are considering was a knowing

15   participant and acted with a specific intent to defraud and if

16   the government also establishes a third element as to which I

17   am about to instruct you, then you have a sufficient basis upon

18   which to convict that defendant.

19           It is also unimportant whether a victim might have

20   discovered the fraud had it probed further.  If you find that a

21   scheme or artifice to defraud existed, it is irrelevant whether

22   you believe that a victim was careless, gullible or even

23   negligent.  Here the government alleges that the defendants

24   were involved in a scheme to defraud the RRB by obtaining

25   disability benefits for Long Island Rail Road employees by

D81FLES5                         Charge

1    means of false and fraudulent applications and supporting

2    materials.  Negligence, carelessness or gullibility on the part

3    of the victim is no defense or charge of such fraud.

4              There is another way you may evaluate the possible

5    guilt of a defendant on Counts Twelve through Twenty even if

6    you find the government did not satisfy its burden of proof

7    with respect to each element of each of those substantive

8    crimes.  If in light of my instructions you find beyond a

9    reasonable doubt that the defendant you are considering was a

10   member of one of the conspiracies charged in Counts One through

11   Four and thus guilty of that conspiracy count, then you may

12   also, but you are not required to, find him or her guilty of

13   the substantive crime charged against him or her in Counts Five

14   through Twenty provided you find beyond a reasonable doubt each

15   of the following elements:  First, that the substantive crime

16   charged in the count you are considering was in fact committed.

17   Secondly, that the person or persons who did commit the crime

18   were members of the conspiracies that existed.  Third, that the

19   substantive crime you are considering was committed pursuant to

20   a plan and understanding you found to exist among the

21   conspirators.  Fourth, that the defendant you are considering

22   was a member of that conspiracy at the time the substantive

23   crime was committed and, fifth, that the defendant you are

24   considering could have reasonably foreseen that the substantive

25   crime might be committed by his or her co-conspirators.

1          If you find all five of these elements to exist beyond

2     a reasonable doubt then you may find the defendant you are

3     considering guilty of the substantive crime charged against him

4     or her, even though he or she did not personally participate in

5     the acts constituting the crime or did not have actual

6     knowledge of it.  The reason for this rule is simply that a

7     co-conspirator who commits a substantive crime pursuant to a

8     conspiracy is deemed to be the agent of the other conspirators.

9     Therefore, all of the co-conspirators must bear criminal

10    responsibility for the commission of the substantive crimes.

11         If, however, you are not satisfied as to the existence

12    of any of these five elements with respect to any of the

13    charged conspiracies then you may not find the defendant you

14    are considering guilty of the substantive crime unless the

15    government proves beyond a reasonable doubt that the defendant

16    personally committed or aided and abetted or caused the

17    commission of the substantive crime charged.

18         With respect to Counts Five through Twenty, the

19    indictment also charges the defendants with what is called

20    aiding and abetting.  The aiding and abetting statute, Section

21    2(a) of Title 18 of the United States Code provides that

22    whoever commits an offense against the United States or aids,

23    abets, counsels, commands, induces or procures its commission

24    is punishable as a principal.  Under the aiding and abetting

25    statute it is not necessary for the government to show that the

D81FLES5                        Charge

1     defendant you are considering himself or herself physically

2     committed the crime with which he or she is charged in order

3     for you to find that defendant guilty.  Thus, if you find that

4     the government has proved beyond a reasonable doubt that a

5     particular defendant himself or herself committed the crime

6     charged you may under certain circumstances still find that

7     defendant guilty of that crime as an aider or abettor if the

8     government has proved certain elements beyond a reasonable

9     doubt.

10         A person who aids or abets another to commit a crime

11     is just as guilty of that offense as if he or she committed it

12     himself or herself.  Accordingly, you may find a particular

13     person guilty of the substantive crime if you find beyond a

14     reasonable doubt that the government has proved that another

15     person actually committed the crime and that the defendant

16     aided and abetted that person in the commission of the offense.

