D85LLES1                          Deliberations

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

                v.                           S14 11 Cr. 1091 (VM)

PETER LESNIEWSKI, MARIE BARAN
and JOSEPH RUTIGLIANO,

                Defendants.

------------------------------x

                                             August 5, 2013
                                             9:51 a.m.

Before:

                    HON. VICTOR MARRERO,

                                             District Judge


                        APPEARANCES

PREET BHARARA
        United States Attorney for the
        Southern District of New York
BY:   JUSTIN S. WEDDLE
      DANIEL BEN TEHRANI
      NICOLE WARE FRIEDLANDER
      Assistant United States Attorneys

LAW OFFICES OF JOSHUA L. DRATEL, P.C.
        Attorneys for Defendant Peter Lesniewski
BY:   JOSHUA LEWIS DRATEL
      LINDSAY A. LEWIS

DURKIN & ROBERTS
        Attorneys for Defendant Peter Lesniewski
BY:   THOMAS ANTHONY DURKIN

D85LLES1                      Deliberations

                      APPEARANCES CONTINUED

KOEHLER & ISAACS, LLP
        Attorneys for Defendant Marie Baran
BY:  JOEY JACKSON

JOSEPH W. RYAN, JR.
KEVIN MENEILLY
        Attorneys for Defendant Joseph Rutigliano

            – also present –

Annie Chen
Emma Larson, Government Paralegals


SA Frank LoMonaco, FBI

Yeni Yrizarry, Defendant Baran Paralegal

                         oOo

1          (Trial resumed)

2          (Jury not present)

3          THE COURT:  Good morning.  Welcome back.  I hope you

4     all had a relaxing weekend.

5          Two things.  One, the Court received a note from the

6     jury dated today at 9:25 and it says:  Good morning.  Several

7     jurors have questions -- have requests for additional copy of

8     the instructions and one additional copy of the indictment.

9     They feel it would make it easier for them to follow the many

10    details of the case.  Thank you.

11         P.S. Are our voices carrying to distraction into the

12    courtroom?

13         And then, May we please have a few more additional

14    jury note forms.

15         All right.  If there's no objection from any of the

16    parties, we will give them an additional copy of the redacted

17    indictment and additional copy of the Court's instructions plus

18    the jury note forms.

19         This will be marked Court Exhibit No. 2.

20         Second, Friday when we left we were going to respond

21    to their request for the transcript of the testimony of two

22    witnesses, Mr. Parlante and Mr. Maher, pertaining to

23    Mr. Rutigliano's services.  We asked the parties to confer and

24    develop a response of the appropriate portions of the

25    transcript.

D85LLES1                        Deliberations

1          Has an agreement been reached on that?

2          MR. TEHRANI:  Unfortunately not, your Honor.  We

3     proposed a set of redacted testimony that we believe is

4     responsive to the jury's note.  We received some objections

5     from both Mr. Ryan and Mr. Durkin, as well as some additional

6     proposed testimony from Mr. Ryan.  We've conferred about that

7     and have reached some limited agreement, but we still seem to

8     have fundamental disagreement about what is responsive to the

9     jury's note.

10         If it's at all helpful, your Honor, I can pass up a

11    copy of both Mr. Parlante's testimony and Mr. Maher's testimony

12    that includes -- it is the government's proposal overlaid with

13    the objections we've received.

14         What it does not include, I do not believe, and I will

15    be corrected if I'm wrong, it does not include Mr. Ryan's

16    proposed additional inserts and we are running copies of those

17    right now.

18         THE COURT:  What is the nature of the differences

19    between the two?

20         MR. TEHRANI:  The most fundamental difference is the

21    government has proposed reading back the testimony or providing

22    the jury with the testimony about the process that Mr. Maher

23    and Mr. Parlante went through in filling out the application,

24    which includes a discussion of the application, whether certain

25    portions of the application are truthful, and whether Mr. Maher

 1    and Mr. Parlante told that information to Mr. Rutigliano, which

 2    in our view is directly responsive to the jury's request for

 3    testimony regarding Mr. Rutigliano's assistance in filling out

 4    the applications.

