UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA,                S14 11 Cr. 1091 (VM)

                Plaintiff,                (Electronically Filed)

    -*against*-

PETER LESNIEWSKI,

                Defendant.
-------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### PETER J. LESNIEWSKI'S MOTION FOR RELEASE PENDING APPEAL


                                JOSHUA L. DRATEL
                                LAW OFFICES OF JOSHUA L.
                                DRATEL, P.C.
                                29 Broadway
                                Suite 1412
                                New York, New York 10006
                                (212) 732-0707

                                THOMAS ANTHONY DURKIN
                                DURKIN & ROBERTS
                                2446 N. Clark Street
                                Chicago, Illinois 60615
                                (312) 981-0123


                                *Attorneys for Defendant Peter Lesniewski*


—Of Counsel—
Lindsay A. Lewis
Joshua G. Herman
Janis D. Roberts

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................ 1

   I.   LEGAL PRINCIPLES. ............................................................................................ 1

   II.   THE SUFFICIENCY OF THE WIRINGS AND MAILINGS PRESENTS A  CLOSE QUESTION UNDER GRIMM AND SIMILAR CASES. ........................................ 2

      A.  The Decision in *Grimm*. .................................................................................... 3
      B.  The Wirings and Mailings at Issue Here Were Not in Furtherance of the Charged Conspiracies and Schemes. ................................................................................. 5

         1.      The Wiring of the Disability Payments………………………………………..6

         2.      The Mailing of the Disability Recertifications…………………………………...9

CONCLUSION.................................................................................................................. 10

# CASES

*Kann v. United States*, 323 U.S. 88, 95 (1944).................................................................... 5
*Schmuck v. United States*, 489 U.S. 705 (1989) ................................................................. 5
*United States v. Altman*, 48 F.3d 96, 102 (2d Cir. 1995)............................................ 5, 6, 9
*United States v. Doherty*, 867 F.2d 47 (1st Cir. 1989)........................................................ 3
*United States v. Evans*, 148 F.3d 477 (5th Cir. 1998) ......................................................... 5
*United States v. Grimm*, 2013 U.S. App. LEXIS 24392 (2d Cir. Dec. 9, 2013) ................... passim
*United States v. Keenan*, 657 F.2d 41 (4th Cir. 1981)......................................................... 5
*United States v. Manarite*, 44 F.3d 1407 (9th Cir. 1995) ................................................... 5
*United States v. Maze*, 414 U.S. 395, 405 (1974).............................................................. 5
*United States v. Phillips*, 704 F.3d 754 (9th Cir. 2012)...................................................... 6
*United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985)....................................... 1, 2, 9
*United States v. Salmonese*, 352 F.3d 608 (2d Cir. 2003) ................................................. 3
*United States v. Slevin*, 106 F.3d 1086 (2d Cir. 1996)....................................................... 6
*United States v. Vontsteen*, 872 F.2d 626 (5th Cir. 1989) ................................................. 6

# STATUTES

18 U.S.C. § 3143............................................................................................................... 1

Defendant Peter J. Lesniewski, M.D. ("Dr. Lesniewski"), respectfully moves the Court for bail pending appeal under 18 U.S.C. § 3143. Dr. Lesniewski is not at all likely to flee or pose a danger to the community if released; his appeal is not for purposes of delay; and his appeal presents substantial questions that, if determined favorably to him, will require reversal or a new trial on all counts of conviction. He therefore meets the requirements of § 3143.

We focus in particular here on one of those substantial questions: whether the wirings and mailings charged in the indictment and proven at trial are sufficient to establish the jurisdictional elements of the wire and mail fraud counts (and the corresponding objects of the Count 1 conspiracy) and venue on the remaining counts, particularly in light of the Second Circuit's recent decision in *United States v. Grimm*, 2013 U.S. App. LEXIS 24392 (2d Cir. Dec. 9, 2013).[1]

## ARGUMENT

### I. LEGAL PRINCIPLES.

A court must release a defendant pending appeal if it makes four findings: (1) "that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released"; (2) "that the appeal is not for purpose of delay"; (3) "that the appeal raises a substantial question of law or fact"; and (4) "that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985); *see* 18 U.S.C. § 3143(b)(1).

