```
                                    ┌─────────────────────────────────┐
                                    │ DOCUMENT                         │
                                    │ ELECTRONICALLY FILED             │
                                    │ DOC #: _____  1/      │
                                    │ DATE FILED: ___15/16___          │
                                    └─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MARIE BARAN,                        :
                                    :        11-CR-1091 (VM)
                    Petitioner,     :        15-CV-5493 (VM)
                                    :
        - against -                 :        **DECISION AND ORDER**
                                    :
UNITED STATES OF AMERICA,           :
                                    :
                    Respondent.     :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Petitioner Marie Baran ("Baran") filed this motion pursuant to 28 U.S.C. Section 2255 ("Section 2255") to vacate, set aside, or otherwise correct her conviction and sentence. ("Motion," Dkt. No. 800.) Baran is currently serving a sentence of sixty (60) months imprisonment after a jury found her guilty of four counts of conspiracy, two counts of health care fraud, two counts of mail fraud, and two counts of wire fraud. Baran claims she was denied her Sixth Amendment right to the effective assistance of counsel and requests that her current sentence be vacated or, alternatively, that her case be remanded for an evidentiary hearing. For the reasons discussed below, the Court DENIES Baran's Motion in its entirety.

## I.   BACKGROUND[1]

Baran, a former employee of the United States Railroad Retirement Board ("RRB"), in coordination with Peter Lesniewski ("Lesniewski"), an orthopedic physician, and Joseph Rutigliano ("Rutigliano"), a former Long Island Railroad ("LIRR") conductor and union local president, participated in a longstanding scheme in which LIRR employees conspired to fraudulently obtain federal disability benefits from the RRB.

By superseding indictment ("Indictment") filed on May 6, 2013 (Dkt. No. 383), the Government charged Baran with the following criminal offenses: (a) conspiracy to commit mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. Section 1349 ("Count One"); (b) conspiracy to commit mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. Section 1349 ("Count Two"); (c) conspiracy to defraud the RRB in violation of 18 U.S.C. Section 371 ("Count Three"); and (d) conspiracy to defraud the RRB in violation of 18 U.S.C. Section 371 ("Count Four").   Counts 10, 11, and

---

[1] The Court derives the factual and procedural summary below from the following submissions: (1) Petition under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody, dated July 15, 2015 (Dkt. No. 800); (2) Petitioner's Brief in Support of her 28 U.S.C. Section 2255 Motion, dated July 15, 2015 ("Petitioner's Brief") (Dkt. No. 800); (3) Government's Brief in Opposition To Petitioner's Motion, dated Dec. 7, 2015 ("Gov't Opp.") (Dkt. No. 833); and (4) Affidavit of Petitioner's Counsel, dated Dec. 4, 2015 ("Jackson Aff.") (Dkt. No. 833). Except where specifically referenced, no further citation to these sources will be made.

12 charged Baran with health care fraud in violation of 18 U.S.C. Sections 1347 and 2. Counts 13, 16, and 18 charged Baran with mail fraud in violation of 18 U.S.C. Sections 1341 and 2. Counts 28, 31, and 32 charged Baran with wire fraud in violation of 18 U.S.C. 1343 and 2.[2]

Joey Jackson of Koehler-Isaacs LLP ("Defense Counsel") was retained as Baran's counsel and subsequently represented Baran at all proceedings related to this case.

Jury trial against Rutigliano, Lesniewski, and Baran commenced on July 15, 2013. (See Dkt. Minute Entry for July 15, 2013.) During trial, twelve (12) counts were dismissed on the Government's motion. On August 6, 2013, the jury found all three defendants guilty on all remaining counts. (See Dkt. Minute Entry for Aug. 6, 2013.)

On March 16, 2014, Baran filed a motion to vacate under 28 U.S.C. Section 2255, alleging ineffective assistance of counsel. (Dkt. No. 671.) The Court denied Baran's motion because she had not yet been sentenced. (Dkt. No. 675.)

The Court sentenced Baran on April 4, 2014 to concurrent terms of sixty (60) months imprisonment on Counts 1, 2, 3, and 4 (conspiracy), Counts 10 and 11 (health care fraud), Counts 13 and 18 (mail fraud), and Counts 28 and 32 (wire

---

[2] The Court notes that Baran was not indicted on the remaining counts.

