

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 11, 2016

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   **United States v. Lesniewski et al., S14 11 Cr. 1091 (VM)**

Dear Judge Marrero:

The Government respectfully submits this letter to seek reconsideration of the Court's decision to schedule a resentencing hearing, currently scheduled for April 29, 2016, as requested by defendants Peter Lesniewski, Joseph Rutigliano and Peter Ajemian in motions filed under Title 28, United States Code, Section 2255. As set forth below, the Government respectfully submits that there is no basis for such a resentencing under Section 2255 as set forth in the clear law of this Circuit. The Government separately requests that, should the Court decline to reconsider its decision, the Court stay the hearing pending the outcome of the appeals filed by defendants Lesniewski and Rutigliano with respect to the Court's denial of their Rule 33 motions for a new trial.

The defendants allege that their Guidelines should be recalculated based upon the United States Railroad Retirement Board's recent decision to grant disability awards on a going-forward basis to certain LIRR workers. As set forth below, there was unequivocally no error in the Guidelines calculation at sentencing for the defendants, each of whom received far below-Guidelines sentences in any event. More importantly, as the Second Circuit has held, a "'collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (internal quotation marks omitted) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)). "The reasons for narrowly limiting the relief permitted under [Section] 2255 – a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place – are 'well known and basic to our adversary system of justice.'" United States v. Bokun, 73 F.3d at 12 (quoting United States v. Addonizio, 442 U.S. 178, 184 & n. 11 (1979)); see also Femia v. United States, 47 F.3d 519, 525 (2d Cir. 1995) ("errors in sentencing procedure are cognizable under § 2255 only if the petitioner 'establish[es]

Honorable Victor Marrero
April 11, 2016
Page 2

that the violation constituted a constitutional or jurisdictional error, or by showing that the error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure'") (citations and further quotation marks omitted) (quoting Lucas v. United States, 963 F.2d 8, 12-13 (2d Cir. 1992)). In other words, the question is not whether the Court would impose a different sentence now than it did initially, the question is whether the initial imposition of the sentence resulted in a complete miscarriage of justice. As set forth below, the defendants cannot come close to meeting that stringent standard in this case.

Here, there is no claim of constitutional error, or lack of jurisdiction, and, as the Court held in rejecting the defendants' Rule 33 claims, there is no legitimate claim of actual innocence. Rather, the defendants are simply arguing that, in light of new decisions made by the Railroad Retirement Board, their sentences should be adjusted. This claim is an inappropriate basis for relief under Section 2255 for all the reasons the Second Circuit has repeatedly declined to allow such "resentencings" – a "respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place." Boykun, 73 F.3d at 12 (quoting Addonizio, 442 U.S. at 184 & n. 11).[1]

The calculation of the defendants' Guidelines at the time of their original sentences was driven by their intended losses – namely, the total losses resulting from their fraudulent activity if their criminal activity had not been identified and stopped. Notably, a defendant's intended loss for Guidelines purposes is not contingent on the success of the fraud, or even the completion of the fraud; instead, the loss is based on the defendant's intent in committing the fraud. Thus, even where crimes may not have been completed, as in conspiracy cases, or otherwise not associated with any loss, defendants' Guidelines ranges are routinely and properly calculated based on the dollar amount of loss they intended by their criminal activity.

---

[1] Indeed, even claims of *actual innocence* (which cannot legitimately be made here given the overwhelming evidence of the defendants' guilt, as affirmed by the Court and Second Circuit) based on newly discovered evidence, absent an independent constitutional violation, may not be subject to collateral review. See United States v. Quinones, 313 F.3d 49, 67 (2d Cir. 2002) ("[I]n Herrera v. Collins, the Supreme Court affirmed the denial of a petition for a writ of habeas corpus in which the petitioner claimed that his execution would violate both the Due Process Clause and the Eighth Amendment because new evidence could prove his 'actual innocence.' The Court noted that '[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief *absent an independent constitutional violation occurring in the underlying state criminal proceeding.*'" (emphasis in original) (citations omitted) (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993))); Bretan v. United States, No. 03 CRIM. 0358 (LAK), 2006 WL 238994, at *2 (S.D.N.Y. Jan. 31, 2006) ("It is not clear . . . that any availability of Section 2255 as a vehicle for such [claims based on newly discovered evidence] survives Herrera v. Collins, 506 U.S. 390, 400-04 (1993), absent an independent constitutional violation.").

