

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 29, 2016

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re:    <u>United States v. Lesniewski et al.</u>, S14 11 Cr. 1091 (VM)

Dear Judge Marrero:

     The Government respectfully submits this letter pursuant to the Court's orders dated June 20, 2016 (regarding defendants Peter Ajemian, Peter Lesniewski and Joseph Rutigliano, the "June 20 Order") and June 29, 2016 (regarding defendant Marie Baran, the "June 29 Order," and with the June 20 Order, the "Orders") in which the Court directed the parties to submit additional briefing regarding whether the restitution orders applicable to each defendant should be revised in light of the post-sentencing orders by the RRB (Board Order 13-55, "Termination of Disability Annuities Awarded Based on Medical Evidence from Dr. Peter Lesniewski," and Board Order 13-33, "Termination of Disability Annuities Awarded Based on Medical Evidence from Dr. Peter Ajemian," collectively the "RRB Board Orders").  For the reasons set forth below, the defendants' motions for resentencing should be denied.

**I.  Baran Has Not and Cannot Receive Permission to File a Successive 2255 Petition**[1]

    A.  <u>Procedural History</u>

     On March 16, 2014, following Baran's convictions but before her sentencing, Baran filed a motion to vacate under Title 28, United States Code, Section 2255, alleging ineffective assistance of counsel.  On March 18, 2015, the Court denied the defendant's motion because the defendant had not yet been sentenced.

---

[1] As the Court is aware, the Government does not believe that any of the defendants can challenge the non-custodial portions of their sentences, including restitution, under Section 2255.  <u>See</u> <u>Kaminski</u> v. <u>United States</u>, 339 F.3d 84, 87-88 (2d Cir. 2003).  Because the Government has made that argument previously, it will not do so again here.  However, because there are additional reasons why Baran specifically cannot challenge her restitution order – or any component of her sentence – in a successive 2255 petition, the Government will address arguments specific to her motion here.

On April 4, 2014, the Court sentenced Baran principally to concurrent terms of 60 months' imprisonment on Counts 1, 2, 3, and 4 (conspiracy), 10 and 11 (health care fraud), 13 and 18 (mail fraud), and 28 and 32 (wire fraud). On April 21, 2014, Baran filed a timely notice of appeal, and on August 7, 2015, Baran filed a brief challenging her conviction based on (a) ineffective assistance of counsel and (b) lack of venue. She also challenged her sentence as both procedurally and substantively unreasonable.

As early as November 2014, newspaper articles reported on the results of the RRB recertification process. In their appellate briefs filed in December 2014, both defendants Rutigliano and Lesniewski referenced this information, but Baran did not. On June 5, 2015, the RRB responded to a FOIA request regarding the RRB Board Orders, providing information that forms the factual basis of Baran's current motion. See Tomao Decl. in Support, ¶ 2 & Ex. A.

On June 22, 2015, Baran's, Rutigliano's, and Lesniewski's appeals were denied. The Court of Appeals declined to decide Baran's ineffective assistance of counsel claims, noting that resolution of those claims was more appropriate through a 2255 motion.

On July 15, 2015, the defendant filed a motion to vacate under Title 28, United States Code, Section 2255, again alleging ineffective assistance of counsel (the "Baran Initial Motion"). The Baran Initial Motion made no reference to the RRB Board Orders despite the fact that the motion was filed over a month after the RRB FOIA response and almost eight months after newspaper articles reporting about the results of the RRB review process.

On January 5, 2016, this Court denied the Baran Initial Motion. On June 3, 2016, the defendant filed the instant motion (the "Baran Successive Motion). The defendant has never sought permission from the Court Appeals to file such a motion.

B.  Applicable Law

In the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress established a gatekeeping mechanism by which courts of appeals were assigned the task of deciding in the first instance whether a second or successive Section 2255 motion could proceed before the district court. See 28 U.S.C. § 2244(b)(3)(A); Felker v. Turpin, 518 U.S. 651, 657 (1996). AEDPA requires that an applicant who wishes to file a second or successive § 2255 motion first "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A).

AEDPA's gatekeeping provisions "impose[] stringent limits on a prisoner's ability to bring a second or successive application for a writ of habeas corpus." Torres v. Senkowski, 316 F.3d 147, 150 (2d Cir. 2003) (internal quotation marks omitted). A second or successive Section 2255 motion must be denied unless the application is certified by the court of appeals to contain:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). Section 2244, in turn, provides that an application may be granted only if the court of appeals determines that the applicant has made a "prima facie showing" that she has satisfied the requirements of § 2255(h) and would be entitled to relief if the application were granted. 28 U.S.C. § 2244(b)(3)(C); Bell v. United States, 296 F.3d 127, 129 (2d Cir. 2002).