17     As you can see, the first requirement is that another person

18     has committed the crime charged.  Obviously, no one can be

19     convicted of aiding and abetting the criminal acts of another

20     if no crime was committed by the other person in the first

21     place.  But if you do find that a crime was committed, then you

22     must consider whether the defendant you are considering aided

23     or abetted the commission of the crime.  In order to aid or

24     abet another to commit a crime it is necessary the defendant

25     willfully and knowingly associated himself or herself in some

way with the crime and that he or she willfully and knowingly

seek some act to help make the crime succeed.

I have already defined the concepts of "knowingly" and

"willfully" for you.  You should apply those same definitions

here.  The mere presence of a defendant where a crime is being

committed even coupled with knowledge by the defendant that a

crime is being committed or the mere acquiescence by a

defendant in the criminal conduct of others even with guilty

knowledge is not sufficient to establish aiding and abetting.

An aider and abettor must have some interest in the criminal

venture.  To determine whether the government has proved beyond

a reasonable doubt that the defendant you are considering aided

or abetted the commission of a crime with which he or she is

charged ask yourselves these questions:  Did he or she

participate in the crime charged as something he or she wished

to bring about?  Did he or she associate himself or herself

with the criminal venture knowingly and willfully?  Did he or

she seek by his or her actions to make the criminal venture

succeed?

If the government proved beyond a reasonable doubt

that he or she did all three of them, then that defendant is an

aider and abettor and therefore guilty of the offense you are

considering.  If he or she did not, then the defendant is not

an aider or abettor and the defendant is not guilty of that

offense.

1              The indictment in this case alleges fraud relating to

2    disability applications filed by certain Long Island Rail Road

3    employees to the RRB.  You have heard evidence that the RRB

4    administers disability programs under the Railroad Retirement

5    Act.  This statute provides two disability standards that you

6    have heard described.  First, there is what is known as a total

7    and permanent disability under the applicable RRB regulations.

8    This means that a person is unable to do any substantial

9    gainful activity because of an medically determinable physical

10   or mental impairment which is permanent or lasts at least one

11   year.  The second standard is what's known as an occupational

12   disability.  Under the applicable RRB regulations an

13   occupationally disabled person must be disabled for work in his

14   or her regular railroad occupation because of a permanent

15   physical or mental impairment.  You also heard much testimony

16   about railroad occupations under RRB regulations to determine

17   what the employee's regular railroad occupation is.  The RRB

18   relies on the employee's description of his or her job and in

19   determining the demands of that job the RRB is directed to

20   consider the applicant's own description of his or her own

21   regular railroad occupation as well as the employer's

22   description, as well as generic job descriptions that are

23   maintained by the RRB.

24              I have told you the elements of each charge in the

25   indictment.  In addition to the elements I have described to

1    you as to each charge the government must prove that some act

2    in furtherance of the charge you are considering occurred in

3    the Southern District of New York.  You are instructed that the

4    Southern District of New York includes the following counties:

5    The Bronx, Manhattan or New York county, Dutchess, Orange

6    Putnam, Rockland, Sullivan and Westchester County.  In addition

7    the Southern District of New York includes the water

8    surrounding Long Island and Manhattan as well as the air space

9    above the district or the waters in the district.  It is

10   sufficient to satisfy this element if any act in furtherance of

11   the crime occurred within this district.

12        I should note that on this issue and this issue alone

13   the government need not prove venue beyond a reasonable doubt,

14   but only by mere preponderance of the evidence.  Thus the

15   government has established its venue obligations if you

16   conclude that it is more likely than not that any act in

17   furtherance of the crimes charged in each count occurred in the

18   Southern District of New York.  If you find that the government

19   has failed to prove this venue requirement by a preponderance

20   of the evidence then you must acquit the defendant you are

21   considering of that charge because he or she has the right to

22   be tried only in a district where venue is proper.

23        I have now outlined for you the rules of law

24   applicable to this case and the process by which you weigh the

25   evidence and determine the facts.  The most important part of

D81FLES5                    Charge

1    the case, members of the jury, is that part which you as jurors

2    are now about to play as you deliberate on the issues of fact.