 5           If these individuals were not telling Mr. Rutigliano

 6    the information that's included in the applications that they

 7    paid Mr. Rutigliano to fill out, that gets to Mr. Rutigliano's

 8    assistance in filling out those application materials.

 9           The objections that we received are a couple.  One is

10    that Mr. Ryan has referred to it as narrative.  I'm not sure

11    exactly what that means.  He has also suggested that it gets to

12    nonconversations.  I don't believe the jury's note was asking

13    for conversations.  I believe what the jury was asking for was

14    information or testimony relating to Mr. Rutigliano's

15    assistance in filling out the application materials.  So

16    whether or not there was a conversation about it is not

17    particularly relevant to whether the testimony is responsive to

18    the jury's request.

19           Mr. Rutigliano has or Mr. Ryan has also proposed --

20    and that's not what I'm about to pass up, but has proposed

21    testimony relating to Mr. Rutigliano's reputation, the nature

22    of conductor work, Mr. Parlante's accident or incident, his

23    last day of work, none of which we believe is responsive at all

24    to the jury's request.

25           THE COURT:  All right.  Mr. Ryan.

D85LLES1                          Deliberations

1            MR. RYAN:  Let me go in reverse order.

2            With respect to the Parlante testimony, on

3       cross-examination the government agrees that he told

4       Mr. Rutigliano about the episode -- that's getting hit by a

5       train.  And I have suggested that the episode, just a short

6       excerpt of what the episode is be included.

7            And as cross-examination continued -- this gives you

8       an idea of the dispute -- as to why Mr. Parlante told

9       Mr. Rutigliano about the episode and he didn't want it included

10      because he was embarrassed.  The government objects to all of

11      that.  All they want is a section that did you tell

12      Mr. Rutigliano about the episode?  I did.  That's all they

13      want.  That's an example.

14           Then there's another 15 pages of the direct

15      examination where the witness was given a declaration in

16      response to leading questions as to what was true and what was

17      not true on the application.  And dispersed in this declarative

18      type testimony they would ask a question, did Mr. -- did you

19      tell that to Mr. Rutigliano?  He would say no.

20           So this is a declarative part of the witness's

21      testimony, what he said he picks out in the application was

22      false or inaccurate, but it's not based upon a discussion.

23           My understanding is the jury wants to know what

24      happened between Mr. Rutigliano and Mr. Parlante or

25      Mr. Rutigliano and Mr. Maher.  So there's about 15 pages of

D85LLES1                     Deliberations

1   this declaratory type testimony that we've objected to.

2           There's also in the Parlante, I'm sorry, in the Maher

3   testimony questions about, the government has included

4   questions about what Mr. Maher told the grand jury on a prior

5   occasion.  So gives you an idea of the dispute.

6           Now, I can -- I have listed on a memorandum that I

7   gave to the government what we objected to and what we asked

8   for insertions.  I don't know how your Honor wants to handle

9   this.  One suggestion I have is I'll hand this up.  Government

10  has a copy of it.  We'll pick out the transcript portions in

11  dispute.  Your Honor can rule on it.

12          THE COURT:  All right.  Thank you.

13          MR. TEHRANI:  Your Honor, just to clarify, if it is

14  helpful for your Honor, that is what we tried to accomplish in

15  the documents that we passed up.  So what we passed up was what

16  we had circulated to defense counsel as to what we think is

17  responsive to the jury's note and we've indicated on what we

18  circulated what Mr. Ryan and Mr. Durkin have objected to.

19          And we just got copies of what Mr. Ryan is proposing

20  to add.  That would then be the nature -- that would be the

21  document that Mr. Ryan wants to hand up, but it would be in

22  transcript form rather than citation form.