The first *Randell* factor should not be in dispute. As the Court determined in releasing Dr. Lesniewski pending sentencing under 18 U.S.C. § 3143(a), he is not likely to flee and he

---

[1] On January 22, 2014, the government petitioned for rehearing in *Grimm*. At the filing of this motion, the court of appeals has not ruled on the government's petition.

does not pose a danger to the community. This finding was entirely justified. Dr. Lesniewski made every pretrial, trial, and post-trial appearance. He has deep roots in the community. He is a first offender, and the offenses of conviction do not involve violence. Similarly, the second *Randell* factor is satisfied. Dr. Lesniewski's appeal is not for purposes of delay; he has already obtained all trial transcripts and intends to proceed as expeditiously as possible with briefing. Nor should the fourth *Randell* factor be at issue. The appellate issues discussed below, if resolved in Dr. Lesniewski's favor, will produce a reversal or new trial on all counts of conviction.

The third *Randell* factor--whether Dr. Lesniewski's appeal presents "a substantial question of law or fact"--is the key to the bail decision. According to the Second Circuit, a substantial question "is one of more substance than would be necessary to a finding that it was not frivolous. It is a close question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (quotation omitted). As discussed below, Dr. Lesniewski's appeal presents "close questions" concerning the sufficiency of the wirings and mailings charged in the indictment, particularly in light of the December 9, 2013 Second Circuit decision in *Grimm*--a decision supporting Dr. Lesniewski's trial arguments, but not available to the Court or the parties until after trial.

## II. THE SUFFICIENCY OF THE WIRINGS AND MAILINGS PRESENTS A CLOSE QUESTION UNDER GRIMM AND SIMILAR CASES.

*Grimm* and a series of prior decisions strongly suggest that the wirings and mailings charged and proven in this case were not in furtherance of the charged conspiracies and wire and mail fraud schemes. Dr. Lesniewski will argue on appeal, therefore, that the evidence is

insufficient on the jurisdictional element of the wire and mail fraud counts, and that the government failed to establish venue on the remaining counts.

  **A.  The Decision in *Grimm*.**

  *Grimm* involved several conspiracy counts. The indictment alleged that the defendants had fraudulently rigged auctions on so-called guaranteed investment contracts, or GICs. The fraud involved setting the interest rate on the GICs artificially low. The corporate issuers of the GICs (which were unindicted coconspirators) made interest payments based on the artificially low rate over a period of years. The issue was whether the charged conspiracies fell within the statute of limitations.

  The only alleged overt acts within the statute of limitations were a series of periodic interest payments on the fraudulent GICs, made long after the fraudulent rigging of the interest rates. The government asserted that those payments were in furtherance of the charged conspiracies and thus sufficed to bring the conspiracies within the statute. *See Grimm*, 2013 U.S. App. LEXIS 24392, at *8-*9.

  The Second Circuit rejected the government's position. Following *United States v. Salmonese*, 352 F.3d 608 (2d Cir. 2003), and *United States v. Doherty*, 867 F.2d 47 (1st Cir. 1989), the court of appeals observed that "a conspiracy ends notwithstanding the receipt of anticipated profits where [] the payoff merely consists of a lengthy, indefinite series of ordinary, typically noncriminal, unilateral actions . . . *and* there is no evidence that any concerted activity posing the special societal dangers of conspiracy is still taking place." *Grimm*, 2013 U.S. App. LEXIS 24392, at *12 (quotations omitted; emphasis in original). "Conversely, payoffs could reasonably be viewed as part of a conspiracy where their receipt consists of one action, or a handful of actions, taking place over a limited period of time, or where some evidence exists that

the special dangers attendant to conspiracies . . . remain present until the payoff is received." *Id*. at *13 (quotations omitted) . Of particular significance here, the Second Circuit noted that *Doherty* and *Salmonese*

> list features to describe serial payments that do not constitute overt acts: lengthy, indefinite, ordinary, typically noncriminal and unilateral. The list is descriptive rather than exclusive; but generally, overt acts have ended when the conspiracy has completed its influence on an otherwise legitimate course of common dealing that remains ongoing for a prolonged time, without measures of concealment, adjustment or any other corrupt intervention by any conspirator.

*Id*.