fraud) followed by three (3) years of supervised release. (See Dkt. Minute Entry for April 4, 2014; Dkt. No. 704.)

Baran subsequently filed a notice of appeal (Dkt. No. 717) and brief challenging her conviction based on ineffective assistance of counsel, lack of venue, and a procedurally and substantively unreasonable sentence. The Second Circuit denied Baran's appeal but declined to decide Baran's ineffective assistance of counsel claims on the ground that resolution of those claims was more appropriate on a motion brought under 28 U.S.C. Section 2255. See United States v. Rutigliano, 614 F. App'x 542, 548 (2d Cir. 2015).

Baran then filed the instant Motion. Baran alleges that she was denied her Sixth Amendment right to effective assistance of counsel because Defense Counsel: (1) failed to retain an expert witness to challenge the testimony of the Government's expert witness, Alton Barron ("Barron"); (2) failed to review medical files related to Baran's husband and co-conspirator Gus Baran ("Gus Baran"); (3) failed to object to evidence of Gus Baran playing golf in 2013 ("2013 Golf Evidence"); (4) highlighted evidence of Gus Baran's criminal conduct; (5) failed to preserve certain limiting instructions related to the 2013 Golf Evidence; (6) failed to properly advise Baran that she should retain a medical expert and that Gus Baran should not sit in the courtroom during

trial proceedings; and (7) did not possess sufficient federal court experience to effectively serve as Baran's attorney. (Petitioner's Brief.)

The Government filed an Opposition to Baran's motion. (Gov't Opp.)

## II. DISCUSSION

### A.   APPLICABLE LEGAL STANDARDS

A person in federal custody may move to vacate, set aside, or correct her sentence if it was imposed in violation of "the Constitution or laws of the United States," or "the court was without jurisdiction to impose such sentence," or "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. Section 2255(a).

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. Amend. VI; see also Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) ("Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether and potentially violates the defendant's Sixth Amendment rights."). However, criminal defendants asserting ineffective assistance of counsel have a high threshold to meet "in order to deter a baseless attack on the performance

of counsel in a last-ditch effort to avoid a conviction or reduce the sentence." Percan v. United States, 294 F. Supp. 2d 505, 511 (S.D.N.Y. 2003); see also Kimmelman, 477 U.S. at 382.

To prove ineffective assistance of counsel, the petitioner must satisfy a two-prong test. First, she must show that "counsel's representation fell below an objective standard of reasonableness" according to "prevailing norms." Strickland v. Washington, 466 U.S. 668, 688-89 (1984). Second, she must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94.

First, in evaluating whether a counsel's representation was deficient, counsel's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of professional assistance." Id. at 689; see also United States v. Yingst, No. 12-4628-CR, 2015 WL 5023728, at *3 (2d Cir. Aug. 26, 2015) (stating that "[t]he standard for evaluating the adequacy of counsel's representation is 'a most deferential one,' since 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment'") (citations omitted). A petitioner cannot merely

6

show that counsel made an error that had "some effect" on the result of trial, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693. The errors in counsel's judgment must therefore be "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Regis v. United States, 665 F. Supp. 2d 370, 371 (S.D.N.Y. 2009) (citations omitted); see also United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987) (stating that the "benchmark for judging any such claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

Where the alleged misconduct by counsel is "failure to investigate or discover potentially exculpatory evidence, the decision not to investigate must have been a decision not supported by reasonable professional judgment." Wells v. United States, No. 07 CV 1740, 2010 WL 393339, at *8 (D. Conn. Jan. 25, 2010). Accordingly, a court reviewing a claim for ineffective assistance of counsel is not permitted to "use hindsight to second guess [counsel's] strategy choices." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Second, in evaluating whether counsel's errors prejudiced the outcome of the proceeding, the court must consider the totality of the evidence before the jury. Strickland, 466 at 693. "[U]nlike the determination whether counsel's performance was deficient, [the prejudice inquiry] may be made with the benefit of hindsight." Morgan v. United States, No. 06 Civ. 1247, 2009 WL 1172849, at *5 (E.D.N.Y. May 1, 2009) (citing Lockhart v. Fretwell, 506 U.S. 364, 371–73 (1993)); see also Hill v. A.L. Lockhart, 474 U.S. 52, 59 (1985) (stating that "[t]he determination whether the error 'prejudiced' the defendant . . . will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial").