Honorable Victor Marrero
April 11, 2016
Page 3

In this case, intended loss was calculated for each defendant on the narrow basis of the losses associated with LIRR workers with whom the given defendant worked directly, as opposed to the loss amount for the entire conspiracy, which would have been an appropriate basis on which to calculate the defendants' Guidelines and would have resulted in higher Guidelines ranges for each defendant. Specifically, for each defendant, the intended loss was calculated based on the losses through full retirement age of each of the defendants' patients/clients (full retirement age was also individually calculated based on the annuitants' age and years of service). Thus, for each defendant, the intended losses, and resulting Guidelines, were narrowly calculated as follows:

| Defendant | Intended Loss | Guidelines |
| --- | --- | --- |
| Ajemian | $165,000,000 (agreed-upon)[2] | 121-151 months |
| Lesniewski | $93,433,657 | 135-168 months |
| Rutigliano | $102,135,347 | 135-168 months |

Each defendant received a significantly below-Guidelines sentence of 96 months' imprisonment.

As the Court's decision on the defendants' Rule 33 motions makes clear, the defendants specifically intended to engage in a fraud of this scope. See Order at 9 ("The Government presented testimony and physical evidence at trial establishing that both Lesniewski and Rutigliano engaged in a longstanding and widespread scheme to defraud the RRB."); id. (As to Lesniewski, the Government presented evidence at trial that Lesniewski purported to conclude that every LIRR patient's condition would not improve, despite offering little or no meaningful treatment for the alleged condition. The Government showed at trial that during the course of the conspiracy, Lesniewski knew that his patients were working and, in fact, were physically capable of continuing to work."); id. at 10 ("[T]he Government showed at trial that Rutigliano prepared cookiecutter application materials for LIRR retirees."); id. at 11 ("The Court is persuaded that the Government presented overwhelming evidence at trial, establishing beyond a reasonable doubt, that the Defendants participated in a scheme to defraud the LIRR."). Thus, even if the post-sentencing RRB Board Orders had any bearing on specific workers' eligibility for occupational disability awards – which, as discussed in the Government's opposition to Lesniewski's and Rutigliano's Rule 33 motions and Ajemian's 2255 motion, they do not[3] – they

---

[2] As set forth in the Government's opposition to Ajemian's Section 2255 motion, Ajemian's intended loss amount was agreed upon in connection with the plea agreement into which the defendant entered.

[3] Further underscoring the irrelevancy of the Board's recent determinations, of the individuals reapproved for disabilities, the average time between the annuitants' initial disability determinations and their re-certification dates was 8.3 years. For Lesniewski's patients, the average time was 9.4 years. For Rutigliano's clients, the average time was 10.3 years, or more than a decade. Whether or not a 60-year old is able to work in a particular railroad job says nothing about whether that same individual could have performed the job when he or she was 50.

Honorable Victor Marrero
April 11, 2016
Page 4

cannot affect the calculation of the defendants' intended losses. There was therefore no error in the calculation of the defendants' Guidelines ranges, and certainly no error constituting a "complete miscarriage of justice" under Section 2255.

Indeed, even if the Court were to view each recent disability determination as (1) a valid determination (*i.e.*, a determination not infected by fraud by any worker, physician or other individual) that (2) the worker is disabled not only now, but also at the time, many years ago, that the worker submitted the initial fraudulent disability application that was at issue in this case, and the Court were also to determine (3) that the intended loss amount for each worker should be excluded from the defendants' loss calculation for Guidelines purposes - despite the evidence of rampant fraud by the LIRR workers and the defendants - the defendants' intended losses would still be staggering and result in Guidelines ranges consistent with the length of the sentences imposed the Court.