The Second Circuit has explicitly held that "§ 2255 movants are required to act with 'due diligence' in investigating and presenting their claims based on newly discovered evidence." Herrera-Gomez v. United States, 755 F.3d 142, 147 (2d Cir. 2014). Accordingly, a defendant moving for a successive 2255 petition must demonstrate that he or she "could not have discovered this information through the exercise of due diligence prior to the filing of his [or her] first § 2255 motion." Id. at 148.

 C. Discussion

Baran has failed to apply to the Court of Appeals for permission to file a second or successive Section 2255 motion. That, in and of itself, is sufficient to deny the Baran Successive Motion in its entirety. Even on the Section 2255(h) factors – which Baran would have to establish to the satisfaction of the Court of Appeals before being given permission to file a successive petition – the defendant's application would fail. The defendant has not and cannot establish that any argument based on the RRB Board Orders could not have been raised in the Baran Initial Motion, filed with this Court on July 15, 2015.That motion was filed more than eight months after newspaper articles referencing the RRB review results, more than seven months after her co-defendants filed briefs in the Court Appeals referencing those results (supporting arguments she explicitly joined in), and over a month after the RRB responded to a FOIA request by one of her co-defendants. The defendant chose not to raise arguments related to the RRB Board Orders in the Baran Initial Motion and cannot now elect to do so in a successive motion.

Indeed, the only argument that the defendant makes in that regard is that "the instant petition asks the Court to set aside the sentence based on misinformation and clearly erroneous findings of fact, [whereas] Ms. Baran's earlier petition [asked the Court] to set aside the verdict and order a new trial based upon the ineffective assistance of trial counsel." (Baran Mem. at 10). The fact that the defendant is now making *different* arguments challenging *different* aspects of her judgment of conviction is irrelevant, however. See Corrao v. United States, 152 F.3d 188, 191 (2d Cir. 1998) ("Generally, a § 2255 petition is 'second or successive' if a prior § 2255 petition, raising claims regarding the same *conviction or sentence*, has been decided on the merits. This remains true even if the latter petition purports to raise new claims." (emphasis

added) (citations omitted)); Brown v. United States, No. 11 CV 3580 RJD, 2011 WL 4543060, at *1 (E.D.N.Y. Sept. 23, 2011) ("[B]ecause petitioner now seeks to attack the same judgment of conviction that he attacked in his initial 2255 petition, his current application must be regarded as a 'second or successive' habeas motion under Section 2255(h)."); Chacko v. United States, No. 04 CIV. 2258 (JGK), 2005 WL 1388713, at *5 (S.D.N.Y. June 8, 2005) ("To the extent that the petitioner has raised a new argument . . . to vacate his sentence, the application is transferred to the Court of Appeals for the Second Circuit for a determination whether the petitioner should be permitted to file a successive motion pursuant to 28 U.S.C. § 2255."). Baran is challenging the same conviction and sentence in the Baran Successive Motion as she did in the Baran Initial Motion. It is therefore a second or successive petition that is not properly before this Court.[2]

Accordingly, for these reasons, as well as those set out in the June 29 Order (denying Baran's arguments regarding the other components of her sentence on the merits), Baran's motion should be denied in its entirety.

## II. The Restitution Amounts Are Correct

Even if the Court were to address the defendants' challenges to their restitution amounts on the merits, no resentencing is warranted. As the evidence at trial demonstrated (and as Ajemian's plea allocution made clear),[3] the defendants intended to and did in fact defraud the RRB. Separate and apart from the defendants' numerous misrepresentations, eight of the defendants' co-conspirators testified and stated unequivocally that their applications were false and that they were fully able to perform their jobs on the days they retired.[4] The defendants' restitution amounts were thereafter calculated based on the disability payments made to identified applicants – each of whom sought out and hired individuals known among LIRR employees as the "go to" doctors/facilitators for the fraud – as of the dates that their disability annuities were discontinued (which were all pre-sentencing). Those calculations represented

---

[2] The defendant requests that her motion be converted into a writ of coram nobis pursuant to the All Writs Act if the Court finds that the petition constitutes a procedurally foreclosed successive 2255 petition. (Baran Mem. at 10-11). Such equitable writs, however, are not meant to provide relief directly foreclosed by Section 2255. See Pipola v. United States, 430 F. App'x 31, 32 (2d Cir. 2011) ("[T]he writ of *audita querela* is not an available remedy, because, as a federal prisoner challenging the legality of his conviction, the relief Pipola seeks is covered by statute: 28 U.S.C. § 2255(a). This conclusion is not undermined by the fact that any Section 2255 motion filed by Pipola must satisfy the threshold requirements applicable to successive Section 2255 motions, as he has already filed a Section 2255 motion challenging the conviction at issue that was denied on the merits."); Brown v. United States, 2011 WL 4543060, at *1 ("The statutory restrictions on successive or second 2255 applications . . . do not trigger the residual authority of the All Writs Act.").