3    I know you will try the issues that are presented to you

4    according to the oath of office you have taken as jurors.  In

5    that oath you promised that you would well and truly try the

6    issues in this case and render a true verdict.  In a few

7    minutes you will retire to the jury room for your

8    deliberations.

9        In this courtroom it is customary for Juror No. 1, the

10   juror seated closest to the judge's bench, to be the

11   foreperson.  In this case it is Ms. Shirley Howe.  So the

12   deliberations may proceed in an orderly fashion you must have a

13   foreperson, but of course her vote is entitled to no greater

14   weight than that of any other juror.  The foreperson has no

15   greater voice or authority than any other juror.  The

16   foreperson will send out any notes and when the jury has

17   reached their verdict she will notify the marshal that the jury

18   has reached a verdict.

19       The government to prevail must prove the essential

20   elements by the required degree of proof as already explained

21   in these instructions.  If it succeeds, your verdict should be

22   guilty.  If it fails it should be not guilty.  To report a

23   verdict it must be unanimous.  Your function is to weigh the

24   evidence in the case and to determine whether or not the

25   defendant you are considering is guilty solely upon the basis

1    of such evidence.

2                Each juror is entitled to his or her opinion.  Each

3    should, however, exchange views with his or her fellow jurors.

4    That is the very purpose of jury deliberations, to discuss

5    evidence, to listen to the arguments of fellow jurors, to

6    present your individual views, to consult with one another and

7    to reach an agreement based solely and wholly on the evidence

8    if you can do so without violence to your own individual

9    judgment.  Each of you must decide the case for yourself after

10   consideration with your fellow jurors of the evidence in the

11   case but in the course of your deliberations you should not

12   hesitate to reexamine your own views and change an opinion if

13   you are convinced it is erroneous.  However, if after careful

14   consideration of all of the evidence and the arguments of your

15   fellow jurors you entertain a conscientious view that differs

16   from the others you are not to yield your conviction simply

17   because you are outnumbered.  Your final vote must reflect your

18   conscientious conviction as to the issues, as to how the issues

19   should be decided.

20               Your verdict, whether guilty or not guilty must be

21   unanimous.  When you are in the jury room listen to each other

22   and discuss the evidence and issues in the case among

23   yourselves.  It is the duty of each of you to consult with one

24   another and to deliberate with a view to reaching an agreement

25   on the verdict if you can do so without violating your

D81FLES5                    Charge

1    individual judgment and your conscience.  Each juror should be

2    heard.  No one juror should hold the center stage in the jury

3    room and no one juror should control or monopolize

4    deliberations.  To reach a verdict all of you must agree but

5    you must not surrender your conviction for the mere purpose of

6    returning a verdict solely because of the opinion of the other

7    jurors.

8         I will give you a verdict form to be filled out by

9    you, the jury.  No inference is to be drawn from the way the

10   verdict sheet is worded as to what the answers should be.

11   Questions are not to be taken as any indication that I have an

12   opinion, any opinion as to how this should be answered.  Before

13   the jury attempts to answer any question you are to read the

14   entire verdict sheet and make sure that everybody understands

15   each question.  Before you answer the questions you should

16   deliberate in the jury room and discuss the evidence that

17   relates to the questions you must answer.  When you have

18   considered the questions thoroughly and the evidence that

19   relates to these questions record your answers on the verdict

20   sheet I will give you.  Remember, all answers must be agreed

21   upon by all of you.

22        Now, ladies and gentlemen, you are about to go into

23   the jury room to begin your deliberations.  All the exhibits

24   will be given to you at the start of your deliberations.  If

25   you want any testimony read back to you, you may also request

1    that.  Please remember that while we do have a daily written

2    transcript available if you ask for testimony the reporter must

3    search through his or her notes and the lawyers must agree on

4    what portions of the testimony may be called for and if they

5    disagree I must resolve those disagreements.  That can be time

6    consuming, so please try to be as specific as you possibly can

7    in requesting portions of testimony if you do so.  Your request

8    for testimony, in fact, any communication with the Court should

9    be made to me in writing signed by your foreperson and given to

10   one of the marshals.  In any event do not tell me or anyone

11   else how the jury stands on any issue until a verdict is

12   reached.  When you make your request, the foreperson signs it,

13   please indicate the date and the time on the note.  I will

14   provide you with form communication sheets on which the

15   foreperson should make all communications with the Court.