23          MR. RYAN:  We would appreciate copies of what was just

24  handed up.

25          THE COURT:  There may be several ways we can approach

D85LLES1                    Deliberations

 1    this.

 2              One is to send a note back to the jury asking them to

 3    focus more precisely on either portions of the testimony that

 4    they're interested in or particular questions that they wanted

 5    to review answers to and then see what they say.

 6              Second, or the second possibility to ask them is

 7    whether they want the entire testimony from those two witnesses

 8    from start to finish and see how they respond to that.

 9              My take on these issues when they come up in this

10    manner is to try to first see if the jury will refine their

11    questions, zero in on particular issues or subjects that were

12    part of the testimony.

13              Barring that, the jury sat through and they heard the

14    testimony from start to finish.  So there are no secrets there

15    other than those that were discussed with the parties at side

16    bars.  And if we remove from the transcript the side bars and

17    the questions that were objected to and sustained, then we have

18    a pure transcript of what the jury heard.

19              To the extent the jury heard all of that, I don't see

20    why there would be any objections to the jury hearing it again

21    if that's what they want.  But, again, there are no secrets

22    there.  It's all part of the transcript.  The testimony, they

23    heard it.  If they want to hear it a second time, so be it.

24              So if the parties cannot come to an agreement as to

25    what portions of the testimony addresses the question, I'll

D85LLES1                      Deliberations

1    give them the whole thing and take out what I just indicated,

2    the side bars and the questions that were objected to and

3    sustained.

4           MR. RYAN:  The way I understand your Honor's

5    suggestion is that you would give them a sanitized, if I can

6    use that word, transcript of the testimony.

7           THE COURT:  I said failing an agreement that's one way

8    of approaching it.  But I will first try to see if they can

9    indicate more precisely the subject of the testimony that they

10   are interested in.  And if they say that it's only one portion

11   or one particular topic, then we can hone in on those.

12          But if they cannot clarify, then just give them a

13   sanitized version of the entire testimony and let them pore

14   through it decide what it is they're looking for.

15          Mr. Tehrani.

16          MR. TEHRANI:  Your Honor, if I may, the note was

17   fairly specific about what they wanted.  So I'm not sure.

18          THE COURT:  Not specific enough to avoid questions

19   from the other side as to what it meant.

20          MR. TEHRANI:  Well, I don't know that Mr. Ryan's

21   objections make the question any less specific.  It seems to be

22   that Mr. Ryan just doesn't want specific testimony before the

23   jury again.  And I don't know that what we want to do is in

24   response to a fairly specific question dump an entire

25   transcript of testimony of two witnesses that took hours and

D85LLES1                      Deliberations

```
1    tell the jury --

2            THE COURT:  Mr. Tehrani, how would either the

3    government or the defense be prejudiced by having the jury

4    reread what they heard here in open court?

5            MR. TEHRANI:  Not at all, your Honor.  It's just a

6    matter --

7            THE COURT:  If you cannot come to an agreement, that's

8    what I suggest is the direction.

9            MR. TEHRANI:  I understand, your Honor.  I guess what

10   I'm suggesting is not that providing testimony that the jury

11   has already heard would at all be prejudicial to anyone, it's

12   just a matter of us being helpful and responsive to the jury

13   when they provide a fairly specific request for testimony on a

14   particular issue.

15           You know, one thing that we could do is get your

16   Honor's guidance as to what you think might be responsive to

17   the request, which might help the parties in any kind of

18   discussion or negotiations or just have your Honor rule.

19           MR. RYAN:  My suggestion is that your Honor consider

20   giving the jury a note requesting them to be more specific if

21   they can, or would they prefer transcript of the testimony.

22           MR. DRATEL:  Just a matter of logistics, it sounds

23   like the Court's preference is to give the jury a copy of the

24   transcript rather than have a read back in open court.  Is that

25   my understanding?
```

1            THE COURT:  That's the way we usually handle it.

2            MR. DRATEL:  OK.  Thanks.

3            THE COURT:  There's no point in having them come out

4    here in open court and reading hours of testimony.  Just give

5    it to them and if they want to go through it at their leisure,

6    it's their prerogative.