Applying these principles, the court of appeals held that the interest payments on the GICs were not in furtherance of the conspiracies and did not constitute overt acts, because they "are ordinary commercial obligations, made pursuant to a common form of commercial arrangement; they are noncriminal in themselves; they are made unilaterally by a single person or entity; and they are made indefinitely, over a long time, typically up to 20 years or more." *Id*. at *14. Even if (as the government insisted) the payments were not considered "indefinite," they still did not constitute overt acts, because "when anticipated economic benefit continues, in a regular and ordinary course, well beyond the period when the unique threats to society posed by a conspiracy are present, the advantageous interest payment is the result of a completed conspiracy, and is not in furtherance of one that is ongoing." *Id*. at *15 (quotation omitted). The Second Circuit thus found that the indictment did not allege overt acts within the limitations period, and it remanded for dismissal. *See id.* at *16.

Although *Grimm* addresses the "in furtherance of" requirement for overt acts in a conspiracy, it is consistent with cases interpreting the same requirement for mailings and wirings in mail fraud and wire fraud cases. The Supreme Court has recognized that "[t]he federal mail

4

fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323 U.S. 88, 95 (1944); *see United States v. Altman*, 48 F.3d 96, 102 (2d Cir. 1995) (same).  In language reminiscent of *Grimm*, the Court later observed that "Congress could have drafted the mail fraud statute so as to require only that the mails be in fact used as a result of the fraudulent scheme.  But it did not do this; instead, it required that the use of the mails be 'for the purpose of executing such scheme or artifice . . . .'" *United States v. Maze*, 414 U.S. 395, 405 (1974) (footnote omitted); *see, e.g., Schmuck v. United States*, 489 U.S. 705, 713-14 (1989) (mailings not in furtherance of scheme where scheme had "reached fruition" before the mailings and the "success of the scheme" did not depend on the mailings); *Altman*, 48 F.3d at 103 (reversing mail fraud conviction; "A mailing cannot be said to be in furtherance of a scheme to defraud when it occurs after the scheme has reached fruition.").[2]

### B. The Wirings and Mailings at Issue Here Were Not in Furtherance of the Charged Conspiracies and Schemes.

Under the principles set out in *Grimm* and the other cases addressed above, the wirings and mailings at issue in this case are not in furtherance of the charged conspiracies and schemes. The wirings--routine transfers of disability payments from one financial institution to another--represent exactly the kind of long-lasting, routine, noncriminal, unilateral acts that *Grimm* found insufficient.  And the mailings--of disability recertifications completed and mailed by the annuitants years after they last saw Dr. Lesniewski--involve unilateral acts that occurred "well beyond the period when the unique threats to society posed by a conspiracy are present," *Grimm*,

---

[2] *See also United States v. Evans*, 148 F.3d 477, 481-83 (5th Cir. 1998) (same; reversing mail fraud conviction); *United States v. Keenan*, 657 F.2d 41, 43 (4th Cir. 1981) (same; reversing conviction).  Because the wire and mail fraud statutes are similarly worded, "the wire fraud statute is read in light of the case law on mail fraud." *United States v. Manarite*, 44 F.3d 1407, 1411 n.5 (9th Cir. 1995) (reversing mail and wire fraud conspiracy conviction because mailings and wirings were not in furtherance of the charged scheme).

2013 U.S. App. LEXIS 24392, at *15 (quotation omitted), and well after the alleged fraud schemes had "reached fruition," *Altman*, 48 F.3d at 103.  Because the mailings and wirings were not in furtherance of the charged conspiracies and schemes, they fail to establish venue on the conspiracy and health care fraud counts, and they are insufficient to prove the jurisdictional element of the mail and wire fraud counts.

The wirings and mailings issue has particular force in this case because virtually all of the underlying events occurred in the Eastern District of New York.  The case was initially investigated by the United States Attorney for the Eastern District of New York.  The government shoehorned it into the Southern District solely by virtue of the wirings of the routine disability payments (which, en route to Long Island, passed through or over waters considered to be part of this district) and the mailings of the disability recertifications (which were received in this district).  As we discuss in more detail below, neither the wirings nor the mailings suffice under *Grimm* and similar cases.  As the Fifth Circuit put it, the annuitants' right to receive disability payments was "finalized independent of, and prior to" the wirings and mailings. *United States v. Vontsteen*, 872 F.2d 626, 629 (5th Cir. 1989); *see, e.g., United States v. Phillips*, 704 F.3d 754, 763 (9th Cir. 2012) (reversing mail fraud conviction where the success of the scheme did not depend on the charged mailing), *cert. denied*, 133 S. Ct. 2796 (2013).[3]

    **1.**    **The Wiring of the Disability Payments.--**The jury found Dr. Lesniewski guilty on four wire fraud counts (Counts 14, 16, 17, and 19) and a conspiracy that had wire fraud as one of its objects (Count 1).  The jurisdictional element of the wire fraud counts and the wire fraud