The standard of proof for the prejudice prong is less than a preponderance of the evidence. See Soto-Beltran v. United States, 946 F. Supp. 2d 312, 317 (S.D.N.Y. 2013). However, "some objective evidence other than defendant's assertions [is required] to establish prejudice." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003).

Although a petitioner must satisfy both prongs to obtain relief, the Supreme Court has stated that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to

dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see also Brown v. Artuz, 124 F.3d 73, 80 (2d Cir. 1997) (declining to address the first prong of Strickland on the ground that the defendant could not satisfy the prejudice prong); United States v. O'Neil, 118 F.3d 65, 73 (2d Cir. 1997) (same); Rodriguez v. Portuondo, No. 01 CV 0547, 2006 WL 2168314, at *7 n.13 (S.D.N.Y. Aug. 1, 2006).

B.   APPLICATION

The Court now turns to each of the seven (7) grounds stated in Baran's Motion. (Petitioner's Brief.)

1.   Failure to Retain A Medical Expert

Baran claims that Defense Counsel was ineffective for failing to conduct a thorough pre-trial investigation and subsequently failing to retain a medical expert to challenge the testimony of the Government's expert witness. Barron, an orthopedic surgeon, opined that the statements and medical records submitted by Baran did not support the disability benefits applications she filed on behalf of her clients. Baran argues that the ineffective assistance of counsel claim rests on her understanding that "from the onset of this case the chief bone of contention between the government and the defense had been whether or not disability annuitants were

9

legitimately disabled and entitled to disability payments or [whether defendants were] simply perpetuating a fraud upon the RRB." (Petitioner's Brief at 8.)   Baran argues that Defense Counsel was on notice as of February 2013 that Barron would opine that the claimants' statements and medical records did not support the claims that they asserted. Baran also points to correspondence between Defense Counsel and a federal practitioner and advisor to Defense Counsel throughout the litigation, Raymond Aab ("Aab"). Aab advised Defense Counsel that a medical expert's services were necessary to respond to the Government's allegations. Accordingly, Baran asserts that a medical expert was imperative to respond to Barron and the Government's case, and Defense Counsel should have retained an expert or, at the very least, educated himself on the subject matter of the medical evidence at issue.

The Government argues that no matter what the annuitants' physical condition, the issue at trial was whether Baran, with the help of her co-defendants, lied in applications to the RRB in order to obtain disability awards. The Government argues that while Barron's testimony was important, the primary evidence at trial was the evidence that Baran intentionally lied in the disability applications she submitted. At trial, the Government introduced evidence

that included the testimony of Baran's co-conspirators who unequivocally stated that their applications were riddled with false information and that Baran was the author of those misrepresentations. The Government also presented evidence that Baran used cookie-cutter applications listing identical physical restrictions and nearly identical narratives of various applicants' everyday lives.

Defense Counsel states that his decision not to call a medical expert to respond to Barron's testimony was strategic. Defense Counsel explains that "[s]uch an expert would have been placed in a position of testifying that every single annuitant that [] Baran ever assisted in all of her years as a consultant was indeed occupationally disabled. Instead of being under the false assumption that the jury would believe [the defense] expert over the Government's expert, . . . I decided to completely avoid the fight." (Jackson Aff. at ¶9.) Moreover, Defense Counsel explains that he did not want to impart a duty on Baran to investigate the legitimacy of her clients' disability claims. (Jackson Aff. at ¶9; see also Petitioner's Brief at 12 ("[Defense Counsel said that] he would dispense with a medical expert because he didn't want to drag Baran into 'defending patients who the government has pictures of playing golf, running marathons, lifting weights, etc.'").) Rather, Baran's counsel focused on

the fact that Baran was not a doctor and therefore needed to rely on the representations made to her by her clients and their physicians. It was Defense Counsel's theory that "Baran was an honest and knowledgeable business women [sic] who relied in good faith upon her clients [sic] assertions as to their occupationally [sic] disability. . . ." (Jackson Aff. at ¶9.)