For example, of the 269 individuals included in Rutigliano's loss calculation, 114 were recently awarded disability by the RRB, leaving 155 who did not apply for or receive any new award. The intended losses associated with those 155 individuals equal over $48 million just in RRB annuity payments, leaving aside fraudulent disability insurance and other losses. Similarly, the intended losses for the individuals included in Lesniewski's initial loss calculation who have *not* received any new disability award were over $38 million, and the intended loss for individuals included in Ajemian's initial loss calculation who have *not* received any new disability award were over $95 million.[4] Thus, *at most*, making all the assumptions set forth above (each of which the Government would dispute), and assuming there were no losses to any entity other than to the RRB that would affect the Guidelines calculation (a fact which cannot properly be assumed given the demonstrated losses to insurers and through other short-term disability payments stemming from the fraud), Rutigliano's offense level would decrease by four levels and Lesniewski's and Ajemian's offense levels would decrease by two levels.[5] Each of those adjustments would result in Guidelines ranges consistent with the sentence imposed by the Court. In other words, there is nothing about the RRB's recent determinations that in any way calls into question the appropriateness of the Court's sentences, let alone suggests that the Court's significantly below-Guidelines sentences for three of the integral perpetrators of this

---

[4] In fact, the intended losses associated with just those individual annuitants who were either convicted of defrauding the RRB or who admitted that they submitted fraudulent applications in connection with the Voluntary Disclosure Program, are almost $15 million. There is simply no way to look at this decades-long scheme that does not result in a staggering intended loss amount.

[5] As the Government notes above, these calculations presume, for the sake of argument, that every worker who received a recent award was actually disabled at the time of the initial award, a fact which the Government disputes and would contest at any resentencing. As set forth in the Government's prior submissions, for many reasons, it would not be proper to conclude that

Honorable Victor Marrero
April 11, 2016
Page 5

massive scheme constitute a "complete miscarriage of justice."[6] Accordingly, the Government respectfully requests that the Court reconsider its decision to hold a resentencing hearing in this case.

Separately, should the Court decline to reconsider its decision, the Government respectfully requests a stay of the hearing until the defendants' pending appeals are decided. As the Court will recall, on March 4, 2016, the Court issued an order denying Lesniewski's and Rutigliano's motions for new trials pursuant to Rule 33 of the Federal Rule of Criminal Procedure.[7] Both Lesniewski and Rutigliano have appealed the Court's denial of their Rule 33 motions. Depending on the outcome of that appeal, resentencing may be unnecessary, and thus a stay is appropriate.

---

simply because a worker received a recent award, the worker properly received an initial award and that neither the worker nor the defendants committed fraud at that time. Among other reasons, the workers may still be committing fraud, and thus the recent award may be the result of their continuing fraud. For those not committing fraud, the fact that they cannot now do their jobs, many years after the initial award, does not mean they didn't commit fraud initially. Indeed, the fact that these workers variously visited the disability doctors Lesniewski and Ajemian for a long series of pointless visits, and paid for their applications to be filled with boilerplate lies by Rutigliano, suggests that they engaged in fraud at the outset.

[6] As noted in the Government's opposition to the defendants' Rule 33 and Section 2255 motions, the defendants also cannot challenge their forfeiture and restitution sentences under Section 2255. See Kaminski v. United States, 339 F.3d 84, 87-88 (2d Cir. 2003) ("[W]e agree with the other circuits that have held that § 2255 may not be used to bring collateral challenges addressed solely to noncustodial punishments [such as restitution].); id. at 89 ("Habeas lies to allow attacks on wrongful custodies. There is therefore no reason why the presence of a plausible claim against a custodial punishment should make a noncustodial punishment more amenable to collateral review than it otherwise might be. . . . [T]he mere fact that the sentencing court chose to impose incarceration on a defendant in addition to restitution does not, as to the restitution order, distinguish that defendant from someone who, having been convicted, received a punishment that did not include any custodial element. This is the position that most of the circuit courts that have considered the matter have taken, and it is the position to which we adhere today." (footnote omitted)).

[7] On March 18, 2016, the Court issued a separate order denying Ajemian's motion to vacate his conviction pursuant to Title 28, United States Code, Section 2255, but granting his motion for resentencing.

Honorable Victor Marrero
April 11, 2016
Page 6

In conclusion, for the reasons set forth herein and in the Government's prior submission, the Government respectfully requests that the Court reconsider its determination that a hearing is warranted, and deny the defendants' Section 2255 motions seeking resentencing. The Government separately requests that any resentencing proceeding be stayed pending the outcome of the defendants' appeals.

Very truly yours,

PREET BHARARA
United States Attorney

By: *Nicole Friedlander*

Nicole Friedlander
Daniel B. Tehrani
Assistant United States Attorneys
(212) 637-2211/2455

cc: All counsel (by ECF)
Peter Ajemian (by registered mail)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by the Government.

**SO ORDERED.**

4-12-16
DATE      VICTOR MARRERO, U.S.D.J.