[3] As the Government argued in its initial response to Ajemian's motion, Ajemian's challenge to his sentence – including restitution – is waived by the explicit terms of his plea agreement.

[4] An additional 45 annuitants admitted to having committed fraud in connection with Voluntary Disclosure Program.

reasonable estimations of the actual loss suffered by the RRB as a result of the defendants' fraudulent activity.[5]

Nothing about the RRB Board Orders changes that calculation. The RRB Board Orders provided that LIRR annuitants receiving disability benefits based on recommendations by Drs. Lesniewski or Ajemian would have their benefits terminated approximately three months after receiving notice of the relevant Board Order. Notwithstanding the termination, the Board Orders also provided that these annuitants could apply to receive disability benefits going forward (i.e., beginning with the Termination Date) by submitting a new application and accompanying medical evidence that did not include any materials from Drs. Lesniewski or Ajemian. The Board Orders also explicitly provided that notwithstanding the termination, disability benefits paid to these annuitants based upon materials provided by Drs. Lesniewski or Ajemian would not be "reopened," i.e., would not be the subject of re-evaluation or review by the RRB. See March 4, 2016 Order, Dkt. No. 846, at 8 ("The Board Orders explicitly provided that the RRB would not 'reopen' or 'reevaluate' the materials provided by Lesniewski and Ajemian, thereby declining to review the validity of Lesniewski and Ajemian's diagnoses or recommendations or the entitlement of the annuitant to an occupational disability at any time prior to reapplication."). Thus, any post-termination re-evaluation did not purport to bear on the validity of Dr. Lesniewski's or Dr. Ajemian's diagnosis or recommendation, or the entitlement of the annuitant to an occupational disability at any time prior to the date of the reapplication. Thus, the RRB Board Orders, by their own terms, have no bearing on the validity of disability determinations (of applicants who chose to commit fraud and hire individuals willing to commit fraud in order to obtain disabilities) that pre-date the Termination Date, and therefore have no impact on the calculation of the defendants' restitution amounts.

Indeed, the amount of time between the annuitants' original and subsequent re-applications underscores the irrelevancy of the subsequent certifications to the original fraud-induced determinations. Of the individuals reapproved for disabilities, the average time between the annuitants' initial disability determinations and their re-certification dates was 8.3 years. For Lesniewski's patients, the average time was 9.4 years; for Ajemian's, the average time was 8.0 years. For Rutigliano's clients, the average time was 10.3 years, or more than a decade; for Baran's 41 clients, the average time was 5.8 years. Thus, the recertifications, which took place on average more than eight years after annuitants' first disability determinations, and in some cases more than 14 years later, are of no relevance to the validity of their initial, fraudulently induced disability awards. The Government therefore believes that the reasonable estimations of the actual loss caused by the defendants' fraud remain unaffected by the Board Orders and that the restitution orders should not be modified.

---

[5] Those losses could have been considerably higher if each defendant had been held responsible for the losses caused by the entire conspiracy.

Assuming, however, that the Court were inclined remove from the defendants' restitution calculations the disability payments made to individuals who were later recertified – a revision the Government does not believe is appropriate – the modified actual loss amounts to the RRB would be as follows:

| **Defendant** | **RRB Actual Loss** |
|---|---|
| Ajemian | $69,015,090[6] |
| Baran | $21,467,954 |
| Lesniewski | $34,237,477 |
| Rutigliano | $42,317,077 |

Very truly yours,

PREET BHARARA
United States Attorney

By:    /s/
Daniel B. Tehrani
Assistant United States Attorney
212-637-2455

cc: Thomas Durkin, Esq. (by ECF)
    Joseph Ryan, Esq. (by ECF)
    Sean Maher, Esq. (by ECF)
    Peter Tomao, Esq. (by ECF)

---

[6] Because Ajemian's loss calculation was based on an agreed upon calculation, which itself was based on an agreed upon set of assumptions, Ajemian's revised actual loss amount is calculated as the original actual loss amount less the payments made to annuitants (who were within the category of Ajemian patients included in the initial loss calculations) who were subsequently certified pursuant to the RRB Board Orders. In relevant respect, Ajemian's intended and actual loss calculations were based just on patients who applied for disabilities between 2004 and 2008. The defendant's participation in the fraud was much more extensive than that.