16          As I indicated earlier, I will be sending a copy of

17   the indictment to the jury room for you to have during your

18   deliberations.  You may read it to read the crimes which the

19   defendants are charged with committing.  You are reminded,

20   however, that an indictment is merely an accusation and is not

21   to be used by you for any proof of the conduct charged.

22          Finally, let me say this, not because I think it is

23   necessary, but because it is the custom in this courtroom.  You

24   should treat each other with courtesy and respect during your

25   deliberations.  After you have reached the verdict, your

D81FLES5                              Charge

1    foreperson will fill in the verdict sheet that will be given to

2    you, sign and date it and advise the marshal outside of your

3    door that you are ready to return to the courtroom.  If you are

4    divided, do not report on how the whole stands and if have

5    reached a verdict do not report what it is until you are asked

6    in open court.

7           I will stress you should be in agreement with the

8    verdict announced in open court.  Once your verdict is

9    announced by the foreperson in open court and officially

10   recorded, it cannot be revoked.  Remember that verdict must be

11   rendered with favor, fear, sympathy or prejudice.

12          I thank you for your attention and attentiveness.

13          Counsel, please approach.

14          (Continued on next page)

15

16

17

18

19

20

21

22

23

24

25

D81FLES5                         Charge

1              (At the side bar)

2              THE COURT:  All right, I'm trying to sort out one

3      place where I made a reference to a third element and it was

4      not clear what the third element referred to because I

5      indicated which I am about to describe but we never got back to

6      the third element.

7              MR. DRATEL:  It was right before negligence of the

8      victim, I believe.

9              MR. WEDDLE:  I think that was the good faith

10     instruction, but I think that originally was part of one of the

11     substantive crimes, and so I think you could just tell the jury

12     that when you were talking about good faith you said you were

13     going to talk about the third element to be described but what

14     you meant was that the third element had already been described

15     of the substantive charge.

16             THE COURT:  That's my understanding, so we're trying

17     to find a way of phrasing so that they don't get confused and

18     think that somehow something was left out.

19             All right, now, a couple of things.  One, are there

20     any further objections to the instructions as read, any further

21     objections beyond what you've already reserved and expressed?

22             MR. RYAN:  The record should show it took two hours.

23     A record for you.

24             THE COURT:  I have a better on-time record than the

25     Long Island Rail Road.

D81FLES5                        Charge

 1            MR. DRATEL:  I just want to particularize that when

 2     the Court defined total and permanent disability and

 3     occupational disability, did not include a statement that this

 4     case does not charge total and permanent disability, so that's

 5     one.  I had mentioned that before, but I just wanted to

 6     particularize it, that that's not what's charged here.  Thanks.

 7            MR. WEDDLE:  He's just preserving his objection.

 8            THE COURT:  Mr. Weddle?

 9            MR. WEDDLE:  We already had this discussion.  I

10     understood Mr. Dratel to be preserving his objection.

11            MR. DRATEL:  Yes, yes.

12            THE COURT:  I deliberately phrased it in a way that

13     provided for the jury to be informed of what those definitions

14     were without getting into what is or is not charged because

15     there's some lack of clarity on that issue.  Not lack of

16     clarity.  There is a dispute.  Okay.

17            Now, coming back to the alternates, Mr. Durkin, I

18     indicated that I would give you an opportunity to be heard,

19     although not necessarily to be listened to.

20            MR. DURKIN:  Judge, you said you were going to file

21     something that your clerk had.

22            THE COURT:  Yes.

23            MR. DURKIN:  I haven't seen that.

24            THE DEPUTY CLERK:  Yesterday I was observing Juror 11,

25     Mr. Mark.  There were a few occasions between 12 and 1:00 p.m.

1   specifically when he appeared to nod off and then a couple of

2   occasions after 3:00, between 3 and 3:30.  On some occasions it

3   was difficult to tell if he was writing, but sometimes he was

4   out.