7            MR. DRATEL:  Thank you, your Honor.

8            THE COURT:  Mr. Weddle.

9            MR. WEDDLE:  Your Honor, I think that the objections

10   by Mr. Rutigliano are just strategic.  I don't think there's

11   actually a real dispute here about what is responsive to the

12   jury's note and what is not responsive to the jury's note.

13           I think that if your Honor just looks at the

14   transcript, we marked with a pen in the margin the parts that

15   Mr. Rutigliano objects to and I think that it would be very

16   straightforward to just say he objects to that but that is

17   responsive to the jury's note or it's not responsive to the

18   jury's note and then we just resolve it that way.

19           I think that's a better way to handle this than to

20   redact the whole transcript.  And essentially your Honor asked

21   the jury to give a specific request.  They gave specific

22   request.  In my view, it's quite easy to respond to that

23   request.  I don't think there are a lot of gray areas on what

24   is responsive to their request and isn't responsive to their

25   request.  Character testimony --

D85LLES1                           Deliberations

1              THE COURT:  Mr. Weddle, that's in your view, but in

2     Mr. Ryan's view there are gray areas and that's why we're here

3     and that's why the jury has already been waiting 35 minutes for

4     something we told them they would have already this morning.

5              MR. WEDDLE:  Your Honor, for Mr. Ryan to say that one

6     of these witness's testimony about Joseph Rutigliano's

7     reputation as a union leader is responsive to the testimony as

8     pertaining to Joseph Rutigliano's assistance with the

9     applications is just not even close to a gray area.  That's

10    just something that he wants to put in.

11             And I think that these are -- this should be a

12    straightforward answer.  I was surprised by the objections that

13    we received.  I think that it's a very straightforward note

14    that's specific.  And I think in the actual testimony that's

15    responsive to it is limited and easy to designate and we should

16    just go through and look at what he's objected to and see if

17    your Honor thinks that it's responsive to their request for the

18    testimony of these two people as pertains to Joseph

19    Rutigliano's assistance.  I think it clearly is.

20             But I think it would be more useful to do this looking

21    directly at the language than to do it in the abstract because

22    I don't think these are substantial disputes here.

23             THE COURT:  Mr. Ryan.

24             MR. RYAN:  May I remind the Court that the

25    government's submission is that the witnesses heard about

D85LLES1                    Deliberations

 1    Mr. Rutigliano and they wanted to make a paper trail.  So the

 2    circumstances under which they came to Mr. Rutigliano in the

 3    government's submission is directly relevant to their other

 4    testimony that they went to him as a union leader as well.  So

 5    that gives you an idea of the benefit of giving the jury both

 6    sides of the coin.

 7            (Pause)

 8            THE COURT:  Let me ask, looking at the testimony of

 9    Mr. Maher as an example, and as I understand it, the government

10    has blacked out the redacted section, that's blacked out.

11            There's some questions on lines 20 through 22.  In the

12    margin it says Ryan objection.  And just a couple more pages.

13    A few more pages in, this is on page 974, which begins the long

14    section marked on the left margin as objection.

15            Does that suggest that, Mr. Ryan, your objection is to

16    most of everything from page 974 through roughly 1003?

17            MR. RYAN:  Yes, because that's what we have

18    characterized as the declaratory part of the testimony by the

19    witness.

20            MR. TEHRANI:  Your Honor, I also note, if you want to

21    look at page 981, we're talking about showing both sides of the

22    coin here, the one portion of this entire section about

23    Mr. Rutigliano's assistance that is not objected to is the

24    portion where the witness testifies that he actually told

25    Mr. Rutigliano something.

D85LLES1                      Deliberations

1           MR. RYAN:  Yes, I have no objection to that.

2           MR. TEHRANI:  The rest of the portion where

3     Mr. Rutigliano filled it out without any input from Mr. Maher

4     is objected to.