---

[3] This is not a case like *United States v. Slevin*, 106 F.3d 1086 (2d Cir. 1996), where the mailings at issue, although post-dating the defendant's receipt of proceeds of the fraud, "were important to the preservation of [the defendant's] relationship with the contractors and hence were necessary to the continuation of [the defendant's] fraudulent scheme." *Id*. at 1091.  Here, the wirings of the disability payments and the mailing of the disability recertifications were not in any respect "necessary to the continuation" of any alleged scheme or conspiracy of which Dr. Lesniewski was a part.

object of the conspiracy count rested on the transfer of disability payments from one Federal Reserve account to another, and then to the annuitant's bank on Long Island, long after the annuitant's last contact with Dr. Lesniewski.  Similarly, venue on the health care fraud counts (Counts 5 and 6) and on the health care fraud object of the Count 1 conspiracy rested solely on these wirings.

A stipulation between the parties described the wirings of the disability payments at issue:

> FED ACH transactions are electronically executed on servers located in New Jersey; that is, the transfer of electronic funds is made from the payor's account at the New York Federal Reserve to the recipient bank's account at the New York Federal Reserve.  From there, the recipient banks use different methods and routes to communicate with the New York Federal Reserve Bank's server in order to move the money electronically to the bank accounts of the account holders at the recipient bank.
>
> [R]egardless of the route by which wire communications travel from outside Long Island into Long Island, because Long Island is an island, the wire communications necessarily would have to travel through, under, or over the water that surrounds Long Island.  In particular, regardless of the route by which communications travel from the New Jersey server of the New York Federal Reserve Bank, in order for the money or information about the money to be accessed by a customer or a teller in Long Island, transmission would be required that crosses the waters surrounding Long Island and enters Long Island.  Transmissions of banking information such as this in the New York City area are almost invariably by cable.  These cables either are under the water surrounding Long Island or are attached to bridges that go over the water surrounding Long Island.

GX 1611; 7/29 T. 2206-07.

These routine, indefinite, and noncriminal transfers, from one Federal Reserve account to another and then to the annuitant's bank, are precisely the kind of wire transmissions that do not satisfy the "in furtherance of" requirement for an overt act or for a wiring that supports a wire fraud count.  This is particularly so because the wirings began and continued "in a regular and ordinary course, well beyond the period when the unique threats to society posed by a conspiracy

are present." *Grimm*, 2013 U.S. App. LEXIS 24392, at *15 (quotation omitted).  In the words of *Grimm*, the wirings are "the result of a completed conspiracy" or fraud scheme, "and [are] not in furtherance of one that is ongoing." *Id*.

The wirings at issue in Count 14 illustrate this point.  The annuitant in that count was Joseph Rutigliano.  Dr. Lesniewski signed a narrative for Rutigliano on September 28, 1999.  7/25 T. 1782; GX 100D.  Rutigliano applied for disability on December 21, 1999.  The RRB accepted his claim in early 2000.  At that point, the alleged conspiracy was complete, and the alleged wire fraud scheme had reached fruition.  Rutigliano's disability payments began in April 2000.  The wirings at issue in Count 14, to fall within the statute of limitations, must have occurred after December 2006--more than *seven years* after Dr. Lesniewski and Rutigliano allegedly engaged in conspiratorial conduct.  Those wirings plainly were not in furtherance of any charged conspiracy or wire fraud scheme.

The wirings at issue in Counts 16, 17, and 19 are similarly insufficient under *Grimm* and the other cases discussed above.  Count 16 concerns Christopher Parlante.  Dr. Lesniewski signed Parlante's narrative November 24, 2004.  7/19 T. 504; GX 104D.  Parlante applied for disability on February 3, 2005.  7/19 T. 501; GX 1109.  His disability payments began April 1, 2005.  The first such payment within the statute of limitations occurred after December 2006--more than two years after Dr. Lesniewski and Parlante engaged in alleged conspiratorial conduct, and long after the alleged wire fraud scheme had reached fruition.

Count 17 concerns Steven Gagliano.  Dr. Lesniewski signed Gagliano's narrative on July 31, 2006.  7/18 T. 231; GX 101D.  Gagliano applied for disability on October 31, 2006.  7/18 T. 202; GX 101A.  The RRB notified him on November 28, 2006 that he met the requirements for disability.  7/18 T. 251; GX 101G.  At that point, the dangers of conspiracy were over, and the

alleged wire fraud scheme had reached fruition. Gagliano's routine disability payments began January 1, 2007.