The Court is persuaded that Defense Counsel made a strategic decision not to hire a medical expert to respond to Barron. This strategic decision, whether wise in retrospect or not, is among professional judgment calls that fall squarely within the category of those that are "unchallengeable" under Strickland. 466 U.S. at 690; see also Mayo, 13 F.3d at 533 (stating that a court reviewing an ineffective assistance of counsel claim "may not use hindsight to second guess [defense counsel's] strategy choices"). As the Supreme Court previously noted, an attorney's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of professional assistance." Strickland, 466 U.S. at 689. "Even the best criminal defense attorneys would not defend a particular client in the same way." Id. Baran's argument that Aab would have hired an expert witness to testify at trial if he was lead defense counsel is therefore speculative and

inapposite. There is simply no evidence to suggest Defense Counsel's strategic decision was unreasonable, and certainly not enough evidence to suggest that the professional call rose to the level of "ineffective."

Moreover, Baran has not made a showing that Defense Counsel's strategic decision, even if erroneous, prejudiced her case. Baran asserts that "[h]ad counsel provided compelling evidence, opinion or testimony, it would have overwhelmed – or at a minimum – neutralized Barron's opinions . . . [and] would have turned the verdict in [] Baran's favor." (Petitioner's Brief at 14-15.) This type of speculation and conclusory statement does not rise to the level of establishing a "reasonable probability . . . sufficient to undermine confidence in the outcome" of trial, as required under Strickland. 466 U.S. at 694; see also Rosario v. Bennett, No. 01 CV 7142, 2002 WL 31852827, at *33 (S.D.N.Y. Dec. 20, 2002) ("Rosario does nothing but assert that an investigation might have revealed witnesses who might have supplied relevant testimony that might have been exculpatory. Such speculation satisfies neither Strickland's deficient performance nor prejudice prongs.").

The Court therefore rejects Baran's claim that she was denied the effective assistance of counsel due to Defense

Counsel's failure to obtain a medical expert to respond to Barron.

### 2.   Failure to Review Medical Files

Baran claims that Defense Counsel was ineffective for failing to review medical files relating to Gus Baran's disabilities. Baran argues that had Defense Counsel reviewed her husband's medical files he could have either established the validity of Gus Baran's impairments or discussed with Baran the serious ramifications of determining that Gus Baran was not suffering from such impairments.

The Government argues that Defense Counsel had access to the medical records provided in discovery as well as to Gus Baran, who had first-hand knowledge of his medical history and condition. In addition, the Government states that it alleged, and proved, that Baran had nearly 200 clients – all of whom were co-conspirators and some of whom were indicted and testified. The Government maintains that Defense Counsel made the strategic decision not to defend the case by litigating the underlying medical documentation, treatment, or diagnosis for each of those co-conspirators.

Defense Counsel states that his approach to Gus Baran's medical records was strategic. He explains that he did not represent Gus Baran and was not willing to turn Gus Baran's medical conditions into another mini-trial by calling doctors

who might testify about his health. Moreover, Defense Counsel
stated that he wanted to "[stay] out of the weeds, [avoid]
cross examining in 'medical speak' . . . and instead put
together a cogent, logical and consistent theory in layman's
terms." (Jackson Aff. at ¶26.)

The Court is persuaded that Defense Counsel's decision
regarding Gus Baran's medical files was strategic. Again, the
Court must afford Counsel's strategic decision a strong
presumption of effectiveness. Strickland, 466 U.S. at 689.
Baran puts forward no evidence to suggest that Defense
Counsel's decisions were unreasonable or that a more thorough
investigation into Gus Baran's medical files would have
raised a reasonable probability that the verdict would have
been different.

Moreover, Baran is unable to show that she was prejudiced
as a result of Defense Counsel's strategic decision. Again,
Baran offers only speculation that if Defense Counsel had
reviewed Gus Baran's medical files, Defense Counsel might
have found evidence validating his medical impairments, and
such evidence might have outweighed the Government's evidence
about Gus Baran's lack of health impediments. See Lamberti v.
United States, No. 95 CV 1557, 1998 WL 118172, at *2 (S.D.N.Y.
Mar. 13, 1998) ("The allegations of failure to investigate or
to communicate are vague and conclusory. They do not identify

counsel's asserted failings with any specificity or show how any different conduct might have changed the result. Such allegations cannot sustain a petition for habeas corpus."); see also Madarikan v. United States, No. 95 CV 2052, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying an ineffective assistance of counsel claim where, as here, "allegations of ineffective assistance [of counsel were] conclusory, and [gave] no indication as to what exculpatory evidence may have been revealed by an investigation").