5              THE COURT:  All right.

6              MR. DURKIN:  Judge, the only -- and I obviously don't

7   want to quarrel with your clerk and I don't want to quarrel

8   with you.  I don't want to quarrel with anyone --

9              THE COURT:  I told Connor to be prepared to take the

10  stand under oath and be cross-examined.

11             MR. DURKIN:  I am too tired.  I observed him yesterday

12  quite a bit and I did observe that he took a lot of notes

13  throughout the closing argument.  I found him to be very

14  engaged the entire time I was talking to the jury.  The times I

15  was watching him I found him to be very engaged.  I also want

16  the record to reflect that this jury has been seemingly getting

17  along famously well.  There was a whole outburst, everybody in

18  the courtroom recognized just two days ago where they were all

19  laughing hysterically and I think your Honor made a note, made

20  a comment on the record that maybe you'll let us in on what the

21  joke was.  There doesn't appear to be any hostility from

22  anything he's done and I thought that was one of your concerns.

23  And I'm just -- we didn't use all our challenges, that's the

24  best I can tell you and he was an important juror to us, and

25  I'm concerned.

D81FLES5                    Charge

1          I know you said that it hasn't affected your judgment,

2     but I'm concerned that if there was an issue reported by

3     somebody, and it's my understanding that it was the lady that

4     is of Cuban descent that seemed offended by his comment about

5     Castro, I have a lot of concerns about that.  There's just

6     something that doesn't sit well with me over that issue, and it

7     doesn't appear to be affecting the way they get along now.  I

8     mean, right now as I'm looking over your shoulder he's actively

9     engaged in a conversation with the woman next to him, he was

10    speaking to the woman in front of him.  They all seem to be

11    getting along well, and I just think we're losing one of our --

12    it affected our jury selection.

13         THE COURT:  Thank you, Mr. Durkin.  A couple of

14    things.  One is you keep coming back to this issue of the

15    comment that was made to one of the jurors concerning

16    Mr. Castro.  That is not what triggered my concern.  My clerk

17    came to me within a couple of days after the start of the trial

18    and mentioned to me that he observed Mr. Mark nodding off, not

19    attempting -- long before we started hearing complaints from

20    jurors about Mr. Marks' distracted or sometimes odd behavior.

21    So my concern about his inattentiveness predated this comment

22    that you continue to raise, and that comment is not the only

23    thing that members of the jury complained about Mr. Mark.  I

24    drew it to your attention and told you I was going to continue

25    at random to look to see whether he was attentive.  A couple of

1    days ago I brought to your attention again times that he was

2    nodding off --

3              MR. DURKIN:  Judge, I understand.

4              THE COURT:  Also at times he was crouching, at least

5    one time I noted he was for five minutes crouching with a

6    posture that was clearly not paying attention and disturbing

7    his neighbors.

8              MR. DURKIN:  Judge, we can respectfully disagree.  I

9    get it.

10             THE COURT:  You created your record and I have mine.

11             MR. DURKIN:  You have the robe.

12             MS. FRIEDLANDER:  Your Honor, for what it's worth, I

13   observed him sleeping several times during the day yesterday

14   and we have concerns about that as well.

15             THE COURT:  All right, I am going to swear the marshal

16   and send them into the jury room and have them tell us what the

17   schedule is going to be for today and tomorrow.  We need to get

18   the exhibits to them.  Have the parties pulled together all the

19   exhibits?

20             MR. WEDDLE:  I have had people working on it all

21   afternoon.  I have to check with them and see how they've done.

22   They probably have them all organized in a trial cart.

23             MR. RYAN:  Is it helpful, since it's near 5:00, that

24   we adjourn?

25             THE COURT:  Thank you, Mr. Ryan.  You read my mind.

D81FLES5                          Charge

1    I'm going to suggest to them that they adjourn because we need

2    time to pull the massive number of exhibits together and they

3    won't be ready until tomorrow morning.