5           THE COURT:  Let me come back to what I said before

6     now.  It seems to me that if we gave the jury everything that's

7     in here that's blocked out and that is objected to, does not

8     that amount to just about all of the testimony of Mr. Maher?

9           MR. TEHRANI:  No, your Honor, there's significantly

10    more.  What you have is not all of Mr. Maher's testimony with

11    just portions blacked out.  If there were entire pages where

12    there was nothing that the government was proposing as

13    responsive to the request, that's not even before you.

14          THE COURT:  That portion as to which the parties have

15    no difficulty sending to the jury, does this represent that?

16    Does this excerpt that you've given me represent that portion

17    which you've reviewed together and there's no dispute other

18    than those which are marked in the margin?

19          MR. TEHRANI:  Yes, your Honor, although there are some

20    additional inserts that Mr. Rutigliano would propose that are

21    not before you that I could hand up if you would like.

22          MR. RYAN:  Please hand them up.

23          THE COURT:  And then we still have Mr. Parlante, about

24    which you have the same kind of disputes.

25          MR. TEHRANI:  For Mr. Parlante, yes, your Honor.

D85LLES1                        Deliberations

1          THE COURT:  All right.  I'm not going to sit here and

2     engage in this kind of debate as to whether or not something is

3     or is not responsive and the parties cannot agree as to what's

4     responsive.

5          I'm going to ask the jury to be more precise as to the

6     topics of the testimony that they're interested if they can be.

7     We elicit that.  If they cannot be, then my inclination is to

8     give them the whole thing and let them -- again, their

9     prerogative, their time -- go through the testimony.

10         In the meantime, we can get an extra copy of the

11    instructions and an extra copy of the indictment and some more

12    jury note forms to hand them.  Let me draft.

13         MS. FRIEDLANDER:  Your Honor, just one quick comment.

14    First I want to echo what Mr. Weddle said.  I think Mr. Ryan

15    has objected essentially to all of the testimony about

16    Mr. Rutigliano's assistance with these people's applications.

17         THE COURT:  If he objected to all of it, in that case

18    what's wrong with having the jury see all of it?

19         MR. RYAN:  No objection.

20         MS. FRIEDLANDER:  This is the point that I wanted to

21    raise is that I think this will create an incentive for the

22    parties not to agree on any response to any juror note for any

23    testimony because now if the answer is going to be simply if

24    you don't like what the government is proposing, don't worry

25    about it, we'll just send back all the testimony, then I think

D85LLES1                        Deliberations

1    that's where we're going to wind up in response to every

2    question that we get.  So I think this might be not creating

3    the right incentives for the parties going forward.

4             It also sort of punishes the jury.  Again, we think

5    this is a pretty specific request as juror notes go.  And it's

6    going to be for the jury now to sort through hours of testimony

7    from these witnesses to try to find the response to what we

8    think was a pretty specific question.

9             THE COURT:  All right.  I heard you.

10            (Pause)

11            THE COURT:  Here's the note that I propose sending

12   back to the jury from myself:

13            As to your note of 8/2/13, asks for certain testimony

14   of two witnesses pertaining to Mr. Rutigliano's services:

15   Mr. Maher and Mr. Parlante.  The testimony of those witnesses

16   was very extensive.  Can you provide more specifics about the

17   subjects, more questions in their testimony that you seek to

18   review as they relate to Mr. Rutigliano.

19            All right.  If there's no objection, I will send this

20   to the jury through the court officer.

21            MR. RYAN:  I guess your Honor has rejected the

22   alternative of providing them, suggesting a transcript.

23            THE COURT:  Depending upon what comes out of this.

24            MR. RYAN:  OK.

25            THE COURT:  I will add the additional copies of the

D85LLES1                           Deliberations

1    instructions, the indictment, and the note forms will be

2    provided to you momentarily.