Count 19 concerns Gary Supper. Dr. Lesniewski signed Supper's narrative on November 28, 2006. 7/18 T. 375; GX 103D. Supper applied for disability on December 29, 2006. 7/18 T. 359; GX 103A. The RRB notified him on February 20, 2007 that he met the requirements for disability. 7/18 T. 386; GX 103N. His disability payments (and the accompanying wirings) did not begin until May 1, 2007.

Under *Grimm* and the other cited cases, these routine wirings, after the dangers of a conspiracy have ended and after an alleged wire fraud scheme has reached fruition, cannot be considered "in furtherance of" the conspiracy or scheme. Because the wirings do not meet the "in furtherance of" requirement, they do not establish the jurisdictional element of the wire fraud counts or venue on the conspiracy or health care fraud counts. At a minimum, particularly in light of *Grimm*, the sufficiency of the wirings presents "a close question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (quotation omitted).

    **2.**     **The Mailing of the Disability Recertifications.--**The jury found Dr. Lesniewski guilty of two mail fraud counts (Counts 12 and 13) and a conspiracy that had mail fraud as one of its objects (Count 1). The mailings that support these counts--Continuing Disability Update Reports, or "disability recertifications"--occurred in March 2011, years after any alleged conspiratorial conduct had ended and years after the alleged fraud schemes had "reached fruition." *Altman*, 48 F.3d at 103. Those mailings were not in furtherance of any ongoing conspiracy or scheme.

Count 12 rests on Rutigliano's mailing of a disability recertification on March 22, 2011. (The Rutigliano mailing is also charged in Count 3 as an overt act.) But that mailing was more

9

than *eleven years* after Dr. Lesniewski had signed Rutigliano's narrative. There is no evidence that Dr. Lesniewski had any involvement in filling out or sending the Rutigliano disability recertification. Rutigliano's completion and mailing of the recertification in 2011 was not "in furtherance of" any fraud scheme of which Dr. Lesniewski was then a part or of any ongoing conspiracy.

The mailing at issue in Count 13 falls under the same analysis. That count rests on the mailing of Christopher Parlante's disability recertification on March 28, 2011. (The Parlante mailing is also charged in Count 3 as an overt act.) That is more than six years after Dr. Lesniewski signed Parlante's narrative, and almost six years after Parlante began receiving disability payments. Parlante's mailing of the recertification was not in furtherance of any ongoing conspiracy or fraud scheme of which Dr. Lesniewski was a part.[4]

\* \* \* \*

As this analysis demonstrates, it is at least a "close question" whether the wirings and mailings charged in the indictment and proven at trial are sufficient to establish the jurisdictional elements of the wire and mail fraud counts (and the corresponding objects of the Count 1 conspiracy) and venue on the remaining counts.

## CONCLUSION

For the foregoing reasons, the Court should release Dr. Lesniewski pending appeal on his current conditions.

---

[4] For another reason, the mailings of the disability recertifications are insufficient to support the mail fraud counts. As the Court instructed the jury, the defendant must have either "used or caused the use of the mails as specified in the indictment." 8/1 T. at 2943. A defendant may "cause" the use of the mails if "the mailing was reasonably foreseeable to that defendant in the execution of the scheme to defraud in which the defendant is accused of participating." *Id*. at 2945. There was no evidence that the mailing of disability recertification forms by Rutigliano and Parlante, years after Dr. Lesniewski had finished seeing them and had signed their narratives, was "reasonably foreseeable" to him.

| | |
|---|---|
| Dated February 14, 2014 | /s/ JOSHUA L. DRATEL<br>JOSHUA L. DRATEL, P.C.<br>29 Broadway, Suite 1412<br>New York, New York 10006<br>(212) 732-0707<br>jdratel@joshuadratel.com<br><br>/s/ THOMAS ANTHONY DURKIN<br>DURKIN & ROBERTS<br>2446 N. Clark Street<br>Chicago, Illinois 60614<br>(312) 981-0123<br>tdurkin@durkinroberts.com<br><br>*Attorneys for Defendant Peter Lesniewski* |

-Of Counsel-

Thomas Anthony Durkin
Joshua L. Dratel
Janis D. Roberts
Joshua G. Herman
Lindsay A. Lewis