The Court therefore rejects Baran's second claim that she was denied the effective assistance of counsel due to Defense Counsel's failure to review Gus Baran's medical files.

### 3. Failure To Object to and Improper Use of the 2013 Golf Evidence

Baran claims that Defense Counsel was ineffective (1) for failing to object to the 2013 Golf Evidence, the admission of which Baran argues constructively constituted an amendment to her Indictment and (2) for highlighting the 2013 Golf Evidence during trial.

First, Baran argues that Defense Counsel should have objected to the admission into evidence of the 2013 Golf Evidence because the Indictment alleged a conspiracy from "at least in or about the 1990s, up to and including in or about

16

2011." (Petitioner's Brief at 17.) As such, any evidence obtained in 2013, after Gus Baran had ceased to receive disability benefits, was outside of the charged conspiracy period and thus was inadmissible. Baran also argues that the admission of the 2013 Golf Evidence improperly misled the jury to believe that while Gus Baran claimed to be "totally and permanently disabled" at the time that he applied for disability benefits in 2003, he was, in fact, fully able-bodied at that time. (Petitioner's Brief at 18.) Accordingly, Baran argues that the admission of the 2013 Golf Evidence adversely affected the outcome of her trial.

As support, Baran points to the trial court transcript in which the Court admitted the 2013 Golf Evidence without objection by Defense Counsel but did not permit the Government to play the video of the 2013 Golf Evidence to the jury. The Court stated: "The jury will have the pictures if they want to see them . . . . Now [the Court] recognize[s] that he was one of the listed co-conspirators, but he also happens to be [] Baran's husband. . . . There is a point in which it appears that, by going into this kind of detail about [Gus] Baran, you're going to prejudice the jurors' views about [] Baran." (Dkt. No. 510 at 2145.)

The Government argues that use of the 2013 Golf Evidence was not proffered to suggest that Baran was conspiring to

defraud the RRB in 2013 or that Gus Baran was receiving total and permanent disability payments in 2013. Rather, the evidence was offered to prove that Gus Baran lied in his disability application submitted to the RRB in 2003, well within the charged conspiracy period used in the Indictment. Gus Baran applied for and was awarded not just an occupational disability but a total and permanent disability. In other words, Gus Baran wrote in his disability application that he was so physically disabled as to be unable to perform any job in the national economy. The Government therefore contended that the 2013 Golf Evidence shows that Gus Baran lied about his physical condition in his application in 2003.

The Government notes that co-defendant Rutigliano made a similar argument pre-trial, challenging the admissibility of evidence of his post-retirement golf activity (see Dkt. No. 464 at 2), an objection that was denied (see Dkt. Minute Entry for July 15, 2013).

The Court is persuaded that the circumstances of Gus Baran's having aged out of his disability benefits does not preclude the Government from putting forward evidence that he lied on his disability application submitted in 2003, well within the charged conspiracy period noted in the Indictment.

Second, Baran argues that admission of the 2013 Golf Evidence resulted in a constructive amendment to Baran's

Indictment by expanding the charged conspiracy period through 2013.

The Government argues that the 2013 Golf Evidence does not alter the terms of the Indictment as proof of the incident was both appropriate and admissible at trial as evidence that Gus Baran was not so disabled that he could not participate in the national economy when he applied for disability benefits in 2003.

The Court rejects Baran's argument that admission of the 2013 Golf Evidence constituted a constructive amendment of the Indictment. An indictment is "constructively amended when the trial evidence of the jury charge operates to broaden the possible basis for conviction from that which appeared in the indictment." United States v. McCourty, 562 F.3d 458, 470 (2d Cir. 2009). To prevail on a constructive amendment claim, a defendant must demonstrate that "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." United States v. Mollica, 849 F.2d 723, 729 (2d Cir. 1988). Because the Court finds that there was nothing inappropriate about the Government's use of the 2013 Golf Evidence to prove by

circumstantial evidence that Gus Baran could not have been totally and permanently disabled in 2003, the Court finds that there is no risk that the "defendant may have been convicted of an offense other than that charged in the indictment." United States v. Binday, No. 14-2809-CR, 2015 WL 6444932, at *18 (2d Cir. Oct. 26, 2015).