4                MR. DRATEL:  Judge, I hope by tomorrow morning we'll

5    have the new redacted indictment that removes Mr. Gagliano as a

6    defendant.  Judge, one question, do you have a particular time

7    in mind that you're going to take lunch tomorrow?

8                THE COURT:  No.

9                MR. DRATEL:  You're going to leave it up to hem?

10               THE COURT:  Entirely up to them.  We provide them

11   lunch and they decide when -- the decision is entirely theirs.

12               MR. DRATEL:  When will we learn?  I'm just asking

13   because I have someone coming into town tomorrow.  If I can

14   meet them for lunch -- I can have them meet me here.

15               THE COURT:  I will ask them to let us know and if they

16   can, they can.  All right, thank you.

17               (Continued on next page)

18

19

20

21

22

23

24

25

D81FLES5                         Charge

1              (In open court; jury present)

2              THE COURT:  Let me come back to one matter that

3    requires clarification.  There was one point when I was

4    describing the question of good faith in which at the end of

5    that instruction I made reference to the fact that the

6    government must also establish a third element and I said "as

7    to which I am about to instruct you."  And then those of you

8    who are -- or I should say all of you who are clearly paying

9    attention lit up at that point and noticed that I didn't come

10   back to that third element.  The reason is that at some point

11   we made some revisions in the instruction and the reference to

12   that third element was actually told and was the good faith

13   instruction that I had already given.  So take that into

14   account when you consider this, that the third element to which

15   I made reference there is actually that good faith instruction

16   that I had already given.

17             Now, I will ask the clerk to swear in the marshal.

18             (Marshal sworn)

19             THE COURT:  All right.  And next.  I mentioned to you

20   that you were going to have a copy of the indictment and a copy

21   of all of the exhibits available to you in the jury room.  As

22   you are undoubtedly aware, the exhibits in the case were

23   voluminous and it will require a lot more time than we have

24   been able to allocate this afternoon to put them all together.

25   There are people working as we speak in trying to sort it all

1   out and have it all ready.

2          What I am going to suggest is that we adjourn, or that

3   you adjourn at this point and begin your deliberations tomorrow

4   at 9:30 to give us time to have all the exhibits prepared and

5   ready for you to begin immediately.  Now, I am suggesting

6   tomorrow at 9:30 again in order to give us a little time to

7   prepare all the materials.  Thereafter the schedule for your

8   deliberations is going to be entirely your own and if you know

9   roughly when you're going to be adjourning for a day or if you

10  are going to be adjourning for lunch break at a particular time

11  let us know so that at the end of the day we can call you into

12  the courtroom and give you the parting instructions for the

13  day.

14         One perk of being a juror in this court is that we

15  provide you with lunch so that sometime in the morning my clerk

16  will hand you a menu for ordering and we will attempt to have

17  the lunch delivered to you at the time that you ask to have it

18  available.

19         So I say good night and warn you again not to discuss

20  the case among yourselves or with anyone on the outside or have

21  any contact with anyone related to the case.  In the morning

22  when you come in do not go into the courtroom.  Go directly

23  into the jury room where the marshal is now going to escort you

24  and do not begin any deliberations until all of you are

25  present, and that will hold for any day in which you are

D81FLES5                          Charge

1    deliberating.  Again, thank you for your attentiveness and we

2    will see you tomorrow.

3              I'm sorry, I'm sorry, one other very important matter.

4    Please sit for just one more moment.  I indicated to you at the

5    start of the trial that there were two alternates and that I

6    would inform you who the alternates were after the Court's

7    instruction.  The two alternates are Ms. Charity and Mr. Mark.

8    You are excused.  We thank you for your participation in the

9    trial up to this point.  I know that for an alternate it is

10   always disappointing to come to this point and have to be

11   excused, but nonetheless the service that you have rendered

12   even as an alternate is of great value to the Court and to the

13   parties, so I thank you again.  I ask that you pick up your

14   belongings and leave through the jury room and then the other

15   jurors will follow.  Thank you again, Mr. Mark and Ms. Charity.

16             (Jurors excused)

17             (Adjourned pending verdict)

18

19

20

21

22

23

24

25