3             I just added a sentence:  The additional copies of the

4    Court's instructions, the indictment, and jury note forms that

5    you requested will be provided momentarily.

6             There's nothing more we can productively do while

7    we're waiting for the clarification, so just recess until we

8    hear back.

9             (Recess pending verdict)

10            (Jury not present; time noted:  11:10 a.m.)

11            THE COURT:  Mr. Durkin, are you done with your other

12   matter?

13            MR. DURKIN:  Well, I never got started, Judge, because

14   the courtroom was sealed and apparently they couldn't get a

15   secure line to hook me in.  So they're going to call me.  So if

16   I step out, they're going to call me at some point.

17            THE COURT:  That will be fine.

18            MR. DURKIN:  Thank you.

19            THE COURT:  The Court received a note from the jury

20   dated 10:45 a.m., dated today.  Re Maher and Parlante.

21            1.  We are confused about how Maher's application was

22   submitted to the RRB.

23            2.  May we hear testimony that states Joe Rutigliano

24   was paid in cash to help in application process.

25            Thank you.  Signed by the foreperson.

D85LLES2                        Deliberations

1          I think that this elicits the specifics that we

2     requested.  I cannot imagine them being more narrow and

3     particular in what they're asking.  So there's no reason why

4     there should be too much debate about what portions of the

5     testimony of those two witnesses would be responsive.

6          I assume Mr. Rutigliano and Maher, the question is how

7     was the application submitted to the RRB.  The question is to

8     whether it was directly by Mr. Rutigliano or to what extent

9     Mr. Maher read it and submitted it.  That's probably what the

10    nature of questions relate to, so there's no reason why

11    anything beyond those issues should be pertinent or responsive.

12         Second, with regards to both Mr. Parlante and

13    Mr. Maher, the question is whether they paid Mr. Rutigliano in

14    cash for their services.

15         All right.  So if you could then review the testimony

16    and see if you could identify those portions that relate to

17    these two questions, we should be able to put this behind us.

18         For your information, the jury also sent in their

19    lunch order to be delivered at 1 o'clock.

20         All right.  If there's nothing else, I will await your

21    response to these two questions from the testimony.  If you can

22    agree upon it among yourselves, just provide the copy that has

23    the agreed upon testimony and hand it to the court security

24    officer.

25         If in the unlikely event that there are disputes, then

1     we'll get back together again.  All right.

2               MR. WEDDLE:  Thank you, your Honor.

3               THE COURT:  Thank you.  This will be marked the

4     appropriate court exhibit number now.

5               THE DEPUTY CLERK:  Three.

6               THE COURT:  We have the Court's note two.  So this

7     will be No. 3.

8               (Recess pending verdict)

9               (Jury not present; time noted:  4:41 p.m.)

10              THE COURT:  Just a number of housekeeping matters.

11              First, pursuant to the note that was sent by the jury

12    concerning the testimony of Mr. Maher and Mr. Parlante, the

13    parties reached an understanding of what portions of the

14    transcript responded to the jury note and those portions were

15    transmitted to the jury through the court officer.

16              Second, the Court received a note from the jury dated

17    today at 3 p.m. and it reads as follows:

18              Greetings.  We're planning to stop deliberations at

19    4:45 today.  We are making good progress working through the

20    counts.

21              This will be marked as Court Exhibit No. 4, I believe.

22              The Court also received another note, this one signed

23    by the foreperson today, 4:05 p.m., and it reads as follows:

24              Clarification?  Re instructions, page 63, line 17, end

25    of line 17, "The government..."  We are confused about why

D85LLES3                     Deliberations

1    Counts 19 to 20 are singled out with requirement to identify

2    specific wire transmission.  Also, why the phrase "and so on"

3    is included, what it refers to regarding this count.