Finally, Baran argues that Defense Counsel's continued use of the 2013 Golf Evidence unconstitutionally prejudiced her. Baran specifically objects to Defense Counsel's decision to cross-examine the FBI Agent who observed Gus Baran playing golf in 2013 and Defense Counsel's decision to play the 2013 Golf Evidence to the jury.

The Government argues that use of the 2013 Golf Evidence was the result of a strategic decision on the part of Defense Counsel to prove that: (a) Gus Baran did not play golf on a daily basis; (b) the FBI agent did not know whether golf could be considered therapeutic for Gus Baran's specific disabilities; (c) the FBI agent did not know whether Baran took pain medication to permit him to play golf; and (d) working and playing golf are very different activities.

Defense Counsel concurs with the Government and also argues that his "cross examination drew the distinction between golf and other more physically taxing exercises that [Gus] Baran could not do. In so doing, [he] highlighted that

20

there was no evidence of [Gus Baran] going to the gym, jogging, or lifting weights. [He] further highlighted that when [Gus Baran] did play golf at his doctor's recommendation, he would use a golf cart to get from hole to hole. (Jackson Aff. at ¶18; see also Jackson Aff. at ¶¶16, 49-50 ("It was my view that the jury would think the Government was desperate to get [] Baran, and that's why they were charging so hard at her husband. . . . The fact is that [] Baran voluntarily admitted to the FBI when they interviewed her in 2008, that her husband played golf. Accordingly the cat was out of the bag. Having made this admission, I had to build a strategy which recognized the statements that she gave to law enforcement were going to be admitted at trial. . . . I viewed the admission of the photographic evidence as corroborating [] Baran's honesty with the F.B.I., showing she had nothing to hide, and thereby lending more credibility to her testimony that would be forthcoming.").)

That Defense Counsel's use of the 2013 Golf evidence was strategic is further supported by Defense Counsel's closing argument at trial. At closing arguments, Defense Counsel stated as follows: "[Y]ou saw a golf video of [Gus Baran] playing golf and that was to suggest to you that somehow he's defrauding the system. . . . [Y]ou won't be fooled that playing golf four times a week would somehow suggest and

comport with the definition of being able to hold a job in the national economy. [Is the Government] kidding me?" (Dkt. No. 514 at 2752-54.)

The Court is persuaded that Defense Counsel made a strategic decision to use the 2013 Golf Evidence. Regardless of whether the strategic choice of Defense Counsel was effective, or whether Baran would have preferred a different strategy, Defense Counsel's use of the 2013 Golf Evidence is not sufficient to support a finding that Defense Counsel was constitutionally ineffective. Moreover, there is nothing in Baran's Motion that indicates that Defense Counsel's conduct, even if in error, created a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 694. Baran does not dispute that evidence pertaining to Gus Baran's participation in the fraud was admissible, only that this particular video was inadmissible. This evidence, coupled with the testimony of more than 20 witnesses at trial, many of whom admitted that Baran lied in the disability applications she prepared on their behalf, persuades the Court that the 2013 Golf Evidence did not undermine the foundation for the outcome of the trial. See id.

Accordingly, the Court rejects Baran's claim that she was denied the effective assistance of counsel due to Defense

Counsel's failure to object to the 2013 Golf Evidence and Defense Counsel's subsequent use of such evidence at trial.

### 4.   Failure to Preserve Limiting Instructions

Baran claims that Defense Counsel was ineffective for failing to seek a limiting instruction that the jury could not convict her solely based on her association with her husband. Baran points to the trial court's statement indicating concern that the testimony regarding Gus Baran would prejudice the jurors' view of Baran. (Dkt. No. 510 at 2145 ("There is a point in which it appears that, by going into this kind of detail about [Gus] Baran, [the Government] is going to prejudice the jurors' view about [] Baran.").) Baran argues that Defense Counsel's failure to seek limiting instructions permitted the Government to inextricably link Baran with her husband, thereby prejudicing her and effecting the outcome of the trial.