4            Thank you.  Signed by the foreperson.

5            The language of the instructions which this jury note

6    relates is in the instructions on page 63.  The text of that

7    passage reads, The government need not prove all of these wire

8    transmissions so long as the government proves at least one of

9    these transmissions for the wire fraud count you are

10   considering.  In other words, the government must prove beyond

11   a reasonable doubt one interstate wire transmission for Count

12   19 and at least one interstate transmission for Count 20 and so

13   on.

14           Now, my understanding of the reason why Counts 19 and

15   Count 20 are there was for illustrative purposes.  There are

16   six wire fraud counts, 14 through 20, and it just happens that

17   19 and 20 are the last two.  The language "and so on" is

18   intended to refer to all of the wire fraud Counts 14 through

19   20, and it just so happens to those two were the last in the

20   list.  It could just as well have said 14 and 15 and so on.

21   And so I will so instruct the jury.  I'll clarify for the jury.

22           I will also clarify that the language simply means

23   what it says, that for each of the Counts 14 through 20, the

24   jury needs to find at least one wire transmission associated

25   with any particular count that they're considering.

D85LLES3                        Deliberations

1          So if there's no misunderstanding about that, I will

2     so clarify for them.

3          If there are no other questions, I will ask the court

4     security officer to bring the jury in.  I will give them this

5     clarification and then dismiss them for the evening.

6          (Jury present; time noted:  4:47 p.m.)

7          THE COURT:  Good afternoon.  Thank you.  Welcome back.

8          We have received your note indicating that you

9     contemplate or contemplated returning as of 4:45, so that's

10    fine.  We're calling you to adjourn you for the day.

11         I also have your later note seeking clarification

12    about the instruction on page 63.  That relates to the wire

13    fraud counts, and you indicate that you were confused about why

14    Counts 19 and 20 are singled out to identify specific wire

15    transmission and also what the meaning of the phrase "and so

16    on," why it's included at the end of that sentence.

17         As you are aware by now, the indictment contains seven

18    wire fraud counts, 14 through 20.  There are seven of them.  It

19    just so happens that 19 and 20 are the last two.  So the

20    instruction that is given there pertains to all seven, meaning

21    that the government need not prove all of the wire

22    transmissions.  It needs to prove at least one associated with

23    each of the seven counts.  And when we indicate Counts 19 and

24    20 and we say and so on, it means that this applies to all of

25    them.  I could just as well have said 14 and 15 and so on.

D85LLES3                    Deliberations

```
 1              THE FOREPERSON:  OK.

 2              THE COURT:  Clear?

 3              THE FOREPERSON:  I think so.  Thank you.

 4              THE COURT:  So with that I will understand that you're

 5      adjourning for the evening and you're returning tomorrow, what

 6      time?

 7              THE FOREPERSON:  9:30.

 8              THE COURT:  All right.  I want to thank you again.

 9      And recall the standard instruction.  At some point I'll just

10      say ditto and you'll know what I mean, press a button.

11              Do not discuss the case among yourselves or with

12      anyone on the outside or have any contact of any kind with

13      anyone involved with the case.  If any of these things occur,

14      you're directed to inform me immediately and not discuss it

15      with your fellow jurors.

16              Have a good evening.  We'll see you tomorrow.

17              THE FOREPERSON:  Thank you very much.

18              (Jury not present; time noted:  4:51 p.m.)

19              THE COURT:  Just one further note very briefly.

20              Mr. Ryan has requested that we provide him with copies

21      of the jury notes.  These notes have been read into the record.

22      They're part of the record.  So if anybody wishes to have

23      copies for your purposes, we will make them available.

24              I understand there was a request from a member of the

25      press for copies of the jury notes.  For the same reason,
```

D85LLES3                        Deliberations

1    they're part of the public record.  They've been read into the

2    transcripts.  So I have no reason not to provide them to

3    members of the press if requested.

4            If there's nothing else, then I thank you and have a

5    good evening.  We'll see you tomorrow.

6            (Adjourned to August 6, 2013, at 9:30 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25