The Government argues that Defense Counsel expressly stated at trial that his decision not to seek a limiting instruction was strategic. The Government points to Defense Counsel's statement that the proposed instructions were "more prejudicial" because they would highlight the evidence regarding Gus Baran. (Dkt. No. 514 at 2734-35; Jackson Aff. at ¶17 ("I later [abandoned] the effort for a limiting instruction, opting instead to simply make my argument.").)

Moreover, the Government argues that there is no way that Baran could establish any prejudice with respect to Defense Counsel's failure to limit the jury instructions. The proposed instructions to the jury did not preclude evidence related to Gus Baran, but rather reminded the jury that it could not convict Baran solely based on her association with her husband. (Dkt. No. 514 at 2732.)

In addition, the Government argues that where, as here, the evidence of the defendant's guilt is overwhelming, there is no "reasonable probability" that the absence of these limiting instructions had any bearing on the outcome of the trial. See Jones v. Smith, No. 09 CV 6497, 2011 WL 7794174, at *5 (S.D.N.Y. Nov. 4, 2011) ("Petitioner's contention that defense counsel should have requested a limiting instruction . . . is also meritless. Where the evidence of petitioner's guilt is overwhelming, an ineffective assistance claim predicated on counsel's failure to request a limiting instruction falters on Strickland's prejudice prong."); see also Gonzalez-Pena v. Herber, 369 F. Supp. 2d 376, 395 (W.D.N.Y. 2005) (stating that "[the defendant] has offered nothing more than speculation in support of his contention that the outcome of the trial would have been different had the jury been given limiting instructions").

The Court is persuaded that Defense Counsel made a strategic decision not to seek limiting jury instructions. This strategic decision falls squarely within the category of professional judgment calls that are "unchallengeable" under Strickland. 466 U.S. at 690. As the Court has previously stated, that Baran might disagree with Defense Counsel's strategic choice does not render his decision ineffective. Moreover, the Court agrees with the Government that such strategic decisions counseling against seeking limiting instructions, precisely because of the concerns Defense Counsel expressed here, are not uncommon.

Moreover, Baran has not made a showing that Defense Counsel's strategic decision, even if erroneous, prejudiced her case. The Court is persuaded that the evidence at trial regarding Baran's guilt was overwhelming and that a limiting instruction calling the jury's attention to the evidence regarding her association with Gus Baran would not have altered the outcome of this case.

The Court therefore rejects Baran's claim that she was denied the effective assistance of counsel due to Defense Counsel's failure to obtain a limiting jury instruction regarding the evidence concerning Gus Baran.

5.   Failure to Advise

Baran claims that Defense Counsel was ineffective for failing to advise her to retain a medical expert and also for not suggesting that her husband should not be in the courtroom during the proceedings. Baran argues that Defense Counsel's failure to advise the Barans that Gus Baran would best serve his wife outside of the presence of the jury, so that he would not become a live visual aid to the Government each time they referred to him as "totally and permanently" disabled, was tantamount to putting Gus Baran at the defense table next to his wife.

Having already addressed Baran's argument concerning the retention of a medical expert, the Court finds that Defense Counsel was not ineffective in failing to advise Baran that she should retain a medical expert.

The Government argues, and Defense Counsel's affidavit makes clear, that the decision to have Gus Baran attend trial was strategic. Defense Counsel explains that Gus Baran was a sympathetic figure and someone Defense Counsel very much wanted the jury to see. Moreover, Baran does not indicate how the decision to have her husband at trial prejudiced her, nor does Baran indicate that she would have chosen not to have her husband present even if Defense Counsel had advised her otherwise.

The Court therefore rejects Baran's claim that she was denied the effective assistance of counsel due to Defense Counsel's failure to advise her on the matter regarding her husband's presence in the courtroom during the trial.

### 6. Lack of Federal Court Expertise

Baran claims that Defense Counsel was ineffective because he lacked the federal court expertise and experience necessary to effectively defend her. Baran points to the following actions taken by Defense Counsel as evidence that he was inexperienced: (1) joining other defendants' motions; (2) discussing a severance motion with a colleague and subsequently seeking a template for such a motion; (3) incorrectly suggesting in his opening statement that Baran was eligible for an occupational disability; (4) arguing in summation that the Government could and should have called additional witnesses; and (5) referring to all of the plea agreements of the Government accomplice witnesses as cooperation agreements.

Regarding Baran's first and second examples, the Government argues, and the Court agrees, that it is common practice for defendants to join co-defendants' motions, where applicable, and for counsel to discuss motions with colleagues and request and review proposed motions prior to filing their own.

The Court is persuaded that not only is it common for parties to join each other's motions, a practice that the courts encourage as a matter of judicial efficiency, but also that it is advisable for practitioners to consult with colleagues, especially co-defendants' counsel, in drafting motions. In fact, such practice can enhance counsel's efficiency and effectiveness.

Regarding Baran's third example, the Government and Defense Counsel concede that it was a misstatement for Defense Counsel to suggest in his opening statement that Baran was eligible for an occupational disability. (Jackson Aff. at ¶30 ("Specifically, I misspoke by saying that she qualified for an occupational disability yet did not apply for one.").) The Government argues that this misstatement is insufficient to constitute ineffective assistance of counsel for the following reasons: (1) the statement was minor and isolated; (2) despite the misstatement, the rhetorical point that Baran had not committed fraud on her own behalf remained; (3) any effects of the misstatement were remedied through actual evidence admitted at trial, including Baran's own testimony; and (4) the misstatement, disconnected from the relevant issues in the case, could not have prejudiced Baran because of the overwhelming evidence on the trial record supporting

the jury's verdict as to Baran's guilt. The Court agrees with the Government.

As to Baran's fourth example, the Government argues that referring to different types of plea agreements as cooperation agreements as a matter of law does not constitute ineffective assistance of counsel. The Government argues that Defense Counsel's decision to refer to the plea agreements as cooperation agreements is common where, as here, there were accomplice witnesses. Defense Counsel explained that this strategy was meant to highlight that the witnesses against Baran were lying to protect themselves. Moreover, the Government argues that the term Defense Counsel used to refer to these agreements could not possibly have determined or affected the outcome of the trial.

The Court finds that Defense Counsel's misstatements referring to plea agreements at trial could not have, and did not, prejudice Baran. See United States v. Gangi, 213 F.3d 627, 627 (2d Cir. 2000) ("Hall argues that his trial attorney rendered constitutionally ineffective assistance of counsel in making two misstatements during his opening. After reviewing the record, we conclude that even assuming these misstatements satisfy the cause element of [Strickland], Hall has failed to demonstrate that, in the absence of these

errors, there is a reasonable probability that the result of the proceeding would have been different.").

Finally, in response to Baran's fifth example, that Defense Counsel should not have suggested that the Government could have called additional witnesses, the Government argues, and the Court concurs, that this tactic is common trial practice and, therefore, strategic. (See Jackson Aff. at ¶33 ("The reward in making such an argument, however, as a matter of strategy, outweighs the risk of doing so. This is particularly true as the jury was instructed that the Prosecution always bears the burden of proof.").) Moreover, the Government argues that Baran has not put forward any evidence showing how this strategic decision may have prejudiced her case.

The Court agrees with the Government that Baran cannot establish that the Defense Counsel's strategic decision to raise the issue of the Government's ability to call additional witnesses constituted ineffective assistance of counsel. In addition, the Court finds that regardless of whether Defense Counsel's decision to raise this issue was wise, there is no evidence to support a conclusion that his decision was unreasonable or rose to the level of "ineffective." Strickland, 466 U.S. at 697.

## III. <u>CONCLUSION</u>

This Court is persuaded that Defense Counsel effectively litigated this case at every stage of the proceedings and Baran cannot now second guess Defense Counsel's decisions because she is unhappy that she was convicted.

Because the Court finds that Baran has not made a sufficient showing that Defense Counsel's representation of her fell below an objective standard of reasonableness and that she was affirmatively prejudiced as a consequence, the Court is satisfied that Baran's allegations have not met the high threshold set by <u>Strickland</u>. 466 U.S. at 688-94. Accordingly, the Court denies her Motion.

## IV. <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 800) of petitioner Marie Baran ("Baran") to vacate, set aside, or otherwise correct her conviction and sentence pursuant to 28 U.S.C. Section 2255 is **DENIED**.

The Court certifies, pursuant to 28 U.S.C. Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore <u>in forma pauperis</u> status is denied for the purpose of an appeal. <u>See Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

As Baran has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. Section 2253(c)(1)(B).

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           5 January 2016

                                    VICTOR MARRERO
                                        U.S.D.J.